IN THE COURT OF APPEALS
FIFTH DISTRICT OF TEXAS AT DALLAS

FILED IN
Court of Appeals

JUN 0 7 2018

Lisa Matz
Clerk, 5th District

CAUSE NO. 05-16-00784-CV

TONYA PARKS & PARKS REALTY FIRM, LLC

vs.

AFFILIATED BANK, ET AL

On Appeal from the County Court of Law #3
Dallas County, Texas
Trial Court Cause No. CC-15-04540-C

**APPELLANT'S MOTION FOR EN BANC RECONSIDERATION AND MODIFICATION OF JUDGMENT AND MEMORANDUM OPINION OF MAY 3, 2018**

Tonya Parks
Pro Se
1401 Bristlewood Dr.
McKinney, Tx 75070
telephone: (214) 980-8816
email: tonyaparks@parksrealtyfirm.com

TO THE HONORABLE JUSTICES OF SAID COURT:

NOW COME TONYA PARKS PRO SE, one of the Appellants in the above-style and numbered appeal, and pursuant to Rule 49.7 of the Texas Rule of Appellate Procedure file this *Appellant's Motion for En Banc Reconsideration and Modification of Judgment of Memorandum Opinion on May 3, 2018,* and, in support of same, respectfully show:

<div align="center">

**POINTS FOR *EN BANC* RECONSIDERATION**

</div>

Appellant respectfully request this court to reconsider *en banc* this Court's *Memorandum Opinion and Judgment* on May 3, 2018 (which are together attached as Appendix 1 hereto) because, in the opinion the court of appeals erred by (1) stating they do not need to address Parks' concerns about abating the appeal back to the trial court, (2) stating they have resolved the issues on appellant's assertion that Judge Akin abused his discretion by entering the Findings of Fact and Conclusions of Law, (3) stating that, by abating the appeal, this court allowed Parks to have her due process by conducting a hearing to see if Parks entered into an enforceable agreement pursuant to Rule of Civil Procedure 11 , (4) stating Affiliated Bank and Campbells complied with the agreement, and appellants breached the agreement, (5) stating Judge Akin held an evidentiary hearing to determine whether there was an agreement between the parties and whether any agreement was enforceable, and that conflicting evidence was presented at the hearing, (6) citing they reviewed de novo that "[t]here was no coercion," and "[t]here was no coercion or duress" based on Judge Akin's "*Findings of Facts Conclusions of Law*" paragraph 25 and 28, (7) stating that based on the "unchallenged" findings and the evidence at the hearing before Judge Akin, they that concluded Judge Akin did not err by determining Parks did not enter into the settlement agreement due to coercion or duress, (8) stating they conclude *Rymer* is distinguishable and does not control whether the agreement entered into by Parks is enforceable,

(9) stating they will not address Appellants issue on any subsequent compliance with the agreement by either Affiliated Bank or Appellants because it is not relevant to the issues before Judge Akin, (10) stating accordance with this Court's opinion on May 3, 2018 they dismissed Appellants appeal, (11) by not addressing the rendition of modifying or vacating the Judgment entered by Hon. Sally Montgomery on Mar. 24, 2016 (CR:255-256: Appendix 14) after the hearing held on the Motion for New Trial (transcript Appendix 2) which was requested in the *Order* from this court on **Dec. 20, 2017** (Appendix 8), (12) by not addressing Appellant's letters to this court (Appendix 3 - filed on **July 25, 2016**, Appendix 4 -**Aug. 15, 2016**, Appendix 5-**Aug. 22, 2016**), Affidavit of Bennie Gibson (Appendix 6- filed **Aug. 24, 2016**), Appellants' Response to Objection of Bennie Gibson Affidavit (Appendix 7 filed on Aug. 30, 2016) and all Appellants' briefs filed that were overlooked and not addressed in the opinion of May 3, 2018, (13) Items discussed in Oral Argument on **Dec. 12, 2017** by John Browning and misrepresented as fact to the Panel of Justices and of which this court should have taken note per the clerk's record that and briefs submitted by Appellants after the abatement, per the order on **Mar. 8, 2018**, and (14) not considering the bulk of evidence of conspiracy and/or cronyism, conflict of interest and collusion among the attorneys and judge of the trial court this, of which court may have known, had not known or should have known when drafting the opinion on **May 3, 2018.** There has also been new evidence during the appeal abatement period in which receiving justice requires it to be heard and taken into consideration for Appellant to receive due process and relief from this court.

## STATEMENT OF THE CASE

Plaintiff Tonya Parks (hereinafter also referred to as Parks or Appellant) and Parks Realty Firm (hereinafter also referred to as "PRF" or Appellant) initiated the present lawsuit by filing

their Plaintiffs' *Original Petition* (the "Petition") on *Sept. 2, 2015* and then filed the final *Plaintiffs' Second Amended Petition* on *Sept. 23, 2015* (CR:40-56). Defendant Affiliated Bank (the "Appellee") with the help of Attorneys Jerry Alexander and John Browning filed *Defendant Affiliated Bank's Answer, Verified Denial and Affirmative Defenses to Plaintiffs' Second Amended Petition* on *Oct. 16, 2015* and Defendant Joshua and Katherine Campbell through their Attorney Christopher Hansen filed their answer to the Petition on *Oct. 23, 2015*. Defendant Joshua Campbell (hereinafter also referred to as "Campbell") **_alone_** filed a *Motion to Dismiss* (CR:69-92) pursuant to Texas Civil Practice and Remedies Code Sec 27.001 (hereinafter also referred to as "*TCPA*") on *Nov. 23, 2015*. Affiliated Bank, from the date of their Original Answer to Plaintiffs' Petition on *Oct. 16, 2015* to the date Josh Campbell filed in **_his name only_** as *Defendant Joshua Campbell's Motion to Dismiss Under the Texas Citizens Participation Act* (CR:69-92) on *Nov. 23, 2015* did not file any request with the trial court nor any evidence supporting a dismissal of Appellee Affiliated Bank at or the hearings held on the Motion to Dismiss on *Mar. 21, 2016* and continued on *Mar. 22, 2016*. On **April 21, 2016**, Plaintiff filed a *Plaintiffs' Motion for New Trial and Alternative Motion to Vacate, Modify, Correct or Reform Judgment* (part of his motion is in Appendix 23b a full copy is apart of the record). Hearing on Motion for New Trial was held on **June 13, 2016**

This appeal arises from the dismissal by the trial court of Appellants' claims against Josh and Katherine Campbell and Appellee Affiliated Bank for negligence, negligent misrepresentation, negligent hiring, retention and supervision, gross negligence, libel per se, libel per quod, slander, business disparagement, invasion of privacy, tortious interference with prospective contracts and business relationships, intentional infliction of emotional distress, fraud, fraudulent misrepresentation, respondeat superior, and malice (see Plaintiff's Second

Amended Petition, CR:40-56) pursuant to the trial court's *Order* on *Defendant Joshua Campbell's Motion to Dismiss* (CR:255-256)(Appendix 14).

After oral argument on **Dec, 12, 2017** this Court entered an *Order* on **Dec. 20, 2017** (Appendix 8) abating this appeal and ordering the trial court "*to conduct a hearing to determine whether Parks, individually and on behalf of PRF, entered into the rule 11 agreement due to coercion or duress or whether the rule 11 agreement is enforceable, despite Appellants timely revocation of the coerced consent by appealing*".

On **Jan. 8, 2018** Appellants filed a Motion to Recuse Judge Montgomery.

On **Jan 17, 2018** Appellants filed an Amended Motion to Recuse Judge Montgomery.

On **Jan 30, 2018** a hearing was held on the Motion to Recuse, which motion was denied by Judge Emily Miskel.

On **Feb. 14, 2018** Appellants filed *Appellants Emergency Motion to Stay Proceeding in Trial Court and Reconsider and Withdraw Order that Trial Court Conduct Hearing on Whether Trial Court Judge Coerced Plaintiff's into Entering into a Rule 11 Agreement and, in the Alternative Motion that Case be Transferred to Other County Court to Conduct Said Hearing* in this court. On **Feb. 15, 2018**, this Court entered an *Order* denying said motion, despite Judge Montgomery's campaign relationship with John Browning, and Browning's current campaign for a seat in this court.

The hearing ordered by this court was conducted in the trial court on **Feb 16, 2018** (RSR, Vol. 1-4), with visiting Judge Ted Akin presiding. At the conclusion of said hearing Appellee's counsel John Browning submitted pre-prepared, "*Proposed Findings of Fact and Conclusions of Law*" (Appendix 9) to Judge Akin.

On **Feb. 19, 2018**, Appellants filed *Plaintiffs' Objections and Response to Defendant Affiliated Bank's Proposed Findings of Facts and Conclusions of Law and Request for Entry of Order That Plaintiffs' Were Denied Their Constitutional Rights to Due Process and a Fair Hearing by an Impartial Judge, entered into a Rule 11 Agreement as a Result of Coercion or Duress, and the Rule 11 Agreement is Not Enforceable* (CSR: 11-155)

On **Feb. 27, 2018** Judge Akin entered a document in the trial court entitled *"Findings of Fact and Conclusions of Law"* (Appendix 10) stating the rule 11 agreement was enforceable and Parks was not coerced or put into "extreme duress."

On **Mar. 8, 2018** this court entered an *Order* (Appendix 12) reinstating this appeal and allowed Appellants to file a supplemental brief *only* allowing Parks the opportunity to file a limited brief, not exceeding fifteen pages, raising only issues relating to the trial court's rulings on objections at the **Feb. 16, 2018** hearing and the trial court's **Feb. 27, 2018** *"Findings of Facts and Conclusions of Law,"* but they allowed Affiliated Bank to file *any* response on unlimited issues, within fifteen pages. Parks and PRF could then file any reply, not exceeding 5 pages. Briefs were filed and are a part of this courts record.

On **May 3, 2018** this court entered a ***Memorandum Opinion*** (Appendix 1) dismissing this appeal.

**Appellant seek relief from:**

(a) The *Order* on *Defendants Joshua Campbell's Motion to Dismiss* (CR:255-256: Appendix 14) entered by the Hon. Sally Montgomery, presiding judge sitting in County Court at Law No. 3 of Dallas County, Texas, in Cause No. CC-15-04540-C, in which "TCPA" was misapplied,

(b) The Court of Appeals' *Order* dated **Dec. 20, 2017** (Appendix 8 hereto) in which Appellant was sent back to the same court that had coerced Appellant's consent by misapplying a Rule of Civil Procedure.

(c) The *Findings of Fact and Conclusions of Law* (Appendix 10) dated **Feb. 27, 2018**, entered by Judge Ted Akin, as visiting judge, in the County Court at Law No. 3 of Dallas County, Texas in Cause No. CC-15-04540-CV in which, despite clear and convincing evidence to the contrary, he adopted Appellee's filing verbation: and

(d) This Court's *Memorandum Opinion* (Appendix 1) dated **May 3, 2018**.

(e) Any and all relief this court can grant and any attorney fee accrued during appeal.

### Additional Statement of Fact During the Motion to Dismiss Hearing on March 22, 2016 Prior to the Order and Judgment on March 24, 2016

To began, Appellant respectfully submits that this court erred by failing to overrule Judge Montgomery's dismissal of the case based on her misapplication of TCPA.

In the *Order* by this court on Dec. 20, 2016 it states that, "Campbell filed a motion to dismiss under the TCPA, arguing the claims against him were based on statement he made in connection with a matter of public concern, and Parks and PRF could not establish by clear and specific evidence a prima facie case for each essential element of their claim". Also, in the *Order* by this court on Dec. 20, 2016 it also states that, "At the hearing on Campbell's Motion, Affiliated Bank argued it "should be included as far as being dismissed" because there was no evidence to support the causes of action asserted against it and requested that it be awarded attorneys' fees pursuant to the TCPA".

According to the TCPA "Exercise of the right of free speech" means a communication made in connection with a matter of public concern. The business transaction between Campbell and Parks' clients was never a matter of public concern and looking at the Ripoff Report

defamatory statement, full of lies and false representation, the Campbell's were never a client of Mrs. Parks so false information is not a matter of public concern. The Statute also says that a court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question. Defamatory statements classified as libel or slander must be statements that are untrue, and the person making the statement must know that they are untrue. ***What is a lie and known to be a lie when made with malicious intentions is not protected in the exercise of the right to free speech and what is a lie and is known to be a lie when made with malicious intention is not a matter of public concern.*** In the Motion to Dismiss hearing on Mar. 22, 2016 Parks provided evidence in the hearing supported in her Plaintiffs' Response to the Campbell Defendant's Motion to Dismiss on Mar. 21, 2016 (CR:118–253) and in Attorney Jason Berent Affidavit filed on Mar. 21, 2016 that the trial court should not dismiss Parks' lawsuit. The following evidence was submitted to evidence deceit, malicious intent, attempts to subvert the truth, and knowledge/acquiescence by the bank:

1) A malicious/threaten text message from Josh Campbell to Parks stating, "'I'm going to make an audience so you your slander will stop."

2) Affidavit of Tonya Parks,

3) The defamatory posting on Rip-off Report,

4) Text message from Parks to Campbell requesting loan status because the title company informed her the buyer was not going to be closing on that day and she had not heard from the Campbell's,

5) An email from the buyer to the Campbells stating that Parks has been nothing but professional and helpful,

6) An email sent from Parks to Campbell stating the buyers could lose the home they were attempting to purchase and all the money exceeding $1000 they had already spent in earnest money, inspection and extension,

7) Email from the Campbells stating that the buyers loan was approved/eligible but changed to refer/eligible which would cause an additional delay,

8) A demand letter from Affiliated Banks lawyer,

9) Rip-off report Documents stating the posting was from the Campbell's,

10) Affidavit from Tiffany Martin setting forth transaction chronology and that the posting on Rip-off report was very similar to their transaction but identified the "wrong bad guy" meaning the Campbells were the problem **not** Parks. She states Parks was always there for them and she was always very knowledgeable and very compassionate. She always kept them in the loop and maintained good communication. Without Parks they would have never been able to buy their home.

11) Letters from Buyers thanking Parks for everything she did to help them get into their home,

12) *Deposition of Campbell stating that he works in the late evening to does work for Affiliated Bank at home which was approved and known by Affiliated Bank.*. That he feels its ok to "lie." The bank withheld emails and/or documents that the bank provided his lawyers and he did not know who was paying them,

13) An email from Josh Campbell to Parks and the buyer that was sent on Wed. Sep. 3, 2014 at 3:15 am around the same time the Campbells wrote the posting on Rip-off Report which would show that he was working,

14) An email from the buyer on Sept. 2, 2014 at 11:13 wondering why they were not closing the next day,

15) An email from the listing agent on Sept. 5, 2016 stating "let's get this to the finish line," and to hang in there because of all the delay Parks and the listing agent just wanted to get the transaction closed for the buyer and seller,

16) The HUD statement for closing,

17) An a affidavit from Jason Berent providing 115 pages of the multiple felony history of Josh Campbell and showing that he was on probation for one of the felonies when Affiliated Bank hired him,

18) Along with lots of other evidence that would show none of the defendants should have been dismissed.

All of which was submitted to the lower court in Plaintiffs' Response to Defendant Campbell *only* Motion to Dismiss.

(Some of the evidence is attached in Appendix 23)

**Josh Campbell** who was **a Branch Manager for Affiliated Bank** only provided his personal affidavit with **no supporting evidence of all the claims against him.**

**Katherine Campbell** had **no motion to dismiss filed** within the court only filed a personal affidavit with **no additional evidence to support the dismissal.**

**Affiliated Bank the employer of Josh Campbell and Katherine Campbell** had **no motion to be dismissed** and **had not filed any summary judgment. They also did not provide any evidence of any claims against them mentioned in Parks petition to support their dismissal.**

During the hearing on Mar. 22, 2016 Judge Montgomery and all the lawyers had the following exchanges (the full transcript to this hearing is a part of the trial court record and or reporter's record filed in this court and Defendant's Campbell Deposition transcript attached to Plaintiffs Response to the motion to Dismiss incorporated her by reference):

THE COURT: So, it sounds like maybe the Campbells were saying they were preapproved and weren't really for a home. That's what I'm getting out of it. Now if that's the case, ***then the Campbells set in motion this whole problem with Mrs. Parks***. I realize this is coming in late, but -- and it's very concerning to me.

MR. BERENT: And also, you know, in the context of all of these things that are false, I asked Mr. Campbell in his deposition on page 95, ***"Is it ever okay to lie?" He says, "Even under any circumstance is it okay to not tell the full truth? Yes." That's on page 95.***

MR. BERENT: Okay. The elements for business disparagement, defendants published false and disparaging information about plaintiffs, with malice, without privilege, that resulted in damages to the plaintiff. ***Now, we've got the false and disparaging information about the plaintiffs that we've seen in Exhibit A 1 with malice. In his deposition testimony Mr. Campbell says plainly he was frustrated with Tonya Parks, and he wanted her out of his hair. And he acted intentionally, and then he lied about it. His subsequent conduct alone shows malice.***

So the lower court knew that the Campbell's statements were false, thereby not dismissible under TCPA. Furthermore, the lower court erred by dismissing Defendants Katherine Campbell and Affiliated without motions or proper evidence supporting dismissal of Plaintiffs causes of action. Here is another exchange:

MR. BERENT: That's fair, you're Honor. The other issue is going right to your point. Ms. Parks is not a bad actor. Mr. Campbell is a twice convicted felon and admits that he lied, not only to Ms. Parks, but to the bank, and also that his posts –

THE COURT: So, you're going to let the bank off, right?
MR. BERENT: No, Your Honor. There are other issues as to the bank for another day.

MR. BROWNING: Actually, maybe not for another day, Your Honor. He's required to prove evidence as to each essential element of causes of action. He's alleged causes of action against the bank, and there's no evidence supporting those.

THE COURT: **But you didn't bring a motion to dismiss today, right?**

MR. BROWNING: Your Honor, it's based on the movant's motion to dismiss. The language in the statute refers to the action. Not part of the action, not some of the claims. Refers to the legal action. And, Your Honor, it's undisputed, as we pointed out before, that he's alleged respondent superior where somehow, we're vicariously liable when, in fact, the only evidence, undisputed evidence, is that this was done at Mr. Campbell's residence at three in the morning on his home computer at his home IP address.

THE COURT: The fact that he was at home doesn't bother me if it was in the course and scope of his business if he worked at home in his business.

MR. BROWNING: And he also testified, Your Honor, and it hasn't been controverted, that he was not doing the bank's work. This is his own time, using his own equipment.

**Actually, it was controverted because Plaintiff provided evidence to the trial court that would show Josh Campbell was working for Affiliated Bank at the time of the posting entered on Ripoff Report website. The posting on Ripoff Report was written around 2 or 3am in the morning on Wed, Sept. 3 2014 and he also sent an email to Parks, the buyers and Katherine Campbell around the same time Wed, Sept. 3, 2014 at 3:15am. This entire incident came from a transaction in which the Campbells were working for Affiliated Bank. Parks did not have any relationship with the Campbells outside of them providing loans for her clients in real estate. They were never a client of Parks. She also would not have met them if they were not allowed to provide mortgages for Affiliated Bank who gave them the license and branch manager position to act on their behalf and operated a business on the behalf of Affiliated Bank.**

---

THE COURT: I would think it would be outside his scope.

MR. BROWNING: Exactly. Because there's nothing proving that element or any element, for that matter, of that cause of action, then there's nothing to support keeping the bank in here. And the bank should be included as far as being dismissed.

THE COURT: The only pleading from you against the banks is in the respondeat superior?

MR. BROWNING: He's also alleged negligent hiring, negligent supervision, and negligent retention. However --

**THE COURT**: Wait, wait. Negligent supervision, negligent hiring, and what?

**MR. BROWNING**: And negligent retention, Your Honor. Again, the only evidence -- and there's no evidence as to any of the elements before the Court as he was supposed to bring, much less any essential elements. The only evidence is that Mr. Campbell did this on his own time at his home on his own equipment, his home computer, without the bank's knowledge. And, in fact, when he was asked by the bank, did you do this, he lied to them. So, Your Honor, I don't see how that's negligent hiring, retention, or supervision. When we did find out, we fired him. Now, we don't have the burden -- it's his burden to come forward with evidence to support each essential element of every cause of action alleged in the lawsuit, not just the communication related ones. He has not done that at all with regard to my client, and the bank should be dismissed.

**THE COURT**: Okay.

**MR. BERENT**: Do you want a response, Your Honor?

**THE COURT**: No, I don't need it. Okay. The causes of action against Mr. Campbell are what?

**MR. ROSSINI**: They are --

**MR. BERENT**: Here's a copy.

From this exchange - The Court would not let Jason Berent respond after Mr. Browning so that he could show cause on why the bank should not be dismissed. The lower court erred by dismissing defendants' with motion and in contravention to the evidence before her. Despite Browning assertions, evidence was present that Josh Campbell defamatory comment was posted while in the course of also sending work emails.

*Also in deposition which a full copy of the transcript was submitted in trial court Plaintiffs' Response to Motion to Dismiss and is part of this trial court clerks record. Jason Berent asked Josh Campbell what his position was and he stated Branch Manager. He said his responsibilities were to originated loans, build a team, make sure they were in compliance, train, educate staff, hire crew, do payroll, met with clients, did marketing, fixed problem, created a culture, made phone calls, responded to clients, took application, assessed credit reports, determined whether or not people were ready to fully apply for a loan, he dissolved or solved conflicts and he commonly and frequently worked late. He also said he would sometimes sleep at the office and take work home after midnight. I also said that he would sometimes work until 1, 2, 3, 4 o'clock in the morning to get work done because he would lose track of time. He also*

*said he was given a lap top by Affiliated Bank and was able to use that computer at home.*
*(Appendix 23A)*

Also in the deposition there was some discussion about emails that Campbell wanted to submit in this case but the bank would not allow or let him have indicated that they originated from a bank issued computer.

Here are a few statements also discussed in the deposition transcript of Josh Campbell provided to Judge Montgomery: page 98 Campbell said, **"I was very clear with the bank as to what happened."**

He also said after being asked if a document of importance was produced on page 104, his response was, **"No, it was not. This was – this was the email that we could not find. I know that we read the email together at the bank, but once we were gone, we had no more access and we've – we were advised not to get email. We wanted the email. This is the foundation of what started this.** So, the bank was withholding evidence requested and the bank clearly knew what happened, but they did not immediately fire Campbell until Parks notified the bank of the information that came in from the Ripoff Report investigation revealing the IP address of the Campbells confirming that Campbell defamed Parks while working for the bank.

Parks notified Affiliated Bank of the defamatory posting on **Sept 11, 2014** by providing evidence of emails and text messages from Campbell to Parks and Campbell to the buyer which would show that the Campbells made the negative posting because of the similar wording, timing and threat Campbell to Parks stating he was going to make an audience of her. Even though Affiliated Bank is stating the Campbells lied to them, from the deposition noted above, Affiliated Bank clearly new what happened. When Parks reported the posting to Kerri White

who was the compliance officer for Affiliated Bank, Parks asked Ms. White if she thought that the Campbells made the negative posting, she said, "I think they did, but you will never be able to find out because the posting is anonymous." Affiliated Bank did not terminate the Campbells immediately contrary to Mr. Browning's assertions, Affiliated Bank did not terminate the Campbells until **July 24, 2015,** almost 1 year after the defamation posting when Parks could prove the IP address. Had Campbell not been working for Affiliated Bank, under its authority, Parks would not have met them or transacted business with the Campbells.

It is also clear, from the deposition present to Judge Montgomery that Affiliated Bank accepts responsibility for the Campbells by providing them with free legal defense because he did not know who was paying them. This was told on record before J. Montgomery during the hearing.

John Browning was in fact the one who told Judge Montgomery that she had to dismiss all parties in the lawsuit including Affiliated Bank. John Browning was able to orchestrate this dismissal because of his improper influence on Judge Montgomery and she went along with him because of their relationship. The court did not follow the law, made up law as they went along to get all parties dismissed and blindly agreed with everything Browning presented. There were no grounds to dismiss any party in the Parks lawsuit with her evidence she provided to the Judge and this court erred in not overruling the lower court's decision. Parks lawsuit was not frivolous because it was supported by evidence on all defendants.

Another important fact to take notice in this motion, is that before Parks filed this lawsuit on September 2, 2015 she tried to mediate with the defendants (Affiliated Bank and Affiliated Bank representative was also the only contact for Josh Campbell at this time) so she personally paid $1,425.00 for a full session of mediation at Gilbert Mediation Group with James J. Juneau

on June 30, 2015. Parks found out through her own efforts in gathering evidence for this appeal that the mediator Mr. James Juneau works at the same Gilbert Mediation Group as Gregory J. McCarthy who is the long time private counsel and long time friend of Affiliated Bank and President Garry Graham. Mr. Juneau has been working with Gilbert Mediation Group since July 2008 and Mr. McCarthy has worked with the same firm since 2009. Gilbert Mediation is a small mediation group in Dallas who at the time only had approximately 10 mediators. Parks ended the meditation after 8 hours because she felt that the mediator was not being fair, impartial, he knew a lot more about Affiliated Bank than a mediator would know about a party, he was showing signs of advocacy for Affiliated Bank and he also started making offers without authority (meaning - he did not go back to Affiliated Bank to notify them she was leaving to make another offer) from Affiliated Bank once Parks told him she was done with the mediation, but Parks had no idea until a year or more later that the mediator was at a conflict of interest because of his close ties with Affiliated Bank's in house counsel Greg McCarthy. Parks had a gut feeling that something was not right and after finding out about this connection between the mediator and Greg McCarthy, her feelings were right. It will also be laid out in this motion all the colluding, manipulation and conflict of interest which occurred in Parks attempts to find justice.

All of the events that have happened in this case and you will see laid out in the motion are a true example of obstruction of justice and the loss of the integrity of the judicial system!

"The parties have a right to a fair trial under both the United States Constitution and the Texas Constitution. See *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (holding that '[a] fair trial in a fair tribunal is a basic requirement of due process'); *Babcock v. Northwest Memorial Hosp.*, 767 S.W.2d 705, 708 (Tex.1989) (holding that, '[i]n Texas, the right to a fair and impartial trial is guaranteed by the Constitution')." *Metzger v. Sebek*, 892 S.W.2d 20, 37 (Tex. App.-Houston [1st Dist.] 1994, writ denied).

An employer can be held liable for the acts of an employee acting within his managerial capacity. *Purvis v. Prattco, Inc.*, 595 S.W.2d 103 (Tex.1980).

Even when an employee acts maliciously against a third party, an employer can be held

liable for the negligent hiring of an employee who acts maliciously. *Durand v. Moore*, 879 S.W.2d 196 (Tex.Civ.App.–Houston [14th Dist.] 1994, no writ).

"An employer may be liable for punitive damages for an employee's misconduct if: (1) the employer authorized the doing and manner of the act; OR (2) **the employee was unfit and the employer was reckless in employing him**; OR (3) **the employee was engaged in managerial capacity and was acting in the scope of his employment**; OR (4) the employer or manager of the employer ratified or approved the act. King v. McGuff, 149 Tex. 432, 234 S.W.2d 403, 405 (1950)." *Durand v. Moore*, 879 S.W.2d 196, 202 (Tex.Civ.App.–Houston[14th Dist.] 1994, no writ.

## Argument

Appellant respectfully submits that Court has erred in dismissing this appeal and stating Parks and Parks on the behalf of PRF entered into an enforceable rule of civil procedure 11 agreement and was not put into "extreme duress" and coerced by all the Defendants, Defendants' lawyers John G. Browning and Jerry Alexander, Gregory J. McCarthy working the behalf of Affiliated Bank – Defendants' Lawyer Christopher Hansen, Gino J. Rossini working on the behalf of Josh Campbell and Katherine Campbell and the trial court Hon. Sally Montgomery to dismiss their claims against *all* Defendants, by claiming Appellants' Motion for New Trial would be dismissed by misapplication of a Rule of Civil Procedure. This Court also erred in abating the appeal, especially to a Court already partial against Appellants.

This *Opinion* relies upon the *"Findings of Facts and Conclusions of Law"* written by John Browning for Judge Akin prior to the hearing held on **Feb. 16, 2018** which should be reversed because the trial court's findings and conclusions of law are clearly and unequivocally at odds with the facts and evidence presented at the evidentiary hearing on **Feb. 16, 2018**. Specifically, the Court erred by:

**(1) Stating they felt by abating the appeal this court would allow Parks to have her due process by conducting a hearing to see if Parks entered into an enforceable agreement pursuant to rule of civil procedure 11 and they erred by stating they do not need to address Parks concerns about abating the appeal back to the trial court because:**

(a) This court had enough information in the Appellants' briefs, oral argument on **Dec. 12, 2017** and Appellants' letters filed in this court to rule on the appeal without abatement to a biased lower court. This abatement was fundamentally flawed and unconstitutional in sending Appellants back to the same court that twice misapplied law in order to manipulate Appellant's case and had a conflict of interest with defense counsel;

(b) It *failed* to properly protect the Appellants' constitutional rights by *not* ordering the trial judge to recuse herself and send Appellants to an alternate county so that there would be an unbiased or impartial Judge who did not have improper influence in the "*Findings of Fact and Conclusions of Law*" (i.e., Appellant's rights to procedural due process under the 14th Amendment to the United States Constitution and/or the equivalent due process of law provision in Art. 1, Sec 19 of the Texas Constitution).

(c) They put Parks in an unsafe and physically threatening environment where they knew from Parks' own letters and briefs to this court that she would feel unsafe and threatened by the Officers of the Trial Court who could potentially do more harm. Parks was in fat physically threatened and intimidated during the proceeding: Parks was the only African American woman in a room full of 4 Caucasian defense lawyers (John G. Browning, Jerry Alexander, Gregory McCarthy and Ryan Cole) – 1 Caucasian Judge (Judge Ted Akin) who was coached/hired by Hon. Sally Montgomery at the last minute, 1 Appellant Lawyer (Baltasar Cruz) and during the entire hearing the trial court had **5-6 Caucasian Bailiffs** in the small court room at all times with 2 Bailiffs sitting on the directly next to Parks on her right in the jury box seats, 1Caucasian Bailiff sitting directly behind Parks inside the bar in the extra chairs for additional counsel, 1 African American male Bailiff who was standing next to the Judge's bench and two others Caucasian Bailiffs standing at each entrance door to the court room or sitting in the pews as you

come into the court room plus there was also another Caucasian male (who said he was an intern) sitting next to Judge Montgomery's Bailiff (the one who had previously physically threatened to take Parks to jail in the Motion for New Trial Hearing (RR Vol 4, 25:5, full transcript Appendix 2). Parks also witnessed Attorney John Browning speak to the court intern several times who was directly sitting to the right of Appellant Parks. This hearing was facilitated by this Court of Appeals Fifth District of Texas at Dallas to allow the trial court Judge, Defendants and Defendants' Lawyers the ability to abuse, intimidate, harass and antagonized Parks to give up her case through financial intimidation, litigation fatigue and to accelerate Appellant's legal fees all knowing that the intended result of this appeal was *not* going to change because it was premeditated which subvert Appellant's right to relief through physical intimidation.

**(2) Stating this Court had resolved the issues on appellants assert on how Judge Akin abused his discretion by entering "*Findings of Fact and Conclusions of Law*" because they say an evidentiary hearing was held between the parties and conflicting evidence was presented at the hearing, but yet they ignored the clear and weight of evidence and on which this Court could have ruled without abatement based upon the lower court's March 24, 2016 and June 13, 2016 hearing transcript made a part of the appellate record along with Appellant Parks' letters to this court, briefs and oral argument;**

(a) The "*Findings of Fact Conclusions of Law*" (Appendix 9) was written prior to the hearing by Attorney John Browning and given to Judge Akin at the end of the hearing on **Feb. 16, 2018**, and was adopted verbation despite of the weight of clear evidence to the contrary.

(b) The *only* additional items of evidence added to the "*Findings of Facts and Conclusion of Law*" (Appendix 10) from the hearing was #18 - Parks is a graduate of the University of North

Texas with a B.B.A degree (which is actually a Bachelors in Fine Arts in Fashion Design with a minor in Marketing), #19 - Parks is a licensed Realtor and owns and operates her own company, and #20 - Parks is at least 42 years old and is a "sophisticated businesswoman", which is an additional attempt to humiliate, intimidate and harass Appellant Parks.

(c) Because of these 3 inserts of accurate evidence presented in the hearing to generate the *"Findings of Facts and Conclusions of Law,"* this Court erred in concluding that , Parks was not coerced or put into "extreme duress". Someone's age, education and success in a specialized business practice does not negate J. Montgomery's clear misuse of law and intimidation that is clear on the record to cause Parks to unwittingly accept a deceptive choice. Parks is *not* a lawyer and had never practiced law or acted in a pro se manor for herself or anyone else prior to the hearing on the Motion for New Trail on **June 13, 2016** so when her lawyer, Judge Montgomery and the Defendants Lawyers misrepresented a civil procedure rule to confuse Parks into thinking her *case was over* by operation of law and with Hon. Sally Montgomery haranguing Parks' multiple times (for half an hour or longer) that her *case was over* and with the Bailiff threatening jail, Parks could only know from what she was being told that she *had no other means of protection and in her eyes there was nothing else she could do about the judgment against her and her company.* From what Parks was being falsely told, *she had no choices except a money judgment against her or no money judgment against her*, which can be read in the following exchange:

**The Court: Okay. I have many – if you wanted to file a motion to recuse, that would have been fine, too. But the time is *over* because *the case is over*. (RR, Vol 4; 15: 15-17) (Appendix 2)**

Judge Sally Montgomery and the defendants' lawyers also said *only* Parks a non-lawyer could *only* choose knowing Parks did not know the law, while Parks' Lawyer Jason Berent stood

mute, likely worrying about a malpractice claim had Parks not agreed to the agreement, for losing Parks' case with late filings (Appendix 2 pg 13 lines 14-16), one of which was noted in this appeal with Josh Campbell, possible sanction from J. Montgomery toward him which was discussed in the breaks, the abusive professional assassinations written in John Browning's *Defendant Affiliated Bank's Response in Opposition to Plaintiffs' Motion for New Trial and Alternative Motion Vacate, Modify, Correct or Reform Judgment* (Appendix 3 exhibit F – also a part of clerks record) which started and caused additional tension before the hearing between Berent and Parks and many other issues, is why Parks believes that during the Motion for New Trial, Mr. Berent moved into the "***conspiracy to defraud***" the plaintiff with the trial court Judge and all defense Lawyers. Also, in that hearing the record states:

> **Ms. Parks: So, basically, I lost my case because of date? And so, my name, I don't get a fair trial. The bank is representing Josh.**
>
> **The Court: It is what it is. And so, you want to get rid of this judgment against you and just have the case dismissed with prejudice or do you want a judgment against you? Those really are your two choices.**
>
> **Ms. Parks: And neither one – I've walked away to two years. I've just let my whole life go.**
>
> **The Court: I'm out of time. It's 3:20. You've got to make your choice.**
> **Ms. Parks: I just feel set up**
> **The Court: I can't help it**
> **Ms Parks: I just feel set up**
> **The Court: I know you're not happy about this, and I understand. But as the judge, I have to follow the law. So, you have to choose –**
> **Ms. Parks: But are you supposed to let us go if you know the other side?**
> **The Court: What?**
> **Ms. Parks: Didn't John Browning represent you during your campaign?**
> **The Court: No.**
> **Ms, Parks: Are you sure? It was legal services. Legal service that –**
> **The Court: It ended up I didn't use him.**
> **Ms. Parks: Oh, but you still paid him $3,000?**
> **The Court: No**
> **Mr. Browning: No**
> **Ms. Parks: It's expenditure.**

**The Court: I did not.**
**Ms. Parks: It's expenditure. Did you do an amendment?**
**Mr. Browning: Judge, I don't think this is relevant to anything**
**Ms. Parks: I just feel set up.**

(RR, Vol 4; 14: 2- 15: 5) Parks was also confused on why Hon. Sally Montgomery and Mr. Browning would not be honest or not admit to their past lawyer-client relationship noted on Montgomery's campaign finance report pages (in Appendix 3) that Parks was holding up during this exchange listed above. Now knowing through the actual testimony given by John Browning's own admission when refusing to answer questions on the hearing of the Motion for Recusal based on Attorney-Client privilege that they did in fact have a history of lawyer-client relationship, but choose to deny it in the Motion for New Trial when asked by Parks.

With all that said, from the actual evidence presented during the evidentiary hearing, no matter what your age is, your education or your success in business one can still be fraudulently baited into an agreement that should be ***unenforceable and voided due to fraud, deception, Parks' timely appeal and the court's coercion placed upon her..***

Mr. Browning later stated on the record under oath (transcript excerpts - Appendix 13 pgs. 12-29) in the Recusal hearing held on **Jan. 30, 2018** for the *Motion to Recuse J. Montgomery* held with Judge Emily Miskel from 470th District Court (Family Law Judge) in Collin County (Judge Miskel was selected and *Ordered* by First Administrated Judge Mary Murphy), that he couldn't answer questions about this representation of Judge Montgomery based upon Attorney-Client privilege.

The Recusal motion was denied even though in the hearing Judge Miskel; 1) saw certified campaign finance report evidence showing Judge Montgomery had a conflict of interest with the Defendant's Lawyer (because John Browning and his previous firm consulted J.

Montgomery and paid John Browning personally $3,000 in **Nov. 2013** (Appendix 19) to his home address and to his firm $240 in **Feb 2014** and $300 in **May 2015** (which could have been invoiced from 2014 before Mr. Browning departure in late 2014 – Browning joined Passman and Jones in January 2015) also knowing Parks lawsuit was filed in **Sept 2, 2015** and assigned to Montgomery which was 3 to 4 short months after that payment, 2) saw evidence that Passman and Jones, P.C., is the same firm of Judge Montgomery's former campaign chairman and is the current law firm of John Browning and Jerry Alexander, 3) she also heard testimony proving J. Montgomery and John Browning knowing *lied* about the relationship on the record in open court, 4) she also heard evidence that would show Judge Montgomery and the Defendants' lawyers knowingly misrepresented the rules of civil procedure to coerce and defraud the Plaintiff /Appellant (Judge Miskel travels and conducts a law course with John Browning (Appendix 16) so Judge Miskel had to have known Browning knew J. Montgomery, still had plenary power and the misrepresentation of the rules of civil procedure was *only* an attempt to intimidate, coerce, defraud the plaintiff and had improperly applied TCPA), 5) saw evidence to support Parks' then Lawyer, Baltasar Cruz's assertion that J. Montgomery would continue to retaliate against Appellant because of the known conflicts in their past history, 6) heard testimony from Mr. Cruz under oath stating that J. Montgomery was heard making racial comments by using the word "*nigger*" to reference African American churches who were a party in her court room (Appendix 13 pg. 20), 7) by reading the transcript and seeing how Judge Montgomery had a total disregard of the law when it came to the TCPA statute to dismiss Parks' lawsuit and not knowing she still had plenary power when she did, and had to have known she did, would show that Montgomery had a prejudice or bias towards Parks for pointing out the conflict of interest and opposing her friend and previous Lawyer John Browning (Judge Montgomery has been a Judge since the late

90's so over 20 years), 8) J. Miskel also heard testimony from Judge Montgomery's former court reporter Cayce Coskey stating Montgomery has retaliated against individuals who challenge her. Parks filing this appeal has challenged Judge Montgomery and Parks then lawyer, Baltasar Cruz, was a Political Opponent of Judge Montgomery's in the late 2000's, 9) J. Miskel was also presented and accepted evidence on a case law opinion from this court, No. 05-00-00769-cv (Appendix 20) stating "Judge Sally Montgomery clearly abused her discretion by signing two orders granting a new trial while a motion to recuse was pending and this court voided those orders because she committed a clear abuse of discretion." This court also states in that opinion, "this is the second time in as many weeks that it was forced to address a trial judge's actions that appears to be the result of animosity stemming from a lost election. We do not condone such conduct and expect it to stop." and 10) read on the transcript of the Motion of New Trial where Judge Montgomery states on the record that Parks could "file a motion to recuse, that would have been fine, too. But the time is over because the case is over." (Appendix 2) based on the judge's misuse of a rule of civil procedure (commonly used) to force Appellant to abandon her case;

(d) As the Supreme Court of Texas has noted "[b]ias, in its usual meaning, is an inclination towards one side of the issue rather than the other" while "[p]rejudice means prejudgment." *Compton v. Henrie, 364 S.W.2d 179, 182 (tex. 1963).* Judge Montgomery's on-record advocacy for the Defendants intentional misapplication of the laws and treatment toward Parks in all hearings before her show that with out a doubt the judge had clear biases and/or prejudices towards Parks;

(e) Public policy demands that a judge appear impartial so that no doubts or suspicions exist as to the fairness of the integrity of the court. *Aetna Life Insur. Co. v. Lavoie, 475 U.S. 813,*

*106 S.Ct. 1580 (1986)*. To promote confidence in the justice system, not only must the judiciary be fair and impartial, the judiciary must appear to be fair and impartial. *See In Re Murchison, 349 U.S.133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)* ("justice must satisfy the appearance of justice"); *Newcome v. Light, 58 Tex.141, 145 (1882)* ("It is the design of the law to maintain the purity and impartiality of the courts and to insure for their decisions the respect and confidence of the community."); *Manges v. Garcia, 616 S.W.2d 380, 382 (Tex. App.-San Antonio 1981, orig. proceedings)* ("One of the hallmarks of our system of justice is the constant attempt to prevent even the probability of unfairness.").

In addition to the grounds set forth above, Judge Montgomery should have been recused in order to avoid the appearance of impropriety, and in the interest of prudence, fairness and to maintain and promote the community's confidence and respect in the judicial system. *Sun Exploration and Prod. Co. v. Jackson, 783 S.W.2d 202 (Tex. 1989) (Spears, J., concurring)* ("The judiciary must be extremely diligent in avoiding any appearance of impropriety and must hold itself to exacting standards lest it lose its legitimacy and suffer a loss of public confidence.")

(f) The abatement *Order* by this court to hold the evidentiary hearing had this purpose and effect to accelerate Parks' legal fees because and cause litigation fatigue the evidence on record in the lower court transcript could have been, but *was **not*** used in generating the "*Findings of Facts and Conclusions of Law*" or otherwise determine the veracity of Appellant's claims. It was a waste of time, money, an impediment to justice and an **Obstruction of Justice** because of judicial misconduct the out come was determined before Appellant appeared in court, to further wear and burden her.

**(3) Stating that Affiliated Bank and Campbells complied with the agreement, and appellants breached the agreement;**

(a) on **November 22, 2017**, John Browning, **on the behalf of Joshua Campbell** and while the appeal was the subject of this court's abatement sent Parks lawyer, Mr. Cruz, post-judgment discovery request unbeknownst to Parks' Plaintiff's counsel due to technical glitches. After Mr. Cruz filed *Appellants' Motion to Recuse Judge Montgomery* on **Jan. 8, 2018**, Mr. Browning sent Mr. Cruz an email on **Jan. 9, 2018** threatening to file a motion to compel and for sanction if Parks does not respond by **Jan. 17, 2018** to the post-judgment discovery request. This was Appellees' retaliation to the filing of the *Motion to Recuse*. Browning uses the law to further harass and intimidate Appellant. Mr. Browning did not say anything about Mr. Cruz not responding to this request at the Oral Argument in this court on **Dec. 12, 2017** or any other time after the date the discoveries were actually due. In oral argument on **Dec. 12, 2017**, Mr. Browning actually said that, "my clients can still direct me as counsel to go after that, I can represent to you in the court as of the current date that has not happened." In oral argument, Mr. Browning also stated he did not have the authority to decide whether the Campbells were going to go after (pursue) Parks for the judgment of legal fees which is not be true - taking notice of the threatening email he sent to Mr. Cruz written by Mr. Browning. After receiving the post-judgment discovery, Parks went to speak to the Campbells at their office to ask the Campbells if they were attempting to collect on the judgment and Katherine Campbell did not know what Parks was talking about because they had not spoken with Mr. Browning so she nor her husband had authorized Browning to do so. Mr. Browning is clearly not being honest to this court. So while Browning is arguing that Appellant is bound by an agreement, he attempts to collect on a judgment in contravention of the agreement without client knowledge, and lies about it to the Court evidencing his use of process for improper purposes. Mr. Browning is clearly trying to intimidate and retaliate against Appellant Parks who is an African American woman who owns a

small boutique company while she attempt to get justice from the ones who destroyed her name and business. This same Court, in which Appellant attempts to get justice happens also to be in the same court in which Mr. Browning is seeking to be a Court of Appeals Justice - place 11 - in the Nov. 2018 elections.

**(4) Stating that Judge Akin held an evidentiary hearing to determine whether there was an agreement between the parties and whether any agreement was enforceable, and which conflicting evidence was presented at the hearing.**

(a) As stated above this hearing was held and evidence was presented that this agreement should be unenforceable due to the coercion and duress use to create it, the defective docket and by prompt appeal and any findings by this Judge should be reversed and voided because of the unlawful misconduct and collusion of the court and defense counsel.

b) An agreement should not be enforceable if it's a product of misrepresentation, coercion or duresss and conflicts of interest with supported convincing and overwhelming weight of evidence would this agreement should not be enforceable.

**(5) Stating that they reviewed de novo and that "[t]here was no coercion," and "[t]here was no coercion or duress" based upon Judge Akin's *"Findings of Facts Conclusions of Law"* paragraph 25 and 28.**

(a) Paragraph 25 states There was no coercion. (Written by John Browning for Judge Ted Akin) "Coercion exists when a party, by the unlawful conduct of another is induced to enter into a contract by depriving him of the exercise of his free will." Man Industries (India) Ltd. V. Midcontinent Express Pipeline, LLC, 407 S.W.3d 342 (Tex. App.- Houston [14th Dist.] 2013 no writ. When the lower court and Appellant's lawyer agreed with defense counsel in the

misrepresentation of the law, and used it to manipulate Appellant into believing here was over and she would be sanctioned with attorney's fees, it created prima facie coercion on the record.

(b) Actually the conduct was unlawful by the trial Judge and all defense lawyers working on behalf of their clients by fraudulently misrepresenting the law to induce Parks' consent and which deprived Parks the exercise of her free will by wrongfully influencing, making threats, lies, restraint and false urgency into believing that her case was over because of this she only had one logical choice: to dismiss her claims against all defendants for the removal of the $96,000 awarded legal fees or rick having a judgment that could be executed against her in addition to the tremendous personal and business losses already suffered .

With all the false information, threats of sanction and threating to take Parks to jail, placing time pressures upon Parks (Appendix 2 pg 14 line 4-5 and pg 15 lines 1-7), her attorney standing by silently while she was coached by Judge Montgomery directly on how to accept the deal after Parks states on the record, she is *"forced"* to accept the deal, and ***while Judge Montgomery stood at the defense table with defense counsel***, clear and convincing evidence exist that the agreement was the product of duress and coercion and is unenforceable.

Parks was in a oppressive and hostile environment where none of the officers of the court gave correct counsel or had her best interests in mind for receiving a fair outcome for Parks loses. When the Officers of the trial court conspired to misrepresent the law TRCP 329b(e) in ex parte discussions to then wrongfully convince Parks that her case was over because they knew this would be he only way to get Parks to enter into an agreement because they failed at 2 out of 3 forced recesses in which they had not been able to break her. Only by misrepresenting the rules and minutes/hours of threats and intimidation did they get Parks to agree to dismiss her claims.

(c) The 1ˢᵗ break/recess consisted of only female Tonya Parks, her lawyer Jason Berent, her father Bennie Gibson, Defendants' lawyers John Browning, Jerry Alexander, Greg McCarthy, Christopher Hansen, Gino Rossini. This break lasted approximately 34 minutes with Defendants' lawyers working on the behalf of their clients Affiliated Bank, Joshua and Katherine Campbell - full of threats of sanctions , attorneys' fees, judgments, jail, etc, (illegal threats without merit) with no consideration to the loses Parks and her company had already suffered because of the defamatory online posting while working for Affiliated Bank. Parks walked out of the conference still not agreeing to dismiss the claims because she wanted a fair and impartial trial. Parks learned after the judgment entered on March 24, 2016 and before the hearing on the Motion for New Trail on June 13, 2018 through her own investigation that Judge Montgomery and John Browning had a prior relationship that would show by her ruling and actions toward Parks at the hearing for the Motion to Dismiss that Judge Montgomery was not impartial.

(d) The 2ⁿᵈ break/recess consisted of the same people for approximately 23 mins, but this time the defendants' lawyers left the last few minutes leaving Jason Berent, Bennie Gibson and Parks to speak privately. In this break, the defense lawyers went back into the court room with Judge Montgomery with the door closed (allowing for ex parte discussion) and toward the end Judge Montgomery opened the door after being with the defense lawyer *alone* to tell Parks, Mr. Berent and Mr. Gibson that they needed to make a decision because she had grounds for sanctioning Parks for bringing a frivolous lawsuit. The Defendants' Lawyers were able to hear this exchange because the door was open. Parks filed *Bennie Gibson Affidavit* on **Aug. 24, 2016** in this court to support these facts (Appendix 6) and additional items noted in *Appellants' Response to Appellees' Objection to Bennie Gibson Affidavit* filed in this court on **Aug. 30, 2016** (Appendix 7). In the response to the objection filed **August 30, 2016**, it says "Mr. Gibson was

also in the hallway when Jerry Alexander, John Browning, Chris Hansen, Gino Rossini and Greg McCarthy left the courtroom before Tonya Parks and Jason Berent. While in the hallway, Bennie Gibson witnessed Judge Sally Montgomery's Bailiff call out John Browning's name to escort him into Judge Sally Montgomery's chambers following the hearing on **June 13, 2016**. The other lawyers who were with John Browning at the time went also into chambers for a private meeting. Tonya Parks' lawyer at the time Jason Berent was not in attendance at this meeting as far as Tonya Parks knows." This would - along with - other assertions in this motion - show *ex parte communication* between defendants' lawyers and Judge Montgomery and her advocacy for the Defendants because in the Motion to Dismiss hearing Judge Montgomery states that the Defendants were the individuals who caused the problems for Parks and that she hated the Defendants Campbells' lied, but she still wrongfully influenced by the defense counsel to dismiss all parties from Parks lawsuit by ignoring, misapplying and/or not interpreting the TCPA statute as to all parties according to the actual law, including the Affiliated Bank without a motion, and then awarded Defendants inflated and fabricated legal fees even with Montgomery stating on the record in the hearing for the Motion for New Trial that:

**"No, they didn't have their own motion pending at the time of the hearing. And the issue of attorney fees was not fully discussed, I would agree." (RR vol 4; 4: 17-19)**

(e) After the 2nd break/recess - Parks went back into court to obtain her day in court in *her hopes and prayers* of getting a new trial with a Judge who had already threatened Parks. Once the hearing started again this exchange occurred:

**Court: Okay. So do we have any agreement?**
**Mr. Berent:** *No agreements, Your Honor.*
**The Court: Okay I'm going to grant the new trial as to Affiliated Bank.**

**Mr. Hansen:** Your Honor, there's one thing we were just talking. And it appears that this hearing is after the 75th day, and the motion for new trial has already been overruled by operation of law, it looks.

**The Court:** Has it?

**Mr. Browning:** Yes, Your Honor.

**Mr. Berent:** I believe that's accurate, Your Honor.

**Mr. Hansen:** The 75th day was June 7 following the entry of the judgment in this case on March 24. Therefore, as of June 8 it's overruled by operation of law under the Rule 329b, subpart E.

**The Court:** I know the rules. I just don't know the dates.

**Mr. Hansen:** I'm sorry.

(f) Before this exchange Parks still wanted to move forward to get her Motion for New Trial granted so that she could recuse J. Montgomery to get an impartial Judge who did not have any long history or strong affiliation with the Defendants' lawyers like Montgomery has with John Browning and Passman & Jones LLP. Judge Montgomery should have been recused, but Parks did not know until after the judgment was written and filed. J. Montgomery should have voluntarily recused herself from conducting any proceeding in Parks case for any one or more of the following reasons, 1) she has "an interest in the subject matter in controversy" as contemplated under Rule 18b.(a)(2) TRCP; 2) her *impartiality might reasonable be questioned*, as contemplated under Rule 18. (b)(1) TRCP; 3) she *has a personal bias or prejudice concerning the subject matter or a party,*" as contemplated under Rule 18b.(b)(2) TRCP; 4) she "has personal knowledge of disputed evidentiary facts concerning the proceeding", as contemplated under Rule 18b.(b)(3) TRCP; and/or E) she "is a material witness concerning the proceeding", as contemplated under Rule 18b.(b)(4) TRCP.

(g) After the 3rd break/recess which was approximately 10 minutes, with he first few minutes in the court room with everyone present while Mr. Berent studied the TRCP 329b(e) in a law books, after which Parks and her lawyer went into a private room leaving J. Montgomery and the Defendants' lawyers in the Court (again with an opportunity for ex parte discussion). When returned to the court room, this exchange occurred:

The Court: Where are we?

Mr. Berent: Do we have an agreement?

Ms. Parks: I didn't really get to talk to you.

The Court: Come on up. I can't hear you back there.

Ms. Parks: I was just answering that I really didn't get a chance to talk to him to see what --- to see, you know, what my parameters were, if that's something that I had to sign off on.

The Court: All you have to do is say you accept their modifying the judgment where there's no judgment against you:

Ms. Parks: And then after that...

The Court: That's it, though.

Ms. Parks: Then there's no additional trial.

The Court: No, because you've run out of time.

The Witness: And why did I run out of time?

The Court: Because you're over 75 day on the hearing for the motion for new trial.

Ms. Parks: And who sets the hearing. Did the Court set the hearing?

The Court: I have nothing to do with that, except for my clerks.

Ms. Parks: No, so why was it set after the 75 days?

Mr. Berent: Ms. Parks is concerned that I did not set the hearing timely, and I'm trying to explain that the clerk sets the hearing.

The Court: I didn't know about this issue. If I had known about this issue, we could have set it sooner, but I didn't know about it.

Ms. Parks: So, basically, I lost my case because date? And so my name, I don't get a fair trial. The bank is representing Josh.

The Court: It is what it is. And so you want to get rid of this judgment against you and have the case dismissed with prejudice or do you want a judgment against you? Those really are your two choices.

Ms. Parks: And neither one – I've walked away to two years. I've just let my whole life go.

The Court: I'm out of time. It's 3:20. You've got to make your choice

Ms. Parks: I just feel set up.

(g) The Texas Rule of Civil Procedures 329b subpart E clearly states:

**If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.**

This means that J. Montgomery still had 30 days after the 75th day, giving Parks a total of 105 days, for J. Montgomery to *grant* a New Trial because Parks *Motion for New Trial* was *timely filed*. All representations' that Appellants' case was over were fraudulent and/or erroneous. So clearly knowing that all the defense lawyers were looking up the rule in the law books, surprised by the defense's assertion, plaintiff's lawyer had to time to look up the rule that had been discussed ex parte, in plaintiffs' absence. Mr. Hansen said they were even talking about it while they were in the room with Judge Montgomery and Parks was in the meeting with Mr. Berent and her father before J. Montgomery walked in the room and threatened Parks with sanctions.

It is unlikely, with professed knowledge of the law, long history of practicing law, through education, awards, accomplishment, etc (Appendix 17), that the judge's conduct was unintentional, rather it was a connivance and scheme to defeat Parks' claims, manipulate Parks, for the benefit of Defendants and their attorneys. One could only see that this was an attempt by all the officers of the court to *Deceive* Parks a non-lawyer by fraudulently misrepresenting the law of TRCP 329b subpart E to get Parks to act in a way of *not using her free will* because she did not know that the law clearly states that she had a total of *105 days* not the 75 days they were telling Parks. There is no way that the lawyers and judge in that room could have made a mistake like this other than to *defraud the plaintiff* into doing something she would have not done if she knew she still had more days like Parks represented after the first two breaks full of

threats. ***Parks consistently requested a new fair trail*** (which should have been given according to the American Constitution) until the judge persisted with phony defense-biased options. Parks did not understand why her case was over which can be seen in the exchange above because Parks could not have known the law and ***Parks was being deceived to by all present in the court while her advocate was paralyzed by the idea of a potential malpractice claim.*** . It was a complete ***<u>Conspiracy and Collusion with the Actors of the Court</u>*** and the only person in the room who was not privileged to this conspiracy was the plaintiff Tonya Parks. ***Parks was coerced into a dismissal of her case because Judge Montgomery at Dallas County Court of Law #3, John G. Browning on the behalf of Affiliated Bank, Jerry Alexander on the behalf of Affiliated Bank, Greg McCarthy on the behalf of Affiliated Bank, Christopher Hansen on the behalf of Josh and Katherine Campbell, Gino Rossini on the behalf of Josh and Katherine Campbell and Jason M. Berent all conspired through their collective acts to "coerce" and put Parks in "extreme duress" by their unlawful conduct to induce Tonya Parks and Tonya Parks on the behalf of Parks Realty to enter into a contract which deprived her of the exercise of free will and judgment.*** As Parks had shown when she *did not agree to the same agreement* that was discussed multiple times in the first two breaks/recesses - then Judge Montgomery acting as Judge said she was going to grant Parks a new trial - then Mr. Hansen after a discussion in the courtroom outside of Plaintiffs' presence, lied about TRCP 329b(e), a final desperate means to manipulate Parks so this was when the unlawful conduct of coercion starts. The ***consent is void since it was not knowing, intelligently given and was immediately revoked***, Under Texas law, the term "duress" rather then "coercion" is used when parties are seeking to avoid a contract. One element of duress is improper or unlawful conduct and/or threat of improper or unlawful conduct that is intended to and does interfere with another's person exercise of free will and

judgment. The threat must be imminent and the party must have no present means of protection. Further "duress" must be shown from the acts or conduct of the party accused of duress as is clear from the record in the case. With that said, the conduct was from the party accused of the duress and it was very unlawful because it was a conspiracy to deceive/deprive Parks. Parks *did not have proper protection* because her own lawyer was ineffective and assented to the assertions being made against Parks. In addition, when Parks asked the court for permission to go into the hallway to obtain advise from or consult with her father who was in the hall, J. Montgomery denied Parks of that free agency to speak with someone who she knew had her best interest since *Parks had already stated on the record she felt that she did not have proper representation*.

Judge Montgomery has shown through her own violation of the law and she has violated her judicial oath (Appendix 21) that through conduct that *breached her duty* (which occurs when one person has a duty of care toward another person but fails to live up to that standard, which in this was the duty of fairness, truth and impartiality). A person may be liable for injury case if their breach of duty caused another person's injury. Her conduct is a, *breach of trust* (any act which is in violation of her duties) and she has *obstructed justice* (the crime or act of willfully interfering with the process of justice and law especially by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial, such as J. Akin, or legal officer or by furnishing false information in or otherwise impeding an investigation or legal process). Judge Montgomery has shown through her own actions that she was *not* preserving, protecting and defending the Constitution and laws of the United States and Texas per her judicial oath. With J. Montgomery going along with all the lawyers who she aided to intentionally furnish false information by misrepresenting and/or ignoring (to be ignorant of, or

unacquainted with, the disregard willfully; to refuse to recognize; to decline to take notice of) the law to induce Parks into an agreement to dismissal of case for the defendants in contravention of what was true and accurate. Parks *would not have done (dismissed her case)* if she knew what under TRCP 329b subpart E really meant.

Per Judge Akin's and John Browning's findings, because someone is 40 plus years of age, a college graduate, runs her own business and is a sophisticated businesswoman does not mean they can't be forced to enter into a fraudulent agreement that should be *voided*. It also should not matter if the party had a lawyer where that lawyer was clearly not protecting the interest of his client (*which they acted on*), rendered ineffective after which the Judge spoke only and directly to Parks, not her attorney. *Judge Montgomery even said, "I know the rules"* - so she should have known what they were saying was *false* which can also be presumed to have misapplied the law intentionally. J. Montgomery has a duty to protect and defend the laws of our State so she should have said, "no, that's not the correct interpretation of TRCP 329b subpart E", but she did not and went along with the lawyers after several ex parte consultations to *collude, coerce and/or conspire against Parks* while threatening artificial time constraints, sanctions, and jail. J. Montgomery showed that she had a conflict of interest and was not impartial by the defense and aiding them in manipulating Parks to their advantage. She and all the lawyers had a duty and went *against* the *Texas Rules of Civil Procedures by not maintaining the integrity of the profession* because of their *unlawful conduct.* Judge Montgomery acting as Judge also violated the *Texas Code of Judicial Conduct* (Appendix 22). Judge Montgomery is to defend the law even if a party's own attorney is showing an ignorance of the law and/or lack of knowledge of the law so that the court can maintain the integrity of the judicial system.

The hearing held on **Feb 16, 2018** was not a fair hearing with an impartial Judge and Judge Akin was fully connected with John Browning and Judge Montgomery as will be more fully laid out hereinafter. Also, the hearing was held Friday, **Feb 16, 2018** and Judge Akin said that he would have a decision by Monday, **February 19, 2018**, but he did not have his "*Findings of Facts and Conclusions of Law*" filed with the court until **Feb. 27, 2018** using the same "*Findings of Fact and Conclusions of Law*" previously prepared by John Browning. This was an 11 day of a delay.

**(7) Stating that they based their decision on the <u>unchallenged</u> findings and the evidence at the hearing before Judge Akin, they concluded Judge Akin did not err by determining Parks entered into the settlement agreement without coercion or duress.**

(a) First, Mr. Cruz did challenge the findings and evidence. Judge Akin used only the verbation, pre-hearing proposed defense findings despite clear and contrary evidence and testimony from Parks except to erroneously add Parks' education and experiences against her. Judge Akin's hearing conduct was unabashedly weighted against Parks and he would sustain a lot of the testimony that would show Parks refusing to allow testimony that proved she was coerced, put in extreme duress, threatened, or improperly influence into an agreement, but allowing the defense lawyer, John Browning to use a near limitless questioning on irrelevant matters beyond the scope of the hearing and matters nearly 2 years after the Motion for New Trial hearing that was held on **June 13, 2016**. Parks even notice John Browning and Judge Akin making knowing and colluding facial expressions to each other that are not seen when a Judge is impartial. In fact, J. Akin was not impartial, is a colleague of Montgomery, had been briefed against Parks before the hearing, and was improperly influenced in his decision and J. Akin is large campaign donor to J. Montgomery. This would also show that Judge Akin was in on the

conspiracy to deceive Parks. Due to this conspiracy and unlawful practices, any action Judge Akin took in deciding on Parks case should be reversed. This court should not have abated the appeal to the same court in which the conflict of interest exist

**(8) Stating they conclude *Rymer* is distinguishable and does not control whether the agreement entered into by Parks is enforceable.**

(a) Parks has spoken with *Rymer* and through their conversation could tell that even though their cases were different, Judge Montgomery actions were still the same in depriving one party by denying intitled valid claims.

**(9) Stating they will not address Appellant's issue on any subsequent compliance with the agreement by either Affiliated Bank or Appellants because it is not relevant to the issues before Judge Akin.**

(a) Relevant to this matter is Browning's conflicting positions that the Campbells can execute on a judgment for awarded their legal fees, which would necessitate the agreement be unenforceable, and that the agreement is enforceable as to Affiliated Bank, all while an appeal was pending, for the purpose of manipulating and intimidating Parks.

(b) John Browning is representing the defendants, but using conflicting/opposing process. Browning is attempting judgment execution for one party in this appeal to intimidate, harass and bully Parks, while using a conflicting attempt to enforce an appealed agreement at the same time, all while Judge Montgomery left the docket/record uncorrected and refused to use her remaining plenary power to order a new trial. This is an abuse of process and should not be permitted especially as John Browning is running for judge on Court of Appeals.

(c) Browning should not be permitted to appear in front of this court as he runs for a judgeship in it and is a Republican candidate with all the current Justices who are Republican and all have Democrat opponents.

(d) Browning has been allowed, by all courts, to unethically influence decisions by misrepresenting the law to intimidate, harass and manipulate Parks. Even though he is representing the defendant, he should still be ethical and follow the letter of the law. There is no excuse to deprive someone of their due process, 14 amendment and their right to a fair and unbiased trial.

**(10) Not addressing the rendition issue of modifying or vacating the Judgement entered by Hon. Sally Montgomery on March 24, 2016 (CR: 255-256 – Appendix 14) after the hearing held on the Motion for New Trial (transcript Appendix 2).**

(a) This court stated in its *Order* on **December 20, 2017** that "Accordingly, if there was an enforceable rule 11 agreement, the trial court had a duty to enforce the agreement entered into by the parties by modifying or vacating the March 24[th] *Order* to reflect the parties' agreement, *see in re Barton, 2017 WL 6275920* at (trial court "has no authority to render judgment which does not fall strictly within the terms of the agreement dictated into the record by themselves"), but failed to do so" because Parks revoked any consent by appeal shortly and timely after the agreement. Once Parks spoke with competent counsel who knew the law and she became aware that she was lied to and that Montgomery still had the power to grant Parks a new trial, but the trial court were telling Parks that **her case was over**. That's all Parks could hear and it was devastating to Parks with no one advocating on her defense because of the conspiracy between Lawyers and Judge. Everyone in the court room knew their role to deceived Parks into entering into an agreement she would not have done if she new she had the opportunity to continue her

lawsuit. Parks thought her case was over because that's what she understood and they denied/restrained her the opportunity to speak with someone who was sitting in the hall who would have told her to leave and move forward with the appeal because they were lying to Parks. With the events that has happen to Parks in her fight for justice would show a true case of obstruction of justice in the Dallas County Court of Law #3 and Parks prays that this court does not condone this type of injustice. Although Parks is 43 years of age, a college graduate, successful business women Parks still needed to speak with someone who understood the law because Parks is not a lawyer nor had Parks ever practiced or studied law before the hearing on **June 13, 2016**.

John Browning also stated in Oral Argument on **Dec. 12, 2017** that they did not go to the efforts of Modifying the Judgment because they thought the case was over (as if he controls the lower court), but Parks had communicated her desires to Appeal, to defense counsel who would not respond to Parks' emails or calls. Jason Berent also knew Parks wanted to file this appeal, but he did not file it nor did he timely release himself as Parks Attorney of Record.

**(11) In not addressing Appellants' letters to this court (Appendix 3 - filed on July 25, 2016, Appendix 4- August 15, 2016, Appendix 5-August 22, 2016), Affidavit of Bennie Gibson (Appendix 6- filed August 24, 2016), Appellants' Response to Objection of Bennie Gibson Affidavit (Appendix 7 filed on August 30, 2016) and all Appellants' briefs filed that were overlooked and not addressed in the opinion.**

(a) In the letters, motions, responses and briefs, Parks mentions "**conflicts of interest**", "**undue influences**," "**voided judgment**," "**fraud**" (as a material representation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.

*Union Pacific Resources Group, Inc. v. Rhone-Poulenc, Inc., 247 F. 3d 547*), "**conspiracy**" (is characterized by an agreement between two or more people for the purposes of promoting or committing a crime), "**conspiracy to defraud**" (on part of two or more persons with a common purpose, supported by concerted action to defraud, that each has the intent to do it and that it is common to each of them, and that each has the understanding of that purpose), "**collision**" (a secret or illegal cooperation or conspiracy, especially in order to cheat and deceive others).

(b) Parks hopes this court can see by the evidence presented in this court a clear picture of things that happen behind the scenes. As outlined hereinabove there have been multiple **ex parte communications** and conferences among the Judges and Defendants; /Appellees' Lawyers (in furtherance of their common purposes). Communication also occurred when the plaintiffs or plaintiff counsel had not been present and same with appellant and appellants counsel. (Appendix 15). For example, Judge Montgomery was scheduled to conduct the hearing Ordered by this Court on December 20, 2017 and again on February 15, 2018, but somehow shortly before and after business hours Appellants counsel learned that Browning had submitted the pre-hearing defense documents to a visiting Judge Akin. Without any court notification to Appellants', Browning knew that J. Montgomery had decided to have J. Akin conduct the hearing only because of an approaching after hours transmitting email to J. Akin which cc'd Mr. Cruz. Upon arrival at the courthouse on February 16, 2018, Appellants found J. Montgomery on the bench in an unrelated matter from which she had descend the bench to conduct an ex parte discussion with defense counsel (Appendix 15 which pictures J. Montgomery, defense lawyer Browning, Alexander, McCarthy and Cole conferencing ex parte. Upon seeing Parks the judge retreated and never spoke to plaintiff or her attorney). When the parties proceeded to J. Akin courtroom for the hearing, it was clear that had been briefed on this case, as the last minute

reassignment (without time to notify all parties of the change) would not have permitted his detailed and thorough knowledge of the details he had, had he not been briefed. At the conclusion of the hearing J. Akin said that he would issue his decision the next day, but instead took nearly two week to issue his decision, allowing for plenty of time for J. Montgomery to read the hearing transcript and influence the decision. It is clear from the lengthy careers, experience, education and convoluted inter-relationship that cronyism has repeatedly determined the decisions in this case. (See face book posts, comments, campaign materials, pictures and resumes in Appendix 15-17)

(c) Parks filed a complaint with the OCC (Office of Comptroller of Currency) shortly after filing this appeal to report Affiliated Bank had other issues and a loan officer who was hired by Affiliated Bank's team despite the employee's prior **Felony** conviction for forgeries and theft. The OCC enforced the laws which required Affiliated Bank to fire this individual with all the felonies for forgeries and theft. Despite OCC's demand to file the individual, the person was still working at the bank as a loan officer, so the OCC had to reiterate its demand on Affiliated Bank to immediately terminate him. Recently, Parks noticed this individual still had websites showing this individual still had advertise websites that would direct a person back to Affiliated Bank to apply for loans under his contact which would look as if he was still employed with Affiliated Bank. Parks has a voicemail message from the OCC confirming the same findings and they will be pursuing the bank again. Also Parks was told by the OCC that they have taken other actions from her compliant, but can not be known to the public. Josh Campbell was also hired by Affiliated Bank despite prior multiple felonies. If Affiliated Bank would not hire individual with this type of history Parks would not be going through this today. Affiliated Bank hires individuals who could pose a threat to the personal identity of the elderly and their community

they serve with employees like this. This type of hiring is a risk to the public and in contravention of consumer protection statutes which is why the OCC enforced the termination of one of their employees who was still working for Affiliated Bank. Parks does not want Affiliated Bank to be able to hurt anyone else like they have done to her, her family and her business. This evidence, combined with the misapplication of law, make it clear that the bank knowingly, intentionally and/or negligently hire, direct, or supervise its employees so they should have never been dismissed.

**(12) Items discussed in Oral Argument on Dec. 12, 2017 by John Browning and presented as fact to the Panel of Justices in this court that were false and this court should have taken judicial notice of the clerk's record that was presented to this court and briefs submitted by Appellants after the abatement per the order on Mar. 8, 2018.**

(a) John Browning was not truthful with this court when he stated he did not have authority to attempt to collect the fabricated legal fees. As argued above, Browning had already begun judgment execution prior to this Court's hearing, but did not force the issue until Appellant filed a motion to recuse Judge Montgomery (his past client) also his clients the Campbell knew nothing of it and he used this attempt to harass appellants for filing a motion to recuse Judge Montgomery a formal client of his. Either Browning lied or he lacked authority, either of which is an ethics violation.

(b) When Justice Robert M. Fillmore asked Mr. Browning why Browning thought he could not file and why, according to the statue, did he not file a summary judgment motion for his clients absent a stay of proceeding, Mr. Browning stated that he wanted to file a summary judgment, but he said Judge Montgomery ordered a stay on other proceeding. As is clear on the docket and the record, there was never an order to stay placed on the proceedings, so Browning

statement was a falsehood, especially in light of his attempts to both collect judgment and enforce dismissal for defendants after the appeal was filed.

**(13) By not looking at all evidence which would show a conspiracy and collusion between the Officers of the Court and entertained when drafting its opinion dated May 3, 2018 and Parks has also retrieved new evidence during the abatement and has more evidence coming in that happened during the abatement of this appeal.**

- **Judge Montgomery** - has been a Judge for over 20 years and lawyer since 1980

- **John Browning** - had been a Lawyer since 1989 and has won several awards and teaches lawyers and Judges ethics and is running for place 11 in the 5th Court of Appeals as a Republican candidate. (Parks has been told by some of his endorser that have reviewed this entire case that they **would not** have endorsed him if they had seen Parks case prior to endorsing him, but unfortunately it was too late for them to take the endorsement back, but they *will not* give him any more money toward his campaign because of his unethical practices in this case toward Parks).

- **Jerry Alexander** - has been a lawyer since 1972 before Parks was even born and still did not know Judge Montgomery still had Plenary Power, but some how Tonya Parks a nonlawyer was the only one who could make a choice when Montgomery still had time to grant Parks her New Trial.

- **Gregory McCarthy** - has been a lawyer since 1985 and works closely with Garry Graham president of Affiliated Bank. He is also a close friend to Garry Graham and has been cited in a book called *The Texas Miracle* and *Playing Possum the Tale of the River Card* both written by John Marshall. Parks has been told by the Office of Comptroller of Currency that they are aware of these two books.

- **Christopher Hansen** - has been a lawyer since 1994 and is a partner in his law firm.

- **Gino Rossini** - has been a lawyer since 1998 and is a partner in his law firm.

- **Ryan Cole** - has been a lawyer since the late 1990's and has followed John Browning around to different firms throughout his career.

- **Jason Berent** – Plaintiff Lawyer has been a lawyer since 2000

- **Judge Ted Akin** – lawyer and or Judge since 1955

(a) In looking at the careers and the length of time these Lawyers and Judges have been practicing law (Appendix 15) you can without a shadow of a doubt know these officers of the court were intending to deceive Parks.

(b) **Parks has pictures that she took outside of Judge Montgomery's court room the morning of the said hearing on Feb 16, 2018 with Judge Ted Akin. In these pictures Parks caught Judge Montgomery, John Browning, Jerry Alexander, Ryan Cole, and Greg McCarthy speaking (ex parte communication) without Mr. Cruz. Since Judge Montgomery was not going to hear the hearing *Ordered*, she was in another hearing and got off the bench to go to the door to privately speak with all the defendant lawyers who had arrived for the hearing Ordered by this Court - John Browning, Jerry Alexander, Greg McCarthy and Ryan Cole (Appendix 15).**

(c) Parks' lawyer Baltasar Cruz was not present so Judge Montgomery should have waited to have any communication with the other side without both sides being present – especially for of the reasons this hearing was *ordered*. When she noticed Parks walk up - she immediately walked away. On another note, Baltasar had no idea Judge Akin was going to have any involvement in the hearing on Feb. 16, 2016 until the late evening before the hearing

because Mr. Cruz received a cc'd email from John Browning sending documents for review to Judge Akin. Baltasar was not able to send Plaintiffs' documents until the early morning the day of the hearing. Somehow John Browning knew about this before Mr. Cruz had any kind of notice of this change and could prepare Judge Akin's with Parks' documents. Even after sending documents, Parks and Mr. Cruz had no idea until the time of the hearing that Judge Akin was going to hear the ordered hearing.

(d) This court erred in denying on **Feb. 15, 2018** (Appendix 11) *Appellants' Emergency Motion to Stay Proceedings in the Trial Court and Reconsider and Withdraw Order that Trial Court Conduct Hearing on Whether Trial Court Judge Coerced Plaintiff's into Entering into a Rule 11 Agreement and, in Alternative Motion that Case be Transferred to Other Court to Conduct Said Hearing* which was filed on **Feb. 14, 2018**, for all the foregoing reasons.

(e) Parks has also attached a letter from **First Assistant District Attorney Office of Dallas Michael Snipes** stating he has carefully reviewed Parks complaint and *that he wishes he had jurisdiction to help Parks*, but he did not, but advised Parks to seek help through Appeal and the Judicial Board. (Appendix 18)

(f) On Friday 18, 2018 Mr. Gibson sent off for a Freedom of Information Act. 5U.S.C. 552 requests for Investigation of Records for Affiliated Bank. (Appendix 23)

<u>Conclusion</u>

Appellant respectfully contends that, based upon all of the foregoing the *Opinion* contains clear errors of fact and law, in the Trials Court's Judge Akin's "*Finding of Facts Conclusions of Law*" without using all the actual evidence presented in the hearing which was ordered by this court to have during the abatement. This court erred in abating the appeal to the same lower court, disregarded the evidence presented in Appellant's briefs, letters to the court,

motions to both this court and the trial court and oral argument. This court also erred in allowing the lower court to improperly excluded actual evidence presented in making the ruling to dismiss Appellant's lawsuit.

## Prayer

Parks prays to *God* that you will look at all the action and evidence of misconduct form the trial court and not look at your long personal relationships and history with Mr. Browning to make thing right and return Parks to status quo. Parks knows that you don't know her, but please trust that she is coming to this court sincerely asking for help from the years of abuse she has suffered from all the lawyers during the trial court at the motion to dismiss, the defendants, and the trial Judge Sally Montgomery and Judge Ted Akin.

Just because a person has known and/or worked with a person for many years does not mean that you really know what a person will do behind close doors when they feel no one is watching. With the help of the trial court Judge, John Browning and his team have done a lot illegal and unethical thing according to the law in this case. Everyone who has really looked into this case who are Lawyers, elected officials and regular citizens have all said what has happened to Parks was wrong. Some have said they wished they could help her, but they could not. Some have said if they go against J. Montgomery it would be "lawyer suicide", and some have said what they did was just evil (one of was John Browning's own campaign endorsers). Many have said what happened to Parks was not fair and or justified because her evidence was clear.

Please do not turn a blind eye to this and please return integrity and justice to the court by willing to call one of your own (John Browning).

Just like in the Me-Too Movement, people are hearing about people they have known and loved, but they had no idea what they were doing when no one was watching. Please act as you

did when you did not condone the actions of the Judges cited in the opinion on the recusal of J. Montgomery in the past and reversed everything (Appendix 20).

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully *prays* this Honorable Court grant this Motion, reconsider its Opinion, accept additional evidence presented in this Motion, reverse the Trial Court's "*Findings of Facts Conclusions of Law*" entered on Feb. 27, 2018, reverse the lower court order of March 24 and grant Appellant such additional and further relief, legal or equitable, special or general, to which she may be entitled in law and equity.

Respectfully submitted,

Tonya Parks
Pro Se
1401 Bristlewood Dr
McKinney, Tx 75070
(214) 980-8816
tonyaparks@parksrealtyfirm.com

## Certificate of Service

I certify that on this, the 7th day of June, 2018, complete and accurate copy of this document was electronically served upon the following attorneys for Appellee by means of this transmission to their respective electronic filing service provides in compliance with rule 9.5 of the Texas Rules of Appellate Procedures:

John G. Browning
Jerry Alexander
Passman & Jones, PC
2500 Renaissance Tower
1201 Elm Street
Dallas, Tx 75270

Tonya Parks

# APPENDIX 1

Dismissed and Opinion Filed May 3, 2018



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-16-00784-CV

## TONYA PARKS AND PARKS REALTY FIRM, LLC, Appellants
## V.
## AFFILIATED BANK, Appellee

On Appeal from the County Court at Law No. 3
Dallas County, Texas
Trial Court Cause No. CC-15-04540-C

# MEMORANDUM OPINION

Before Justices Lang-Miers, Fillmore, and Stoddart
Opinion by Justice Fillmore

Tonya Parks and Parks Realty Firm, LLC (PRF) appealed from a trial court order signed by the Honorable Sally Montgomery that dismissed appellants' claims against Affiliated Bank pursuant to the Texas Citizens Participation Act, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011(West 2015) (the TCPA), and awarded Affiliated Bank $29,876.40 in attorneys' fees. The record, however, reflects that Parks, individually and on behalf of PRF, orally agreed on the record not to appeal the order. Because Judge Montgomery did not modify the order to reflect that agreement, we abated this appeal and remanded the case to the trial court for a determination of whether Parks, individually and on behalf of PRF, voluntarily entered into an

agreement under rule of civil procedure 11,[1] pursuant to which appellants forfeited their right to bring this appeal, and whether any agreement was enforceable.

The Honorable Ted Akin conducted an evidentiary hearing and determined Parks agreed in open court not to appeal the order dismissing appellants' claims and the agreement was enforceable pursuant to rule of civil procedure 11. Appellants filed a supplemental brief asserting (1) this Court erred by abating this appeal because any agreement made by Parks is unenforceable due to Judge Montgomery's violation of appellants' right to procedural due process, and (2) Judge Akin abused his discretion by entering findings of fact and conclusions of law when there had not been a trial and by determining Parks did not enter into the agreement due to coercion or duress, the agreement was enforceable, Affiliated Bank complied with the agreement, and appellants breached the agreement. We dismiss this appeal.

## Background

Appellants sued Joshua A. Campbell and his former employer, Affiliated Bank, asserting a number of causes of action based on an internet posting by Campbell concerning Parks's work as a real estate agent. Campbell filed a motion to dismiss under the TCPA on grounds the claims against him were based on statements he made in connection with a matter of public concern and appellants could not establish by clear and specific evidence a prima facie case for each essential element of their claims. Campbell requested the dismissal of the claims against him and the award of reasonable attorneys' fees. At the hearing on Campbell's motion, Affiliated Bank argued it "should be included as far as being dismissed" because there was no evidence to support the causes of action asserted against it. Affiliated Bank also requested that it be awarded attorneys' fees pursuant to the TCPA. On March 24, 2016, Judge Montgomery signed an Order on Defendant

---

[1] Rule of civil procedure 11 states that, unless otherwise provided in the rules of civil procedure, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11.

–2–

Joshua Campbell's Motion to Dismiss (the March 24th Order), dismissing with prejudice appellants' claims against both Campbell and Affiliated Bank and awarding $62,297.50 to Campbell and $29,876.40 to Affiliated Bank for court costs, reasonable attorneys' fees, and other expenses incurred in defending the litigation.

Appellants filed a motion for new trial. At the hearing on the motion, the parties agreed on the record that (1) Campbell and Affiliated Bank would not seek to recover the fees and expenses awarded in the March 24th Order, and (2) appellants would not appeal the March 24th Order. However, Parks subsequently filed a pro se notice of appeal for both herself and PRF. Affiliated Bank moved to dismiss the appeal based, in part, on Parks's agreement not to appeal the March 24th Order.[2] Parks and PRF responded Parks was "coerced by the trial court" into non-suiting their claims under "extreme duress."

After retaining counsel, appellants filed an appellate brief arguing in four issues that the trial court erred by dismissing appellants' claims against Affiliated Bank and the dismissal violated appellants' right to procedural due process. Following oral argument, we abated this appeal and remanded the case to the trial court for findings relating to whether Parks, individually and on behalf of PRF, voluntarily entered into an agreement under rule of civil procedure 11, pursuant to which appellants forfeited their right to bring this appeal, and whether any agreement was enforceable.

In compliance with our order, Judge Akin conducted an evidentiary hearing on February 16, 2018. Judge Akin admitted into evidence pleadings from the underlying proceedings as well as the transcript of the hearing on appellants' motion for new trial. Parks also testified about the hearing on appellants' motion for new trial and her state of mind at the time she agreed to the

---

[2] On December 2, 2016, we dismissed appellant's appeal against Campbell because the notice of appeal was untimely as to him.

–3–

settlement. On February 26, 2018, Judge Akin entered findings of fact and conclusions of law.

Judge Akin specifically found:[3]

1. Parks is at least forty-two years old, has a B.B.A. degree from the University of North Texas, is a licensed realtor, owns and operates her own company, and is a sophisticated businesswoman;

2. In the underlying case, appellants' motion for new trial was heard on June 13, 2016, more than seventy-five days after the March 24th Order was signed;

3. Appellants were represented by counsel during the hearing, and appellants counsel was among the counsel who represented to Judge Montgomery that appellants' motion for new trial had been overruled by operation of law;

4. During the hearing, Judge Montgomery directed the parties to confer regarding potential settlement at three separate junctures, including one break that lasted for more than thirty minutes;

5. After the final break, during which Parks conferred with her counsel, the parties announced they had reached an agreement;

6. Counsel for all parties agreed on the record that Campbell and Affiliated Bank would forego seeking to recover the attorneys' fees awarded in the March 24th Order in exchange for a "full waiver of any appeal or further filings" by appellants;

7. The agreement constituted a "dismissal with prejudice" with appellants "giving a full and complete release of all claims" against Affiliated Bank and Campbell;

8. Defense counsel requested that Parks give her verbal assent to the agreement on the record;

9. Appellants' counsel "made it clear to his client that it was her decision, stating 'I'm not telling you what to do. I'm not pressuring you. It's your decision'";

10. After Parks expressed reluctance about the agreement, Judge Montgomery asked her whether she was going to dismiss the case with prejudice;

11. Parks stated "whatever you guys want," and Judge Montgomery advised Parks that she was the only one who could make the agreement and Judge Montgomery could not do it for her;

12. Parks responded that she would accept the settlement, but indicated she had been "put in this position" and had not had the "representation she wanted to have";

---

[3] The numbering of the findings set out in this opinion do not correspond with the numbering of the findings in Judge Akin's findings of fact and conclusions of law.

-4-

13. Judge Montgomery advised Parks that she needed to say yes or no to the agreement and that Judge Montgomery could not make the choice for her;

14. Parks "tried to claim she was 'forced' to accept the settlement," and Judge Montgomery cautioned her that the settlement "would not hold" under those circumstances;

15. Parks stated in open court, "I accept the deal";

16. Affiliated Bank and Campbell complied with the agreement and did not pursue collection of the attorneys' fees awarded in the March 24th Order; and

17. Appellants breached the agreement by filing a notice of appeal.

Judge Akin concluded Parks did not enter into the agreement due to coercion or duress from her counsel, the other parties, or Judge Montgomery, and the parties' agreement was enforceable under rule of civil procedure 11.

We granted appellants' request to file supplemental briefing, but specifically limited the supplemental briefing to "issues relating to the trial court's rulings on objections at the February 16, 2018 hearing and the trial court's February 27, 2018 findings of fact and conclusions of law." Appellants filed a supplemental brief complaining in six issues, numbered five through ten, that this Court erred by abating this appeal because any agreement made by Parks was unenforceable due to Judge Montgomery's violation of appellants' right to procedural due process and Judge Akin abused his discretion by (1) entering findings of fact and conclusions of law in a case in which there was not a trial, and (2) determining Parks did not enter into the rule 11 agreement due to coercion or duress, the rule 11 agreement was enforceable, Affiliated Bank and Campbell complied with the agreement, and appellants breached the agreement.

## Abating the Appeal

In their fifth issue, appellants complain this Court erred by abating this appeal and remanding the case to the trial court for findings pertaining to any agreement between the parties. This complaint is outside the limited scope of issues on which we allowed supplemental briefing. Accordingly, we will not address appellants' fifth issue.

–5–

## Authority to Enter Findings of Fact and Conclusions of Law

In their sixth issue, appellants assert Judge Akin abused his discretion by entering findings of fact and conclusions of law because findings of fact and conclusions of law may be made only pursuant to rules of civil procedure 296 through 299a following a bench trial. Rule of civil procedure 296 provides that "[i]n any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. "A case is 'tried' when the court's judgment is based on an evidentiary hearing containing conflicting testimony." *R.H. v. Smith*, 339 S.W.3d 756, 761 (Tex. App.—Dallas 2011, no pet.); *see also Shanklin v. Shanklin*, No. 13-15-00392-CV, 2016 WL 3962707, at \*2 (Tex. App.—Corpus Christi July 21, 2016, no pet.) (mem. op.). "Findings and conclusions are appropriate if there is an evidentiary hearing and the trial court is called upon to determine questions of fact based on conflicting evidence." *Ezy-Lift of Ca., Inc. v. EZY Acquisition, LLC*, No. 01-13-00058-CV, 2014 WL 1516239, at \*3 (Tex. App.—Houston [1st Dist.] Apr. 17, 2014, pet. denied) (quoting *Int'l Union, United Auto., Aerospace Agric. Implement Workers of Am.-UAW v. Gen. Motors Corp.*, 104 S.W.3d 126, 129 (Tex. App.—Fort Worth 2003, no pet.)).

Judge Akin held an evidentiary hearing to determine whether there was an agreement between the parties and whether any agreement was enforceable, and conflicting evidence was presented at the hearing. Accordingly, Judge Akin did not err by entering findings of fact and conclusions of law. *See My Three Sons, Ltd. v. Midway/Parker Med. Ctr., L.P.*, No. 05-15-01068-CV, 2017 WL 2351082, at \*7 (Tex. App.—Dallas May 31, 2017, no pet.) (mem. op.) (noting trial court is permitted to make findings of fact and conclusions of law following evidentiary hearing); *R.H.*, 339 S.W.3d at 761 (concluding that, on proper request of party, trial court was required to make findings of fact and conclusions of law following hearing on motion at which conflicting evidence was presented). We resolve appellants' sixth issue against them.

–6–

## Findings of Fact and Conclusions of Law

In their seventh through tenth issues, appellants argue Judge Akin abused his discretion by ruling Parks did not enter into the settlement agreement due to coercion or duress, the agreement is enforceable pursuant to rule of civil procedure 11, Affiliated Bank and Campbell complied with the agreement, and appellants breached the agreement.

### *Standard of Review*

Findings of fact entered in a case tried to the court have the same force as a jury verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *8 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.). We thus review findings of fact by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury finding. *Anderson*, 806 S.W.2d at 794; *Scott Pelley P.C.*, 2017 WL 3699823, at *8. Unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the finding. *Walker v. Anderson*, 232 S.W.3d 899, 907 (Tex. App.—Dallas 2007, no pet.); *see also Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 526 (Tex. 2014) (concluding unchallenged findings supported by some evidence were binding on appellate court); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794–95 (Tex. 2002); *Credit Suisse AG v. Claymore Holdings, LLC*, No. 05-15-01463-CV, 2018 WL 947902, at *4 (Tex. App.—Dallas Feb. 20, 2018, no pet. h.) (mem. op.). We may not reverse a trial court's conclusion of law unless it is erroneous as a matter of law. *Credit Suisse AG*, 2018 WL 947902, at *4.

### *Duress or Coercion*

Citing to paragraphs twenty-five and twenty-eight of Judge Akin's findings of fact and conclusions of law, appellants argue in their seventh issue that the "trial court abused its discretion in ruling that Parks, individually and on behalf of PRF, did not enter into the rule 11 agreement due to coercion or duress[.]'" The standard of review relied on by appellants is not applicable to our review of either the trial court's findings of fact or conclusions of law. *See BMC Software Belgium, N.V.*, 83 S.W.3d at 794–95; *Anderson*, 806 S.W.2d at 794. However, whether an agreement is voluntary is generally a question of law. *See Tower Contracting Co., Inc. of Tex. v. Burden Bros, Inc.*, 482 S.W.2d 330, 335 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.) ("What constitutes duress is a question of law but whether the facts exist to make up the elements of duress may be an issue of fact."); *see also Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 880 (Tex. 2005) ("Where the facts are undisputed, determination of whether a payment is voluntary or involuntary is a question of law."); *Park Plaza Solo, LLC v. Benchmark-Hereford, Inc.*, No. 07-16-00004-CV, 2016 WL 6242824, at *2 (Tex. App.—Amarillo Oct. 24, 2016, no pet.) (mem. op.) ("[W]hether or not circumstances of duress are established is generally a question of fact, but whether established facts constitute duress is a matter of law to be determined by the court."). Paragraphs twenty-five and twenty-eight of Judge Akin's findings of fact and conclusions of law state "[t]here was no coercion," and "[t]here was no coercion or duress." We conclude these are conclusions of law that we review de novo.

"Coercion exists when a party by the unlawful conduct of another, is induced to enter into a contract which deprives him of the exercise of his free will." *Man Indus. (India), Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 367 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (quoting *Metro-Goldwyn-Mayer Distrib. Corp. v. Cocke*, 56 S.W.2d 489, 491 (Tex. Civ. App.—Amarillo 1933, no writ). Generally, under Texas law, the term "duress" rather than "coercion" is used when parties are seeking to avoid a contract. *Id.* "A common element of

–8–

duress in all its forms (whether called duress, implied duress, business compulsion, economic duress or duress of property) is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Bolton*, 185 S.W.3d at 878–79; *see also McCord v. Goode*, 308 S.W.3d 409, 413 (Tex. App.—Dallas 2010, no pet.). "The threat must be imminent and the party must have no present means of protection." *McCord*, 368 S.W.3d at 413. Further, "[d]uress must be shown from the acts or conduct of the party accused of duress, not the emotions of the purported victim." *Id.* There can be no duress when the threatened conduct is not unlawful. *In re C.E.W.*, No. 05-14-00459-CV, 2015 WL 5099336, at *3 (Tex. App.—Dallas Aug. 31, 2015, pet. denied).

Appellants argue they established Parks entered into the agreement under duress because Judge Montgomery falsely represented that she no longer had jurisdiction to grant appellants' motion for new trial and threatened to leave an "unlawful judgment" in place and sanction appellants for bringing a frivolous lawsuit if Parks did not agree to settle the case; these "threats" were "of such a character as to destroy the free agency" of Parks to refuse the settlement; and these "threats" "overcame Parks'[s] will and caused her to do that which she would not otherwise have done."

Judge Akin found that Parks was at least forty-two years old, has a college degree, runs her own business, and is a sophisticated businesswoman. He also found that Parks was represented by counsel at the motion for new trial hearing, had an opportunity to confer with her counsel about the proposed settlement agreement on multiple occasions, was cautioned by Judge Montgomery that she was the only one who could make the decision to accept the offer of Campbell and Affiliated Bank to settle the case, and agreed in open court to the settlement. These facts are supported by evidence admitted at the hearing, including the transcript of the motion for new trial

–9–

hearing and Parks's testimony.[4] The record also reflects that, although she was highly emotional at the hearing on the motion for new trial, Parks understood the consequences of accepting or refusing the settlement and agreed to the settle in order to avoid a "$96,000 judgment" against her.

Based on the unchallenged findings and the evidence at the hearing before Judge Akin, we conclude Judge Akin did not err by determining Parks did not enter into the settlement agreement due to coercion or duress. We resolve appellants' seventh issue against them.

### Enforceability of Rule 11 Agreement

Relying on *Rymer v. Lewis*, 206 S.W.3d 732 (Tex. App.—Dallas 2006, no pet.), appellants argue in their eighth issue that Judge Akin erred by concluding the rule 11 agreement entered into by the parties was enforceable. *Rymer* involved the appeal to the county court of a forcible detainer judgment in the amount of $5,000 in favor of Rymer's landlord. *Id.* at 733–34. Both Rymer and her landlord appeared pro se in the county court. *Id.* at 734 n.1. During the pendency of the appeal, Rymer paid $1,200 into the registry of the county court. *Id.* at 734. Rymer and her landlord subsequently agreed Rymer would vacate the property and the landlord would receive the $1,200. *Id.* at 734. Before an order memorializing the agreement was presented to the trial court, the landlord moved Rymer's property from the house into the garage. *Id.* Rymer alleged the landlord caused thousands of dollars of damage to the property. *Id.*

Rymer informed the trial court that she no longer consented to the original terms of the parties' agreement because the landlord had damaged her property. *Id.* After the trial court expressed concern about the landlord's actions, Rymer informed the trial court that she wanted the case dismissed to allow her to recover the money in the registry of the court. *Id.* The trial court stated the case was dismissed. *Id.* The landlord then asked what would happen to the money in

---

[4] In order to challenge Judge Akin's findings of fact, Parks was required to attack specific findings under the appropriate legal and factual sufficiency standards. *See Defense Resource Servs., LLC v. First Nat'l Bank of Cent. Tex.*, No. 10-14-00327-CV, 2015 WL 4064781, at *4 (Tex. App.—Waco July 2, 2015, pet. denied) (mem. op.). Because Parks has failed to do so and the referenced findings of fact are supported by the evidence, they are binding on this Court. *See Tenaska Energy*, 437 S.W.3d at 526; *Walker*, 232 S.W.3d at 907.

the registry of the court, and the trial court asked an attorney in the courtroom to mediate the parties' dispute. *Id.* The attorney subsequently informed the trial court the parties had "some sort of fact issues" that needed to be resolved concerning the property the landlord removed from the house. *Id.* Rymer told the trial court that she wanted the case dismissed and she would file another lawsuit for property damages. *Id.* The landlord indicated that Rymer could keep the $1,200 she paid into the registry of the court to "end this entire matter." *Id.* Rymer stated she was "not agreeing to not do anything later down the road." *Id.* at 735. The trial court indicated it was "going to let [the landlord] have the $1200, and I'll do an order right now. It's your choice." *Id.* Rymer responded, "I'll take the [$]1200, and we'll go –." *Id.* The trial court indicated it needed "to have an answer." *Id.* Rymer responded, "Okay, that's fine," and indicated she would "agree to what you're doing." *Id.*

The trial court signed a final judgment that stated the parties had reached an agreement on the record, all issues of fact and law were tried to the court, and "after receiving the evidence presented and the testimony of the witnesses," the trial court awarded possession of the house to the landlord and awarded Rymer the $1,200 from the registry of the court. *Id.* The judgment also stated Rymer would not pursue any cause of action against the landlord for issues relating to Rymer's personal property. *Id.* Rymer appealed, arguing the trial court acted improperly by forcing her to choose between relinquishing either the $1,200 in the registry of the court or her right to pursue a claim against her landlord for damages to her personal property. *Id.* at 736.

We concluded there was no evidence to support the trial court's apparent conclusion that the $1200 would offset Rymer's claim for the damage to her property or to award relief to the landlord. *Id.* We noted the case had been dismissed when the landlord asked what would happen to the money in the registry of the court and, "[w]ithout saying so, the trial court essentially reopened the case after the landlord agreed to let Rymer have the $1200 if Rymer agreed to drop

–11–

all claims against him." *Id.* This required Rymer to "agree to forego any claim for damages she may have had against her landlord" in order to recover the $1,200. *Id.*

In this case, the hearing on appellants' motion for new trial was held more than seventy-five days after the March 24th Order, and counsel, including appellants' counsel, represented to Judge Montgomery that the order was final. Judge Montgomery did not reopen the case and did not make a decision about the value of appellants' claims without any evidence. Judge Montgomery gave the parties three opportunities to discuss settling the case and did not attempt to force a settlement by stating she would withhold money in the registry of the court from appellants or award any such money to the other side if Parks refused to settle the dispute. Finally, appellants, who were represented by counsel, did not relinquish any claims that could have been asserted against Affiliated Bank or Campbell in a subsequent lawsuit. Rather, appellants agreed not to appeal the March 24th Order in exchange for Affiliated Bank's and Campbell's agreement not to pursue the attorneys' fees awarded by the trial court in the March 24th Order. All parties waived a right relating to the March 24th Order in order to settle the dispute.

We conclude *Rymer* is distinguishable and does not control whether the agreement entered into by Parks is enforceable. We resolve appellants' eighth issue against them.

*Compliance with Agreement*

In their ninth and tenth issues, appellants assert Judge Akin abused his discretion by determining Affiliated Bank[5] complied with the parties' agreement and appellants breached the settlement agreement. However, we remanded this case for a determination of whether Parks, individually and on behalf of PRF, voluntarily entered into an agreement under rule of civil procedure 11, pursuant to which appellants forfeited their right to bring this appeal, and whether

---

[5] Appellants also complain Judge Akin abused his discretion by ruling Campbell complied with the rule 11 agreement. Campbell is no longer a party to this appeal. Accordingly, his conduct is not relevant to our analysis.

any agreement was enforceable. Any subsequent compliance with the agreement by either Affiliated Bank or appellants is not relevant to the issues before Judge Akin. Accordingly, we will not address appellants' ninth and tenth issues.

## Conclusion

An agreement to settle a case is enforceable if it complies with rule 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *In re Barton*, No. 05-17-00364-CV, 2017 WL 6275920, at *1 (Tex. App.—Dallas Dec. 11, 2017, orig. proceeding) (mem. op.). As relevant to this appeal, an agreement complies with rule 11 if the agreement is made in open court and entered of record. TEX. R. CIV. P. 11. Judge Akin found the parties' agreement to settle this case was made in open court and entered of record, and concluded the agreement was enforceable under rule 11. One of the terms of the agreement was that Parks and PRF forfeited their right to bring this appeal. *See Estate of Crawford*, No. 14-17-00703-CV, 2017 WL 5196309, at *2 (Tex. App.—Houston [14th Dist.] Nov. 9, 2017, pet denied) (mem. op.) (per curiam) ("The right to appellate review may be waived by agreement." (citing *Rodriguez v. Villarreal*, 314 S.W.3d 636, 645 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). Because Parks and PRF entered into an enforceable rule 11 agreement pursuant to which they agreed not to appeal from the March 24th Order, we will enforce the terms of their agreement. *Estate of Crawford*, 2017 WL 5196309, at *2; *In re Marriage of Long*, 946 S.W.2d 97, 99 (Tex. App.—Texarkana 1997, no writ). Accordingly, we dismiss this appeal.

/Robert M. Fillmore/
_____
ROBERT M. FILLMORE
JUSTICE

160784F.P05

–13–



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TONYA PARKS AND PARKS REALTY
FIRM, LLC, Appellants

No. 05-16-00784-CV      V.

AFFILIATED BANK, Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas,
Trial Court Cause No. CC-15-04540-C.
Opinion delivered by Justice Fillmore,
Justices Lang-Miers and Stoddart
participating.

In accordance with this Court's opinion of this date, the appeal is **DISMISSED**.

It is **ORDERED** that appellee Affiliated Bank recover its costs of this appeal from appellants Tonya Parks and Parks Realty Firm, LLC.

Judgment entered May 3, 2018.

# APPENDIX 2

REPORTER'S RECORD

VOLUME 1 OF 1

TRIAL COURT CAUSE NO. 15-04540-C

TONYA PARKS, PARKS REALTY         (    IN THE COUNTY COURT
FIRM, LLC,                        (
                                  (
          Plaintiff,              (
                                  (
VS                                (    AT LAW NO. 3
                                  (
AFFILIATED BANK,                  (
AFFILIATED BANK FSB,              (
AFFILIATED BANK FSB, INC.,        (
BANCAFFILIATED, INC.,             (
JOSHUA CAMPBELL and               (
KATHERINE CAMPBELL,               (
                                  (
          Defendants.             (    DALLAS COUNTY, TEXAS

---------------------------------------

MOTION FOR NEW TRIAL

---------------------------------------

On the 13th day of June, 2016, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Sally L. Montgomery, Judge presiding, held in Dallas, Dallas County, Texas:

Proceedings reported by machine shorthand.

Janet E. Wright
Official Court Reporter - County Court At Law No. 3
214/653-7831

APPEARANCES

JASON M. BERENT
SBOT NO. 24027143
Berent Law Firm PLLC
5600 Tennyson Parkway, Suite 310
Plano, Texas   75024
214/692-5800
ATTORNEY FOR PLAINTIFF


GINO J. ROSSINI
SBOT NO. 24007953
CHRISTOPHER HANSEN
SBOT NO. 00790818
Hermes Law, PC
2001 N. Lamar Stret, Suite 450
Dallas, Texas   75202
214/749-6512
ATTORNEYS FOR DEFENDANTS JOSHUA AND KATHERINE CAMPBELL


JOHN G. BROWNING
SBOT NO. 03223050
JERRY ALEXANDER
SBOT NO. 00993500
Passman & Jones
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214/742-2121

GREGORY J. McCARTHY
SBOT NO. 13367500
Attorney at Law
2222 Patterson Place
Arlington, Texas   76102
214/448-7154
ATTORNEYS FOR DEFENDANTS AFFILIATED BANK

INDEX

JUNE 13, 2016                                    PAGE

Announcements. . . . . . . . . . . . . .      4

Proceedings. . . . . . . . . . . . . . .      4

Court Reporter's Certificate . . . . . .     26

Janet E. Wright
Official Court Reporter - County Court At Law No. 3
214/653-7831

PROCEEDINGS

THE COURT: 15-4540 Tonya Parks, Parks Realty Firm, LLC, versus Affiliated Bank, et al.

Go ahead and state your names for the record.

MR. BERENT: My name is Jason Berent, The Berent Law Firm. I'm here representing the plaintiffs, Tonya Parks and Parks Realty Firm, LLC.

MR. BROWNING: John Browning and Jerry Alexander on behalf of Affiliated Bank, Your Honor.

MR. HANSEN: Your Honor, Chris Hanson and Gino Rossini on behalf of Joshua Campbell and Katherine Campbell.

(Off the record)

THE COURT: Motion for New Trial brought by plaintiff. I read a lot of this. Let's talk about Affiliated Bank first.

No, they didn't have their own motion pending at the time of the hearing. And the issue of attorney fees was not fully discussed, I would agree. At the same time, the evidence was pretty clear that they were in no way, shape, or form involved with Campbell and Campbell's decision to post

If I were to grant a new trial on the attorney fee issue, any of it, but your pleadings are such as they are where it's clear that there is no linkage between the

bank and their employee, you might be faced with a motion for sanctions for bringing a frivolous case. And then you have additional problems versus the current problems.

So I'm going to let you two go talk about that, see if you all can resolve something.

We're going to do that right now.

MR. BERENT: Where would you like to us visit, Your Honor?

THE COURT: Conference room.

(A break was held.)

THE COURT: Okay. Where are we?

MR. BROWNING: We couldn't arrive at any agreement with regard to Affiliated Bank, Your Honor.

MR. BERENT: That's accurate, Your Honor.

THE COURT: Let me say this. What were the attorney fees on that that the bank was awarded?

MR. BROWNING: 27,000 and change, Your Honor. I can get it.

THE COURT: That's close enough.

I have thought to myself that -- just throw this thought out there -- if that was dropped by 10 or 11,000 dollars, it might make it more palatable for both sides. And, in the meantime, there's been an order.

MR. BROWNING: Rip Off Report, Your Honor.

THE COURT: So to grant an entire new trial when

there's already been compliance is a concern of the Court's.

So you want to discuss that between the attorneys first? At least as to Affiliated for starters.

MR. McCARTHY: Your Honor, for Affiliated we're in a position what we would prefer doing and have made abundantly clear is that we would like for this to be over as to us, and we're willing to make the entire thing over as to us.

That doesn't seem to suit the plaintiff, and so I don't have any place else to go.

THE COURT: I don't know what y'all have discussed, of course, back in the back. If Affiliated -- what are you saying? You would be willing to drop all the attorney fees just to make it go away? That is an incredibly generous offer.

MR. McCARTHY: I thought so, too.

MR. BROWNING: We have made that, Your Honor. That was before the motion for new trial was filed --

THE COURT: Are you serious?

MR. BROWNING: Yes, Your Honor. We did not want the Court to have to be burdened with this exercise, nor did we think it would be in the best interests of any of the parties. That's why we agreed or made the offer that we would not seek our attorney's fees.

THE COURT: Let me ask you this question. In your briefing on the motion to dismiss, okay, that was brought by the Campbells, you're saying without a severance if I dismiss it as to the Campbells, it's dismissed as to Affiliated? Are you sure about that case law?

MR. BERENT: There is none.

MR. BROWNING: There is no case law, Your Honor. The statute itself says dismissal of the legal action, meaning the case in its entirety. Legal comment I site the Court to in my response has said because of this, because of this potential ambiguity, plaintiff's attorneys responding to a motion to dismiss were faced with this situation as to a nonspeech-related cause of action if they assert multiple and alternative causes of action, or sue more than one defendant, would be well advised just to sever those causes of action so they're not --

THE COURT: It would have to be free speech. Well, it doesn't make any sense because if I dismiss free speech, then everything else does go away. There's nothing left.

MR. BROWNING: Your Honor, in fact, the things they have alleged against the bank are related to the --

THE COURT: They're all related.

MR. BROWNING: So, really, the motion to dismiss the case in its entirety was proper. The Court's granting of it was proper. And, frankly, we don't understand, you know, any basis whatever.

The Court itself even directed plaintiff's counsel when he --

THE COURT: I don't even want to go there with that. But the fact of the matter is if you make the attorney fees go away, that would be a really good deal because, otherwise, without any evidence, you're looking at a frivolous case. And I don't know where there would be evidence, based on what I've heard. There may be something else, but I don't know where any additional evidence will come from because plaintiffs have absolutely no insights as to the relationship between the bank and the Campbells or Mr. Campbell, and they've been real clear about it.

So, yes, sanctions would apply if this becomes a frivolous case, which it looks like there's no way it wouldn't.

MR. BROWNING: Right.

THE COURT: Now, I don't know who you are, sir.

MS. PARKS: This is my father.

THE COURT: Okay. But he's shaking his head no,

and he's not a lawyer. And I'm known for trying to help folks in here. And I don't say things in here, having been doing this for 20 years, that are not a matter of law.

And you're putting your daughter at risk by getting dug in on a position when I, as the Court, say this is what could occur, and it could. So don't be dug in on this thing.

I'll give you five minutes to discuss it as to Affiliated. That's it. Clock's ticking.

MR. HANSEN: Your Honor, we would point out, too, with regard to the Campbells, we have also made that same offer to Ms. Parks that we would not pursue the attorney's fees previously --

THE COURT: Well, they got the relief that they sought, which is the order to Rip Off.

MR. HANSEN: And as the Court's already ruled, you granted the motion to dismiss. Again, we would renew that offer to them.

THE COURT: Okay. Five minutes.

MR. BROWNING: I think plaintiff's counsel and his client need to discuss it.

THE COURT: You've got five minutes. Clock's ticking.

MR. BERENT: Would you like to join us?

MR. BROWNING: We've reiterated our offer.

THE COURT: If he wants you to join him, he will, but if not, that's fine, too. He'll do whatever you want. So will Jerry Alexander.

MR. BERENT: I'll be in the jury room.

THE COURT: Do you want him or not? Anyone you want will join you.

MR. BERENT: Does my daughter count?

THE COURT: No, your daughter should probably stay here with me.

MR. BERENT: I would like to invite my client, her father, and any lawyer that would care to discuss matters in good faith.

THE COURT: If you want to name one, now would be a good time. Who do you want?

MR. BERENT: John and Chris and Jerry.

(A break was held.)

THE COURT: Okay. So do we have any agreements?

MR. BERENT: No agreements, Your Honor.

THE COURT: Okay. I'm going to grant the new trial as to Affiliated Bank.

MR. HANSEN: Your Honor, there's one thing we were just talking. And it appears that this hearing is after the 75th day, and the motion for new trial has already been overruled by operation of law, it looks

like.

THE COURT: Has it?

MR. BROWNING: Yes, Your Honor.

MR. BERENT: I believe that's accurate, Your Honor.

MR. HANSEN: The 75th day was June 7 following the entry of the judgment in this case on March 24. Therefore, as of June 8, it's overruled by operation of law under Rule 329(b), subpart E.

THE COURT: I know the rules. I just don't know the dates.

MR. HANSEN: I'm sorry.

THE COURT: I entered it on March 24?

MR. HANSEN: Yes, ma'am.

THE COURT: And the motion for new trial was filed within 30.

MR. HANSEN: Yes, ma'am.

THE COURT: Okay. Hang on.

It is.

MR. BROWNING: And there's Dallas Court of Appeals directly on point, Your Honor, concerning that.

THE COURT: Okay. So I can't. So I'm going to do one last thing, though. See if you can reach an agreement on the attorney's fees since it's too late to overrule the motion for new trial; it can only be done by

agreement. That's still a good agreement. If y'all agree to it, then it doesn't matter. If you don't agree to it, then it's too late.

Why don't y'all go back there and talk one last time? This can be a win or it can be complete zero for plaintiff.

MR. BROWNING: We've already reiterated the offer, Your Honor.

THE COURT: They didn't know about the 81 days. So go back one last time.

(A break was held.)

THE COURT: Where are we?

MR. BERENT: Do we have an agreement?

MS. PARKS: I didn't really get to talk to you.

THE COURT: Come on up. I can't hear you back there.

MS. PARKS: I was just answering that I really didn't get a chance to talk to him to see what -- to see, you know, what my parameters were, if that's something that I had to sign off on.

THE COURT: All you have to do is say you accept their modifying the judgment where there's no judgment against you.

MS. PARKS: And then after that...

THE COURT: That's it, though.

MS. PARKS: Then there's no additional trial.

THE COURT: No, because you've run out of time.

THE WITNESS: And why did I run out of time?

THE COURT: Because you're over 75 days on the hearing for the motion for new trial.

MS. PARKS: And who sets the hearing? Did the Court set the hearing?

THE COURT: I have nothing to do with that, except for my clerks.

MS. PARKS: No, so why was it set after the 75 days?

MR. BERENT: Ms. Parks is concerned that I did not set the hearing timely, and I'm trying to explain that the clerk sets the hearing.

THE COURT: I didn't know about this issue. If I had known about this issue, we could have set it sooner, but I didn't know about it.

MS. PARKS: So, basically, I lost my case because dates? And so my name, I don't get a fair trial. The bank is representing Josh.

THE COURT: It is what it is. And so you want to get rid of this judgment against you and just have the case dismissed with prejudice or do you want a judgment

against you?  Those really are your two choices.

MS. PARKS:  And neither one -- I've walked away to two years.  I've just let my whole life go.

THE COURT:  I'm out of time.  It's 3:20.  You've got to make your choice.

MS. PARKS:  I just feel set up.

THE COURT:  I can't help it.

MS. PARKS:  I just feel set up.

THE COURT:  I know you're not happy about this, and I understand.  But as the judge, I have to follow the law.  So you have to choose --

MS. PARKS:  But are you supposed to let us go if you know the other side?

THE COURT:  What?

MS. PARKS:  Didn't John Browning represent you during your campaign?

THE COURT:  No.

MS. PARKS:  Are you sure?  It was legal services.  Legal services that --

THE COURT:  It ended up I didn't use him.

MS. PARKS:  Oh, but you still paid him $3,000?

THE COURT:  No.

MR. BROWNING:  No.

MS. PARKS:  It's an expenditure.

THE COURT:  I did not.

MS. PARKS: It's an expenditure. Did you do an amendment?

MR. BROWNING: *Judge, I don't think this is relevant to anything.*

MS. PARKS: I just feel set up.

THE COURT: I'm going to tell you, you've got one minute.

MS. PARKS: Here it says -- did you do an amendment on there, on one of your expenditures where you paid John Browning $3,000 in 2013? Jerry Alexander has been contributing to your campaign since 1999.

MR. ALEXANDER: Yes, I have.

THE COURT: Attorneys are always allowed --

THE WITNESS: I'm just saying.

THE COURT: Okay. I have many -- if you wanted to file a motion to recuse, that would have been fine, too. But the time is over because the case is over.

And in the meantime --

MS. PARKS: And you paid $250 --

THE COURT: In the meantime, the one thing that can happen in a campaign is attorneys are always allowed to give money. And I take from plaintiff and defense counsel, both sides.

MS. PARKS: I understand.

THE COURT: So what are you going to do?

MS. PARKS: It says legal services.

THE COURT: Okay. This case is over, and I *guess there's going to be a judgment against you.* Take your pick. I'm trying to help you.

THE WITNESS: I wasn't prepared to take a pick like this today.

THE COURT: I'm trying very hard to help you. I really am.

MS. PARKS: I don't think I was given a fair trial. I'm sorry. I'm human. This is why this world is like this. No one gets justice in this system. I'm sorry, I'm just a product of corruption at this point. I just feel like there's some things that were going on and some things that have been said --

THE COURT: If you don't choose, then you're making a choice.

MS. PARKS: But I wasn't prepared to make a choice like this today.

THE COURT: You don't have a choice. If you don't choose -- because I doubt if they're going to keep this offer open outside of walking through that door. If you don't choose, then it can't be modified because they have to agree to modify it. And they're agreeing to wipe out the judgment against you, which is incredibly generous.

And if you don't choose, I have no jurisdiction to do anything. I can't do anything in this case because the time has expired. I can accept a modification by agreement. That's all I can do.

THE WITNESS: And what is "a modification by agreement"?

THE COURT: I have no authority.

MR. BERENT: A modification by agreement would be they drop all of their claims for attorney's fees and no judgment is entered against you.

MS. PARKS: And still I never got to have a fair trial.

MR. McCARTHY: May I, Your Honor?

THE COURT: Okay.

MR. McCARTHY: Craig McCarthy for Affiliated Bank.

All previous offers as to modification of judgment, forgiveness of attorney's fees on the order that's been entered by this Court, are withdrawn.

THE COURT: Okay. That's the end of the case.

MR. HANSEN: Same for Campbell.

MR. BROWNING: May we be excused, Your Honor?

THE COURT: If they walk through that door, that's it. So you better make up your mind by the time it takes them to walk out that door.

MS. PARKS:  But I don't even know what my --

THE COURT:  Walk slowly.

MR. ALEXANDER:  *Thank you, judge.*

MR. BROWNING:  Thank you, Your Honor.

MS. PARKS:  Can you give me a second?  I've been dealing with this for two years.  This is my livelihood.  Do you not mind giving me one second -- giving me a second to think about this?

MR. ALEXANDER:  We gave you plenty of time.

MS. PARKS:  How, if this just came on my table?  You are cruel.  This is gross.  This is my life.  This is my kids' life.  Give me a fricking second.  I'm sorry.

THE COURT:  You had a second.

MS. PARKS:  But I haven't had a chance to talk.

THE COURT:  You've said all you want to say.  There's nothing else for me to decide.

MS. PARKS:  Can I just have a second so I can talk to my dad for a second?

THE COURT:  No.  Their offer, they've withdrawn it.

MS. PARKS:  Can I not get a second to talk to my dad?  Will they not give me that?

THE COURT:  He wasn't here for this discussion.

I doubt they want to repeat it.

MS. PARKS: I don't need them to repeat it. I would just like to speak to him.

THE COURT: I'm leaving.

MS. PARKS: Is all this on record?

THE COURT: Yes, it's on record.

MR. BERENT: Guys, can you give us two seconds, seriously?

MR. McCARTHY: With all due respect to all the parties involved, the time that has been offered today already is more than should have been needed to make this decision. And we've given plenty of opportunities for this sort of thing to happen in the past, and, frankly, we've just hit the end of our patience. The offer is withdrawn, and there's really nothing else to discuss.

THE COURT: I ask you, as the judge of this court, having listened to y'all the last two hours, if you would give her about one minute.

MR. McCARTHY: We would be happy to do that, Your Honor.

THE COURT: Okay.

(Pause)

THE COURT: What did you decide?

MR. BERENT: I believe we have an agreement, Your Honor.

MR. BROWNING: Your Honor, it's our understanding Ms. Parks has agreed to accept the generous *offer for the defendants to forego their -- for seeking* attorney's fees that's currently reflected in the judgment that the Court signed March 24, in exchange for full waiver of any appeal or further filings, release of both Mr. and Mrs. Campbell and Affiliated bank.

MR. BERENT: I guess it's just the order stands, absent the attorney's fees.

THE COURT: There will be no judgment otherwise. There will just be a dismissal order with prejudice.

MR. BROWNING: And, Your Honor, I've summarized it, but I would ask the Court to ask Ms. Parks to indicate her agreement with this on the record.

THE COURT: I will, through you.

MR. BERENT: Just so I'm clear, it's going to be a dismissal with prejudice.

THE COURT: Right.

MR. BERENT: With no fees.

MR. HANSEN: And Ms. Parks, by her verbal assent here today, is giving a full and complete release of Affiliated and the Campbells of any and all claims that she has brought or --

THE COURT: Well, kind of it's done if she says so on the record. So you're probably not going to get a

written release.

MR. HANSEN: It doesn't have to be written.

MR. BROWNING: *We would like her verbal* acknowledgment of this on the record.

MS. PARKS: That I'm not going to come back after you?

THE COURT: No, you can't because it's with prejudice. They complicated things with their legalese.

MR. BERENT: What their offer is having --

THE COURT: Everybody goes their way, and y'all stay away from each other, but they drop the judgment against you.

MR. HANSEN: That's correct.

THE COURT: That's all you have to agree to.

MR. BERENT: There will be no judgment against you. I'm not telling you what to do. I'm not pressuring you. It's your decision.

MS. PARKS: I'm set up.

THE COURT: You accept?

MS. PARKS: I was set up.

MR. BERENT: Do you accept the deal? That's what they want to know. That's what the judge wants to know.

MS. PARKS: My name is ruined.

THE COURT: They did send in that order based on Rip Off where they had to stop. It has to come off. Did it?

MS. PARKS: It doesn't. It won't. It will not come off.

THE COURT: It will because there's a court order.

MS. PARKS: No, it will not.

MR. BROWNING: Your Honor, they represented that she had agreed to that term. We simply want a verbal assent.

THE COURT: Do you agree?

MS. PARKS: But it will not come off. It absolutely --

THE COURT: You're not a lawyer, and there are repercussions if they don't.

MS. PARKS: No, but I'm saying Rip Off Report will not remove it even with a court order.

THE COURT: Let me say one last thing. Bear with me here.

If they violate this court order, then if you went to trial against the defendants and you won, you still couldn't stop this problem you have from Rip Off. So there's nothing to gain by suing them --

MS. PARKS: Damages.

THE COURT: -- because if Rip Off doesn't obey my court order. So we're back to the same spot. They *have a court order. They have to take it down. If they* don't, then talk to your attorney about what we can do after that.

MR. BROWNING: Your Honor, not to belabor the point --

MS. PARKS: You don't care about me. I'm just a black person in your courtroom. You don't care about me.

THE COURT: What are you going to do? Are you going to dismiss it with prejudice or not?

MS. PARKS: I just need a second. Can I just have a second?

THE COURT: No, I'm going to leave. I'm going to hit that door and not come back.

MS. PARKS: Whatever y'all want to do.

(Simultaneous speakers)

THE COURT: If you don't say it on the record, the judgment stands.

MS. PARKS: It's whatever you guys want.

THE COURT: I don't want a judgment against you, but I can't make that agreement for you.

MS. PARKS: You should have thought about that before.

THE COURT: I can not make this agreement for you. It's only one you can do.

MS. PARKS: *What if I wasn't here? I didn't* have to come, but my life is still important to me that I -- you know, my livelihood and what I've worked for 42 years --

THE COURT: Okay. I'm walking.

MS. PARKS: Okay. Whatever you want.

THE COURT: No. If you don't --

MS. PARKS: Whatever you want. You're the judge.

THE COURT: You know what? I don't get and will not make that call for you. That is not my place.

MS. PARKS: I mean, you put me in this position. I take it. I take it.

THE COURT: You take what?

MS. PARKS: The deal. I'm being put on the spot.

THE COURT: I'm not offering you a deal.

MS. PARKS: I've been threatened if I go to sanction. You know, I've been threatened. I've been told what to do. I haven't had the representation that I wanted to have. You guys don't care about me.

I'll take it. I'm a prisoner in your courtroom. I'm take it. I'll take whatever you guys want to

fricking give me.

THE COURT: I don't want to give you anything --

MS. PARKS: *You did. You signed a judgment* without even seeing the evidence that they presented.

THE BAILIFF: You want to go to jail? Because I'm about to put you in jail for disrespecting the judge.

MS. PARKS: I'm not trying to disrespect her.

THE BAILIFF: Yes, you are. Lower your tone of voice.

THE COURT: You either accept their offer now or the judgment stands. I know what I would like for you, but I can't choose. And the way you're phrasing it, it's not good enough.

You either accept the deal or you say no. Take your pick. Yes, I accept the deal, or, No, I want the judgment against me.

MS. PARKS: I'm forced to accept the deal.

THE COURT: Forced, if you put that word in there, it will not hold, and the judgment will stand against you. I think. Because it will show coercion, and then there's no agreement, and then it won't work.

MS. PARKS: I accept the deal.

THE COURT: Okay. Is that good enough for everybody?

MR. McCARTHY:  Good enough for us, judge.

MR. BROWNING:  Yes, Your Honor.

MR. HANSEN:  *Thank you, Your Honor.*

THE COURT:  You're welcome.

MR. BROWNING:  May we be excused, Your Honor?

THE COURT:  You may.

(End of proceedings)

STATE OF TEXAS )

COUNTY OF DALLAS )

    I, *Janet E. Wright, Official Court Reporter in and* for the County Court of Dallas County, Texas, County Court at Law Number Three, State of Texas, do hereby certify that to the best of my ability the above and foregoing contains a true and correct transcription of all portions of evidence and proceedings requested in writing to be included in the Reporter's Record, in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

    I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

    I further certify that the total cost for the preparation of this Reporter's Record is $100.00 and was paid by Ms. Parks.

    WITNESS MY OFFICIAL HAND this the 17th day of June, 2016.

          /s/ Janet E. Wright
          _____
          JANET E. WRIGHT, Texas CSR #1532
          Expiration Date: 12-31-17
          Official Court Reporter
          County Court-at-Law No. 3
          600 Commerce Street, Suite 585
          Dallas, Texas 75202
          214/653-7831

# Appendix 3

ACCEPTE
05-16-00784-C
FIFTH COURT OF APPEAL
DALLAS, TEXA
7/25/2016 11:43:22 AI
LISA MAT
CLER

# Park Realty Firm, LLC

## 214-980-8816

### tonyaparks@parksrealtyfirm.com

Tonya Parks
214-980-8816
tonyaparks@parksrealtyfirm.com

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
7/25/2016 11:43:22 AM
LISA MATZ
Clerk
July 23, 2016

Lisa Matz, Clerk
Fifth District Court of Appeals
600 Commerce Street. Suite 200
Dallas, TX 752021
214-712-3450

RE:     Cause No. 05-16-00784-CV
        Tonya Parks and Parks Realty Firm, LLC v. Affiliated Bank, Affiliated Bank FSB, Affiliated
        Bank FSB, Inc., BancAffiliated, Inc., Joshua Campbell and Katherine Campbell

Dear Ms. Matz:

        I am the Appellant in the above-styled and number cause. My letter to you is intended to
point out certain facts pertinent to the Court's consideration of whether or not it has jurisdiction
over this matter.

        First and with all due respect to the court, I am appealing the Final Judgement signed by
Judge Sally Montgomery in the Dallas County Court-at-law No. 3 on March 24, 2016 and I am also
appealing the agreement I made in open court while I was put under duress because of the errors of
the officers of the court. These officers of the court also knowingly, willfully and intentionally
judicial water boarded me to make an agreement by inappropriately putting pressures on me and
giving unsuited influences that were not in my best interest for justice at the Hearing for the Motion
for New Trial on June 13, 2016. I have attached hereto as Exhibit "A" the entire 27-page transcript
so that the Fifth Court of Appeals can read the entire coercion which took place to get the forced
agreement out of me. By reading the entire transcripts, not just the excerpts, given to you by John
Browning in his letter attached hereto as Exhibit "B" on July 22, 2016 you will actually see that I was
influenced by the Court when there was no jurisdiction. I was threatened. I did not have proper legal
counsel protecting my best interest and the court acted upon that lack of legal representation. I was
restrained from to speaking with my father to help me make a decision and fully understand my
rights who was sitting in the hallway of the court room because Judge Montgomery got on him for
shaking his head in his seat by telling him that "you're putting your daughter at risk by getting dug in
on a position when I, as the Court, say this is what could occur, and it could. So don't be dug in on
this thing." (Exhibit "A" pages 8-9) He figured he would sit in hall because he felt it would be in
mine and his best interest because if he ever shook his head disagreeing to something she or the
Defendants were saying, she would hold him in contempt or it could harm my case even more. I
needed to speak with him because I did not fully understand my rights and I felt forced to make a
decision I was not prepared to make or fully understood what was going on and what kind of deal
the court was wanting me to accept. I did not voluntarily or willingly make any agreement, I was

forced and coerced by the court and it was premediated by having an outrageous judgement of over $100,000 in attorney fees for a motion to dismiss. This judgement was built from elevated attorney fees for a 1 hearing lawsuit that was used to railroad me out of court which is why I say it was "premediated" and "coerced".

In reading the transcript Exhibit "A" page 4, you will also read that the court admitted that she did not properly handle the Attorney fees for which the judgement was rendered on March 24, 2016.

Due to prejudices and biases of the court, you will also read on pages 14-16 of Exhibit "A" that there was a conflict of interest between Judge Sally Montgomery, John Browning and Jerry Alexander. In the transcript, I shared with the court my feelings that I was "set up" and my findings were Judge Sally Montgomery paid John Browning for legal services during her campaign in 2013, 2014 and 2015. On those pages you will read were Judge Montgomery says "no" and "I did not", John Browning says "no" and "Judge, I don't think this is relevant to anything". Once I started walking to my file to get the campaign records Judge Montgomery says, "I ended up I didn't use him". I have attached hereto as Exhibit "C" the campaign record I was reading to the court during the hearing for your reference. The Judge then states, "if you wanted to file a motion to recuse, that would have been fine, too, but the time is over because the case is over". Jerry Alexander and Passman & Jones have been contributing to her campaign since 1999 as far as I can see from my investigation. I did not see this connection between the Judge and the Lawyers until after her judgement ruling. Due to my faith, I felt like something was going on between the 6 Defendant Lawyers and the Judge. I just couldn't believe what took place so I started looking through her campaign records which I found online, did an open record report and ordered some from the Ethic Commissions going back to 1999. This is where I saw the paid Expenditures to John Browning and the long history of Contributions from Jerry Alexander and Passman & Jones Law Firm. I did communicate this with my previous attorney Jason Berent to inform the court prior to filing my Motion for New Trial. I also asked my previous attorney to Recuse Judge Sally Montgomery on March 22, 2016 at 5:08 pm by email before the judgement was signed because I had a strange feeling by her actions/behavior in the court that there was some kind of connection between her and the Defendants/Appellees Lawyers. Mr. Berent did not promptly do so. Judge Sally Montgomery said I could have recused her, but she should have properly recused herself because of her history with Mr. Browning so that there could not be any kind of perceived thought that there could be a conflict of interest between them. Also, when I made the Court aware of my findings, she should have properly admitted to her relationship without denying their previous business relationship and history as a possible client (Judge Sally Montgomery) and Lawyer (John G. Browning) relationship.

If Judge Sally Montgomery did not end up using Mr. Browning, then I have not found where she ever filed any amendment removing those expenditures for any of the years listed above. November 27, 2013 she paid Mr. Browning $3,000.00 for Legal Media Services on February 14, 2014 she paid Lewis Brisbois Bisgaard & Smith, LLP which is where Mr. Browning was managing partner $240.00 for Consulting Expenses Media and on May 30, 2015 she paid the same firm for Mr. Browning $300.00 for Legal Services Media Consulting. I have also hereto attached in Exhibit "D" a print out of the Texas Bar College showing John G. Browning being a managing partner with Lewis Brisbois Bisgaard & Smith, LLP.

From reading the transcript, I pray that you will see that I did not have proper legal counsel and the court did not schedule my hearing timely. I lost my right to have a new trial because the hearing was held outside of my 75-day window. You will read that Judge Sally Montgomery had me (1 women) and all the legal counsel (6 men lawyer – 1 my lawyer and the 5 defendants'/appellees' lawyers) go in a private room to make an agreement to dismiss the case with prejudice and they would remove the

judgement. On pages 5 and 10 of Exhibit "A" you will see that I did not agree either time. You will also see on page 10 where the Judge says, "Okay. I'm going to grant the new trial as to Affiliated Bank". With the Defendants'/Appellees' lawyers failing two attempts to persuade me to dismiss the case and hearing the Judge stating she was going to "give me a new trial" then Defendants'/Appellees' Lawyers bring up the point that the case was held outside of the 75-day window. My previous Lawyer Jason Berent blamed the court clerk for this error per his comment on page 13 of Exhibit "A" where he says to the court, "Ms. Parks is concerned that I did not set the hearing timely, and I'm trying to explain that the clerk set the hearing".

I hope that Fifth District Court of Appeals will see that the errors within the court and my lawyer's negligence were not my fault. I pray that you will allow my appeal to go through so that I can get justice for the harm Affiliated Bank and their employees have cause me. Along with the manipulation of the court to persuade me into agree to something in open court that was not in my best interest for the sake of my name and my company that has been ruined by the defamatory posting.

I pray that you will see that I was influenced / coerced by the court to make an agreement I did not and do not agree with. I hope you will see that the Judge was holding a one-sided mediation in favor of the Defendants/Appellees when she did not have jurisdiction.

I know I have filed this appeal pro se on the behalf of myself and my company Parks Realty Firm, LLC where I am the registered agent, I will assign an attorney for Parks Realty Firm, LLC if necessary by the court. I had to release my previous attorney Jason Berent because of multiple errors that were not my fault. I did request for my previous attorney to file my Notice of Appeal on June 15, 2016 after the hearing on June 13, 2016 which would have been within my 90-day window from Judgement rendered on March 24, 2016. Mr. Berent did not timely do so which led me to have to look for additional counsel during an upcoming 4th of July holiday. I have attached hereto Exhibit "E" to show Mr. Berent did not officially or timely remove himself until July 7, 2016, but he back dated the withdrawal to June 27, 2016. This was an additional 10-day interference from me getting justice for myself and my company. I hope and pray that you will not hold the negligence's of the officers to the court to interfere with me getting justice.

I have also attached hereto Exhibit "F" the Affidavit from John Browning filed in the Dallas County Court on June 9, 2016 before the hearing held for my Motion for New Trial held June 13, 2013 which caused additional client to lawyer conflicts. Mr. Browning discussed a private conference between him, Judge Sally Montgomery and my previous lawyer Mr. Berent. The Campbell's Lawyers were not present for this conference. During the conference Judge Montgomery stated to Mr. Berent that "she (the Judge) would not under any circumstances entertain any Motion for New Trial that did not specifically dismiss all causes of action against Affiliated Bank". I was not informed of this conference so I was completely surprised when I saw Mr. Browning's affidavit. In his affidavit filed in the court, Mr. Browning also speaks about the errors and omissions of my previous lawyer Jason Berent. These comments and/or accusation caused additional conflicts and trust issues between me and my attorney. Mr. Browning attempt to expose my previous lawyer Jason Berent in a negative way, I feel caused him amongst other things negative tension and trust issues between me and my previous Lawyer Jason Berent which would explain why he did not do or say anything in my favor/defense to stop the dismissal and abuse of the officers of the court on June 13, 2016. You will read in the transcript Exhibit "A" that Mr. Berent did not say anything in my defense. All of the communication was reflected to me to coerce me to accept something in open court. The word "appeal" was never said by anyone so this is one reason why I thought I still had the right to appeal my case.

The officers of the court saw me crying, saw how my hands were shaking and heard my voice quivering because I was very nervous and scared they would sanction me, find some reason to take me to jail or take everything I have and have worked so hard for a way to pay the ridiculous judgement based off of prejudices and biases. You will read, that the Judge and the other 5 men lawyers would give the offer, withdraw the offer, give me 60 second to think about it, the Court told the lawyer to walk slowly to the door to give me a chance to think about their offer and she would say she was leaving because my case was over. I was being played and taunted by all of the officers of the court. It was like mental "rape"- "gang raped" of my constitutional right and everyone in that court room got a piece of me when they knew I was saying and wanting to say "no" and would have said "no" if I fully understood my rights. They confused me by saying I only had two options, I had lost my right to a new trial, saying things like "either you have a judgement or you don't" and the Judge influences by saying "I don't want you to have a judgment" and her saying "the case is over". I did not know that by agreeing I would lose my right to appeal. I thought I just lost my right for a new trial in that court with her as the Judge, but I didn't realize until after the hearing that my forced acceptance could rule out my right to appeal. I pray that the Fifth Court of Appeals will not hold that against me and will not allow the corrupted prejudices and biases that took place in Judge Sally Montgomery's court room.

Judge Sally Montgomery is an elected official by the public who is not allowed to make a decision without viewing evidence and make ruling based off of her own connections outside of the court. She is not to misuse her power to influence her decisions which could cause intentional harm to another party in the case. She is not allowed to show prejudices and biases.

In regards to Mr. Browning related notes in his letter attached hereto as Exhibit "B", I would like to state the court ultimately initiated Affiliated Bank, FSB, Affiliated Bank FSB, Inc., Bancaffiliated, Inc., and Katherine Campbell to be nonsuited as Defendants/Appellees from the case along with a previous communication between attorneys - I did not agree with. From the electronic transcripts filed on July 11, 2016 in the appeals court by Janet Wright you can view the transcript on March 21, 2016 to read that communication. Those Defendants/Appellees were nonsuited without prejudice, but if any evidence was found, I as the Plaintiff/Appellant, could bring them back into the case. Plus, the nonsuit was done before the Judge could see any evidence showing these parties involvement because my previous lawyer had not timely uploaded my response and other evidence into the court records so that the Judge could properly make an evidence driven decision. This is why we had to do a motion for continuance for the next day to give my previous lawyer Jason Berent time to get everything uploaded in the system and prepare her case notebook.

So that I can have my fair chance in court, I have timely previously paid for the transcripts which were electronically file July 11, 2016 and I have timely paid for the court clerks records on July 22, 2016 which should have been filed in the court of appeals on the due date of July 22, 2016. I have attached hereto as Exhibit "G" the receipt from the Dallas County Clerks showing I have paid for the records.

I was not allowed to have my fair chance in court. I ask that the Fifth District Court of Appeals read what really took place in the Judge Sally Montgomery Dallas Court-at Law No. 3 court room and allow me to have my fair day in court because I do have evidence that will link the bank to the Campbell's. I can also show that Affiliated Bank is representing the Campbell's as I state on page 13 of Exhibit "A" transcripts. I also have evidence within the electronic court clerk filings on July 22, 2016 that shows in Joshua Campbell deposition filed in my response on March 21, 2016 where he states Affiliated Bank had appointed his legal counsel. You will also be able to read in the electronic

court filing of my Motion for New Trial to see other errors upon the court. I can also show that Affiliated Bank which is a Federal Banking Institution hired a loan officer, Joshua Campbell, who has been convicted for 2 felonies within the Dallas County Criminal Courts and then they hire a large defense team to get him dismissed from this case which interned dismissed the entire case and the liabilities from any Defendants/Appellees.

Because of my experiences within the Dallas County Court system, I pray that you do not get influenced or persuaded by John Browning's half-truths in his letter Exhibit "B" sent to you and filed on July 22, 2016 at 4:12 pm and I pray that you have read my entire letter, read the entire transcript and saw my additional evidence I have provided so you can see and form your own opinion. I pray that you will see how I was not allowed to use my constitutional right to have a fair and unbiased trial. This experience has and will forever be my nightmare! All I did was stood up for my clients as my fiduciary duties owed to them when their loan officer was making errors that had cost them money they did not have and could cause them to lose their 2nd dream home while working with Affiliated Bank to get a mortgage. By me standing up for someone else caused the Appellees to retaliate against me. They then allowed their Lawyers to bully me and manipulate the court system by using their Lawyers connections within the court to railroad me out of court which violated my constitutional rights.

What has happened to me throughout this process is proof of why this world is headed for disaster because the people in this world are listening and seeing what is really happening. This world is fixed with individual misusing their powers they are elected and hired to do because of prejudices and biases from it being personal/business relationships to gender to ethnicities. We-The people are getting tired because it is violating our constitutional rights that we-the people and our ancestors have/had fought so hard to achieve.

I know I have asked this multiple times, but I pray that you and the Fifth Court of Appeals will take a stand to make a change in the system to stop this corruption that has taken place in the Dallas County Court-at-Law No. 3. Please do not turn a blind eye to this situation the court has placed me in. Please help me to get my fair day in court so that I can get the damages that I am deserved because the loss of income and mental stress Affiliated Bank and their employees has caused me!!

Respectfully submitted,

Tonya Parks
Pro se
214-980-8816

REPORTER'S RECORD

VOLUME 1 OF 1

TRIAL COURT CAUSE NO. 15-04540-C

TONYA PARKS, PARKS REALTY   (  IN THE COUNTY COURT
FIRM, LLC,   (

    Plaintiff,   (

  (

VS   (  AT LAW NO. 3

  (

AFFILIATED BANK,   (
AFFILIATED BANK FSB,   (
AFFILIATED BANK FSB, INC.,   (
BANCAFFILIATED, INC.,   (
JOSHUA CAMPBELL and   (
KATHERINE CAMPBELL,   (

  (

    Defendants.   (  DALLAS COUNTY, TEXAS

_____

MOTION FOR NEW TRIAL

_____

On the 13th day of June, 2016, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Sally L. Montgomery, Judge presiding, held in Dallas, Dallas County, Texas:

Proceedings reported by machine shorthand.

Janet E. Wright
Official Court Reporter - County Court At Law
214/653-7831

Exhibit A

A P P E A R A N C E S

JASON M. BERENT
SBOT NO. 24027143
Berent Law Firm PLLC
5600 Tennyson Parkway, Suite 310
Plano, Texas   75024
214/692-5800
ATTORNEY FOR PLAINTIFF


GINO J. ROSSINI
SBOT NO. 24007953
CHRISTOPHER HANSEN
SBOT NO. 00790818
Hermes Law, PC
2001 N. Lamar Stret, Suite 450
Dallas, Texas   75202
214/749-6512
ATTORNEYS FOR DEFENDANTS JOSHUA AND KATHERINE CAMPBELL


JOHN G. BROWNING
SBOT NO. 03223050
JERRY ALEXANDER
SBOT NO. 00993500
Passman & Jones
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214/742-2121

GREGORY J. McCARTHY
SBOT NO. 13367500
Attorney at Law
2222 Patterson Place
Arlington, Texas   76102
214/448-7154
ATTORNEYS FOR DEFENDANTS AFFILIATED BANK

INDEX

JUNE 13, 2016                                    PAGE

Announcements. . . . . . . . . . . . . . .        4

Proceedings. . . . . . . . . . . . . . .          4

Court Reporter's Certificate . . . . . .         26

PROCEEDINGS

THE COURT: 15-4540 Tonya Parks, Parks Realty Firm, LLC, versus Affiliated Bank, et al.

Go ahead and state your names for the record.

MR. BERENT: My name is Jason Berent, The Berent Law Firm. I'm here representing the plaintiffs, Tonya Parks and Parks Realty Firm, LLC.

MR. BROWNING: John Browning and Jerry Alexander on behalf of Affiliated Bank, Your Honor.

MR. HANSEN: Your Honor, Chris Hanson and Gino Rossini on behalf of Joshua Campbell and Katherine Campbell.

(Off the record)

THE COURT: Motion for New Trial brought by plaintiff. I read a lot of this. Let's talk about Affiliated Bank first.

No, they didn't have their own motion pending at the time of the hearing. And the issue of attorney fees was not fully discussed, I would agree. At the same time, the evidence was pretty clear that they were in no way, shape, or form involved with Campbell and Campbell's decision to post

If I were to grant a new trial on the attorney fee issue, any of it, but your pleadings are such as they are where it's clear that there is no linkage between the

bank and their employee, you might be faced with a motion for sanctions for bringing a frivolous case. And then you have additional problems versus the current problems.

So I'm going to let you two go talk about that, see if you all can resolve something.

We're going to do that right now.

MR. BERENT: Where would you like to us visit, Your Honor?

THE COURT: Conference room.

(A break was held.)

THE COURT: Okay. Where are we?

MR. BROWNING: We couldn't arrive at any agreement with regard to Affiliated Bank, Your Honor.

MR. BERENT: That's accurate, Your Honor.

THE COURT: Let me say this. What were the attorney fees on that that the bank was awarded?

MR. BROWNING: 27,000 and change, Your Honor. I can get it.

THE COURT: That's close enough.

I have thought to myself that -- just throw this thought out there -- if that was dropped by 10 or 11,000 dollars, it might make it more palatable for both sides. And, in the meantime, there's been an order.

MR. BROWNING: Rip Off Report, Your Honor.

THE COURT: So to grant an entire new trial when

there's already been compliance is a concern of the Court's.

So you want to discuss that between the attorneys first? At least as to Affiliated for starters.

MR. McCARTHY: Your Honor, for Affiliated we're in a position what we would prefer doing and have made abundantly clear is that we would like for this to be over as to us, and we're willing to make the entire thing over as to us.

That doesn't seem to suit the plaintiff, and so I don't have any place else to go.

THE COURT: I don't know what y'all have discussed, of course, back in the back. If Affiliated -- what are you saying? You would be willing to drop all the attorney fees just to make it go away? That is an incredibly generous offer.

MR. McCARTHY: I thought so, too.

MR. BROWNING: We have made that, Your Honor. That was before the motion for new trial was filed --

THE COURT: Are you serious?

MR. BROWNING: Yes, Your Honor. We did not want the Court to have to be burdened with this exercise, nor did we think it would be in the best interests of any of the parties. That's why we agreed or made the offer that we would not seek our attorney's fees.

THE COURT: Let me ask you this question. In your briefing on the motion to dismiss, okay, that was brought by the Campbells, you're saying without a severance if I dismiss it as to the Campbells, it's dismissed as to Affiliated? Are you sure about that case law?

MR. BERENT: There is none.

MR. BROWNING: There is no case law, Your Honor. The statute itself says dismissal of the legal action, meaning the case in its entirety. Legal comment I site the Court to in my response has said because of this, because of this potential ambiguity, plaintiff's attorneys responding to a motion to dismiss were faced with this situation as to a nonspeech-related cause of action if they assert multiple and alternative causes of action, or sue more than one defendant, would be well advised just to sever those causes of action so they're not --

THE COURT: It would have to be free speech. Well, it doesn't make any sense because if I dismiss free speech, then everything else does go away. There's nothing left.

MR. BROWNING: Your Honor, in fact, the things they have alleged against the bank are related to the --

THE COURT: They're all related.

MR. BROWNING: So, really, the motion to dismiss the case in its entirety was proper. The Court's granting of it was proper. And, frankly, we don't understand, you know, any basis whatever.

The Court itself even directed plaintiff's counsel when he --

THE COURT: I don't even want to go there with that. But the fact of the matter is if you make the attorney fees go away, that would be a really good deal because, otherwise, without any evidence, you're looking at a frivolous case. And I don't know where there would be evidence, based on what I've heard. There may be something else, but I don't know where any additional evidence will come from because plaintiffs have absolutely no insights as to the relationship between the bank and the Campbells or Mr. Campbell, and they've been real clear about it.

So, yes, sanctions would apply if this becomes a frivolous case, which it looks like there's no way it wouldn't.

MR. BROWNING: Right.

THE COURT: Now, I don't know who you are, sir.

MS. PARKS: This is my father.

THE COURT: Okay. But he's shaking his head no,

and he's not a lawyer. And I'm known for trying to help folks in here. And I don't say things in here, having been doing this for 20 years, that are not a matter of law.

And you're putting your daughter at risk by getting dug in on a position when I, as the Court, say this is what could occur, and it could. So don't be dug in on this thing.

I'll give you five minutes to discuss it as to Affiliated. That's it. Clock's ticking.

MR. HANSEN: Your Honor, we would point out, too, with regard to the Campbells, we have also made that same offer to Ms. Parks that we would not pursue the attorney's fees previously --

THE COURT: Well, they got the relief that they sought, which is the order to Rip Off.

MR. HANSEN: And as the Court's already ruled, you granted the motion to dismiss. Again, we would renew that offer to them.

THE COURT: Okay. Five minutes.

MR. BROWNING: I think plaintiff's counsel and his client need to discuss it.

THE COURT: You've got five minutes. Clock's ticking.

MR. BERENT: Would you like to join us?

MR. BROWNING: We've reiterated our offer.

THE COURT: If he wants you to join him, he will, but if not, that's fine, too. He'll do whatever you want. So will Jerry Alexander.

MR. BERENT: I'll be in the jury room.

THE COURT: Do you want him or not? Anyone you want will join you.

MR. BERENT: Does my daughter count?

THE COURT: No, your daughter should probably stay here with me.

MR. BERENT: I would like to invite my client, her father, and any lawyer that would care to discuss matters in good faith.

THE COURT: If you want to name one, now would be a good time. Who do you want?

MR. BERENT: John and Chris and Jerry.

(A break was held.)

THE COURT: Okay. So do we have any agreements?

MR. BERENT: No agreements, Your Honor.

THE COURT: Okay. I'm going to grant the new trial as to Affiliated Bank.

MR. HANSEN: Your Honor, there's one thing we were just talking. And it appears that this hearing is after the 75th day, and the motion for new trial has already been overruled by operation of law, it looks

like.

THE COURT: Has it?

MR. BROWNING: Yes, Your Honor.

MR. BERENT: I believe that's accurate, Your Honor.

MR. HANSEN: The 75th day was June 7 following the entry of the judgment in this case on March 24. Therefore, as of June 8, it's overruled by operation of law under Rule 329(b), subpart E.

THE COURT: I know the rules. I just don't know the dates.

MR. HANSEN: I'm sorry.

THE COURT: I entered it on March 24?

MR. HANSEN: Yes, ma'am.

THE COURT: And the motion for new trial was filed within 30.

MR. HANSEN: Yes, ma'am.

THE COURT: Okay. Hang on.

It is.

MR. BROWNING: And there's Dallas Court of Appeals directly on point, Your Honor, concerning that.

THE COURT: Okay. So I can't. So I'm going to do one last thing, though. See if you can reach an agreement on the attorney's fees since it's too late to overrule the motion for new trial; it can only be done by

agreement. That's still a good agreement. If y'all agree to it, then it doesn't matter. If you don't agree to it, then it's too late.

Why don't y'all go back there and talk one last time? This can be a win or it can be complete zero for plaintiff.

MR. BROWNING: We've already reiterated the offer, Your Honor.

THE COURT: They didn't know about the 81 days. So go back one last time.

(A break was held.)

THE COURT: Where are we?

MR. BERENT: Do we have an agreement?

MS. PARKS: I didn't really get to talk to you.

THE COURT: Come on up. I can't hear you back there.

MS. PARKS: I was just answering that I really didn't get a chance to talk to him to see what -- to see, you know, what my parameters were, if that's something that I had to sign off on.

THE COURT: All you have to do is say you accept their modifying the judgment where there's no judgment against you.

MS. PARKS: And then after that...

THE COURT: That's it, though.

MS. PARKS: Then there's no additional trial.

THE COURT: No, because you've run out of time.

THE WITNESS: And why did I run out of time?

THE COURT: Because you're over 75 days on the hearing for the motion for new trial.

MS. PARKS: And who sets the hearing? Did the Court set the hearing?

THE COURT: I have nothing to do with that, except for my clerks.

MS. PARKS: No, so why was it set after the 75 days?

MR. BERENT: Ms. Parks is concerned that I did not set the hearing timely, and I'm trying to explain that the clerk sets the hearing.

THE COURT: I didn't know about this issue. If I had known about this issue, we could have set it sooner, but I didn't know about it.

MS. PARKS: So, basically, I lost my case because dates? And so my name, I don't get a fair trial. The bank is representing Josh.

THE COURT: It is what it is. And so you want to get rid of this judgment against you and just have the case dismissed with prejudice or do you want a judgment

against you?  Those really are your two choices.

15:23:17  MS. PARKS:  And neither one -- I've walked away to two years.  I've just let my whole life go.

15:23:23  THE COURT:  I'm out of time.  It's 3:20.  You've got to make your choice.

15:23:29  MS. PARKS:  I just feel set up.

15:23:32  THE COURT:  I can't help it.

15:23:35  MS. PARKS:  I just feel set up.

15:23:38  THE COURT:  I know you're not happy about this, and I understand.  But as the judge, I have to follow the law.  So you have to choose --

15:23:47  MS. PARKS:  But are you supposed to let us go if you know the other side?

15:23:53  THE COURT:  What?

15:23:53  MS. PARKS:  Didn't John Browning represent you during your campaign?

15:23:57  THE COURT:  No.

15:24:00  MS. PARKS:  Are you sure?  It was legal services.  Legal services that --

15:24:06  THE COURT:  It ended up I didn't use him.

15:24:09  MS. PARKS:  Oh, but you still paid him $3,000?

15:24:12  THE COURT:  No.

15:24:13  MR. BROWNING:  No.

15:24:13  MS. PARKS:  It's an expenditure.

15:24:15  THE COURT:  I did not.

MS. PARKS: It's an expenditure. Did you do an amendment?

MR. BROWNING: Judge, I don't think this is relevant to anything.

MS. PARKS: I just feel set up.

THE COURT: I'm going to tell you, you've got one minute.

MS. PARKS: Here it says -- did you do an amendment on there, on one of your expenditures where you paid John Browning $3,000 in 2013? Jerry Alexander has been contributing to your campaign since 1999.

MR. ALEXANDER: Yes, I have.

THE COURT: Attorneys are always allowed --

THE WITNESS: I'm just saying.

THE COURT: Okay. I have many -- if you wanted to file a motion to recuse, that would have been fine, too. But the time is over because the case is over.

And in the meantime --

MS. PARKS: And you paid $250 --

THE COURT: In the meantime, the one thing that can happen in a campaign is attorneys are always allowed to give money. And I take from plaintiff and defense counsel, both sides.

MS. PARKS: I understand.

THE COURT: So what are you going to do?

MS. PARKS: It says legal services.

THE COURT: Okay. This case is over, and I guess there's going to be a judgment against you. Take your pick. I'm trying to help you.

THE WITNESS: I wasn't prepared to take a pick like this today.

THE COURT: I'm trying very hard to help you. I really am.

MS. PARKS: I don't think I was given a fair trial. I'm sorry. I'm human. This is why this world is like this. No one gets justice in this system. I'm sorry, I'm just a product of corruption at this point. I just feel like there's some things that were going on and some things that have been said --

THE COURT: If you don't choose, then you're making a choice.

MS. PARKS: But I wasn't prepared to make a choice like this today.

THE COURT: You don't have a choice. If you don't choose -- because I doubt if they're going to keep this offer open outside of walking through that door. If you don't choose, then it can't be modified because they have to agree to modify it. And they're agreeing to wipe out the judgment against you, which is incredibly generous.

And if you don't choose, I have no jurisdiction to do anything. I can't do anything in this case because the time has expired. I can accept a modification by agreement. That's all I can do.

THE WITNESS: And what is "a modification by agreement"?

THE COURT: I have no authority.

MR. BERENT: A modification by agreement would be they drop all of their claims for attorney's fees and no judgment is entered against you.

MS. PARKS: And still I never got to have a fair trial.

MR. McCARTHY: May I, Your Honor?

THE COURT: Okay.

MR. McCARTHY: Craig McCarthy for Affiliated Bank.

All previous offers as to modification of judgment, forgiveness of attorney's fees on the order that's been entered by this Court, are withdrawn.

THE COURT: Okay. That's the end of the case.

MR. HANSEN: Same for Campbell.

MR. BROWNING: May we be excused, Your Honor?

THE COURT: If they walk through that door, that's it. So you better make up your mind by the time it takes them to walk out that door.

MS. PARKS: But I don't even know what my --

THE COURT: Walk slowly.

MR. ALEXANDER: Thank you, judge.

MR. BROWNING: Thank you, Your Honor.

MS. PARKS: Can you give me a second? I've been dealing with this for two years. This is my livelihood. Do you not mind giving me one second -- giving me a second to think about this?

MR. ALEXANDER: We gave you plenty of time.

MS. PARKS: How, if this just came on my table? You are cruel. This is gross. This is my life. This is my kids' life. Give me a fricking second. I'm sorry.

THE COURT: You had a second.

MS. PARKS: But I haven't had a chance to talk.

THE COURT: You've said all you want to say. There's nothing else for me to decide.

MS. PARKS: Can I just have a second so I can talk to my dad for a second?

THE COURT: No. Their offer, they've withdrawn it.

MS. PARKS: Can I not get a second to talk to my dad? Will they not give me that?

THE COURT: He wasn't here for this discussion.

I doubt they want to repeat it.

MS. PARKS: I don't need them to repeat it. I would just like to speak to him.

THE COURT: I'm leaving.

MS. PARKS: Is all this on record?

THE COURT: Yes, it's on record.

MR. BERENT: Guys, can you give us two seconds, seriously?

MR. McCARTHY: With all due respect to all the parties involved, the time that has been offered today already is more than should have been needed to make this decision. And we've given plenty of opportunities for this sort of thing to happen in the past, and, frankly, we've just hit the end of our patience. The offer is withdrawn, and there's really nothing else to discuss.

THE COURT: I ask you, as the judge of this court, having listened to y'all the last two hours, if you would give her about one minute.

MR. McCARTHY: We would be happy to do that, Your Honor.

THE COURT: Okay.

(Pause)

THE COURT: What did you decide?

MR. BERENT: I believe we have an agreement, Your Honor.

MR. BROWNING: Your Honor, it's our understanding Ms. Parks has agreed to accept the generous offer for the defendants to forego their -- for seeking attorney's fees that's currently reflected in the judgment that the Court signed March 24, in exchange for full waiver of any appeal or further filings, release of both Mr. and Mrs. Campbell and Affiliated bank.

MR. BERENT: I guess it's just the order stands, absent the attorney's fees.

THE COURT: There will be no judgment otherwise. There will just be a dismissal order with prejudice.

MR. BROWNING: And, Your Honor, I've summarized it, but I would ask the Court to ask Ms. Parks to indicate her agreement with this on the record.

THE COURT: I will, through you.

MR. BERENT: Just so I'm clear, it's going to be a dismissal with prejudice.

THE COURT: Right.

MR. BERENT: With no fees.

MR. HANSEN: And Ms. Parks, by her verbal assent here today, is giving a full and complete release of Affiliated and the Campbells of any and all claims that she has brought or --

THE COURT: Well, kind of it's done if she says so on the record. So you're probably not going to get a

written release.

MR. HANSEN: It doesn't have to be written.

MR. BROWNING: We would like her verbal acknowledgment of this on the record.

MS. PARKS: That I'm not going to come back after you?

THE COURT: No, you can't because it's with prejudice. They complicated things with their legalese.

MR. BERENT: What their offer is having --

THE COURT: Everybody goes their way, and y'all stay away from each other, but they drop the judgment against you.

MR. HANSEN: That's correct.

THE COURT: That's all you have to agree to.

MR. BERENT: There will be no judgment against you. I'm not telling you what to do. I'm not pressuring you. It's your decision.

MS. PARKS: I'm set up.

THE COURT: You accept?

MS. PARKS: I was set up.

MR. BERENT: Do you accept the deal? That's what they want to know. That's what the judge wants to know.

MS. PARKS: My name is ruined.

THE COURT: They did send in that order based on Rip Off where they had to stop. It has to come off. Did it?

MS. PARKS: It doesn't. It won't. It will not come off.

THE COURT: It will because there's a court order.

MS. PARKS: No, it will not.

MR. BROWNING: Your Honor, they represented that she had agreed to that term. We simply want a verbal assent.

THE COURT: Do you agree?

MS. PARKS: But it will not come off. It absolutely --

THE COURT: You're not a lawyer, and there are repercussions if they don't.

MS. PARKS: No, but I'm saying Rip Off Report will not remove it even with a court order.

THE COURT: Let me say one last thing. Bear with me here.

If they violate this court order, then if you went to trial against the defendants and you won, you still couldn't stop this problem you have from Rip Off. So there's nothing to gain by suing them --

MS. PARKS: Damages.

THE COURT: -- because if Rip Off doesn't obey my court order. So we're back to the same spot. They have a court order. They have to take it down. If they don't, then talk to your attorney about what we can do after that.

MR. BROWNING: Your Honor, not to belabor the point --

MS. PARKS: You don't care about me. I'm just a black person in your courtroom. You don't care about me.

THE COURT: What are you going to do? Are you going to dismiss it with prejudice or not?

MS. PARKS: I just need a second. Can I just have a second?

THE COURT: No, I'm going to leave. I'm going to hit that door and not come back.

MS. PARKS: Whatever y'all want to do.

(Simultaneous speakers)

THE COURT: If you don't say it on the record, the judgment stands.

MS. PARKS: It's whatever you guys want.

THE COURT: I don't want a judgment against you, but I can't make that agreement for you.

MS. PARKS: You should have thought about that before.

THE COURT: I can not make this agreement for you. It's only one you can do.

MS. PARKS: What if I wasn't here? I didn't have to come, but my life is still important to me that I -- you know, my livelihood and what I've worked for 42 years --

THE COURT: Okay. I'm walking.

MS. PARKS: Okay. Whatever you want.

THE COURT: No. If you don't --

MS. PARKS: Whatever you want. You're the judge.

THE COURT: You know what? I don't get and will not make that call for you. That is not my place.

MS. PARKS: I mean, you put me in this position. I take it. I take it.

THE COURT: You take what?

MS. PARKS: The deal. I'm being put on the spot.

THE COURT: I'm not offering you a deal.

MS. PARKS: I've been threatened if I go to sanction. You know, I've been threatened. I've been told what to do. I haven't had the representation that I wanted to have. You guys don't care about me.

I'll take it. I'm a prisoner in your courtroom. I'm take it. I'll take whatever you guys want to

fricking give me.

THE COURT: I don't want to give you anything --

MS. PARKS: You did. You signed a judgment without even seeing the evidence that they presented.

THE BAILIFF: You want to go to jail? Because I'm about to put you in jail for disrespecting the judge.

MS. PARKS: I'm not trying to disrespect her.

THE BAILIFF: Yes, you are. Lower your tone of voice.

THE COURT: You either accept their offer now or the judgment stands. I know what I would like for you, but I can't choose. And the way you're phrasing it, it's not good enough.

You either accept the deal or you say no. Take your pick. Yes, I accept the deal, or, No, I want the judgment against me.

MS. PARKS: I'm forced to accept the deal.

THE COURT: Forced, if you put that word in there, it will not hold, and the judgment will stand against you. I think. Because it will show coercion, and then there's no agreement, and then it won't work.

MS. PARKS: I accept the deal.

THE COURT: Okay. Is that good enough for everybody?

MR. McCARTHY:' Good enough for us, judge.

MR. BROWNING:  Yes, Your Honor.

MR. HANSEN:  Thank you, Your Honor.

THE COURT:  You're welcome.

MR. BROWNING:  May we be excused, Your Honor?

THE COURT:  You may.

(End of proceedings)

STATE OF TEXAS )

COUNTY OF DALLAS )

I, Janet E. Wright, Official Court Reporter in and for the County Court of Dallas County, Texas, County Court at Law Number Three, State of Texas, do hereby certify that to the best of my ability the above and foregoing contains a true and correct transcription of all portions of evidence and proceedings requested in writing to be included in the Reporter's Record, in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $100.00 and was paid by Ms. Parks.

WITNESS MY OFFICIAL HAND this the 17th day of June, 2016.

/s/ Janet E. Wright

JANET E. WRIGHT, Texas CSR #1532
Expiration Date: 12-31-17
Official Court Reporter
County Court-at-Law No. 3
600 Commerce Street, Suite 585
Dallas, Texas 75202
214/653-7831



**Passman & Jones**

A Professional Corporation

John G. Browning
214-742-2121 Ext. 3512
browningj@passmanjones.com
Fax 214-748-7949

ATTORNEYS AT LAW
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2599
www.passmanjones.com

July 22, 2016

Lisa Matz, Clerk
Fifth District Court of Appeals
600 Commerce Street, Suite 200
Dallas, TX 752021

RE:     Cause No. 05-16-00784-CV
        *Tonya Parks and Parks Realty Firm, LLC v. Affiliated Bank, Affiliated Bank FSB,*
        *Affiliated Bank FSB, Inc., BancAffiliated, Inc., Joshua Campbell and Katherine Campbell*
        Our File No. 26389-001

Dear Ms. Matz:

I am counsel for Appellees in the above-styled and numbered cause. I wish to point out certain undisputed facts pertinent to the Court's consideration of whether or not it has jurisdiction over this matter.

First, Appellants purport to be appealing from a Final Judgment signed by Judge Montgomery in Dallas County Court-at-Law No. 3 on March 24, 2016, but in fact Appellants voluntarily nonsuited with prejudice all claims and causes of action and agreed to waive any appeal or further filings and to release the Appellees from any and all liability. This agreement was made in open court by Appellants on June 13, 2016 at a hearing on Plaintiffs' Motion for New Trial, and was made in exchange for Appellee's agreement to forego collection of the attorneys' fees they had been awarded by the trial court as part of the court's granting a Motion to Dismiss on March 24, 2016. Attached hereto as Exhibit "A" are true and correct excerpts from the transcript of the June 13, 2016 hearing. At pages 19-20 of that record, the offer (having been earlier withdrawn) and its terms are discussed along with the need for Ms. Parks to verbally indicate her assent in open court. After further discussion, and a reminder from the court that Ms. Parks had a choice that only she could make and voluntarily enter into, Ms. Parks stated on p. 25, line 23 "I accept the deal."

A nonsuit is effective as soon as the plaintiff files it or asks for one in open court. See, for example, *Epps v. Fowler*, 351 S.W.3d 862, at 868-69 (Tex. 2011); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, at 862-63 (Tex. 2010).

Clearly, Ms. Parks is barred from bringing this appeal, by virtue of her own voluntary nonsuit with prejudice, announced in open court. Furthermore, Appellants have also judicially admitted the acceptance of the offer of settlement. In his Motion to Withdraw as Counsel for Plaintiffs (attached hereto as Exhibit "B"), Ms. Parks' prior counsel Jason Berent states – among other reasons for his withdrawal – that "Plaintiffs recently accepted an offer of settlement made by Defendants in open court."

Besides the fact that Appellants had already nonsuited all claims with prejudice in open court on June 13, 2016, Appellants are also time-barred from bringing this appeal. The judgment from which Appellants purport to appeal was signed by the trial court on March 24, 2016. Plaintiffs'/Appellants' Motion for New Trial was filed on April 21, 2016. However, the hearing on this Motion for New Trial did

392985



not take place until June 13, 2016 – 81 days after the final judgment was signed. Pursuant to Texas Rule of Civil Procedure 329b(c), such motions for new trial are overruled by operation of law on the 76th day after the judgment is signed, if not overruled earlier by a written order. See, for example, *In re Hidalgo*, 279 S.W.3d 456, at 460 (Tex. App.—Dallas 2009); rev'd on other grounds sub nom, *Hidalgo v. Hidalgo*, 310 S.W.3d 887 (Tex. 2010). In addition, Appellants' Notice of Appeal was filed on July 1, 2016 – 99 days after the judgment was signed on March 24, 2016. Pursuant to Texas Rule of Appellate Procedure 26.1, an appellant has only 30 days from the date a final judgment is entered to file her notice of appeal, and pursuant to TRAP 26.1(a) that deadline is extended to 90 days after final judgment in the event that motion for new trial is timely filed. Even applying this 90-day deadline, Appellants' appeal is still time-barred. Accordingly, the Court should not accept jurisdiction over this matter.

Finally, although the Appellants purport to bring this attempted appeal *pro se* on behalf of both Tonya Parks (an individual) and Parks Realty Firm LLC (a corporate entity), it is well-recognized black letter law in Texas that a corporation cannot be represented pro se by an officer who is not an attorney. *Electronic Data Sys. V. Tyson*, 862 S.W.2d 728, 737 (Tex. App.—Dallas 1993, orig. proceeding); *Dell Dev. Corp. v. Best Indus. Uniform Sup.*, 743 S.W.2d 302, 303 (Tex. App.—Houston [14th Dist.] 1987, writ denied). Therefore, Tonya Parks – a non-attorney – cannot bring any appeal on behalf of Parks Realty Firm LLC. Any action, such as a notice of appeal or the filing of a docketing statement, taken by Ms. Parks on behalf of this corporation is a nullity.

On a related note, while Appellants claim to bring this appeal as to all of the defendants who were originally sued, they ignore the fact that prior to the trial court's final judgment on March 24, 2016 and well before the June 13, 2016 hearing on Plaintiffs' Motion for New Trial, Plaintiffs had already nonsuited all defendants except for Joshua Campbell and Affiliated Bank. Attached hereto as Exhibit "C" and "D," respectively, are the trial court's March 21 and March 22 Orders Granting Nonsuit as to Defendants Affiliated Bank, FSB, Affiliated Bank FSB, Inc., Bancaffiliated, Inc., and Katherine Campbell. These parties were nonsuited by Plaintiffs/Appellants long before the untimely filing of Appellants' Notice of Appeal.

Simply put, this attempted appeal comes after Appellants had already nonsuited their claims in open court and waived any appeal. The attempted appeal is also untimely, improperly brought pro se on behalf of a corporation, and wrongfully brought against parties whom the Appellants had earlier nonsuited. The Court of Appeals should decline to exercise jurisdiction over this matter.

Respectfully submitted,

Lisa Matz, Clerk
July 22, 2016
Page 3

PASSMAN & JONES. P.C.-

By: _____

John G. Browning
Texas State Bar No. 03223050
browningj@passmanjones.com
Jerry C. Alexander
Texas State Bar No. 00993500
alexanderj@passmanjones.com
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

**ATTORNEYS FOR APPELLEES**

# POLITICAL EXPENDITURES
# FROM POLITICAL CONTRIBUTIONS

## SCHEDULE F1

### EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Event Expense | Loan Repayment/Reimbursement | Solicitation/Fundraising Expense |
| Accounting/Banking | Fees | Office Overhead/Rental Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Polling Expense | Travel In District |
| Contributions/Donations Made By | Gift/Awards/Memorials Expense | Printing Expense | Travel Out Of District |
| Candidate/Officeholder/Political Committee | Legal Services | Salaries/Wages/Contract Labor | Other (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

| 1 Total pages Schedule F1: | 2 FILER NAME | 3 Filer ID (Ethics Commission Filers) |
|---|---|---|
| 1 Of 7 | SALLY L. Montgomery | |

| 4 Date | 5 Payee name |
|---|---|
| 5/30/2015 | Lewis Brisbois Bisgaard & Smith, LLP |

| 6 Amount ($) | 7 Payee address;  City;  State;  Zip Code |
|---|---|
| $300.00 | 653 West Fifth Street, Ste 4000<br>Los Angeles, Ca. 90071 |

| 8 | (a) Category (See categories listed at the top of this schedule) | (b) Description |
|---|---|---|
| PURPOSE OF EXPENDITURE | Legal Services - media consulting | ☐ Check if travel outside of Texas, complete Schedule T<br>☐ Check if Austin, TX, officeholder living expense |

| 9 Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date | Payee name |
|---|---|
| 4/14/2015 | Dr Delphenium's |

| Amount ($) | Payee address;  City;  State;  Zip Code |
|---|---|
| $103.87 | 5806 W Lovers Lane<br>Dallas, TX 75225 |

| | Category (See categories listed at the top of this schedule) | Description |
|---|---|---|
| PURPOSE OF EXPENDITURE | Gift - Birthday of Politian Supporter | ☐ Check if travel outside of Texas, complete Schedule T<br>☐ Check if Austin, TX, officeholder living expense |

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date | Payee name |
|---|---|
| 5/8/2015 | El Corazon |

| Amount ($) | Payee address;  City;  State;  Zip Code |
|---|---|
| $125.05 | 110 W Davis St.<br>Dallas, TX 75208 |

| | Category (See categories listed at the top of this schedule) | Description |
|---|---|---|
| PURPOSE OF EXPENDITURE | Food/Beverage Expense - Staff lunch | ☐ Check if travel outside of Texas, complete Schedule T<br>☐ Check if Austin, TX, officeholder living expense |

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

### ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

Exhibit C

## POLITICAL EXPENDITURES

### SCHEDULE F

### EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Gift/Awards/Memorials Expense | Salaries/Wages/Contract Labor | Loan Repayment/Reimbursement |
| Accounting/Banking | Legal Services | Solicitation/Fundraising Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Travel In District | Contributions/Donations Made By |
| Event Expense | Polling Expense | Travel Out Of District | Candidate/Officeholder/Political Committee |
| Fees | Printing Expense | Office Overhead/Rental Expense | OTHER (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

| 1 Total pages Schedule F:  16  21 | 2 FILER NAME  _Bobby L Montgomery_ | 3 ACCOUNT # (Ethics Commission Filers) |
|---|---|---|

| 4 Date | 5 Payee name |
|---|---|

| 6 Amount ($)  $3000.00 | 7 Payee address;  City;  State;  Zip Code  901 Main St Ste 4100  Dallas, TX 75202 |
|---|---|

| 8 PURPOSE OF EXPENDITURE | (a) Category (See categories listed at the top of this schedule)  Legal Services | (b) Description (If travel outside of Texas, complete Schedule T)  Medias |
|---|---|---|

| 9 Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date  12/2/13 | Payee name  Carrollton Self Storage |
|---|---|

| Amount ($)  $110.00 | Payee address;  City;  State;  Zip Code  2422 Marsh Lane  Carrollton, TX 75006 |
|---|---|

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule)  Rental Expense | Description (If travel outside of Texas, complete Schedule T)  sign storage |
|---|---|---|

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date  12/8/13 | Payee name  Office Depot |
|---|---|

| Amount ($)  $3111 | Payee address;  City;  State;  Zip Code  3802 Beltline Rd  Addison, TX 75001 |
|---|---|

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule)  Office overhead | Description (If travel outside of Texas, complete Schedule T)  paper, printer |
|---|---|---|

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date  12/9/13 | Payee name  Gray Wisdom |
|---|---|

| Amount ($)  $300.00 | Payee address;  City;  State;  Zip Code  5415 Bunting Way  Dallas, TX 75227 |
|---|---|

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule)  Consulting | Description (If travel outside of Texas, complete Schedule T) |
|---|---|---|

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

### ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

# POLITICAL EXPENDITURES

## SCHEDULE F

### EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Gift/Awards/Memorials Expense | Salaries/Wages/Contract Labor | Loan Repayment/Reimbursement |
| Accounting/Banking | Legal Services | Solicitation/Fundraising Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Travel In District | Contributions/Donations Made By |
| Event Expense | Polling Expense | Travel Out Of District | Candidate/Officeholder/Political Committee |
| Fees | Printing Expense | Office Overhead/Rental Expense | OTHER (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

| 1 Total pages Schedule F: 3 of 4 | 2 FILER NAME  SAUY L. Montgomery | 3 ACCOUNT # (Ethics Commission Filers) |
|---|---|---|

| 4 Date  2/6/14 | 5 Payee name  Office Depot |
|---|---|
| 6 Amount ($)  35.71 | 7 Payee address;    City;    State;    Zip Code  3802 Beltline Rd  Addison, TX 75001 |

| 8 PURPOSE OF EXPENDITURE | (a) Category (See categories listed at the top of this schedule)  Office expense | (b) Description (if travel outside of Texas, complete Schedule T)  Lexmark ink cartridge |
|---|---|---|
| 9 Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |

| Date  2/10/14 | Payee name  Friends of Scouting |
|---|---|
| Amount ($)  250.00 | Payee address;    City;   State;   Zip Code  Circle 10 Council  8605 Harry Hines Blvd.  Dallas, TX 75235 |

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule)  Gifts / Contributions | Description (if travel outside of Texas, complete Schedule T)  BSA |
|---|---|---|
| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |

| Date  2/11/14 | Payee name  Campaign for Darlene Ewing |
|---|---|
| Amount ($)  $100.00 | Payee address;    City:   State:   Zip Code  605 Hwy 80 East  Sunnyvale, TX 75182 |

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule)  Donations | Description (if travel outside of Texas, complete Schedule T) |
|---|---|---|
| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |

| Date  2/14/14 | Payee name  Lewis Brisbois Bisgaard & Smith, LLP |
|---|---|
| Amount ($)  240.00 | Payee address;    City:   State;   Zip Code  221 North Figueroa Street Ste. 1200  Los Angeles, Ca. 90012 |

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule)  Consulting expense | Description (if travel outside of Texas, complete Schedule T)  media |
|---|---|---|
| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |

### ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

# POLITICAL CONTRIBUTIONS
## OTHER THAN PLEDGES OR LOANS (JUDICIAL)

## SCHEDULE A (J)

The instruction Guide explains how to complete this form.

**1** Total pages Schedule A(J): 3 / 16

**2** FILER NAME   Sally L. Montgomery

**3** ACCOUNT # (Ethics Commission Filers)

| 4 Date | 5 Full name of contributor ☐ out-of-state PAC (ID#_____) | 7 Amount of contribution ($) | 8 In-kind contribution description (if applicable) |
|---|---|---|---|
| 9/25/14 | Robert Nussbaum | $125.00 | |
| | 6 Contributor address: City; State; Zip Code 3405 Chaney Lane Plano, TX 75093-7117 | | (If travel outside of Texas, complete Schedule T) |

| 9 Contributor's principal occupation attorney mediator | 10 Contributor's job title |
|---|---|
| 11 Contributor's employer/law firm | 12 Law firm of contributor's spouse (if any) |

13 If contributor is a child, law firm of parent(s) (if any)

| Date | Full name of contributor ☐ out-of-state PAC (ID#_____) | Amount of contribution ($) | In-kind contribution description (if applicable) |
|---|---|---|---|
| 9/25/14 | Eberstein & Witherite, L.L.P. | $1000.00 | |
| | Contributor address; City; State; Zip Code 3100 Monticello Ave Ste 500 Dallas, TX 75205 | | (If travel outside of Texas, complete Schedule T) |

| Contributor's principal occupation attorneys | Contributor's job title |
|---|---|
| Contributor's employer/law firm Eberstein & Witherite, L.L.P. | Law firm of contributor's spouse (if any) |

If contributor is a child, law firm of parent(s) (if any)

| Date | Full name of contributor ☐ out-of-state PAC (ID#_____) | Amount of contribution ($) | In-kind contribution description (if applicable) |
|---|---|---|---|
| 9/25/14 | John G. Browning | 250.00 | |
| | Contributor address; City; State; Zip Code 213 Glenn Ave Rockwall, TX 75087 | | (If travel outside of Texas, complete Schedule T) |

| Contributor's principal occupation attorney | Contributor's job title |
|---|---|
| Contributor's employer/law firm Lewis Brisbois | Law firm of contributor's spouse (if any) |

If contributor is a child, law firm of parent(s) (if any)

ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED.
If contributor is out-of-state PAC, please see instruction guide for additional reporting requirements.

# MONETARY POLITICAL CONTRIBUTIONS (JUDICIAL)

## SCHEDULE A(J)1

| The Instruction Guide explains how to complete this form. | 1 Total pages Schedule A(J)1: 3 / 35 |
|---|---|

**2 FILER NAME** SALLY L. Montgomery

**3 Filer ID (Ethics Commission Filers)**

| 4 Date | 5 Full name of contributor ☐ out-of-state PAC ID#: | 7 Amount of contribution ($) |
|---|---|---|
| 2/27/15 | LAW Office of John M. Lozano, P.C. | $250.00 |
| | 6 Contributor address; City; State; Zip Code 9400 Starlight Rd Dallas, TX 75220-4540 | |

| 8 Contributor's principal occupation attorneys | 9 Contributor's job title |
|---|---|
| 10 Contributor's employer/law firm | 11 Law firm of contributor's spouse (if any) |

12 If contributor is a child, law firm of parent(s) (if any)

| Date | Full name of contributor ☐ out-of-state PAC ID#: | Amount of contribution ($) |
|---|---|---|
| 2/27/15 | Jerry C. Alexander, Esq. | $500.00 |
| | Contributor address; City; State; Zip Code 2500 Renassance Tower Dallas, TX 75270 | |

| Contributor's principal occupation attorney | Contributor's job title |
|---|---|
| Contributor's employer/law firm Passman & Jones | Law firm of contributor's spouse (if any) |

If contributor is a child, law firm of parent(s) (if any)

| Date | Full name of contributor ☐ out-of-state PAC ID#: | Amount of contribution ($) |
|---|---|---|
| 2/27/15 | Passman & Jones | $500.00 |
| | Contributor address; City; State; Zip Code 2500 Renaissance Tower 1201 Elm Street, Dallas, TX 75270 | |

| Contributor's principal occupation attorneys | Contributor's job title |
|---|---|
| Contributor's employer/law firm | Law firm of contributor's spouse (if any) |

If contributor is a child, law firm of parent(s) (if any)

**ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED**
If contributor is out-of-state PAC, please see instruction guide for additional reporting requirements.

# POLITICAL CONTRIBUTIONS
## OTHER THAN PLEDGES OR LOANS (JUDICIAL)

SCHEDULE A (J)

| The INSTRUCTION GUIDE explains how to complete this form. | | | **1** Total pages Schedule A(J) 23 of 72 | |
|---|---|---|---|---|
| **2** FILER NAME  Re-elect Judge Sally Montgomery | | | **3** ACCOUNT # (Ethics Commission Iwen) 33053 | |
| **4** Date | **5** Full name of contributor ☐ out of state PAC | | **7** Amount of contribution (S) | **8** In-kind contribution description(if applicable) |
| 18-13-99 | Passman & Jones  **6** Contributor address.  City. State. Zip Code  2500 Renaissance Tower  1201 Elm St.  Dallas, TX 75270 | | 500.00 | |
| **9** Contributor's principal occupation  attornies | | **10** Contributor's job title | | |
| **11** Contributor's employer/law firm | | **12** Law firm of contributor's spouse (if any) | | |
| **13** If contributor is a child. law firm of parent(s) (if any) | | | | |
| Date | Full name of contributor ☐ out of state PAC | | Amount of contribution (S) | In-kind contribution description(if applicable) |
| 9-14-99 | Perry Miller & Blount  Contributor address.   City  State. Zip Code  3300 Oak Lawn Ave.- Suite 675.  Dallas, TX 75219 | | 250.00 | |
| Contributor's principal occupation  attornies | | Contributor's job title | | |
| Contributor's employer/law firm | | Law firm of contributor's spouse (if any) | | |
| If contributor is a child. law firm of parent(s) (if any) | | | | |
| Date | Full name of contributor ☐ out of state PAC  Vance C. Miller.  Prestonwood Country Club | | Amount of contribution (S) | In-kind contribution description(if applicable) |
| 9-30-99 | Contributor address.   City. State. Zip Code  P.O. Box 796607  Dallas, TX 75379-6607 | | 1,000.00 | |
| Contributor's principal occupation  club owner - | | Contributor's job title | | |
| Contributor's employer/law firm | | Law firm of contributor's spouse (if any) | | |
| If contributor is a child. law firm of parent(s) (if any) | | | | |

**ATTACH ADDITIONAL COPIES OF THIS FORM AS NEEDED**
If contributor is out-of-state PAC, please see instruction guide for additional reporting requirements.

...METRO

Total pages Schedule A(J) ___ 11.

...LER NAME

Re-elect Judge Sally Montgomery                53053

| Date | Full name of contributor | out of state PAC | 7 Amount of contribution ($) | 8 In-kind contribution description(if applicable) |
|---|---|---|---|---|
| 3-5-00 | Frymire, Bill  6 Contributor address. City. State. Zip Code  14445 Tanglewood  Dallas, Tx 75234 | ☑ | 500.00 | |

Contributor's principal occupation: Manufacturers Rep.

10 Contributor's job title:

Contributor's employer/law firm:

12 Law firm of contributor's spouse (if any):

I contributor is a child. law firm of parent(s) (if any)

| Date | Full name of contributor | out of state PAC | Amount of contribution ($) | In-kind contribution description(if applicable) |
|---|---|---|---|---|
| 3-6-00 | Passman and Jones  Contributor address. City State Zip Code  1201 Elm St  2500 Renaissance Tower  Dallas, Tx 75370 | ☐ | 500.00 | |

Contributor's principal occupation: attorney

Contributor's job title:

Contributor's employer/law firm:

Law firm of contributor's spouse (if any):

I contributor is a child. law firm of parent(s) (if any)

| Date | Full name of contributor | out of state PAC | Amount of contribution ($) | In-kind contribution description(if applicable) |
|---|---|---|---|---|
| 3-6-00 | Mrs. F.G. Lundberg  Contributor address. City. State. Zip Code  6211 W. Northwest Hwy #1402  Dallas, Tx 75225 | ☐ | 500.00 | |

Contributor's principal occupation: home maker

Contributor's job title:

Contributor's employer/law firm:

Law firm of contributor's spouse (if any):

I contributor is a child. law firm of parent(s) (if any)

ATTACH ADDITIONAL COPIES OF THIS FORM AS NEEDED

If contributor is out-of-state PAC. please see instruction guide for additional reporting requirements.


## Award Recipent - John Browning
### 2011 Dallas Texas <u>Social Media in the Jury Box</u>



**John G. Browning**
**Lewis Brisbois Bisgaard & Smith, LLP**
**901 Main Street**
**Suite 4100**
**Dallas, Texas 75202**
**(972) 638-8659**
**jbrowning@lbbslaw.com**

John Browning is the managing partner of the Dallas, Texas office of Lewis Brisbois Bisgaard & Smith, LLP, where he handles civil litigation in state and federal courts in areas ranging from employment and intellectual property to commercial cases and defense of products liability, professional liability, media law, and general negligence matters. Mr. Browning has extensive trial, arbitration, and summary judgment experience and has represented companies in a wide variety of industries throughout Texas and on a pro hac vice basis in other jurisdictions. Mr. Browning received his B.A. with general and departmental honors from Rutgers University in 1986, where he was a National Merit Scholar and member of Phi Beta Kappa. He received his J.D. from the University of Texas School of Law in 1989. Some of his honors include being rated "AV," the highest commendation issued by Martindale-Hubbell for legal ability, ethics, and professionalism; selected as a "Super Lawyer" in the field of Civil Ligation Defense (2005 ¬2010, Law & Politics); inducted as a Charter Fellow of the Litigation Counsel of America, a trial lawyer honorary society limited to 3,500 Fellows, representing less than one-half of one percent of American lawyers; and elected to the American Law Institute (one of only seven lawyers in Texas elected in 2009). Mr. Browning is a noted legal writer, and is a frequent contributor to national and regional legal publications on a wide variety of subjects. His weekly syndicated newspaper column "Legally Speaking" has garnered numerous journalism awards. His book, The Lawyer's Guide to Social Networking: Understanding Social Media's Impact on the Law, was published in December 2010 by Thomson Reuters\West Publishing. He is a member of the Texas Association of Defense Counsel, the International Association of Defense Counsel, and also serves as an adjunct professor at SMU Dedman School of Law, where he teaches the course "Social Media and the Law." He is the author of numerous articles on social media-related topics, and has been quoted as a national authority on the subject by the New York Times, TIME Magazine, Salon.com, Inside Counsel Magazine, Law 360, and other publications.


Exhibit D

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and PARKS REALTY FIRM, LLC | § § § | IN THE COUNTY COURT |
| V. | § § | AT LAW NO. 3 |
| JOSHUA CAMPBELL, ET. AL. | § | DALLAS COUNTY, TEXAS |

## MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFFS

Jason M. Berent and Berent Law Firm, PLLC ("Movants") file this *Motion to Withdraw as Counsel for Plaintiffs* and would respectfully show:

### I. Why This Motion Should be Granted

This *Motion to Withdraw as Counsel for Plaintiffs* (the "Motion") is filed by Jason M. Berent and the Berent Law Firm, PLLC (collectively the "Movants") should be granted because it is supported by good cause. Among other things, Movants are unable to communicate with Plaintiffs in a manner consistent with good attorney-client relations.

### II. Plaintiffs' Consent to Motion

Plaintiffs consent to this Motion. To this end, Plaintiffs terminated the Movants on June 27, 2016. At that time, Plaintiffs were advised of any applicable deadlines in this case and strongly encouraged to furnish these to their new counsel. It has come to the attention of the Movants that Plaintiffs have communicated and sought to communicate with counsel for the other parties (and at times their respective clients), and have advised other counsel in this case that they are no longer represented by the Movants. Plaintiffs have also filed a Notice of Appeal of their own volition.

### III. Plaintiffs' Acceptance of Settlement Agreement and Docket Reflects Case is Closed

Plaintiffs recently accepted an offer of settlement made by the Defendants in open court. The Court's online docket has subsequently reflected that the status of this case is "closed."


Exhibit E

Plaintiffs were advised of any applicable deadlines by Movants on multiple occasions and advised to immediately pass these on to their new counsel.

## IV. Contact Information for Plaintiffs

Plaintiffs are now representing themselves in a pro se capacity. The contact information for Plaintiffs is that which is evidenced on their recently filed Notice of Appeal:

Tonya Parks
1401 Bristlewood Dr.
McKinney, Texas 75070
Phone: 214-980-8816
E-Mail: tonyaparks@parksrealtyfirm.com

## V. Relief Requested

Movants ask that the Court enter an Order granting the withdrawal of Jason M. Berent and the Berent Law Firm of and from its representation of Plaintiffs, formally discharging them of any and all duties and responsibilities owed to the Plaintiffs, effective June 27, 2016, the date on which they were terminated by Plaintiffs, and: (1) directing the Clerk of the Court to remove the Movants as counsel of record for the Plaintiffs on the Court's docket and in all other applicable places and add Tonya Parks as the pro se representative in Movants' place at the address she provided in her Notice of Appeal; (2) directing the Clerk of the Court to forward any future correspondence, communications, pleadings, discovery, notices, orders, and any and all other matters from the Court to Tonya Parks, the pro se representative for the Plaintiffs, at her address above; and (3) directing all counsel for all parties to forward any future correspondence, communications, pleadings, discovery, notices, orders, and any and all other matters to Tonya Parks, the pro se representative for the Plaintiffs, at her address above.

WHEREFORE, PREMISES CONSIDERED, Movants ask that the Court enter an Order granting the withdrawal of Jason M. Berent and the Berent Law Firm of and from its

representation of Plaintiffs, formally discharging them of any and all duties and responsibilities owed to the Plaintiffs, effective June 27, 2016, the date on which they were terminated by Plaintiffs, and: (1) directing the Clerk of the Court to remove the Movants as counsel of record for the Plaintiffs on the Court's docket and in all other applicable places and add Tonya Parks as the pro se representative in Movants' place at the address she provided in her Notice of Appeal; (2) directing the Clerk. of the Court to forward any future correspondence, communications, pleadings, discovery, notices, orders, and any and all other matters from the Court to Tonya Parks, the pro se representative for the Plaintiffs, at her address above; and (3) directing all counsel for all parties to forward any future correspondence, communications, pleadings, discovery, notices, orders, and any and all other matters to Tonya Parks, the pro se representative for the Plaintiffs, at her address above. Movants also request any and all other relief to which they may be entitled.

Respectfully submitted,

**BERENT LAW FIRM, PLLC**

JASON M. BERENT
Texas Bar No. 24027143
5600 Tennyson Parkway, Suite 310
Plano, Texas 75024
(214) 692-5800
FAX NO. (214) 692-5806
jberent@berentlawfirm.com

**FOR MOVANTS**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that a conference was conducted with all counsel of record and the Plaintiffs and this Motion is not opposed.

JASON M. BERENT

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was duly served on all counsel of record and the Plaintiffs via electronic service on July 7, 2016 in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

JASON M. BERENT

FILED
6/9/2016 5:51:02 PM
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and | § | IN THE COUNTY COURT |
| PARKS REALTY FIRM, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| AFFILIATED BANK, | § | AT LAW NO. 3 |
| AFFILIATED BANK FSB, | § | |
| AFFILIATED BANK FSB, INC. | § | |
| BANCAFFILIATED, INC., | § | |
| JOSHUA CAMPBELL and | § | |
| KATHERINE CAMPBELL | § | DALLAS COUNTY, TEXAS |

## DEFENDANT AFFILIATED BANK'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL AND ALTERNATIVE MOTION TO VACATE, MODIFY, CORRECT OR REFORM JUDGMENT

### TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Affiliated Bank ("Affiliated") makes this its Response in Opposition to Plaintiffs' Motion for New Trial and Alternative Motion to Vacate, Modify, Correct or Reform Judgment and in support of same would show as follows:

### I.    Affiliated Joins In and Adopts Its Co-Defendants' Response

Affiliated joins in and adopts Defendants Joshua Campbell's and Katherine Campbell's Response in Opposition to Plaintiffs' Motion for New Trial and Alternative Motion to Vacate, Modify, Correct, or Reform Judgment. This specifically includes not only the Response itself and the relief requested therein, but also the evidentiary objections raised as well.

### II.    Plaintiffs' Motion Should Be Denied Because It Violates This Court's Express Instructions

Following the hearing on the Motion to Dismiss, the Court signed an Order granting the Motion to Dismiss on March 24, 2016. A true and correct copy of this Order is attached hereto as Exhibit 1. On the day that the Order was signed, and after receiving a copy of the Proposed Order that was submitted, Plaintiffs' counsel Jason Berent contacted the Court and a conference

Exhibit F

was held involving Judge Montgomery, Mr. Berent, and defense counsel John Browning. After being informed that the Court had already signed the Order, Mr. Berent indicated his plans to file a Motion for New Trial. Judge Montgomery advised Mr. Berent that he was free to file whatever he wanted but that under no circumstances would she entertain any Motion for New Trial that did not specifically dismiss all causes of actions against Affiliated Bank since "the bank did nothing wrong here." Despite this clear and unequivocal directive, when Mr. Berent filed Plaintiffs' Motion for New Trial he specifically — and incorrectly— claimed that Affliated should not have been dismissed and sought to reinstate Plaintiffs' flimsy and contrived causes of action against Affiliated. Plaintiff's counsel embarked upon this ill-advised course, flagrantly ignoring the Court's instruction. For this reason alone, Plaintiffs' Motion as to Affiliated should be denied.

### III. Plaintiffs' Motion Should Be Denied Because the Evidence At the Motion to Dismiss Hearing Clearly Demonstrated the Absence of Any Grounds for a Case Against Affiliated

The undisputed evidence in this case – including the deposition and affidavit testimony of Defendant Joshua Campbell filed by the Plaintiffs themselves – is that the internet posting made the basis of Plaintiffs' lawsuit was not made by Joshua Campbell in this course and scope of his employment with Affiliated Bank. In fact, the evidence is clear that when Mr. Campbell made the post in question on September 3, 2014, he did so outside of working hours, on his own personal time, from his home computer, and from his home address. Campbell testified that he made the post at "approximately 3 a.m. give or take half an hour" (See Exhibit 2, Deposition of Joshua Campbell, p. 7, lines 5-9). He also testified that "the post came from my IP address, my home IP address" (Deposition of Joshua Campbell, p. 21, lines 5-7), and that "at the time that the

post was written, "I was not working for Affiliated....this was my personal time." (Deposition of Joshua Campbell, p. 21, lines 22-25).

The uncontroverted evidence also clearly demonstrates that Affiliated not only had no knowledge of the post Campbell made in his personal time and using his personal resources, but that when Campbell was initially questioned about the post he lied to the bank and denied making the post (Deposition of Joshua Campbell, p. 81, lines 8-10). Moreover, the undisputed evidence further shows that shortly after the truth was discovered – that Joshua Campbell had indeed made the post and that it originated from his home IP address – Affiliated terminated Campbell (Deposition of Joshua Campbell, p. 21, lines 1-6). In other words, the uncontroverted evidence not only indicates that Defendant Campbell's post was made outside of work hours, from Campbell's house and home computer, and without any way for the bank to know about it, but that once it was established that Campbell had indeed authored the post, Affiliated Bank terminated his employment.

Plaintiffs' contend that Affiliated Bank should not have been dismissed, since it "did not have any Motion pending, dispositive or otherwise, at the time the Judgment was signed." (Plaintiffs' Motion for New Trial, p.7) However, Plaintiffs' counsel ignores – at his peril – the plain language of the Texas Citizens Participation Act itself. First, Affiliated could not have filed an independent Motion for Summary Judgment because of the statute's provisions suspending "all discovery in the legal action" and staying all proceedings pending the hearing on the Motion to Dismiss. TEX. CIV. PRAC. & REM. CODE § 27.003(c).

Second, and even more importantly, under the plain wording of the statute an affirmative ruling on a defendant's anti-SLAPP Motion to Dismiss requires dismissal of the "legal action" in its entirety. TEX. CIV. PRAC. & REM. CODE § 27.005(b)(c). The statute does not limit the

dismissal to only certain causes of action, or even only to causes of action based on speech rights; it mandates the dismissal of the case itself if sought by the movant. Legal scholars and commentators have noted that the statute's scope and breadth "could certainly be interpreted by a trial court to halt discovery and require dismissal of even non-communication claims."[1] For this reason, Plaintiffs' lawyers bringing a lawsuit alleging a mix of theories who encounter an Anti-SLAPP Motion to Dismiss in which "a movant may very well persuade the trial court to dismiss the entire lawsuit" are counseled "to sever certain claims after the filing of a Chapter 27 Motion to Dismiss to preserve them and continue with discovery."[2]

Here however, Plaintiffs' counsel chose not to sever his claims against Affiliated, and he did so at his own peril. Contrary to the contention of Plaintiffs' counsel that counsel for Affiliated "simply stood up during the middle of the hearing" and "provided no legal authority" for the proposition that a Chapter 27 Motion to Dismiss applied to the entire case and to all causes of action, counsel for Affiliated referred the Court not only to the plain language of the Anti-SLAPP statute itself supporting his argument, but also alluded to how the statute had been interpreted. As previously noted, most plaintiff's lawyers who have bothered to read the Texas Citizens Participation Act are well-advised to consider severing and preserving their non-speech causes of action. Jason Berent, however, is not most plaintiffs' lawyers. He chose to keep all of his eggs in the same poorly-woven basket, despite knowing there was no basis for Plaintiffs' claims against Affiliated Bank. In this instance, he did not choose wisely. The Court's Order dismissing the case in its entirety, including the claims against Affiliated Bank, should stand and not be rescinded, voided, vacated, or modified in any way.

## IV.    The Court's Award of Attorney's Fee Was Proper

[1] Mark C. Walker, "The Texas Anti-SLAPP Law," State Bar of Texas Business Disputes CLE Course, Chapter 9, p. 32 (September 10-11, 2015)
[2] Id.

Plaintiffs claim in their Motion for New Trial that attorney's fees should not have been awarded, and criticizes defense counsel for only providing the Court (at the Court's invitation) with oral testimony as to the estimated fees and the reasonableness and necessity of these fees. Counsel for Affiliated not only provided the Court with an estimated amount during the hearing, but he also discussed the nature of the work performed by himself and co-counsel Jerry Alexander (who attended the hearing as well on behalf of Affiliated) and offered his uncontroverted opinion as to the reasonableness and necessity of these fees based on his 26 years of experience litigating cases in Dallas County. Both defense counsel later provided the Court with more formal sworn affidavit testimony going into greater detail regarding the fees incurred, their reasonableness, and necessity.

In his attempt at a controverting affidavit on attorney's fees, Plaintiffs' counsel states that it is his opinion "that the blank in fees incurred and charged to date in this matter are very reasonable." In other words, in sloppily, trying to prove up his own legal fees, Plaintiffs' counsel can't even be bothered to insert and reference an actual amount. However, he has no problem criticizing Affiliated's attorney's fees as excessive. While Mr. Berent acknowledges only a portion of the work done by Affiliated's counsel, he blithely overlooks much of the attorney's fees incurred by Affiliated due to Plaintiffs' counsel's own poor choices. These include having to answer for and represent unrelated banking entities that were sued by Plaintiffs' counsel even though they never employed the Campbells. Defense counsel repeatedly asked Plaintiffs' counsel to voluntarily dismiss these improper parties, and even provided him with evidence supporting their non-relationship. Defense counsel even drafted and sent Plaintiffs' counsel a Motion for Voluntary Nonsuit; yet it wasn't until he was shamed in open court over his failure to respond that Plaintiffs' counsel finally nonsuited all banking defendants other than Affiliated Bank. For

examples like this, and for wasting the parties' time with his tardiness in even appearing for the Motion to Dismiss hearing, Plaintiff's counsel is in no position to quibble with the amount, the reasonableness, or the necessity of the legal fees incurred by Affiliated Bank and awarded by this Court. Moreover, his conclusory statements about the Plaintiffs' costs in pursuing "John Doe" litigation are completely without foundation; he should have obtained an affidavit from the lawyers who were actually involved in that suit.

## V.    Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' Motion for New Trial, should sustain the evidentiary objections made by the Campbell Defendants, and should strike Plaintiffs' evidence.

Respectfully submitted,

**PASSMAN & JONES. P.C.**

By: _____

Jerry C. Alexander
Texas State Bar No. 00993500
alexanderj@passmanjones.com
Christopher A. Robison
Texas State Bar No. 24035720
robisonc@passmanjones.com
John G. Browning
Texas State Bar No. 03223050
browning@passmanjones.com
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

**ATTORNEYS FOR DEFENDANT
AFFILIATED BANK**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 9th day of June, 2016, a true and correct copy of the foregoing was served on all counsel as follows:

Jason M. Berent
BERENT LAW FIRM, PLLC
5600 Tennyson Parkway, Suite 310
Plano, TX 75024
*Counsel for Plaintiffs, Tonya Parks and Parks Realty Firm, LLC*

jberent@berentlawfirm.com

Christopher P. Hansen
Michael A. Holmes
HERMES LAW, P.C.
2001 N. Lamar Street, Suite 450
Dallas, TX 75202
*Counsel for Defendants,*
*Joshua and Katherine Campbell*

chris@hermes-law.com
michael@hermes-law.com

John G. Browning

# OFFICIAL RECEIPT
## DALLAS COUNTY CLERK - CIVIL RECEIPT JOHN F. WARREN, COUNTY CLERK

Payor
PARKS, TONYA

Receipt No.
**CV-2016-08758**

Transaction Date
07/22/2016

| Description | Amount Paid |
| --- | --- |

PARKS, TONYA
    CC-15-04540-C
    TONYA PARKS, PARKS REALTY FIRM, LLC vs.AFFILIATED BANK, AFFILIATED BANK FSB, INC.,
    AFFILIATED BANK FSB.et al

| | Amount |
| --- | --- |
| CLERK RECORDS | 313.47 |
| COPIES | 62.53 |
| SUBTOTAL | 376.00 |

Remaining Balance Due: $75.00

| PAYMENT TOTAL | 376.00 |
| --- | --- |

| | |
| --- | --- |
| CASH Tendered | 376.00 |
| Total Tendered | 376.00 |
| Change | 0.00 |

| 07/22/2016 | Cashier | Audit |
| --- | --- | --- |
| 01:48 PM | Station CCAE | 58564435 |

## OFFICIAL RECEIPT


Exhibit G

# APPENDIX 4

ACCEPTEC
05-16-00784-C\
FIFTH COURT OF APPEALS
DALLAS, TEXA<
8/15/2016 12:25:13 PN
LISA MAT<
CLERK

# Park Realty Firm, LLC

**214-980-8816**

tonyaparks@parksrealtyfirm.com

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

8/15/2016 12:25:13 PM

LISA MATZ
Clerk
August 15, 2016

Tonya Parks
214-980-8816
tonyaparks@parksrealtyfirm.com

Lisa Matz, Clerk
Fifth District Court of Appeals
600 Commerce Street. Suite 200
Dallas, TX 752021
214-712-3450

RE:     Cause No. 05-16-00784-CV
        Tonya Parks and Parks Realty Firm, LLC v. Affiliated Bank, Affiliated Bank FSB, Affiliated
        Bank FSB, Inc., BancAffiliated, Inc., Joshua Campbell and Katherine Campbell

Dear Ms. Matz:

I am the Appellant in the above-styled and number cause. My letter to you is intended to point out certain facts pertinent to the Court's consideration.

I have recently had my father do an open record request attached hereto (Exhibit A) for all of Affiliated Banks entities. I did ask my previous Lawyer Jason Berent to request these multiple times to verify what John Browning was stating, but he did not, so this is why I have just recently done this request because I am now pro se and can handle investigations on my own. From those request that have just recently come in, I have found some information that would seem suspicious in regards to the information stated by John Browning and Jerry Alexander have entered into the court filings and have said in open court to Judge Sally Montgomery.

I am writing to bring this to your attention about Affiliated Bank FSB and BancAffiliated Inc. Per the Defendant Affiliated Bank FSB and BancAffiliated - Original Answer, Verified Denial and Affirmative Defenses to Plaintiff's' Second Amended Petition entered into Court on October 16, 2016 attached hereto (Exhibit B).

Affiliated Bank FSB states that Joshua and Katherine Campbell never worked for Affiliated Bank FSB and Affiliated Bank FSB is no longer in existence. Also I have attached hereto in (Exhibit A) an Affidavit present by John Browning for David Gregg stating that Affiliated Bank FSB ceased transacting business on May 25, 2001.

I would like to present in attached hereto (Exhibit C & E) – you will see that Affiliated Bank FSB tax # 17516300260 is:
1. Owned 100% by BancAffiliated
2. Affiliated Bank has done filings for years 2006, 2007, 2012, 2013, 2014 and have added 13-14 new members every year of those filings.

3. Kerri B. White and Kimberly C. Vincent were the individuals within Affiliated Bank FSB that handled my complaint when I reported the Campbell's in September 2014.
4. Attached hereto (Exhibit F page 23 line 20-22) the deposition of Katherine Campbell on March 11, 2016 stating she worked for Affiliated Bank FSB then changed the name once the other Bank's Lawyers made an "ugh" sound of disagreement.
5. Affiliated Bank and Affiliated Bank FSB have the same tax #17516300260 or drop the 0 at the end.

I would like to also present in attached hereto (Exhibit C & E) – you will see that BancAffiliated tax # 32003194399 is:
1. Owed 100% by Affiliated Bank that has the same tax number as Affiliated FSB
2. Has some of the same members

I would also like to add that in open record at the first hearing for the Motion to Dismiss on March 21, 2016 attached hereto (Exhibit G page 13 line 4 to page 15 line 14) John Browning stating that the Campbell's were not employees of certain entities and some were not in business anymore.

In regards to all the conflict of interest I have ran up against everywhere I have tried to get justice within the court, mediation and Affiliated Bank's Lawyers not disclosing to me that Affiliated Bank filed an insurance claim January 2015 in which I have recently spoken with the adjuster Michael Moore with Chubb's and he stated to me and my father that Chubb's would be paying the lawyers legal fee as their fee for their "right to defend".

I would like to state that I feel these additional findings would be considered suspicious and I wanted you to have this information as soon as possible while you are deciding on my Notice of Appeal.

I am also attached hereto (Exhibit H page 32 line 15 – page 35 line 7) the deposition of Joshua Campbell stating Affiliated Bank had appointed his lawyers.

One more thing that I would like to add that I did not put in my letter I submitted to you on July 25, 2016 was that Judge Sally Montgomery tried to hold back me from ordering my transcripts after the hearing on March 22, 2016. I called several times trying to get the transcripts so finally after several attempts I spoke with Danny which stated that Judge Sally Montgomery requested him to tell me that I had to go through my attorney to get the transcript which would cause an additional burden for legal fees. Also Mr. Berent did not get them timely per my request so I called the Ethics Committee and they advised me I should be able to get them without using my attorney. I expressed this to Danny and was able to speak Janet Wright to start the process of retrieving my transcripts on my own.

I pray that you will review these documents and send them to the 5th Court of Appeal so that I can continue my trial with all the entities necessary to receive damages. It really does seem suspicious that the Passman & Jones Lawyers would say they are no longer in existence when they have had consist filing and have added 13-14 members every year.

Best Regards,

Tonya Parks
Pro Se
214-980-8816

# AffinityGibsonGroupe' / Justice

PHONE. 817-989-2006                                    FAX. 817-989-2008

August 04, 2016

Open Records Division
Comptroller of Public Account
P.O. Box 13526
Austin, Texas 78711-3528
VIA E-mail open.records@cpa.state.tx.us

In Reference To: The Freedom of Information Act. 5U.S.C. 552

Subject Matter: Request for Records, Affiliated Bank FSB, 2626 W. Pleasant Ridge Rd. Arlington, TX 76015-4526, Texas Taxpayer Number 17516300260 and BancAffiliated Inc. 2326 W. Pleasant Ridge Rd Arlington, TX 76015-4526, Texas Taxpayer Number 32003194399, Affiliated Bank Mortgage known as Affiliated Bank FSB DB/a Affiliated Bank Mortgage Texas Taxpayer No. unknown, Affiliated Bank Texas Taxpayer No. 32044597618 Zip Code 76015 and Affiliated Bank Inc.

Subject Jurisdiction: Suspicious Activity, Conspicuous Unlawful Business Practices.

Bennie R. Gibson
7200 Old Mill Run
Fort Worth, TX 76133

---

Dear Custodian

This letter is a request for the following records, under the Texas Open Records Law (Texas Government Code Chapter 552 Subchapter A. General Provision Sec. 552.001).

Please be aware that the Open Records Law defines "record" to include information that is maintain on paper as well as electronically, such as data files and unprinted emails.

Please also be aware that the Open Record Law shall be construed in every instance with presumption of complete public access general is contrary to public interest and only in exceptional cases can access be denied. If you deny my request, the law requires you to do so in writing and state what part of the law you believe entitles you to deny my request

The Open Records Law states that you may charge for "the actual necessary and direct cost of locating records, if this exceeds $50, and for photocopies. The Texas Department of Justice advises that copying fees under the Open Records Law should be around 15 cents per page and that anything in excess of 25 cents may be suspect.



**AGG'**

www.affinitygibsongroupejustice.us                    Email: bennie.gibson@affinitygroupe.us

**EXHIBIT A**

*Page 2)*

The Texas Public Information Act require that you "promptly produce" the requested record unless; within 10 days you have sought an Attorney General's opinion. If you expect a significant delay in responding to this request, please contact me in writing with information about when I might expect copies or the ability to inspect the requested records.

Per affidavit of David Gragg Senior Vice President of Affiliated Bank filed in the Dallas County Court at Law No. 3, Dallas County Texas Cause No. CC-15-04540-C "who" being duly sworn, under oath states (1) Affiliated Bank FSB Inc. never existed (2) Affiliated Bank FSB a mutual federal saving Bank cease transacting business on May 25, 2001.

Defendant Affiliated Bank Inc. General and Verified Denial submitted and filed in court records by Jerry C. Alexander Texas State Bar No. 00993500 is inconsistence with the Affidavit of David Gragg. This pleading states that (1) Affiliated Bank Inc. is no longer in existence (2) it was not in existence at the time of the events alleged in Plaintiff's Original Petition.

Verification; David Gragg subscribed and sworn states that he is the authorized corporate representative of Affiliated Bank Inc. and as such am capable of making this verification. He have read the forgoing Defendant's Original Answer and Verified Denials. The Facts stated in said Verified Denial are within his personal knowledge true and correct.

Per Franchise Tax Account Status as of: 07/14/ 2016 05:39:35 PM show's that Affiliated Bank FSB Texas Taxpayer No. 17516300260 right to transact business is active and effective Secretary of State registration date is 06/01/1998.

Requested Records:

1). Form 05-102 Texas franchise tax public information report filed in behalf of Affiliated Bank FSB, Texas Taxpayer No.17516300260, BancAffiliated Inc. Texas Taxpayer No. 32003194399, Affiliated Bank Texas Taxpayer No. 32044597310 Zip Code 76015, Affiliated Ban Inc2 for years 1998 through 2016. Please be aware that not a one of Affiliated Bank entities have their Texas Taxpayer Number for public view.

2). Please identify all Officers/Directors of Affiliated Bank FSB Texas Taxpayer Number 17516300260

If you are not the records custodian for this information, please forward this request to the appropriate person. Also, please let know if I can clarify or refine this request.

Thank you for time and consideration.

Sincerely

BENNIE R. GIBSON
7200 Old Mill Run
Fort Worth TX 76133
(817) 989-2006 *Office*
(817) 989-2008 *Fax*
(817) 688-0652 *Cell*

*Page (3*

cc:

affinitygibsongroupejustice.us

Lanier, Hightower, and Barclay



**Passman & Jones**

A Professional Corporation
ATTORNEYS AT LAW
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2599
www.passmanjones.com

John G. Browning
214-742-2121 Ext. 3512
browningj@passmanjones.com
Fax: 214-748-7949

December 7, 2015

Jason M. Berent                                     [Via email: jberent@berentlawfirm.com]
Berent Law Firm, PLLC
5600 Tennyson Parkway, Suite 310
Plano, TX  75024

> RE:   Cause No. CC-15-04540-C; *Tonya Parks and Parks Realty Firm, LLC v. Affiliated Bank,*
> *Affiliated Bank FSB, Affiliated Bank FSB, Inc., BancAffiliated, Inc., Joshua Campbell and*
> *Katherine Campbell*; in the County Court at Law No. 3, Dallas County, Texas
> Our File No. 17649-065

Dear Jason:

Per our conversation on November 18, 2015, I have attached an Affidavit of David Gragg confirming that Joshua Campbell and Katherine Campbell were never employed by Affiliated Bank FSB, Affiliated Bank FSB, Inc., or BancAffiliated, Inc. I have also attached a draft Plaintiffs' Motion for Voluntary Partial Nonsuit (without prejudice) as to these three (3) Defendants, along with a proposed Order. I request that you sign and file this Motion and Order.

Finally, this will confirm my representation to you that, should credible evidence in discovery refute Mr. Gragg's sworn testimony that Mr. and Mrs. Campbell were not employed by Affiliated Bank FSB, Affiliated Bank FSB, Inc., or BancAffiliated, Inc. and if you should determine it necessary as a result to bring these three (3) entities back in to the lawsuit as Defendants, neither any if these three (3) entities nor Defendant Affiliated Bank will assert the defense that Plaintiffs' claims against these three (3) entities are time-barred.

Very truly yours,

John G. Browning

JGB/RGC/ae

Enclosures

383214

| | | |
|---|---|---|
| **TONYA PARKS and** | § | **IN THE COUNTY COURT** |
| **PARKS REALTY FIRM, LLC** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AFFILIATED BANK,** | § | **AT LAW NO. 3** |
| **AFFILIATED BANK FSB,** | § | |
| **AFFILIATED BANK FSB, INC.** | § | |
| **BANCAFFILIATED, INC.,** | § | |
| **JOSHUA CAMPBELL and** | § | |
| **KATHERINE CAMPBELL** | § | **DALLAS COUNTY, TEXAS** |

<u>**AFFIDAVIT OF DAVID GRAGG**</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared David Gragg who, being by me, duly sworn, on oath stated:

1. "My name is David Gragg. I am above the age of eighteen (18) years old. I am of sound mind, capable of making this Affidavit, fully competent to testify to the matters stated herein and have personal knowledge of each of the matters stated herein. All of the facts and statements contained herein are true and correct and of my personal knowledge."

2. "I am employed as a Senior Vice President of Affiliated Bank. I have been employed in this capacity for 3 years. As Senior Vice President, I have knowledge of the personnel who are currently employed and who have been employed with Affiliated Bank. Joshua Campbell was employed with Affiliated Bank from February 6, 2013 to June 24, 2015. Katherine Campbell was employed with Affiliated Bank from January17, 2014 to June 24, 2015.

Neither Joshua Campbell nor Katherine Campbell was ever employed with BancAffiliated, Inc or Affiliated Bank, FSB, a mutual federal savings bank."

3. "Affiliated Bank FSB, Inc. never existed."

4. "Affiliated Bank, FSB, a mutual federal savings Bank ceased transacting business on May 25, 2001. "

"FURTHER AFFIANT SAYETH NOT."

_____
David Gragg

STATE OF TEXAS      §
                          §
COUNTY OF DALLAS     §

SUBSCRIBED AND SWORN TO BEFORE ME by the said David Gragg on the 7th day of December, 2015, to certify which witness my hand and official seal.

BRITTANY N GOMEZ
My Commission Expires
April 25, 2017

Notary Public, State of Texas

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| **TONYA PARKS and** | § | **IN THE COUNTY COURT** |
| **PARKS REALTY FIRM, LLC** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **AFFILIATED BANK,** | § | **AT LAW NO. 3** |
| **AFFILIATED BANK FSB,** | § | |
| **AFFILIATED BANK FSB, INC.,** | § | |
| **BANCAFFILIATED, INC.,** | § | |
| **JOSHUA CAMPBELL and** | § | |
| **KATHERINE CAMPBELL** | § | **DALLAS COUNTY, TEXAS** |

## DEFENDANT AFFILIATED BANK FSB, INC.'S ORIGINAL ANSWER AND VERIFIED DENIAL TO PLAINTIFFS' SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Affiliated Bank FSB, Inc., and files this, its Original Answer to Plaintiffs' Second Amended Petition, and by way of answer would respectfully show the Court the following:

### I.

### GENERAL DENIAL

Defendant Affiliated Bank FSB, Inc. (hereinafter *"Defendant"*) generally denies each and every, all and singular, of the allegations contained in Plaintiffs' Second Amended Petition, and states that such allegations are untrue in whole and/or in part; consequently, Defendant hereby exercises its legal right to demand strict proof thereof.

### II.

### VERIFIED DENIAL

A.     Pursuant to Texas Rule of Civil Procedure 93, Defendant Affiliated Bank FSB, Inc. hereby denies it is liable in the capacity in which it has been sued since Joshua Campbell and Katherine Campbell never worked for Affiliated Bank FSB, Inc.

---

**DEFENDANT AFFILIATED BANK FSB, INC.'S GENERAL AND VERIFIED DENIAL**          **PAGE 1**
380799

B. Pursuant to Texas Rule of Civil Procedure 93, Defendant Affiliated Bank FSB, Inc. is not liable in the capacity in which it is sued because:

1. It is no longer in existence;

2. It was not in existence at the time of the events alleged in Plaintiff's Original Petition.

## III.

## PRAYER

WHEREFORE, Defendant respectfully requests upon final judgment, that Plaintiffs take nothing, that Defendant be awarded its costs and attorney's fees, and that Defendant be granted such other and further relief, both at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

PASSMAN & JONES
A PROFESSIONAL CORPORATION

By: _____
Jerry C. Alexander
Texas State Bar No. 00993500
alexanderj@passmanjones.com
Christopher A. Robison
Texas State Bar No. 24035720
robisonc@passmanjones.com
John G. Browning
Texas State Bar No. 03223050
browning@passmanjones.com
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

---

DEFENDANT AFFILIATED BANK FSB, INC.'S GENERAL AND VERIFIED DENIAL **PAGE 2**
380799

Gregory J. McCarthy
Texas State Bar No. 13367500
gregmccarthy@sbcglobal.net
Attorney ◆ Mediator
2222 Patterson Place
Arlington, TX 76012
(214) 448-7154 Telephone
(817) 261-1688 Facsimile

ATTORNEYS FOR DEFENDANT
AFFILIATED BANK

## CERTIFICATE OF SERVICE

I certify that on the 16th day of October, 2015, a true and correct copy of the above and

foregoing was delivered to the counsel set forth below, in accordance with the Texas Rules of

Civil Procedure:

Jason M. Berent
BERENT LAW FIRM, PLLC
5600 Tennyson Parkway, Suite 310
Plano, TX  75024

Jerry C. Alexander

# VERIFICATION

STATE OF TEXAS      §
                       §
COUNTY OF _Tarrant_  §

1.     "My name is David Gragg. I am the authorized corporate representative of Affiliated Bank FSB, Inc. and as such am capable of making this verification. I have read the foregoing Defendant's Original Answer and Verified Denials. The facts stated in said Verified Denials are within my personal knowledge true and correct."

By: David Gragg, Senior Vice President

SUBSCRIBED AND SWORN TO BEFORE ME, this ___14th___ day of ___October___ 2015, to certify which witness my hand and seal of office.

Notary Public in and/for the
State of Texas



ALEXANDRIA RANGEL
MY COMMISSION EXPIRES
July 7, 2018



# Franchise Tax Account Status

### As of: 07/14/2016 05:39:35 PM

## This Page is Not Sufficient for Filings with the Secretary of State

---

### AFFILIATED BANK FSB

| | |
|---|---|
| Texas Taxpayer Number | 17516300260 |
| Mailing Address | 2326 W PLEASANT RIDGE RD ARLINGTON, TX 76015-4526 |
| Right to Transact Business in Texas | ACTIVE |
| Domicile State | TX |
| Effective SOS Registration Date | 06/01/1998 |
| Texas SOS File Number | 0003488507 |
| Registered Agent Name | Not on file |
| Registered Office Street Address | |

 Window on State Government          Glenn Hegar   Texas Comptroller of Public Accounts



<u>Franchise Tax Account Status</u>
<u>Taxable Entity Search</u>

### Officer/Director Information Not on File for:

### AFFILIATED BANK FSB

Information about corporate officers and directors is specifically designated as public information by Texas Tax Code 171.203. There is no comparable provision making public the information about the principals of other entity types. It is our interpretation of Texas Tax Code 171.206 that ownership information reported by other entity types (associations, partnerships, trusts) as part of their franchise tax filing is confidential and not subject to public disclosure. Accordingly, that information is not available on this site.

Corporate officer and director information is provided from the Secretary of State. If you receive a message that officer and director information for a corporation or limited liability company is not available, you may order a copy of a Public Information Report from open.records@cpa.state.tx.us or by mail at Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711. Copies of Ownership Information Reports are not subject to public disclosure.

Call our Business Information Line at (800) 252-1386 if you need assistance.

texas.gov    Statewide Search from the Texas State Library    State Link Policy    Texas Homeland Security

**Glenn Hegar,** Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy    Accessibility Policy    Link Policy    Public Information Act    Compact with Texans



# Franchise Tax Account Status

As of: 07/27/2016 07:36:43 AM

## This Page is Not Sufficient for Filings with the Secretary of State

| | BANCAFFILIATED, INC. |
|---|---|
| Texas Taxpayer Number | 32003194399 |
| Mailing Address | PO BOX 152137<br>ARLINGTON, TX 76015-8137 |
| Right to Transact Business in Texas | ACTIVE |
| State of Formation | MD |
| Effective SOS Registration Date | 02/21/2001 |
| Texas SOS File Number | 0013663406 |
| Registered Agent Name | GARRY J GRAHAM |
| Registered Office Street Address | 500 HARWOOD RD.<br>BEDFORD, TX 76021 |





Taxable Entity Search Results
Taxable Entity Search

# Officers and Directors

### BANCAFFILIATED, INC.
### Report Year: 2015

Return to: Taxable Entity Search Results

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.state.tx.us or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| *DIRECTOR* | **DON STONE** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *DIRECTOR* | **ERIC NELSON** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *DIRECTOR* | **GARRY GRAHAM** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *CHIEF EXEC* | **GARRY GRAHAM** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *DIRECTOR* | **JIM JENNINGS** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *DIRECTOR* | **KEN SCHILLING** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *DIRECTOR* | **KENNETH L LEE** P.O. BOX 152137 ARLINGTON , TX 76015 |
| *CHAIRMAN* | **KENNETH L LEE** P.O. BOX 152137 ARLINGTON , TX 76015 |





# Franchise Tax Account Status

**Taxpayer Number 32044597618 is not set up for Franchise Tax.**
You may also call the Business Information Line at 1-800-252-1386.
Should you require assistance concerning the taxable entity information presented,
please contact tax.help@cpa.state.tx.us.

Return to: Taxable Entity Search

texas.gov    Texas Records and Information Locator (TRAIL)    State Link Policy    Texas Homeland Security    Texas Veterans Portal

**Glenn Hegar,** Texas Comptroller • Home • Contact Us
Privacy and Security Policy    Accessibility Policy    Link Policy    Public Information Act    Compact with Texans

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and | § | IN THE COUNTY COURT |
| PARKS REALTY FIRM, LLC | § | |
| | § | |
| vs. | § | |
| | § | |
| AFFILIATED BANK, | § | AT LAW NO. 3 |
| AFFILIATED BANK FSB, | § | |
| AFFILIATED BANK FSB, INC., | § | |
| BANCAFFILIATED, INC., | § | |
| JOSHUA CAMPBELL and | § | |
| KATHERINE CAMPBELL | § | DALLAS COUNTY, TEXAS |

## DEFENDANT AFFILIATED BANK FSB'S ORIGINAL ANSWER AND VERIFIED DENIAL TO PLAINTIFFS' SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Affiliated Bank FSB, and files this, its Original Answer to Plaintiffs' Second Amended Petition, and by way of answer would respectfully show the Court the following:

### I.

### GENERAL DENIAL

Defendant Affiliated Bank FSB (hereinafter "*Defendant*") generally denies each and every, all and singular, of the allegations contained in Plaintiffs' Second Amended Petition, and states that such allegations are untrue in whole and/or in part; consequently, Defendant hereby exercises its legal right to demand strict proof thereof.

### II.

### VERIFIED DENIALS

A.    Pursuant to Texas Rule of Civil Procedure 93, Defendant Affiliated Bank FSB hereby denies Defendant is liable in the capacity in which it has been sued since Joshua Campbell and Katherine Campbell never worked for Affiliated Bank FSB.

---

**DEFENDANT AFFILIATED BANK FSB'S GENERAL AND VERIFIED DENIAL**          PAGE 1
*380794*

**EXHIBIT** B

B.    Pursuant to Texas Rule of Civil Procedure 93, Defendant Affiliated Bank FSB is not liable in the capacity in which it is sued because:

1.    It is no longer in existence;

2.    It was not in existence at the time of the events alleged in Plaintiff's Original Petition.

## III.

## PRAYER

WHEREFORE, Defendant respectfully requests upon final judgment, that Plaintiffs take nothing, that Defendant be awarded its costs and attorney's fees, and that Defendant be granted such other and further relief, both at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

PASSMAN & JONES
A PROFESSIONAL CORPORATION

By: _____
Jerry C. Alexander
Texas State Bar No. 00993500
alexanderj@passmanjones.com
Christopher A. Robison
Texas State Bar No. 24035720
robisonc@passmanjones.com
John G. Browning
Texas State Bar No. 03223050
browning@passmanjones.com
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

Gregory J. McCarthy
Texas State Bar No. 13367500
gregmccarthy@sbcglobal.net
Attorney ♦ Mediator
2222 Patterson Place
Arlington, TX 76012
(214) 448-7154 Telephone
(817) 261-1688 Facsimile

ATTORNEYS FOR DEFENDANT
AFFILIATED BANK

## CERTIFICATE OF SERVICE

I certify that on the 16th day of October, 2015, a true and correct copy of the above and foregoing was delivered to the counsel set forth below, in accordance with the Texas Rules of Civil Procedure:

Jason M. Berent
BERENT LAW FIRM, PLLC
5600 Tennyson Parkway, Suite 310
Plano, TX  75024

Jerry C. Alexander

## VERIFICATION

STATE OF TEXAS                    §
                                  §
COUNTY OF _Tarrant_               §

1.      "My name is David Gragg. I am the authorized corporate representative of Affiliated

Bank FSB and as such am capable of making this verification. I have read the foregoing Defendant's

Original Answer and Verified Denial. The facts stated in said Verified Denials are within my

personal knowledge true and correct."


By: David Gragg, Senior Vice President


SUBSCRIBED AND SWORN TO BEFORE ME, this _4th_ day of _October_, 2015,

to certify which witness my hand and seal of office.


Notary Public in and for the
State of Texas

ALEXANDRIA RANGEL
MY COMMISSION EXPIRES
July 7, 2018

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and | § | IN THE COUNTY COURT |
| PARKS REALTY FIRM, LLC | § | |
| | § | |
| vs. | § | |
| | § | |
| AFFILIATED BANK, | § | AT LAW NO. 3 |
| AFFILIATED BANK FSB, | § | |
| AFFILIATED BANK FSB, INC., | § | |
| BANCAFFILIATED, INC., | § | |
| JOSHUA CAMPBELL and | § | |
| KATHERINE CAMPBELL | § | DALLAS COUNTY, TEXAS |

### DEFENDANT BANCAFFILIATED, INC.'S ORIGINAL ANSWER TO PLAINTIFFS' SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant BancAffiliated, Inc., and files this, its Original Answer to Plaintiffs' Second Amended Petition, and by way of answer would respectfully show the Court the following:

### I.

### GENERAL DENIAL

Defendant BancAffiliated, Inc. (hereinafter "*Defendant*") generally denies each and every, all and singular, of the allegations contained in Plaintiffs' Second Amended Petition, and states that such allegations are untrue in whole and/or in part; consequently, Defendant hereby exercises its legal right to demand strict proof thereof.

### II.

### VERIFIED DENIAL

A.     Pursuant to Texas Rule of Civil Procedure 93, Defendant BancAffiliated, Inc. hereby denies it is liable in the capacity in which it has been sued since Joshua Campbell and Katherine Campbell never worked for BancAffiliated, Inc.

---

## III.

## PRAYER

WHEREFORE, Defendant respectfully requests upon final judgment, that Plaintiffs take nothing, that Defendant be awarded its costs and attorney's fees, and that Defendant be granted such other and further relief, both at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

PASSMAN & JONES
A PROFESSIONAL CORPORATION

By: _____
Jerry C. Alexander
Texas State bar No. 00993500
alexanderj@passmanjones.com
Christopher A. Robison
Texas State Bar No. 24035720
robisonc@passmanjones.com
John G. Browning
Texas State Bar No. 03223050
browning@passmanjones.com
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

Gregory J. McCarthy
Texas State Bar No. 13367500
gregmccarthy@sbcglobal.net
Attorney ♦ Mediator
2222 Patterson Place
Arlington, TX 76012
(214) 448-7154 Telephone
(817) 261-1688 Facsimile

ATTORNEYS FOR DEFENDANT
BANCAFFILIATED, INC.

## CERTIFICATE OF SERVICE

I certify that on the 16th day of October, 2015, a true and correct copy of the above and foregoing was delivered to the counsel set forth below, in accordance with the Texas Rules of Civil Procedure:

Jason M. Berent
BERENT LAW FIRM, PLLC
5600 Tennyson Parkway, Suite 310
Plano, TX 75024

_____
Jerry C. Alexander

# VERIFICATION

STATE OF TEXAS §
§
COUNTY OF _Tarrant_ §

1. "My name is David Gragg. I am the authorized corporate representative of BancAffiliated, Inc., and as such am capable of making this verification. I have read the foregoing Defendant's Original Answer and Verified Denial. The facts stated in it are within my personal knowledge true and correct."

_____
By: David Gragg, Senior Vice President

SUBSCRIBED AND SWORN TO BEFORE ME, this ___ day of _____, 2015, to certify which witness my hand and seal of office.

_____
Notary Public in and for the
State of Texas

ALEXANDRIA RANGEL
MY COMMISSION EXPIRES
July 7, 2018

CAUSE NO. CC-15-04540-C

TONYA PARKS and PARKS          ) IN THE COUNTY COURT
REALTY FIRM, LLC               )
                               )
VS.                            ) AT LAW NO. 3
                               )
AFFILIATED BANKS;              )
AFFILIATED BANK FSB;           )
AFFILIATED BANK FSB, INC.;     )
BANCAFFILIATED, INC.;          )
JOSHUA CAMPBELL and            )
KATHERINE CAMPBELL             ) DALLAS COUNTY, TEXAS

-----------------------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

KATHERINE CAMPBELL

FRIDAY, MARCH 11, 2016

-----------------------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF KATHERINE CAMPBELL, produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and -numbered cause on the 11th day of March, 2016, from 3:47 a.m. to 5:46 p.m., before Natasha Spoerl, a CSR in and for the State of Texas, reported by machine shorthand at the offices of Hermes Law Firm, 2001 N. Lamar Street, Suite 450, Dallas, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.

**EXHIBIT** F

A P P E A R A N C E S

MR. JASON BERENT                    FOR THE PLAINTIFFS
BERENT LAW FIRM, PLLC
5600 Tennyson Parkway
Suite 310
Plano, Texas  75024
Telephone:  214.692.5800
Facsimile:  214.692.5806
E-mail:  Jberent@berentlawfirm.com

MR. CHRISTOPHER P. HANSEN          FOR THE DEFENDANTS
MR. MICHAEL HOLMES                 Joshua Campbell
HERMES LAW FIRM                    Katherine Campbell
2001 N. Lamar St.
Suite 450
Dallas, Texas  75202
Telephone:  214.749.6511
Facsimile:
E-mail:  Chris@hermes-law.com

MR. JOHN G. BROWNING               FOR THE DEFENDANTS
PASSMAN & JONES, P.C.              Affiliated Bank,
2500 Renaissance Tower            AffiliatedBank FSC
1201 Elm Street                   AffiliatedBank
Dallas, Texas  75270              FSC, Inc.,
Telephone:  214.742.2121          BancAffiliated
Facsimile:  214.748.7949
E-mail:  Browningj@passmanjones.com

MR. TERRENCE G. TURZINSKI          FOR THE DEFENDANT
LAW OFFICES OF TERRENCE TURZINSKI  Affiliated Bank
5151 Beltline Road
Suite 1140
Dallas, Texas  75254
Telephone:  214.369.9630
Facsimile:  214.369.9648
E-mail:  Tgt@tgtlaw.com

ALSO PRESENT:
     John Frank, videographer
     Katherine Campbell

                        I N D E X


PROCEEDINGS                                          PAGE


Appearances.......................................   2


KATHERINE CAMPBELL
     Examination by Mr. Berent....................   4
Signature and Changes.............................   76
Reporter's Certificate............................   79




                        EXHIBITS
NO.  DESCRIPTION                                     PAGE
1    Ripoff Report................................   --
2    Ripoff Report Rebuttal.......................   --
3    Timeline.....................................   --
4    E-mail from Tiffany Martin with "Chris From
     Hell circled................................   --
5    Text messages produced by Defendants........   --
6    Text messages produced by Plaintiffs........   --
7    E-mail from Tiffany Martin, September 3,
     2014........................................   --
8    Collin County case history..................   --
9    E-mail correspondence Campbell 288-289......   --
10   E-mail correspondence Campbell 320-324......   --
11   E-mail correspondence Campbell 297-300......   --
12   E-mail correspondence Campbell 309..........   --
13   E-mail between Tom Rusher and Tonya Parks...   --
14   E-mail correspondence Campbell 301-304......   --
15   E-mail correspondence Campbell 250-251......   --
16   E-mail correspondence Campbell 262-266......   17
17   HUD-1 Settlement Statement..................   22
18   Group text messages.........................   29
19   E-mail correspondence.......................   59

                    P R O C E E D I N G S

         THE VIDEOGRAPHER:  We're going on the
record in the videotaped deposition of Katherine
Campbell.  Today's date is March 11th, 2016.  The time
is approximately 3:47 p.m., and this is beginning of
Videotape #1.

         At this time, will Counsel please state
their appearances for the record and then the court
reporter will swear in the witness?

         MR. BERENT:  My name is Jason Berent.  I'm
with the Berent Law Firm, PLLC, and I'm here
representing the plaintiffs in this case.

         MR. HANSEN:  Chris Hansen representing
Katherine and Joshua Campbell, Defendants.

         MR. BROWNING:  John Browning.  I represent
defendants Affiliated Bank, Affiliated Bank FSB,
Affiliated Bank FSB, Inc., and BancAffiliated, Inc.

         MR. TURZINSKI:  Terry Turzinski
representing Affiliated Bank.

         (The witness was sworn by court reporter.)

                 KATHERINE CAMPBELL,
having been first duly sworn, testified as follows:

                    EXAMINATION
BY MR. BERENT:

    Q.    Okay.  Let me show you what I've marked as

A.    $17,345.

Q.    Okay.  What was the price of the house?

A.    The price of the house was $162,900.

Q.    $162,900.  And what did you say the closing cost was to the buyer?

A.    $17,345.

Q.    Okay.  How much of that went to you guys?

A.    Not a single dollar.

Q.    Okay.  And why is that?

A.    Because this is paid to the bank.

Q.    Okay.  But how do y'all get paid?

A.    Josh is paid on commission, and I was paid by the hour.

Q.    By whom?

A.    Affiliated.

Q.    Which entity?

        MR. TURZINSKI:  Sorry, I can't hear you guys.

        MR. BERENT:  Sorry, I'm losing my voice.

Q.    (BY MR. BERENT)  I said which entity?

A.    I want to say Affiliated Bank FSB, but I am not -- Affiliated Bank Mortgage.

Q.    Okay.  Would there be any reason why a transaction with your office with Affiliated Bank with the purchase price of $359,000 would have charges to the

REPORTER'S RECORD

VOLUME 1 OF 2

TRIAL COURT CAUSE NO. 15-04540-C

| | |
|---|---|
| TONYA PARKS, PARKS REALTY FIRM, LLC, | ( IN THE COUNTY COURT |
| Plaintiff, | ( |
| VS | ( AT LAW NO. 3 |
| AFFILIATED BANK, AFFILIATED BANK FSB, AFFILIATED BANK FSB, INC., BANCAFFILIATED, INC., JOSHUA CAMPBELL and KATHERINE CAMPBELL, | ( |
| Defendants. | ( DALLAS COUNTY, TEXAS |

------------------------------------

MOTION TO DISMISS

------------------------------------

On the 21st day of March, 2016, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Sally L. Montgomery, Judge presiding, held in Dallas, Dallas County, Texas:

Proceedings reported by machine shorthand.

**EXHIBIT** G

A P P E A R A N C E S

JASON M. BERENT
SBOT NO. 24027143
Berent Law Firm PLLC
5600 Tennyson Parkway, Suite 310
Plano, Texas   75024
214/692-5800
ATTORNEY FOR PLAINTIFF


GINO J. ROSSINI
SBOT NO. 24007953
CHRISTOPHER HANSEN
SBOT NO. 00790818
Hermes Law, PC
2001 N. Lamar Stret, Suite 450
Dallas, Texas   75202
214/749-6512
ATTORNEYS FOR DEFENDANTS JOSHUA AND KATHERINE CAMPBELL


JOHN G. BROWNING
SBOT NO. 03223050
JERRY ALEXANDER
SBOT NO. 00993500
Passman & Jones
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214/742-2121

GREGORY J. McCARTHY
SBOT NO. 13367500
Attorney at Law
2222 Patterson Place
Arlington, Texas   76102
214/448-7154
ATTORNEYS FOR DEFENDANTS AFFILIATED BANK

INDEX

MARCH 21, 2015                                    PAGE

Announcements. . . . . . . . . . . . . . .      4

Proceedings. . . . . . . . . . . . . . .        4

Court Reporter's Certificate . . . . . .       16

THE COURT: Well, at least you're halfway there. We got rid of Katherine today.

MR. BERENT: Could I get paid for that?

MR. BROWNING: As long as we're saying goodbye to parties, Mr. Berent and I have been in touch about the fact he sued multiple bank entities, only one of which could have employed Mr. Campbell, and we're here for a bunch of companies --

THE COURT: Do you know which one that is? Because that needs to be worked out right now.

MR. BERENT: We can work out an agreement.

MR. BROWNING: I sent him a voluntary nonsuit that he hasn't signed and that he has refused to sign.

MR. BERENT: Can we do a Rule 11 today?

THE COURT: No, no one's going anywhere until you nonsuit on the record. So y'all go in the conference room and talk about it.

MR. BERENT: The only problem, Your Honor -- because I have agreed with them.

MR. BROWNING: I've actually stipulated with Mr. Berent months ago.

MR. BERENT: He did.

MR. BROWNING: And gave him an affidavit identifying the companies that were not to be employers and are not in business anymore and that there was only

one entity, Affiliated Bank, out of the four that he sued that could can possibly even employ him in this case.

THE COURT: I would strongly suggest in the next three or four minutes you reach an agreement and nonsuit those parties on the record, and we'll follow up with an order of nonsuit tomorrow.

MR. BERENT: If it's tomorrow, that's fine. I just have to triple check the parties. Technically, everything else in the case is abated until this is ruled on. So we can do it tomorrow, no problem.

THE COURT: No, there is a problem because they would have to come back. If he gave you an affidavit, you're going to do it today.

MR. BROWNING: I sent him a voluntary nonsuit as to the bank entities that don't belong.

MR. BERENT: If he has it with him, I'll sign it now.

THE COURT: State your name for the record.

MR. BROWNING: Yes, Your Honor. John Browning. I'm counsel for Affiliated Bank, Affiliated FSB, Affiliated Bank FSB, Inc., and Bancaffiliated Inc.

Now, the putative employer of Mr. Campbell was Affiliated Bank, not Affiliated Bank FSB, not Affiliated Bank FSB Inc., and not Bancaffiliated, Inc. This is something we made opposing counsel aware of months ago.

THE COURT: If you have some problem with what's on that affidavit, call your office, but we're going to nonsuit three of those banks today.

MR. BERENT: There is no one at my office. I am my office.

THE COURT: You're going to have to take his word for it. If he's made a mistake, you can come in tomorrow, and we'll deal with that.

MR. BERENT: Can I whisper in his ear for 30 seconds.

THE COURT: Sure.

MR. BERENT: I think we can figure it out.

THE COURT: Okay.

(End of proceedings)

STATE OF TEXAS        )

COUNTY OF DALLAS      )

        I, Janet E. Wright, Official Court Reporter in and for the County Court of Dallas County, Texas, County Court at Law Number Three, State of Texas, do hereby certify that to the best of my ability the above and foregoing contains a true and correct transcription of all portions of evidence and proceedings requested in writing to be included in the Reporter's Record, in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

        I further certify that the total cost for the preparation of this Reporter's Record is $80.00 and was paid by Ms. Parks.

        WITNESS MY OFFICIAL HAND this the 15th day of March, 2016.

                        /s/   Janet E.   Wright

JANET E. WRIGHT, Texas CSR #1532
Expiration Date:  12-31-17
Official Court Reporter
County Court-at-Law No. 3
600 Commerce Street, Suite 585
Dallas, Texas  75202
214/653-7831

deposition. We're here on the basis of your contesting responding to your Motion to Dismiss. The Motion to Dismiss is pretty clear. Your responsibilities under the statute are pretty clear about serving a prima facia case for the allegations that you've made with respect to the accounts. This is completely outside the scope of that limited scope of the deposition.

MR. BERENT: Okay. I'll object; nonresponsive.

Q. (BY MR. BERENT) Does anyone at Affiliated Bank represent you in this case?

MR. BROWNING: Same objection.

THE WITNESS: No. I don't know. I'm unsure.

Q. (BY MR. BERENT) Okay. Did you hire a lawyer in this case?

MR. HANSEN: I'm going to object to the form. I have to agree with counsel for Affiliated. We're getting far afield of the scope of the discovery for purposes of the motion.

MR. BERENT: You're seeking attorneys' fees.

MR. HANSEN: I want to keep you far -- you know, I want to give you as much breath as I can in this to be fair, but we're starting to get really far afield.

**EXHIBIT** H

If attorneys' fees become an issue later, obviously we'll address that later. But to the extent you want to address that, go ahead. Again, you're getting far afield. So I'm trying to give you a lot of leeway.

MR. BERENT: I appreciate that, and I respectfully disagree, but I will try to keep things as narrow as I can. And I know you guys will point out if you think I'm getting too far afield.

Q. (BY MR. BERENT) Did you hire a lawyer in this case?

A. I've been working under the counsel of this law firm.

Q. Which law firm?

A. The law firm that we're sitting in.

Q. Do you know what it is?

A. Chris Hermes and their partners. I don't know the names.

Q. Did you hire them?

A. Can you clarify the question?

Q. Okay.

MR. HANSEN: Again, Jason, I think who hired him/who didn't hire him is far afield of this. If your basis is attorneys' fees, we can talk about what the amount of attorneys' fees are he incurred, and we

can produce that in discovery post motion ruling. But beyond that, I don't think it matters.

MR. BERENT: Let me object to the sidebar.

Q. (BY MR. BERENT) I'm trying to make this question really super easy. Did you hire a lawyer in this case?

A. I'm not sure how to answer that question.

Q. Okay. Did you sign a fee agreement with any lawyers in this case?

A. No.

Q. Have you personally paid any attorneys' fees in the case?

A. Not yet.

Q. Have you received an invoice for any attorneys' fees in this case?

A. Not that I recall.

Q. Do you know whose -- how did you end up with the Hermes firm?

A. I was introduced to them.

Q. By whom?

A. By Affiliated Bank.

Q. Okay. And to your knowledge, who has been paying the Hermes Law Firm if you know?

A. I don't know.

MR. BROWNING: Objection; form.

MR. HANSEN: Same objection.

Q. (BY MR. BERENT) With all of the objections and lawyers jumping down my throat, I think I figured out what's going on.

MR. BROWNING: Object to sidebar.

MR. HANSEN: Same objection.

MR. BERENT: Fair enough.

Q. (BY MR. BERENT) Now, on your Affiliated laptop, what program was used to maintain contacts, personal information for clients and customers?

A. It was customary to use the Google Drive.

Q. And is --

A. It was also customary to use the origination system Encompass. No information was shared.

Q. And that's fair. I'm not asking if data was shared. My question is -- you've used Outlook you said?

A. I'm familiar with Outlook.

Q. And you've put people's information into Outlook?

A. Uh-huh.

Q. Yes?

A. Yes.

Q. Okay. Now, you know in Outlook you can put in a person's name. Right?

A. Yes.

# Appendix 5

# Parks Realty Firm, LLC

214-980-8816
tonyaparks@.parkstrealtyfirm.com

Tonya Parks
214-980-8816
tonyaparks@parksrealtyfirm.com

Lisa Matz, Clerk
Fifth District Court of Appeals
600 Commerce Street. Suite 200
Dallas, TX 752021
214-712-3450

August 22, 2016

RE:  Cause No. 05-16-00784-CV
Tonya Parks and Parks Realty Firm, LLC v. Affiliated Bank, Affiliated Bank FSB, Affiliated
Bank FSB, INC., BancAffiliated, INC., Joshua Campbell and Katherine Campbell

Dear Ms. Matz:

I am the Appellant in the above-styled and number cause. My letter to you is intended to point out certain facts pertinent to the Court's consideration.

As of Friday, August 19, 2016 at 11:07 am, I have received an email from John Browning stating that he is now the sole point of contact in the above entitled cause and that I should not attempt to contact Mr. Jerry Alexander or Mr. Christopher Hansen in regards to this appeal.

From the way it shows on the appeal docket it will show:

Jerry Alexander is the lead counsel for Affiliated Bank, Affiliated Bank FSB, and Affiliated Bank FSB INC., BancAffiliated, INC. and John Browning as another counsel or the (+1).

Christopher Hansen as the lead counsel for Joshua Campbell and Katherine Campbell.

Mr. Browning states that the court is aware of this "assuming" client change by his prior letters to Ms. Lisa Matz and the Appellees' Motion filed on Thursday, August 18, 2016 stating that he is the counsel for all appellee's. The Hansen team appears to have recently vacated the Campbell's after the last letter I sent to Ms. Matz on Monday, August 15, 2016.

This change has not been updated in the appeal court system so I wanted to make you aware of this change as there is not a formal attorney withdrawal by Christopher Hansen as the attorney for the Appellees Joshua and Katherine Campbell in the records.

I also want to make you aware that this has been one of my major struggles in this case because of the conflict of interest and misrepresentation. Not to mention that I had to fight 6 lawyers all working on one side to my one lawyer. I have always stated that the Affiliated Banks et al and their lawyers have orchestrated this entire case to manipulate the system in unfairness to save them by appointing lawyers to dismiss the Campbell's that will intern make it easy for them to be dismissed.

My constitutional "due process" was denied by this misrepresentation along with the additional issues and extreme measure they used to defraud the Plaintiff and now the Appellant. The Campbell's and Affiliated Bank both hold different positions within this lawsuit.

Please take this showing of representation by Mr. John Browning as evidence that Affiliated Bank et al have abused the system and Affiliated Bank et al are now accepting responsibility for the Campbell's action when they maliciously attacked me and my company when he wrote a false report on Ripoff Report to defame my name and my company. The Bank does not want to take responsibility for the Campbell's action, but yet they are aiding the Campbell's in this entire case in Bad Faith.

In Mr. Browning motion filed on August 18, 2016 he states that my letters are filled with emotional, diatribes, hyperbolic, irrelevant, and baseless accusation. My letters to the Court of Appeals are to show the facts that were presented to the court which were over looked by Judge Montgomery with biases and prejudices. Along with facts of misrepresentation to the court. If a women shows any kind of passion for a cause or demonstrates any kind of feelings for necessary change to a situation then men like Mr. Browning and Mr. Campbell will say it's being "emotional". I was standing up by speaking out for my clients professionally and necessary as it was my fiduciary duty as their Realtor to do so when I saw issues that could arise in them not getting their dream home and I saw the pain financially/mentally the Campbell's were inflicting on my clients by their errors. It was my responsibility to my clients to report the Campbell's to get help from the Campbell's supervisors.

According to the constitution - freedom of speech does not protect someone who lies with malicious intention to harm or destroy someone or a company. If that were the case in my situation, it would make it ok to kill someone if they got into an argument because in my opinion, defamation kills without anyone having to take responsibility. Defamation kills people by suicide, kills people slowly by depression, kills marriages, kills businesses, kills families and destroys a person enjoyment of life. Bullying also kills. I feel that I have been bullied and defamed by the Lawyers that represent all the Defendants and/or Appellees in this lawsuit.

I am trying to fight this lawsuit by using the systems that are in place to help **the people**, but it has been interfered by Mr. Browning and his team. I believe they have undermined the entire system. Mr. Browning is a threat to me inside and outside the court as I am use my inherent rights guaranteed by my constitutional "due process" by his misconduct and verbal attacks.

Best Regards,

Tonya Parks
Pro Se
214-980-8816
tonyaparks@parksrealtyfirm.com

# APPENDIX 6

ACCEPTED
05-16-00784-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/24/2016 10:54:59 AM
LISA MATZ
CLERK

## NO. 05-16-00784-CV

**IN THE**

**COURT OF APPEALS**

**5TH DISTRICT OF TEXAS**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
8/24/2016 10:54:59 AM
LISA MATZ
Clerk

**TONYA PARKS and PARKS REALTY FIRM, LLC**

**Appellants,**

**vs.**

**AFFILIATED BANK, AFFILIATED FSB, AFFILIATED BANK FSB, INC., BANCAFFILIATED, INC., JOSHUA CAMPBELL and KATHERINE CAMPBELL**

**Appellees,**

**From the Dallas County Court at Law # 3.**

**Texas Cause No. CC-15-04540-C**

## AFFIDAVIT OF BENNIE R. GIBSON

<u>BEFORE ME</u> the undersigned authority, on this day personal appeared Bennie R. Gibson who being by first duty sworn stated the following.

"My name is Bennie R. Gibson" I am over the age of (21) years, of sound mind and competent to make this affidavit. I have never been convicted of a felony or any crime involving moral turpitude, I have personal knowledge of and I am fully competent to testify to matter stated herein, all the matter contained to this affidavit are true and correct and base upon my personal knowledge and belief all supported by substantial evidence.

I am the father of Tonya Parks who is the sole owner of Parks Realty Firm, LLC and they are the Appellants in the above cause of action. The statements I am about to make are made upon my personal knowledge and I fully believe will be relevant to this Court as you are making a decision on my daughter's case.

Statements are as follows:

1. I witnessed 2 atrocious hearings in Judge Sally Montgomery's Court at Law # 3 on March 22, 2016 and June 13, 2016. I believe these 2 events were pre-arbitrated with the intent to defraud my daughter and her company.

2. My daughter Tonya Parks has always enjoyed her rights to liberty, but because Tonya crossed the path of a troubled man Joshua Campbell who is a 2-3 time convicted felon and his wife Katherine Campbell who both worked for a Federal Banking Institution Affiliated Bank FSB corruption has intervened. Tonya is now fighting for that right to liberty in the ring of the corruption coerced by Dallas County Judge Sally Montgomery, Affiliated Bank, Chubb Insurance Company, the lawyers they selected John Browning, Jerry Alexander and Gregory McCarthy and the lawyers they selected Christopher Hansen and Gino Rossini.

3. This coercion was what I believe to be a scam for excessive legal fees arbitrated by Chubb Insurance and the lawyers they employ to use those excessive fees to unlawfully gain control of my daughter with intimidation to back her down. The adjuster for Chubb Insurance Michael Moore told my daughter and myself those legal fees are what they use in their "duty to defend" which will basically run the plaintiff off. Mr. Browning was going to get paid by the insurance company under the "duty to defend" clause within Affiliated Bank's liability insurance policy - claim file number 047515001505 - filed on January 12, 2015, but yet Mr. Browning and the other lawyers put affidavits in the court as if they were not going to get paid. They then threaten Tonya with a Judgement of those outrageous fees when she had already been financially harmed.

4. On June 13, 2016 Judge Sally Montgomery reprimanded me in her court room because I was nodding my head. I was sitting next to my daughter when Judge Sally Montgomery stated that Tonya did not have any evidence that could link the bank and if this case became a frivolous case

then Tonya would be sanctioned. I disagreed by nodding my head because this is **no** frivolous case on Tonya's part. I believe this case has been manipulated by the officer of the court intentionally. Tonya has very good evidence that will show this lawsuit is valid and her damages are relevant with all defendants – the Bank and the Campbell's.

5. Judge Sally Montgomery had my daughter go into a private conference room off the record multiple times to mediate an outcome to her case with 6 men lawyers trying to convince my daughter to dismiss this case. In one of those meetings after all the defendants' lawyers left the room and it was only Tonya, her previous lawyer Jason Berent and myself, Sally Montgomery came into the conference room and told us that we needed to finish up or she would sanction Tonya for this being a frivolous case. After she did that, I told Jason that I wanted him to get my daughter out of this courtroom because this lady is a dangerous Judge. After that meeting, we went back into the courtroom and when Judge Sally Montgomery sat down I got up and walked out of the court room because I knew if Jason did not do anything quickly I would have say something. Out of concern for my daughter's well-being, I did not want the Judge to harm my daughter anymore by me expressing my concerns so I decided to leave and sit in the hallway. Tonya told me before I left she was going to stay because she wanted to take this through and she did not trust the Judge nor her lawyer Jason Berent to do anything on her behalf if she was not present.

6. Once I left the court room - Tonya was by herself when Jason told the court there was no agreement in the mediation room then it is upon my belief after reading the reading transcript on June 13, 2016, I can honestly say they caught Tonya off guard when they told her that her timing was up to have a new trial and her case was over. This is when the major atrocious events took place to wrongfully influence my daughter into agreement she would not have done if she fully understood her rights and would have been able to come speak with me. After reading the transcript on June 13, 2016, based on my opinion and belief, they abused their authority by what I consider judicial water boarding my daughter into an improper settlement. My daughter was fighting for her life and her family's well-being by herself with no one helping her to defend herself. She was improperly couched, influenced, threatened, taunted,

and she was lied too. She thought the case was over with no remedy. Tonya was put under so much pressure and was not given any time to think. She was restrained / not allowed to come and speak with me when she did not have a proper lawyer working in her behalf. Tonya used the words and phrases like, "I just feel set up", "I don't think I was given a fair trial", "I wasn't prepared to make a choice like this today", "give me a second to think", "I don't understand my parameters", "I didn't really get to talk to my lawyer", "I don't get a new trial", "I'm FORCED" which they should have heard her words, seen her fear and stopped the brutal intimidation and control they had over my daughter's mental state. Reading the transcript, once they told Tonya she was going to be taken to jail is when Tonya couldn't defend herself anymore. Any decision or settlement made during the pressure of that heinous act of willful unlawful misconduct - that decision into settlement would be conceived as involuntary. By being Tonya father I know she was scared and she was frightened even though she knew she had a good case, but she felt defeated by people with power to destroy her, her family and her company. The condition became constructive any person would have done the same thing as Tonya to get from away from those conditions. Tonya would do anything at that point to get out of that court room away from those bullies to get into a safe environment with me and home to her husband and 2 teenage sons.

7. From reading the transcript, Judge Sally Montgomery requested Tonya to come up and that's when she started asking Tonya to make a decision.

8. In my opinion, from reading the transcript, Judge Sally Montgomery initiated the entire coerced settlement when she found out she did not have proper jurisdiction. Judge Montgomery said, "So I'm going to do one last thing, though. See if you can reach an agreement on the attorney's fees since it's too late to overrule the motion for new trial; it can only be done by agreement. That's still a good agreement. If y'all agree to it, then it doesn't matter. If you don't agree to it, then it's too late." This is when I believed the whole couching started. I believe if she would have not initiated that unfair settlement, Tonya would not have to try to fight for this appeal so that you can see all the additional errors Judge Montgomery made in court during the 2 prior hearing along with

the errors she made and she admitted to when making a judgement of what I feel are outrageous attorney fees.

9. I believe Affiliated Bank's president Garry Graham is motivated to do anything to get them out of court because he does not want Tonya to be allowed to do any additional discoveries on Affiliated Bank because those discoveries will uncover a lot of additional fault and suspicious activity on the Bank's side. In my own research to help my daughter I called Mr. Graham and left him a message multiple times with no return call until I said I would be contacting the OCC (Office of the Comptroller of the Currency). Mr. Graham returned that call within 10 seconds so I believe he is screening his calls. In that return call Mr. Graham informed me that he was not regulated by nor registered with the OCC.

10. I believe the misrepresented of representation of counsel on the Defendant side was unlawful and a willful intent to defraud the plaintiff. Even when Jason Berent and Tonya told Judge Sally Montgomery she acted as if she did not care.

I have raised my 2 daughters to be strong women and to stand up for what is right. After fully reading the transcript on June 13, 2016, I couldn't be more proud of my daughter because I was visualizing her speaking out to stand up for herself and what was right, but she was defeated by dangerous people with power.

This entire act of interference upon my daughter's well-being and her due process has been devastating not only to my daughter, but to me as her father and her mother. I can see a difference in Tonya so everybody who is responsible for this change in my daughter's life must be held accountable.

SIGNED on this __24__ day of __August__, 2016



_____
                                    Bennie Ray Gibson

**STATE OF TEXAS**     }
**COUNTY OF TARRANT**   }

       SUBSCRIBED AND SWORN TO before me by the said Bennie Ray Gibson, Principal on this the __24th__ day of August 2016.

_____
        Notary Public in and for the STATE *of* TEXAS

CYNTHIA VELEZ
Notary Public, State of Texas
Comm. Expires 01-06-2020
Notary ID 130486663

# Appendix 7

ACCEPTEL
05-16-00784-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/30/2016 1:44:13 PM
LISA MATZ
CLERK

¹NO. 05-16-00784-CV

IN THE

COURT OF APPEALS

5TH DISTRICT OF TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
8/30/2016 1:44:13 PM
LISA MATZ
Clerk

---

TONYA PARKS and PARKS REALTY FIRM, LLC

Appellants,

vs.

AFFILATED BANK, AFFILIATED BANK FSB, AFFILIATED
BANK FSB, INC., BANCAFFILIATED, INC., JOSHUA CAMPBELL
and KATHERINE CAMPBELL

Appellees,

---

From the Dallas County Court at Law #3,
Texas Cause No. CC-15-04540-C

---

APPELLANTS' RESPONSE TO APPELLEES' OBJECTION TO THE
AFFIDAVIT OF NON-PARTY BENNIE GIBSON

---

TO THE HONORABLE FIFTH COURT OF APPEALS:

Appellants Tonya Parks and Parks Realty Firm, LLC come now and file this Appellants'

Response to Appellees' Objection to the Affidavit of Non-Party Bennie Gibson. The Affidavit

of Bennie Gibson who is the father of Tonya Parks should be considered by the Court when

determining the issues in this matter because Mr. Gibson was a witness to 2 of the hearings held

in Judge Sally Montgomery's Court Room. Bennie Gibson's position in this matter was written

1 | Page

in his affidavit and his position would be no different than any lawyer Tonya Parks would plan to hire to handle her case in the future. Bennie Gibson's affidavit should be looked at and strongly considered because:

1. Mr. Gibson was present at the entire hearing on March 22, 2016.

2. Mr. Gibson was in the room for a majority of the hearing held on June 13, 2016 until he felt he had to leave because he did not want to harm Tonya Parks' case any further by speaking out on her behalf when her lawyer Jason Berent was not and the other lawyers and Judge were taking advantage of that lack of counsel.

3. Mr. Gibson was a party sitting in 2 of the mediations held on June 13, 2016.

4. Mr. Gibson was in the hallway where he could see through the window Tonya Parks standing in the court room during her forced and coerce settlement.

5. **Mr. Gibson was also in the hallway when Jerry Alexander, John Browning, Chris Hansen, Gino Rossini and Greg McCarthy left the court room before Tonya Parks and Jason Berent. While in the hallway Bennie Gibson witnessed Judge Sally Montgomery's Bailiff call out John Browning's name to escort him into Judge Sally Montgomery's office right after the hearing on June 13, 2016. The other lawyers who were with John Browning at the time went with him to her office for a private meeting. Tonya Parks' lawyer at the time Jason Berent was not in attendance to this meeting as far as Tonya Parks knows.**

6. Mr. Gibson was the first person Tonya Parks spoke with about the conduct of the officers of the court once she left the court room on June 13, 2016.

7. Although Mr. Gibson was not in the court room during the forced settlement he was a witness to the misconduct in the court room and out of the court room. The transcript validates what he could see through the window and Tonya Parks' mental state after she left the court room.

I have also attached a chain of emails sent by Tonya Parks to Janet Wright starting the early morning of June 14, 2016 after the hearing on June 13, 2016 requesting the transcripts (Exhibit A). This email will show Tonya Parks position of the involuntary/forced settlement the night after the hearing.

Mr. Browning states that Mr. Gibson is attempting to smear the reputation of Judge Sally Montgomery. Mr. Gibson is only presenting the facts and the conduct he witnessed in the

court room and through the window along with reading the transcript. Judge Sally Montgomery has built her own reputation by her conduct and competence in her court room. Mr. Gibson is only speaking up for his daughter while she is trying to get justice pro se because the legal system has failed her. Again, Mr. Gibson affidavit would be no different than Tonya Parks hiring a lawyer to speak on her behalf who was not present during the coerced settlement.

Mr. Browning failed to remember that his clients a convicted felon and the company that hired him have ruined the reputation of Tonya Parks and her successful business.

Tonya Parks is not only fighting against Affiliated Bank and the Campbell's, she is also fighting against a team of lawyers (who knows how many), a judge and a large insurance company. Tonya Parks was also on the phone when Mr. Gibson had the conversation with Chubb's adjuster Michael Moore so she can validate that conversation. Tonya Parks also had a conversation with Mr. Moore on July 22, 2016 when he told her she was going to lose her appeal so she should look into becoming a private investigator or paralegal because she would be good in those fields. Tonya Parks a successful woman - who is a victim in a malicious internet hate crime and has had her constitutional right violated because of biases and prejudices so she should not have to change her career at the age of 42. Tonya Parks has been bullied, harassed and threatened unjustly throughout this process.

Mr. Gibson once fought for the rights for our country so now he is fighting and aiding his daughter for those rights he fought for. Please consider his affidavit and allow his daughter to have her fair day in court with no biases or prejudices.

## PRAYER FOR RELIEF

For the reasons set forth above, Appellants requests that the Court allow Tonya Parks' father Bennie Gibson's Affidavit to be considered.

Appellants also pray that the Court Grants Appellants' Appeal because of all of the errors, misconduct and misrepresentation in the Trial Court - Dallas County Court of Law #3. Appellants also request any and all other relief to which it may be entitled.

Respectfully submitted,

Tonya Parks .
*Pro Se Appellant*
1401 Bristlewood Drive
McKinney, TX 75070
tonyaparks@parksrealtyfirm.com
214-980-8816

## CERTIFICATE OF SERVICE

I certify that on August 30, 2016, I mailed copy of this motion to the following counsel

by First Class U.S. Mail and via E-File:

John G. Browning
Browningj@passmanjones.com
State Bar No. 03223050
Jerry C. Alexander
alexandrj@passmanjones.com
State Bar No. 00993500
PASSMAN & JONES, PC
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: 214-742-2121
Facsimile: 214-748-7949

*Counsel for Appellees Affiliated Bank,*
*Affiliated Bank FSB, Affiliated Bank FSB,*
*INC., Bancaffiliated, INC., Joshua Campbell,*
*And Katherine Campbell*

_____
Tonya Parks

Subject: RE: 3-22-16 Transcript
From: tonyaparks@parksrealtyfirm.com
Date: Tue, Jun 14, 2016 11:33 am
   To: "Janet Wright" <jwrightcsr@aol.com>
   Bcc: "BENNIE GIBSON" <agginc@prodigy.net>

Janet,

Thank you for those kind words!!!

It was a very long day for me yesterday. I noticed I said validated my constitutional right, but I meant to say violated my constitutional right - twice. I hate auto correct on these cell phones.

I'm a very strong believer in my Christian faith and I know for a fact GOD has a plan for me and my family. I open my business in 2007 with GOD as my only partner. I wear a ring on my wedding finger that means strength and freedom which I wear to remind me everyday the gifts GOD has given me by creating me to be a strong minority women in a mans world and to remind me everyday that I am free to dream. Last night I forgot about all that because I was lost.

I'm sure I will be ok in time, but I will never forget. I will forever be reminded of that day because I have to discuss that defamatory post all the time when people search my name and see the post that will never go away.

I was taunted in that court room and this will forever be my nightmare!

Best Regards,
Tonya Parks
214-980-8816
tonyaparks@parksrealtyfirm.com
www.parksrealtyfirm.com

-------- Original Message --------
Subject: Re: 3-22-16 Transcript
From: Janet Wright <jwrightcsr@aol.com>
Date: Tue, June 14, 2016 10:42 am
To: tonyaparks@parksrealtyfirm.com

Tonya,

I am sorry that you are so upset by yesterday's hearing, but God always has a plan for us. He has peace that passes understanding, and I've prayed for that myself at different times. He gives us strength to get through tough times and ideas for better things. Don't give up - keep working toward rebuilding and forgiving, and your business will be restored.

Pay 1 of 4

I'm glad you made it home safely yesterday. I was worried about the weather and the roads.

I'll get yesterday's transcript to you as soon as I can, but at least by Friday. You mentioned "transcripts," but I think this is the only one. Let me know if there is one I'm missing.

You are a smart, strong woman. Use that strength in a positive way and be a good role model for your sons.

Take care,
Janet


Janet E. Wright
Official Court Reporter, CCL #3
214/653-7831


-----Original Message-----
From: Tonya Parks <tonyaparks@parksrealtyfirm.com>
To: Janet Wright <jwrightcsr@aol.com>
Cc: Tonya Parks <tonyaparks@parksrealtyfirm.com>
Sent: Tue, Jun 14, 2016 2:16 am
Subject: Re: 3-22-16 Transcript

Hello Janet,

I'm sorry for sending this very early email, but I can not sleep because I'm going over and over that humiliating hearing in my head.

I was railroaded and forced to make a decision I DO NOT agree with for my family in 60 seconds.

I feel mentally RAPED/BULLIED by the court because I had 7 men lawyers, 1 women judge putting me (one women) on the spot by forcing me to make a decision, threatening me if I didn't go their way then they will do all these other things to me in the court system, not allowing me time to take everything in that was happening to me at the time - along with them not allowing me to speak with my dad who had to leave the court room because he could not handle watching his daughter and her business get raped, hung, murdered, killed, humiliated, thrown away in the court for a second time by misuse of power. Not to mentioned another man officer threatening to take me (a mother of 2 African American boys ages 13 and 17 who need their mom in this crazy world) to jail because I was up set with the abuse and prejudices that were taking place in that court room where I should have received justice to clear my name and my family business along with getting damages I will and have incurred.

I deserved to have a fair and unbiased trial. My constitutional right was validated twice!!!

I stood up for my clients and this is what I got for doing so. This is why this world is based on "every man for themselves". You can't stand up for people unless you willing to take the abuse from the system and people who know how to use it.

I have worked so hard in my life to just have it thrown in the trash by a convicted felon and a large company that abused the system.

I've lost 2 years of my life that I can not get back. I've lost time with my kids. I've lost friends because I've separated myself from everyone. I have been very depressed because I'm embarrassed of that false posting my kids teachers, neighbors, old friends, potential clients, old clients, other business opportunities, etc see when they search my name. I'm embarrassed by how I've been so naïve in thinking I would get justice by an elected official.

What do I tell my boys?? You can't even do the right thing and get justice.

I have been abused by the court system. I have lost my business, dreams and time that I can never get back. I'm done - I'm completely done!!!! I pray this never happens to anyone else because it's very hard to live like this. I'm sad, very, very sad!!!!

I pray GOD has a plan for me because I'm lost!!!

Sorry for my venting, but this was on my heart.

I really just wanted to make sure you had my email address so that you can send the transcripts asap. I hate to rush you, but I need them as soon as possible.

Janet you have a great spirit about you that seems very kind and warm. Please don't let that court take that away like it has done to me.

God bless,
Tonya Parks
214-980-8816.

Sent from my iPhone

On Apr 17, 2016, at 9:06 PM, Janet Wright <jwrightcsr@aol.com> wrote:

> Tonya,
>
> I am attaching the transcript for the 3-22-16 hearing.
>
> If you need anything else, please let me know. Hope your weekend was good, despite the rain!
>
> Thanks,
> Janet
>
> Janet E. Wright
> Official Court Reporter, CCL #3
> 214/653-7831

<032216.pdf>

Copyright © 2003-2016. All rights reserved.

4 of 4

# APPENDIX 8



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00784-CV

**TONYA PARKS AND PARKS REALTY FIRM, LLC, Appellants**

**V.**

**AFFILIATED BANK, Appellee**

On Appeal from the County Court at Law No. 3
Dallas County, Texas
Trial Court Cause No. CC-15-04540-C

## ORDER

Tonya Parks and Parks Realty Firm, LLC (PRF) appeal the trial court's dismissal of their claims against Affiliated Bank pursuant to the Texas Citizens Participation Act (the TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015). On our own motion, we abate this appeal and remand the case to the trial court for findings relating to whether Parks, individually and on behalf of PRF, voluntarily entered into an agreement under rule of civil procedure 11, pursuant to which Parks and PRF forfeited their right to bring this appeal, and whether any agreement is enforceable.

Parks and PRF sued Joshua A. Campbell and his former employer, Affiliated Bank, asserting a number of causes of action based on an internet posting by Campbell concerning

Parks's work as a real estate agent.[1] Campbell filed a motion to dismiss under the TCPA, arguing the claims against him were based on statements he made in connection with a matter of public concern, and Parks and PRF could not establish by clear and specific evidence a prima facie case for each essential element of their claims. At the hearing on Campbell's motion, Affiliated Bank argued it "should be included as far as being dismissed" because there was no evidence to support the causes of action asserted against it, and requested that it be awarded attorneys' fees pursuant to the TCPA. On March 24, 2016, the trial court signed an Order on Defendant Joshua Campbell's Motion to Dismiss (the March 24th Order), that dismissed with prejudice Parks's and PRF's claims against both Campbell and Affiliated Bank, and awarded Campbell $62,297.50, and Affiliated Bank $29,876.40, for court costs, reasonable attorneys' fees, and other expenses incurred in the litigation.

Parks and PRF filed a motion for new trial. At the hearing on the motion, the parties discussed settling the dispute. The attorneys for Parks and PRF, Affiliated Bank, and Campbell stated on the record in open court that they had an agreement Campbell and Affiliated Bank would forego seeking to recover the attorneys' fees awarded by the trial court "in exchange for full waiver of any appeal or further filings" by Parks and PRF and a release of all claims against Campbell and Affiliated Bank. Affiliated Bank's attorney requested that Parks "indicate her agreement with this on the record." After some discussion between Parks and the trial court, Parks stated, "I accept the deal."

An agreement to settle a case is enforceable by the trial court if it complies with rule of civil procedure 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *In re Barton*, No. 05-17-00364-CV, 2017 WL 6275920, at *1 (Tex. App.—Dallas Dec. 11, 2017, no pet. h.) (mem.

---

[1] Parks and PRF also sued Affiliated Bank FSB, Affiliated Bank FSB, Inc., BancAffiliated, Inc., and Katherine Campbell, but dismissed their claims against those parties.

2

op.). An agreement complies with rule 11 if it is "made in open court and entered of record." TEX. R. CIV. P. 11. A trial court has a ministerial duty to strictly enforce a valid rule 11 agreement. *In re Barton*, 2017 WL 6275920, at *1; *Draper v. Guernsey*, No. 03-16-00745-CV, 2017 WL 2224540, at *4 (Tex. App.—Austin May 18, 2017, pet. denied) (mem. op.); *see also Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007) ("As this is a valid pretrial agreement under Rule 11, the trial court had a duty to enforce its terms."). Accordingly, if there was an enforceable rule 11 agreement, the trial court had a duty to enforce the agreement entered into by the parties by modifying or vacating the March 24th Order to reflect the parties' agreement, *see In re Barton*, 2017 WL 6275920, at *1 (trial court "has no authority to render judgment which does not fall strictly within the terms of the agreement dictated into the record by the parties themselves"), but failed to do so.

Generally, a party may revoke its consent to a rule 11 agreement before the trial court renders judgment on the agreement. *Milner v. Milner*, 361 S.W.3d 615, 618 n.2 (Tex. 2012) (citing *Padilla*, 907 S.W.2d at 461). If the party revokes its consent, the agreement still might be enforceable, but only as a breach of contract action. *Padilla*, 907 S.W.2d at 461 ("after proper notice and hearing," a party may enforce a settlement agreement complying with rule 11 as a "binding contract" even though one side no longer consents to the settlement). In this case, Parks filed a pro se notice of appeal in contravention of the parties' agreement. She also filed a letter with this Court asserting the agreement was the result of duress and coercion, and she did not and does not agree with the settlement.

Affiliated Bank requests that we dismiss this appeal as moot because, pursuant to the parties' agreement, Parks and PRF have no right to appeal. Parks and PRF contend the rule 11 agreement is not enforceable because it was made due to duress and coercion, and request that

3

we consider the merits of whether the trial court erred by dismissing their claims against Affiliated Bank. This Court, therefore, is confronted with an appeal from an order that was apparently superseded by agreement of the parties, but never vacated by the trial court, with Parks attempting to revoke the agreement on appeal.

To assist this Court in resolving this appeal, we **ABATE** this appeal for a period of forty-five days, and **ORDER** the trial court, after proper notice to the parties, to conduct a hearing to determine whether Parks, individually and on behalf of PRF, entered into the rule 11 agreement due to coercion or duress and whether the rule 11 agreement is enforceable. *See e.g.*, TEX. R. APP. P. 44.4 (requiring appellate courts to direct trial courts to correct any correctable error that prevents "the proper presentation of a case to the court of appeals"); *Ad Villarai, LLC v. Pak*, 519 S.W.3d 132, 136 (Tex. 2017) (per curiam) (noting that when trial court's failure to make properly requested findings of fact is harmful, "the preferred remedy is for the appellate court to direct the trial court to file the missing findings"); *In re A.P.*, No. 07-10-00481-CV, 2011 WL 780525, at *3 (Tex. App.—Amarillo Mar. 7, 2011) (order) (per curiam) (abating case and remanding to trial court to conduct hearing to determine whether trial court's termination order incorrectly reflected judgment of court and, if so, whether mistake was clerical error subject to correction nunc pro tunc). We **ORDER** the trial court to file by **February 5, 2018**, (1) a supplemental clerk's record containing its findings regarding all matters it considered in conjunction with this order, and (2) a supplemental reporter's record of the hearing held on this matter.

/s/    ELIZABETH LANG-MIERS
PRESIDING JUSTICE

4

# Appendix 9

| | | |
|---|---|---|
| **TONYA PARKS and** | § | **IN THE COUNTY COURT** |
| **PARKS REALTY FIRM, LLC** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **AT LAW NO. 3** |
| | § | |
| | § | |
| | § | |
| | § | |
| **AFFILIATED BANK, et al.** | § | |
| | § | |
| | § | **DALLAS COUNTY, TEXAS** |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Affiliated Bank, Appellee and former Defendant herein, and makes and files these Proposed Findings of Fact and Conclusions of Law pertaining to the hearing ordered by the Court of Appeals, Fifth District, at Dallas:

1. In the underlying case, Cause No. 15-04540-C, a hearing took place on Plaintiffs' Motion for New Trial on June 13, 2016.

2. This hearing took place more than 75 days after the Trial Court had dismissed the case on March 24, 2016.

3. At this June 13, 2016 hearing, Plaintiffs were represented by counsel, Jason Berent.

4. At this June 13, 2016 hearing, Plaintiffs' counsel was among the counsel who represented to Judge Montgomery that the Motion for New Trial had already been overruled by expiration of law under Rule 329(b) of the Texas Rules of Civil Procedure.

5. During the June 13, 2016 hearing, Judge Montgomery directed the parties to confer regarding potential settlement at three (3) separate junctures, including one break that lasted for more than thirty (30) minutes.

6. By the end of the June 13, 2016 hearing, following the last of these breaks (during which Plaintiffs conferred with their counsel), the parties announced to the Court that they had reached an agreement.

7. Counsel for the parties announced in open court that Plaintiffs had "agreed to accept the generous offer for the defendants to forego…seeking [the] attorney's fees that's currently reflected in the judgment that the Court signed March 24, in exchange for full waiver of any appeal or further filings, [and] release of both Mr. and Mrs. Campbell and Affiliated bank." Counsel for both sides added that it was to be "a dismissal with prejudice" with Plaintiffs "giving a full and complete release of Affiliated and the Campbells of any and all claims."

8. The defense counsel requested that Ms. Parks give her verbal assent to the agreement put on the record, and Judge Montgomery observed that "it's done if she says so on the record."

9. Judge Montgomery summarized the agreement as "Everybody goes their way, and y'all stay away from each other, but they drop the judgment against you." Counsel for Plaintiffs agreed.

10. Counsel for Plaintiffs made it clear to his client that it was her decision, stating "I'm not telling you what to do. I'm not pressuring you. It's your decision."

11. Plaintiff Parks expressed initial reluctance, and Judge Montgomery asked her "What are you going to do? Are you going to dismiss it with prejudice or not?"

12. When Plaintiff Parks stated "whatever you guys want," Judge Montgomery cautioned her that "I can't make that agreement for you." She represented to Plaintiff Parks that "I can not make this agreement for you. It's only one you can do."

13.     When Ms. Parks continued to say "whatever you want," Judge Montgomery again reminded her "I don't get and will not make that call for you, that is not my place."

14.     Plaintiff Parks stated "I take it. I take it," but repeatedly referred to being "put in this position" and that she hadn't "had the representation that she wanted to have."

15.     Mindful of the fact that Plaintiff Parks was the only one who could accept the settlement, Judge Montgomery admonished her that "You either accept their offer now or the judgment stands. I know what I would like for you, but I can't choose. And the way you're phrasing it, it's not good enough. You either accept the deal or you say no. Take your pick. Yes, I accept the deal or, No, I want the judgment against me."

16.     When Plaintiff Parks tried to claim she was "forced" to accept the settlement, Judge Montgomery again cautioned her. She stated "Forced, if you put that word in there, it will not hold, and the judgment will stand against you. I think. Because it will show coercion, and then there's no agreement, and then it won't work."

17.     At that point, Plaintiff Parks stated in open court her verbal assent to the settlement, stating "I accept the deal." The parties indicated their satisfaction that a binding, enforceable agreement had been entered into, and the hearing was adjourned.

18.     Pursuant to Texas Rule of Civil Procedure 11, this constituted an enforceable agreement, having been made in open court and entered of record. Texas Rule of Civil Procedure 11; *In re Joel Christopher Burton*, No. 05-17-00364-cv, Tex. App.—Dallas (Dec. 11, 2017).

19.     In a motion to withdraw as counsel for Plaintiffs, attorney Berent judicially admitted the settlement that had been made in open court, stating in his filing that Plaintiffs had settled their claim in open court.

20. Defendants complied with the agreement and did not pursue collection of the judgments previously taken against Plaintiffs on March 24, 2016. Plaintiffs breached the settlement agreement, initiating an appeal pro se on July 6, 2016.

21. On December 2, 2016, the appeal against Joshua Campbell was dismissed. On December 20, 2017, the Court of Appeals abated the appeal against Affiliated Bank and ordered the trial court to conduct a hearing to determine whether Parks individually and on behalf of PRF, entered into the rule 11 agreement, due to coercion or duress and whether this rule 11 agreement is enforceable."

22. There was no coercion. "Coercion exists when a party, by the unlawful conduct of another, is induced to enter into a contract which deprives him of the exercise of his free will." *Man Industries (India) Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342 (Tex. App.—Houston [14th Dist.] 2013, no writ.

23. Under Texas law, "duress" is often used interchangeably with "coercion." But a required element of duress is improper or unlawful conduct or the threat of improper or unlawful conduct. *Dallas County Community College Dist. v. Bolton*, 185 S.W.3d 868, 878 (Tex. 2005). Additionally, Texas law has repeatedly required that the duress must come from the opposing party to the agreement. *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.—Houston [14th Dist.], 2001, pet. denied), *Berry, et al. v. Encore Bank*, 2015 WL 3485970 (Tex. App.—Houston [1st Dist.], June 2, 2015. "The mere fact that a person enters into a contract with reluctance, or as the result of the pressure of business circumstances, financial embarassment, or economic necessity does not, of itself, constitute business compulsion or economic duress invalidating the contract. Stress of business conditions will not constitute

duress unless the defendant was responsible for that condition." *First Texas Sav. Ass'n of Dallas v. Dicker Center, Inc*, 631 S.W.2d 179, 186 (Tex. App.—Tyler 1982, no writ).

24. Here, Plaintiffs have not alleged or proven that duress came from the Defendants. And despite her claim of not being satisfied with her representation, duress cannot come from the claimant's own attorney. *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.—Houston [1st Dist.], pet. denied).

25. There was no coercion or duress. The Defendants neither engaged in any unlawful conduct or threatened to engage in unlawful conduct in an attempt to get Plaintiffs to agree to the settlement agreement that was reached. And Judge Montgomery repeatedly emphasized to Plaintiff Parks that it was her decision to make, and hers alone. There was no coercion or duress originating from Judge Montgomery.

26. The agreement reached in open court complies with Rule 11, and is enforceable.

Respectfully submitted,

**PASSMAN & JONES, PC**

*/s/ John G. Browning*
Jerry C. Alexander
alexanderj@passmanjones.com
State Bar No. 00993500
John G. Browning
browningj@passmanjones.com
State Bar No. 03223050
PASSMAN & JONES, PC
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 742-2121
Facsimile: (214) 748-7949

**ATTORNEYS FOR DEFENDANT**

# APPENDIX 10

| | | |
|---|---|---|
| **TONYA PARKS and** | § | **IN THE COUNTY COURT** |
| **PARKS REALTY FIRM, LLC** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **AT LAW NO. 3** |
| | § | |
| | § | |
| | § | |
| **AFFILIATED BANK, et al.** | § | |
| | § | |
| | § | **DALLAS COUNTY, TEXAS** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. In the underlying case, Cause No. 15-04540-C, a hearing took place on Plaintiffs' Motion for New Trial on June 13, 2016.

2. This hearing took place more than 75 days after the Trial Court had dismissed the case on March 24, 2016.

3. At this June 13, 2016, hearing, Plaintiffs were represented by counsel, Jason Berent.

4. At this June 13, 2016, hearing, Plaintiffs' counsel was among the counsel who represented to Judge Montgomery that the Motion for New Trial had already been overruled by expiration of law under Rule 329(b) of the Texas Rules of Civil Procedure.

5. During the June 13, 2016, hearing, Judge Montgomery directed the parties to confer regarding potential settlement at three (3) separate junctures, including one break that lasted for more than thirty (30) minutes.

6. By the end of the June 13, 2016, hearing, following the last of these breaks (during which Plaintiffs conferred with their counsel), the parties announced to the Court that they had reached an agreement.



CC-16-04540-C
CFF
FINDINGS OF FACT / CONCLUSIONS OF LA'
1772386

7. Counsel for the parties announced in open court that Plaintiffs had "agreed to accept the generous offer for the defendants to forego...seeking [the] attorney's fees that's currently reflected in the judgment that the Court signed March 24, in exchange for full waiver of any appeal or further filings, [and] release of both Mr. and Mrs. Campbell and Affiliated bank." Counsel for both sides added that it was to be "a dismissal with prejudice" with Plaintiffs "giving a full and complete release of Affiliated and the Campbells of any and all claims."

8. The defense counsel requested that Ms. Parks give her verbal assent to the agreement put on the record, and Judge Montgomery observed that "it's done if she says so on the record."

9. Judge Montgomery summarized the agreement as "Everybody goes their way, and y'all stay away from each other, but they drop the judgment against you." Counsel for Plaintiffs agreed.

10. Counsel for Plaintiffs made it clear to his client that it was her decision, stating "I'm not telling you what to do. I'm not pressuring you. It's your decision."

11. Plaintiff Parks expressed initial reluctance, and Judge Montgomery asked her "What are you going to do? Are you going to dismiss it with prejudice or not?"

12. When Plaintiff Parks stated "whatever you guys want," Judge Montgomery cautioned her that "I can't make that agreement for you." She represented to Plaintiff Parks that "I can not make this agreement for you. It's only one you can do."

13. When Ms. Parks continued to say "whatever you want," Judge Montgomery again reminded her "I don't get and will not make that call for you, that is not my place."

14. Plaintiff Parks stated "I take it. I take it." but repeatedly referred to being "put in this position" and that she hadn't "had the representation that she wanted to have."

15. Mindful of the fact that Plaintiff Parks was the only one who could accept the settlement, Judge Montgomery admonished her that "You either accept their offer now or the judgment stands. I know what I would like for you, but I can't choose. And the way you're phrasing it, it's not good enough. You either accept the deal or you say no. Take your pick. Yes, I accept the deal or, No, I want the judgment against me."

16. When Plaintiff Parks tried to claim she was "forced" to accept the settlement, Judge Montgomery again cautioned her. She stated "Forced, if you put that word in there, it will not hold, and the judgment will stand against you. I think. Because it will show coercion, and then there's no agreement, and then it won't work."

17. At that point, Plaintiff Parks stated in open court her verbal assent to the settlement, stating "I accept the deal." The parties indicated their satisfaction that a binding, enforceable agreement had been entered into, and the hearing was adjourned.

18. Tonya Parks is a graduate of the University of North Texas with a B.B.A. degree.

19. Tonya Parks is a licensed relator and owns and operates her own company.

20. Tonya Parks is at least 42 years old and is a sophisticated businesswoman.

21. Pursuant to Texas Rule of Civil Procedure 11, this constituted an enforceable agreement, having been made in open court and entered of record. Texas Rule of Civil Procedure 11; *In re Joel Christopher Burton*, No. 05-17-00364-cv, Tex. App.—Dallas (Dec. 11, 2017).

22. In a motion to withdraw as counsel for Plaintiffs, attorney Berent judicially admitted the settlement that had been made in open court, stating in his filing that Plaintiffs had settled their claim in open court.

23. Defendants complied with the agreement and did not pursue collection of the judgments previously taken against Plaintiffs on March 24, 2016. Plaintiffs breached the settlement agreement, initiating an appeal pro se on July 6, 2016.

24. On December 2, 2016, the appeal against Joshua Campbell was dismissed. On December 20, 2017, the Court of Appeals abated the appeal against Affiliated Bank and ordered the trial court to conduct a hearing to determine whether Parks individually and on behalf of PRF, entered into the rule 11 agreement, due to coercion or duress and whether this rule 11 agreement is enforceable."

25. There was no coercion. "Coercion exists when a party, by the unlawful conduct of another, is induced to enter into a contract which deprives him of the exercise of his free will." *Man Industries (India) Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342 (Tex. App.—Houston [14th Dist.] 2013, no writ.

26. Under Texas law, "duress" is often used interchangeably with "coercion." But a required element of duress is improper or unlawful conduct or the threat of improper or unlawful conduct. *Dallas County Community College Dist. v. Bolton*, 185 S.W.3d 868, 878 (Tex. 2005). Additionally, Texas law has repeatedly required that the duress must come from the opposing party to the agreement. *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.—Houston [14th Dist.], 2001, pet. denied), *Berry, et al. v. Encore Bank*, 2015 WL 3485970 (Tex. App.—Houston [1st Dist.], June 2, 2015. "The mere fact that a person enters into a contract with reluctance, or as the result of the pressure of business circumstances, financial embarrassment, or economic necessity does not, of itself, constitute business compulsion or economic duress invalidating the contract. Stress of business conditions will not constitute duress unless the defendant was responsible for that condition." *First Texas Sav.*

*Ass'n of Dallas v. Dicker Center, Inc*, 631 S.W.2d 179, 186 (Tex. App.—Tyler 1982, no writ).

27. Here, Plaintiffs have not alleged or proven that duress came from the Defendants. And despite her claim of not being satisfied with her representation, duress cannot come from the claimant's own attorney. *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.—Houston [1st Dist.], pet. denied).

28. There was no coercion or duress. The Defendants neither engaged in any unlawful conduct or threatened to engage in unlawful conduct in an attempt to get Plaintiffs to agree to the settlement agreement that was reached. And Judge Montgomery repeatedly emphasized to Plaintiff Parks that it was her decision to make, and hers alone. There was no coercion or duress originating from Judge Montgomery.

29. The agreement reached in open court complies with Rule 11, and is enforceable.

Signed on the date of _27_ February, 2018.

_____
JUDGE PRESIDING

SIGNED BY _Ted Akin_
~~VISITING~~ JUDGE SITTING FOR JUDGE
OF COUNTY COURT AT LAW NO. _3_

# Appendix 11



In The
# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-16-00784-CV

**TONYA PARKS AND PARKS REALTY FIRM, LLC, Appellants**

V.

**AFFILIATED BANK, Appellee**

On Appeal from the County Court at Law No. 3
Dallas County, Texas
Trial Court Cause No. CC15-04540-C

## ORDER

The Court abated this appeal on December 20, 2017, so that the trial court could make findings relating to whether Tonya Parks, individually and on behalf of Parks Realty Firm, LLC (PRF), voluntarily entered into an agreement under rule of civil procedure 11, pursuant to which Parks and PRF forfeited their right to bring this appeal, and whether any agreement is enforceable. On February 14, 2018, Parks and PRF filed an Emergency Motion To Stay Proceedings In Trial Court And Reconsider And Withdraw Order That Trial Court Conduct Hearing On Whether Trial Court Judge Coerced Plaintiffs Into Entering Into A Rule 11 Agreement And, In The Alternative, Motion That Case Be Transferred To Other County Court To Conduct Said Hearing, indicating the trial court had set the matter for hearing on February 16, 2018.

We **REINSTATE** this appeal for the limited purpose of ruling on Parks and PRF's Emergency Motion. We **DENY** the Emergency Motion. We **ABATE** the appeal to allow the trial court to comply with our December 20, 2017 order. This appeal will be automatically **REINSTATED** on the earlier of (1) the date when both a supplemental clerk's record containing the trial court's findings regarding all matters it considered in conjunction with the December 20, 2017 order, and a supplemental reporter's record of the hearing held on this matter have been filed with this Court, or (2) **February 26, 2018**.

/s/     ELIZABETH LANG-MIERS
PRESIDING JUSTICE

# APPENDIX 12

Order entered March 8, 2018



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00784-CV

**TONYA PARKS AND PARKS REALTY FIRM, LLC, Appellants**

**V.**

**AFFILIATED BANK, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-15-04540-C**

## ORDER

The Court abated this appeal on December 20, 2017, so that the trial court could make findings relating to whether Tonya Parks, individually and on behalf of Parks Realty Firm, LLC (PRF), voluntarily entered into an agreement under rule of civil procedure 11, pursuant to which Parks and PRF forfeited their right to bring this appeal, and whether any agreement is enforceable. The trial court held a hearing on February 16, 2018, and entered findings of fact and conclusions of law on February 27, 2018. Following the hearing, Parks and PRF requested the opportunity to brief and argue issues relating to (1) the trial court's rulings on objections made during the February 16, 2018 hearing, and findings of fact and conclusions of law; and (2) this Court's orders of December 20, 2017, and February 18, 2018, relating to the abatement of this appeal.

We **REINSTATE** this appeal. We **GRANT**, in part, Parks and PRF's request for additional briefing. By **March 23, 2018**, Parks and PRF may file a brief, not exceeding fifteen pages, raising only issues relating to the trial court's rulings on objections at the February 16, 2018 hearing and the trial court's February 27, 2018 findings of fact and conclusions of law. Affiliated Bank may file any response, not exceeding fifteen pages, by **April 9, 2018**. Parks and PRF may file any reply, not exceeding five pages, by **April 16, 2018**. No extensions to these deadlines will be entertained. Oral argument on the supplemental issues will not be permitted.

/s/      ELIZABETH LANG-MIERS
       PRESIDING JUSTICE

# Appendix 13

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUMES

CAUSE NO. CC-_____-C

TONYA PARKS, PARKS REALTY      *      IN COUNTY COURT
FIRM, LLC,
       Plaintiff      *

VS.      *      AT LAW NO. 3

AFFILIATED BANK, ET AL
       Defendants      *      DALLAS COUNTY, TEXAS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

EXCERPT OF PROCEEDINGS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Be it remembered that on the 8TH of January 2015 the above-styled and numbered cause came on for hearing before said Honorable SALLY MONTGOMERY, Presiding Judge, and the following proceedings were had, to wit:

APPEARANCES


MR. BALTASAR D. CRUZ
Attorney at Law
P.O. Box 600423
Dallas, TX. 75360
214-363-3754

APPEARING FOR THE PLAINTIFF


MR. JOHN BROWNING
MR. RYAN COLE
MR. JERRY ALEXANDER
Attorney at Law
2600 Renaissance Tower
1201 Elm Street
Dallas, TX. 75277
214-742-3111


APPEARING FOR THE DEFENDANT

INDEX

DATE: January 1., 201?                          PAGE

WITNESS                  DIRECT        CROSS      VOL.

Cayce Coskey            4,15,15      11,17,19      1

John Browning            11,25


Offer of Proof By Mr. Cruz........................11

Exhibits.....................................Vol. 2

Reporter's Certificate...............................??

P R O C E E D I N G S:

CAYCE OISKEY,

having been duly sworn, testified as follow:

DIRECT EXAMINATION

By Mr. Cram:

Q.    You understand you are under oath?

A.    Yes, sir.

Q.    Would you please state your name.

A.    Cayce Oiskey.

Q.    How do you spell your last name?

A.    O-i-s-k-e-y. Cayce, C-a-y-c-e.

Q.    Ms. Oiskey, did I subpoena you to be here today.

A.    Yes.

Q.    And what is your occupation.

A.    I am a court reporter.

Q.    And did you work as a court reporter with Judge Montgomery?

A.    Yes.

Q.    From when to when. What court was that?

A.    County Court at Law No. 5 in Dallas.

Q.    From when to when were you court reporter in that court.

A.    January 1993 to June 1995.

Q.    Okay. Now, do you remember me calling for

judge in the democratic primary in the spring of 2004 against Judge Montgomery?

A. Yes.

Q. Do you remember her saying anything about me?

A. Yes.

Q. What do you remember her saying about me?

MR. BROWNING: Objection. Hearsay.

THE COURT: Do you have a response to hearsay objection?

MR. ODLE: Yes, Your Honor. It's not hearsay because it's not being offered to prove the truth of what Judge Montgomery said about me, just that she said these things. They are disparaging remarks, Your Honor. I'm not trying to prove any of these things are true.

THE COURT: The objection is overruled. You may continue.

A. She said you were crazy.

Q. How many times did you hear her say I was crazy?

A. Several.

Q. To whom did she make the statements to?

A. To me, to other court staff, to anybody that might have been in the office and overheard.

Q.   And did you take that in a positive sense or negative sense?

A.   A negative sense.

Q.   Was there any doubt in your mind she meant it negatively?

A.   No.

Q.   Now, were you aware of Judge Montgomery retaliating against any of her other political opponents in her court?

MR. BROWNING:  Objection. Retaliating is argumentative, Your Honor.

THE COURT:  Overruled.

A.   I did hear her speak all of political opponents, former political opponents.  And, of course, present political opponents, meaning you. And there were certain people she would not appoint on cases because they were close with one of her opponents.

Q.   Other than me, which of her political opponents did she speak ill of that you heard her say.

A.   Bob Patterson, Karen Johnson.

Q.   And why did she refuse to give appointments to because they had opposed her politically.

A.   politically.

FIFTY SECOND, NOT ADOPTED

A.   The same but.  And also I remember she wouldn't give any appointments to Karen Gammon.

Q.   And who is Karen Gammon?

A.   She is a mediator in Dallas.  Well, she was, last I knew.

Q.   All right.  And why wouldn't she give any mediation appointments to Karen Gammon.

MR. BROWNING:  Objection.  Calls for speculation, Your Honor.

THE COURT:  Sustained.

Q.   What was your understanding, based on your interaction with Judge Montgomery, as to why she would not give any mediation appointments to Karen Gammon?

A.   My understanding was it was because she didn't trust her because she was close to Judge [unclear].

Q.   Who was Judge [unclear]?

A.   He was her predecessor.

Q.   Did she run for Judge against him?

A.   Yes.

Q.   Who is Karen [unclear]?

A.   One of her former political opponents.

Q.   Did she run for judge against her?

A.   Yes.

Q. And, to your knowledge, did Judge Genovein try to get any kind of appointments from Judge Montgomery?

A. I think he did. I think they met at one point and spoke and tried to smooth things over between the two of them, but I don't know if she ever appointed him on anything after that.

Q. To your knowledge, did she?

A. To my knowledge, she did not.

Q. Okay. Do you think that I should be concerned about her impartiality in a case in which I represent a party in her courtroom?

A. Yes.

MR. BROWNING: Objection. Speculation.

THE COURT: Sustained.

Q. Why did you want to work for Judge Montgomery?

A. She fired me.

Q. Why did she fire you.

A. Because -- it's a long story, but I filed a wrongful termination suit against her surrounding the termination. I brought some communication from the bailiff ... to the bailiff that the bailiff had communicated to the plaintiff in a

case we had chacing but not to the defendant's side. I brought that to her attention and told her about it and she told me to remain quiet about it and not say anything.

Q. What did you do?

A. I did that until one of the defense attorneys came to me and asked me how I thought the trial was going. And I told him I couldn't talk to him. And I told him he needed to talk to the bailiff.

Q. Then what happened?

A. The trial proceeded on, and we got a verdict. And the defense attorneys asked -- well, she finally revealed the communications two days later and the defense attorneys asked her if she had given an order for the staff not to say anything about it and she lied and said, no, she didn't know about it.

Q. What happened next?

A. We had a confrontation in the courtroom in which she threatened to fire me. I was supposed to leave for vacation the next day, so I really didn't know what was going to happen when I got back. She thought that I had spoken to the defense attorneys.

Q. Then what happened?

A.   I got back from vacation about a week to ten days later and she terminated me.

Q.   And then did you file a lawsuit as a result of that?

A.   Yes.

Q.   What happened in your lawsuit?

A.   Well, the jury found that I was wrongfully terminated but they found that I also reported to the wrong entity.

Q.   Now, did you tell me that in order to appear today you needed a subpoena.

A.   Yes.

Q.   Why is that.

A.   I just finally got Sally out of my life, didn't want her in it again.  I fear she might try to retaliate against me in some way.

Q.   Why are you afraid that she might try to retaliate against you in some way?

A.   Because I have seen her do it to others, anyone that goes against her.

Q.   And have you seen her retaliate against?

A.   Well, against me, against former political opponents, you, Roy Ferguson, Karen Johnson.

Q.   How did she retaliate against me.

A.   Well, all I recall is her saying the

disparaging remarks about you. I don't know physically if she did anything.

Q. You're not concerned she would physically do anything to hurt you?

A. No.

Q. So when you say retaliate, you mean something else?

A. Correct. I mean, I don't know if she took any action other than saying what she said.

Q. Based upon your interactions with Judge Montgomery, do you believe that she could be impartial in a case in which I appeared before her?

MR. BROWNING: Objection. Calls for speculation. We are talking about a relationship that -- in the distant past, over twelve years.

THE COURT: Sustained.

MR. SMITH: Pass the witness.

CROSS-EXAMINATION

By Mr. Browning:

Q. Ms. Disney, my name is John Browning. I represent Affiliated Bank in this case. First of all, just to clarify, I have asked you about retaliation taken against him. You are not aware of any retaliation taken against Mr. Reid.

A. No, not any action taken, no.

Q. So you don't know if Mr. Cruz has put his name in for an appointment on some matter and been refused? You have no knowledge of that, do you?

A. No, I don't.

Q. The only knowledge you do have is, let's just say, dated. You haven't been interactive with Judge Montgomery since you were terminated as a court reporter back in June of 2006, about twelve years ago, correct?

A. I have not. The only knowledge I do have is specific knowledge as to a case that he appeared on in our court.

Q. Again, we are talking about twelve years back.

A. Yes.

Q. Nothing more recent. You have no knowledge about what Judge Montgomery -- you have no personal knowledge about what Judge Montgomery's actions towards Mr. Cruz might be, do you?

A. Not really, no.

Q. Okay. Now, you said that you heard Judge Montgomery speak at a judges here's. You are aware that we have a system of partisan elections in that we elect judges in Texas, right.

A. Yes.

Q.   Would you agree with me it's not uncommon during the heat of a campaign for people on opposite sides of a primary or general election to maybe not hold hands and sing Kumbaya together?

A.   Yes, that is not uncommon.

Q.   Okay.   So it would not be unusual for someone who is being opposed by someone who wants, let's just put it bluntly, someone who wants her job to not have particularly nice things to say about them, correct?

A.   Correct.   I haven't --

Q.   I'm sorry.   I have another question.   You are not aware of what Mr. [___] was saying during this time period back twelve years ago about Judge Montgomery, are you.

A.   No.

Q.   Okay.   So, but as you know, there may have been some ill will or harsh feelings or animosity displayed by Mr. [___] during that same distant time period.

A.   I'm not aware.

Q.   Okay.   You just don't know one way or the other, right.

A.   Yes.

Q.   Okay.   As part of your statement that [___]

Montgomery would not give appointments to Mr. Cruz, could you point us to any instance in which Mr. Cruz sought an appointment and did not receive it.

MR. [???]: I object to that. It mischaracterizes her testimony, Your Honor.

THE COURT: Overruled. You may answer.

A. I don't believe that's what I said. I don't know if he ever asked for appointments from her. It's the other individuals I mentioned that I know she didn't.

Q. So as far as an actual display of [???] discrimination or prejudicial [???] towards Mr. Cruz, you are not aware there was ever any tangible action, are you?

A. Other than asking me to remove a person [???] that was continued in at a hearing.

Q. I asked you about appointments. Are you aware of any failure or refusal to grant appointments.

A. No, not appointments.

Q. And I realize you are here under subpoena and, [???] of the matter is, you would hope Montgomery —

A. I would rather not say.

Q.   For actions you attributed to Judge Montgomery who was your opponent?

A.   Yes, sir.

Q.   That suit was unsuccessful, wasn't it?

A.   In the sense. In another sense, it was successful.

Q.   How about in the sense that most people file lawsuits for? How much money did you recover?

A.   I didn't receive any money. It wasn't about the money.

Q.   Okay. Thank you.

MR. FRANKLIN: Pass the witness.

THE COURT: Any other questions, Mr. Cruz?

MR. CRUZ: I didn't know he passed the witness. I didn't know that.

REDIRECT EXAMINATION

By Mr. Cruz:

Q.   Mr. Rosey, did you say Judge Montgomery asked you to alter a transcript in a case that I was involved in?

A.   Yes, sir.

Q.   What did you remember about that.

A.   I believe the name of the case was In re Winston Blankenship. No, it's a hearing in which

she said that she would sanction you because you filed charges against Mr. Hayworth for assault. He was the opposing attorney.

Q. And how did she come about asking you to alter the transcript in that case?

A. She came into my office and she mentioned that she didn't mean for a portion of that to be on the record. And I told her that if she did not say off the record, it would be in the record.

Q. Did you understand her to be asking you to alter the transcript?

A. Yes.

Q. And then, sir, what did you do next now.

A. I did not alter the record.

Q. Would you question Judge Montgomery's impartiality in a case in which I appeared before her.

MS. BANNING: Objection speculation. No foundation.

THE COURT: Sustained.

MR. BELL: Your Honor, did I not ask about the opinion, whether she would question her impartiality in that case?

THE COURT: How would that be relevant to the issue in this case?

MR. TRUE: Well, because under Rule 18B.1, grounds for refusing a judge is if they are, quote, impartiality might reasonably be questioned.

THE COURT: The objection is sustained. Ask your next question.

Q. Based upon your interaction with Judge Montgomery, do you believe that she has a prejudice something her?

MR. BROWNING: Objection. Speculation. Again, improper foundation. This witness has not been shown to be any sort of expert, psychological or otherwise.

MR. TRUE: I don't believe that is a matter --

THE COURT: Sustained.

MR. TRUE: I'll go to the other.

REDIRECT-EXAMINATION

By Mr. Browning:

Q. Ms. Daskal, you characterized Judge Montgomery approaching you and testifying that a portion of testimony that you took down in exchange was meant to go off the record. Can you characterize this as being accurate within a transcript, correct.

A.   Yes, sir.

Q.   It's something you didn't undertake, correct?

A.   That's correct.

Q.   And did you explain to Judge Montgomery you considered this to be altering a transcript?

A.   I simply told her that if she did not say off the record, it would not be off the record.

Q.   Did the phrase "alter transcript" ever come up in your exchange with her at that time?

A.   I don't recall.

Q.   Okay.  I understand why you don't recall. This is, then, the twelfth year at, right.

A.   Uh-huh.

Q.   Certainly, you didn't file any sort of judicial misconduct complaint against Judge Montgomery, did you.

A.   I did not.

MR. BRINKING:  Poll the witness.

Q.   Well, not at that time.

THE COURT:  Any other questions.

FURTHER EXAMINATION

By Mr. ____:

Q.   Did you at some other point file a judicial complaint against Judge Montgomery?

**OFFER OF PROOF BY MR. CRUZ**

THE COURT: Are you making an offer of proof?

MR. CRUZ: I am.

THE COURT: Go ahead.

MR. CRUZ: Dorothy Dean told me that she was at a hearing in Judge Montgomery's court when she was judge of the 28th District Court and that -- in a case she was involved in involving a black church. And that as Judge Montgomery was stepping down from the bench she said, and I quote her very specifically, "I am tired of dealing with these nigger bitches," unquote. And I apologize for using such offensive language but that's specifically what Ms. Dean told me. And I am only saying that now so that the transcript is accurate and that _____ life.

THE COURT: _____ your offer of proof?

MR. CRUZ: That is _____ my offer of proof.

JOHN BROWNING,

having been duly sworn, testified as follow:

DIRECT EXAMINATION

By Mr. Cruz:

Q.   Mr. Browning, has Sally Montgomery, judge of County Court at Law No. 4, ever been a client of yours?

A.   She was a client at the firm, which I was formally employed, Lewis Bristol.

Q.   Have you personally provided legal services to Sally Montgomery in her political campaign?

A.   I was at least the attorney at that firm that provided legal representation, and because it has been so many years ago, I can't recall if the client of the firm identified was the Judge Sally Montgomery campaign or Judge Montgomery individually.

Q.   Okay.

A.   I did not review payment. I can't tell you what was in the envelope. I provided it and certainly her services.

MR. CRUZ:   Objection, Your Honor.

THE COURT:   Overruled.

Q.   Do you not, in fact, have at

attorney client relationship yourself with Sally Montgomery; is that true?

A. As one of multiple attorneys with that firm, yes.

Q. When did you cease to have an attorney client relationship with Sally Montgomery?

A. I do not recall. I ceased to be an attorney with that firm sometime in 2018, roughly four years ago. I can't recall when the attorney client relationship ceased. I believe it began some time in 2016 and was very limited in scope.

Q. Now, in the course of providing legal services to Sally Montgomery in her campaign, did you have direct contact with Sally Montgomery?

A. I have to object on the grounds of attorney client privilege. It's improper and counsel will be to discuss the nature of representation and the nature of communications.

THE COURT: Without discussing any confidential communication, I believe the question was, did you have direct contact with Judge Montgomery. Answer the question.

A. I communicated with Judge Montgomery to review.

Q.   Did you talk directly with Sally
Montgomery in the course of providing her legal
representation?

A.   Again, I believe this is calling for
something that is invasive of attorney/client
communications.  I can say that regardless of
whether I received documents in the mail or by
email, I am sure that I would have had some kind of
communication with the firm's client.

MR. SPID:  Objection.  Nonresponsive.

THE COURT:  Sustained.

Q.   In the course of providing legal services
to Sally Montgomery, did you speak to her directly.

A.   Same objection to the same question.

MR. SPID:  Your Honor --

THE COURT:  I will sustain the
privilege objection.

MR. BENT:  I'm not asking what they
talked about.  I just want to know, if, in the
course of providing legal services to Sally
Montgomery, he ever spoke with her.  The client --
I am not asking about the content, Judge, whether it
be oral or whatever, I am trying to establish that
there was a direct relationship that --
Mr. Browning is trying to impress this court with the

impression of.

THE COURT: The objection is sustained.

Q. Were you Judge Montgomery's primary attorney contact during the time you were -- or your firm were providing legal services to her?

A. I don't recall. I reviewed documents. I don't know. And, without reviewing time sheets, I couldn't tell you who else, if anyone, would have been involved.

Q. Given that [...] you may have been your law firm's primary attorney contact with Sally Montgomery for the purpose of providing your legal services?

MR. ALEXANDER: Objection. Asked and answered.

THE COURT: Sustained.

Q. Are you still providing legal services to Sally Montgomery or the campaign.

A. No.

Q. And when did you stop doing that.

A. The [...] I had was primary tenure as a partner at [...]

Q. [...]

been introduced and admitted into evidence that Judge Montgomery reported paying legal fees to you, John Browning, did you see that?

A. I saw that.

Q. Are you saying that Judge Montgomery's filings, with regards to that, are false?

A. I am not saying they are false. I don't recall and it would have been highly unusual to have been paid directly. And, in fact, on the limited occasions where a client of mine has mistakenly made a check payable to me, I endorse that over and hand it over to my law firm.

Q. When did you become aware that Judge Montgomery had reported paying you, John Browning, for legal services on the campaign financial reports.

A. I first became aware of the mistaken and unsuccessful attempt at appealing the case against my client, Mr. _____.

Q. Did you make any attempt to inform Judge Montgomery that the campaign finance entries were inaccurate.

A. I don't recall if I or anyone else made any kind of correction of a political candidate's paperwork. I am not --

MR. CRUE: Objection. Nonresponsive.

Q. Did you have any objection after Judge Montgomery, after you discovered that her campaign finance reports were inaccurate concerning payments to you, that they were inaccurate?

A. I don't know why Judge Montgomery or whoever filled out the paperwork --

MR. CRUE: Objection. Nonresponsive.

A. I'm sorry. I haven't --

THE COURT: Hold on. Stop.

A. You may want to hear what I have to say before you make an objection.

THE COURT: The nonresponsive objection is sustained. The question was did you make any objection.

A. I did not see any reason to do, no, because I didn't think --

MR. CRUE: I object to everything other than no. Nonresponsive.

THE COURT: Sustained.

MR. CRUE: I join the motion.

THE COURT: Do you have any testimony that she would like to offer in that case?

MR. MONTGOMERY: Certainly, Your Honor. I was not aware because I had not seen the payment --

PLAINTIFF'S EXHIBIT ADMITTED

THE COURT: Just for clarity purposes, are you representing yourself? Are you represented. Should we do this question/answer?

MR. BROWNING: It will be a brief narrative, Your Honor.

THE COURT: Okay. Go ahead.

MR. BROWNING: As an attorney years ago at Lewis Brisbois, I don't recall because I didn't usually receive the checks. They would go to our accounting people -- how a check was made out. Nor do I recall how Judge Montgomery filled out her campaign paperwork and, if she filled it out identifying me by name, because I was an attorney she knew there rather than the firm's name. I do note in that paperwork my firm is listed [illegible] on at least one or more entries as the payee. So as to why I was identified when I was employed by them, I can't, given the passage of time, I can't say. I didn't work individually. At the time that I was employed by and a partner with a firm, I would have never taken any [illegible] payment [illegible] firm.

THE COURT: Any other testimony.

MR. BROWNING: No, Your Honor.

THE COURT: Any other questions.

MR. TRUE: No, [illegible].

REDIRECT EXAMINATION

By Mr. Cruz:

Q. Exhibit 1 that has been admitted as evidence of this hearing shows that Judge Montgomery reported paying you, John Browning, $3,000 for legal services. Do you know whether or not your law firm received a check made out to you for $3,000 that would correspond to what Judge Montgomery reported?

A. Given the number of years and without looking at Judge Montgomery's checkbook, I could not answer that question. All I can tell you, as I testified earlier, is that during the few isolated instances while a circuit if it so happens to where a check that is, for whatever reason made payable to me, I endorse it over and give them that to my firm.

MR. SMITH: Your Honor, may I have Mr. Browning exhibit marked no. May I approach the witness, Your Honor.

THE COURT: You may.

Q. I am going to hand you B-1 and you see the copy we are all looking at it.

A. I do. I see it tells is my office address at Grove Houston.

Q. Great. Does it say anywhere in this date, regarding payment of $3,000 to you, I see it says

your law firm.

A. It does not. But there is other information it does not include either.

MR. OPIE: I pass the witness, Your Honor.

THE COURT: Can you hand me back the exhibit so we don't lose it.

MR. GRIGGINS: I have no further narrative to first, I don't know. If I am passed as a witnesses, may I return to counsel table?

THE COURT: You may step down.

THE COURT: Mr. Cruz, any other witnesses?

MR. CRUZ: No, Your Honor, we rest.

END OF EXHIBIT

STATE OF TEXAS

COUNTY OF DALLAS

I, Robin Benton, sitting Court Reporter in and for County Court at Law No. 3, of Dallas County, Texas, do hereby certify that the above and the foregoing contain a true and correct transcription of excerpts of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court and in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid.

WITNESS MY OFFICIAL HAND this the 15th day of February, 20___.

Robin Benton
Official Court Reporter

# APPENDIX 14

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and | § | IN THE COUNTY COURT |
| PARKS REALTY FIRM, LLC | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 3 |
| AFFILIATED BANK; | § | |
| AFFILIATED BANK FSB; | § | |
| AFFILIATED BANK FSB, INC. | § | |
| BANCAFFILIATED, INC.; | § | |
| JOSHUA CAMPBELL and | § | |
| KATHERINE CAMPBELL | § | |
| | § | |
| *Defendants* | § | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT JOSHUA CAMPBELL'S MOTION TO DISMISS

Came on to be heard Defendant Joshua Campbell's Motion to Dismiss Under the Texas Citizens' Participation Act. After considering Defendant Joshua Campbell's Motion to Dismiss this suit under the Citizens' Participation Act (the "Motion to Dismiss"), the response of Plaintiffs Tonya Parks and Parks Realty Firm, LLC ("Plaintiffs"), the pleadings, and the competent evidence properly before the Court, the Court finds that Defendant's Motion to Dismiss has merit and should in all things be **GRANTED**.

It is therefore **ORDERED, ADJUDGED, AND DECREED** that:

1.      all claims and causes of action against Defendant Joshua Campbell are dismissed with prejudice to the re-filing of the same;

2.      all claims and causes of action against Defendant Affiliated Bank are dismissed with prejudice to the re-filing of the same;

EX.
A-1



CC - 15 - 04540 - C
CODP
ORDER - DISMISSAL WITH PREJUDICE
1047186

3.	Defendant Joshua Campbell is awarded $62,297.50 from Plaintiffs Tony Parks and Parks Realty Firm, LLC, jointly and severally, in court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity require; and

3.	Defendant Affiliated Bank is awarded $29,876.40 from Plaintiffs Tony Parks and Parks Realty Firm, LLC, jointly and severally, in court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity require.

The Court notes that Plaintiffs entered a non-suit of Defendant Katherine Campbell on and effective Monday, March 21, 2016, and that Plaintiffs entered a non-suit of Defendants Affiliated Bank FSB, Affiliated Bank FSB, Inc., and Bancaffiliated Inc. before and effective before the hearing on the Motion to Dismiss on March 22, 2016. Accordingly, this Order disposes of claims and causes of action and all parties before the Court and is final and appealable.

SIGNED ON THIS _24_ day of _March_, 2016

HONORABLE JUDGE PRESIDING

# Appendix 15

















# APPENDIX 16

**Emily Miskel**    John Browning    5 others    •••

Day 1 of the Innovations course was very interesting. I'm looking forward to presenting tomorrow on how technology and social media can affect custody cases. New Orleans is a beautiful city, but a bit overwhelming with Mardi Gras and the All-Star Game going on!



👍 Like                          ↪ Share

All   **Posts**   People   Photos   Videos   Pages   Places   Groups   Apps   Events   Links
Trending

**Filter Results**

John Browning was tagged in this

**TAGGED LOCATION**

Anywhere

McKinney, Texas

For Worth, Texas

Choose a Location

**DATE POSTED**

Anytime

2018

2017

2016

Choose a Date


**Emily Miskel** is with **John Browning** and **5 others**.
February 16, 2017 at 4:16pm

Day 1 of the Innovations course was very interesting. I'm looking forward to presenting tomorrow on how technology and social media can affect custody cases. New Orleans is a beautiful city, but a bit overwhelming with Mardi Gras and the All-Star Game going on!



78                                                      7 Comments

John Browning and Emily Miskel were tagged in this


**Judge Emily Miskel, 470th District Court** is with **Emily Miskel**...
March 3, 2017 at 1:35pm · Dallas, TX

Heard some wonderful speakers today at the Texas Women Lawyers Annual Meeting. Congratulations to Chief Justice Carolyn Wright for winning the Pathfinder Award



7

John Browning was tagged in this


**Judge Emily Miskel, 470th District Court** added 3 new photo...
February 16, 2017 at 10:00pm · New Orleans, LA

...at the Innovations: Breaking Boundaries in Custody Litigation course, with Karl Hays (Austin), Rick Robertson (Plano), John Browning (Dallas), and John Zervopoulos (Dallas)



11


Emily Miskel
March 20, 20

**Internet of things!!** Kristal Thomson Mark Ilan Unger Rick Robertson Craig Haston John Browning Reginald Hirsch https://xkcd.com/1807/



Andrzej Duda
Poland's president will sign controversial Holocaust bill - cnn.com

Bitcoin
Bitcoin: Lloyds Bans Credit Card Customers From... uk.news.yahoo.com

Iraq
US troops in Iraq to shift mission - abcnews.go.com

Winter Olympics
Military deployed as norovirus outbreak hits Winter Olympic security... cnn.com

Wall Street
Stock Markets Sink, Suggesting Global Rout Will Last - nytimes.com

Robert Mueller
Trump lawyers warn him against Mueller interview: report - thehill.com

Mohamed Nasheed
Maldives' ex-president Nasheed urges India to intervene to... reuters.com

Yokohama National University
Chemical in McDonald's french fries could cure baldness: study - nypost.com

Best Buy
Best Buy is pulling CDs from its stores — and people are... businessinsider.com

Colorado Springs, Colorado
Deputy killed, officers wounded in Colorado Springs shooting - foxnews.com

Learn More

English (US)   Español
Português (Brasil)   Français (France)
Deutsch

Privacy  Terms  Advertising  Ad Choices
Cookies  More
Facebook © 2018

Chat (35)

All   **Posts**   People   Photos   Videos   Posts   Places   Groups   Apps   Events   Links

27                                                3 Comments

 Mark Ilan Unger **Sometimes I feel like my girlfriend Siri knows** everything about me...then other times I feel like my other girlfriend Alexa knows everything about me...it's so confusing...

Like   46w                                         2

 Shawn Tuma Mark Ilan Unger ... **never mind.**   2

Like   46w

 John Browning Unfortunately, there's no privilege with IoT "girlfriends" like Alexa and Siri. Check out my article in the May issue of Dallas Bar Headnotes, "Alexa, Will You Testify Against Me?"

Like   46w

 Craig Haston That just opened up such a world of possibilities!

Like   45w

 **"Kickin' For A Cure"**
October 8, 2012 at 10:27am

LIST OF THE WINNERS OF THE ITEMS IN THE KICKIN' FOR A CURE AUCTION: 1. Under Armour Package Deal: GWEN HOLT 2. Breast Cancer ball signed by UNA soccer: BESTY HOLT HARMON 3. Pink Soccer Ball signed by UNA soccer team: JIM EASTMAN 4. Applebee's...See more

End of Results

**Judge Emily Miskel, 470th District Court** 👍 Like Page

3 new photos — Emily Miskel

2 others — 📍 Astor Crowne Plaza Hotel - New Orleans

Enjoyed speaking on "Digital Dirt - The Impact of Social Media on Your Case" at the Innovations: Breaking Boundaries in Custody Litigation course, with Karl Hays (Austin), Rick Robertson (Plano), John Browning (Dallas), and John Zervopoulos (Dallas)



👍 Like     💬 Comment     ↪ Share     👤 ▾

---

eople     Photos     Videos     Pages     Places     Groups     Apps



**Judge Emily Miskel, 470th District Court** 👍 Like Page

Heard some wonderful speakers today at the Texas Women Lawyers Annual Meeting. Congratulations to Chief Justice Carolyn Wright for winning the Pathfinder Award



 Like      Comment      Share     👤 ▾



# Appendix 17





**Campaign Treasurer:**
*Charlie O'Reilly*

**Steering Committee:**

*Hon. Cathie Adams*

*Dr. Homer Adams*

*Kent Adams*

*Jerry C. Alexander*

*Chip Babcock*

*Bob Black*

*Talmage Boston*

*Maryann Sarris Brousseau*

*David Chamberlain*

*Hon. Kenda Culpepper*

*Scott Downing*

*Hon. Robert S. Driegert*

*Joe Fox*

RE:     *Announcing My Candidacy for the Fifth Court of Appeals*

Dear Conservative Voter:

It is an honor to announce my candidacy for an open seat (non-incumbent) on the Fifth District Court of Appeals in Dallas. Justice Douglas Lang is running for the position of Chief Justice, which would leave his position (Place 11) open. After much thought and prayer about devoting myself to public service, I've decided to seek the office of Justice as a candidate in the March 2018 primary. I'm writing to seek your support in this race.

### Why am I running?

Quite simply, the work of the Fifth Court of Appeals is too important not to have the best-qualified people serving on it. It is the largest and busiest intermediate appellate court in Texas, handling about 2,000 new cases a year from the 6 counties in its jurisdiction: Collin, Dallas, Grayson, Hunt, Kaufman, and Rockwall.

My opponent in this race is a young criminal defense lawyer who has never even handled an appeal and has previously made unsuccessful bids for a bench in Dallas and for Dallas County District Attorney.

I am not running to better myself financially. Leaving the successful private practice that I've built over my career is a tremendous financial sacrifice—and I believe public service should be a sacrifice. I am running because I believe in public service and because protecting the rule of law is too important to entrust to those without the experience or qualifications to do the job.

### What makes me the best candidate?

For over 27 years, I have handled a wide variety of civil litigation in state and federal courts throughout Texas, representing everyone from individuals and small businesses to Fortune 100 companies. My experience includes litigation in all six counties that make up the jurisdiction of the Fifth Court of Appeals, handling

*Amy & Kevin Ganci*

*Bryan & Karolyne Garner*

*Cynthia Barela Graham*

*Randy Johnston*

*Hon. David Keltner*

*Mark Kopidlansky*

*Bill Krueger*

*Vernon Kreuger*

*Lorne Liechty*

*Mick McKamie*

*Patrick McLain*

*Hon. Harriet Miers*

*Rick Robertson*

*Hon. Richard Roper*

*Jim Sanders*

*Michele Smith*

*Hon. Frank Stevenson*

*Steve Stodghill*

*Ike Vanden Eykel*

*Peter Vogel*

*Jimmy Lou Westcott*

Partial Listing at Time of Posting

everything from wrongful death cases to business disputes, employment law, professional liability, intellectual property, consumer protection, media law, and family law. I have extensive appellate experience, with reported opinions from appellate courts throughout Texas, and have handled many cases before the Fifth Court of Appeals.

## Writing

Perhaps the most important part of the job of an appellate justice is writing. Besides the writing I routinely do in practice, I have authored four law books and am a contributing author to seven others. I am also the author of over 30 law review articles as well as hundreds of other articles in publications like the Texas Bar Journal, Texas Lawyer, and national legal publications. I have also been gratified to see my work receive many awards, including the Burton Award for Distinguished Achievement in Legal Writing, as well as the Texas Bar Foundation's Outstanding Law Review Article Award and the Bar College's Best CLE Article Award.

## Ethics

Adherence to our ethical standards is vital for lawyers and judges, and I am proud to have received the highest honors that a Texas lawyer can receive for legal ethics and professionalism—the Texas Bar Foundation's Lola Wright Award for lifetime achievement in legal ethics and the State Bar College's Jim Bowmer Professionalism Award.

I frequently write and speak on ethics topics, including judicial ethics, and I've served as chair of the Dallas Bar Association's Legal Ethics Committee. In 2015, I was appointed by the Supreme Court of Texas to the Professional Ethics Committee of the State Bar, which issues the ethics opinions providing guidance to Texas lawyers.

## Servant Leadership

I believe in serving our community and the legal profession. I serve or have served on numerous civic boards, including for organizations fighting domestic violence and promoting animal welfare. I've served as a bar association president. I've also served on the State Bar Grievance Committee, and as Chair of the Texas Bar Journal Board of Editors.

## Respected Scholarship

Appellate opinions form the body of law that guide us as lawyers and which we cite as authority. I serve as an adjunct law professor at 3 law schools (SMU Dedman School of Law, Texas A&M University School of Law, andTexas Tech University School of Law). My work has been cited as authority by courts in Texas and nationwide, as well as in over 300 law review articles. As a leading authority on technology and the law—an area of increasing importance for our courts—I've been quoted by *The New York Times*, *The Wall Street Journal*, *TIME* magazine, *USA Today*, the *ABA Journal*, and many other publications.

I also regularly teach judges as a member of the faculty of the Texas Center for the Judiciary, the National Center for State Courts, and the Appellate Justices Educational Institute. I am a member of the prestigious American Law Institute as well.

Simply put, the vital work that the Fifth Court of Appeals does demands that we put the best-qualified candidates on that court. I believe that I am the best-qualified candidate in my race, but I need your support to get me there. I ask that you support me, not only with your vote, but with a financial contribution as well.

Please feel free to call me on my cell regarding my candidacy (214-454-6563).

Thank you for your consideration.

John G. Browning

**Volunteer** here
**Email** here
**Donate** here or
Please send your checks payable to "John Browning Campaign" to
P.O. Box 1914, Rockwall, Texas 75087

WHEN MAKING A CONTRIBUTION, PLEASE INCLUDE YOUR COMPLETE MAILING ADDRESS ALONG WITH YOUR OCCUPATION, TITLE, AND THE NAME OF YOUR EMPLOYER OR LAW FIRM OF WHICH YOU AND YOUR SPOUSE IS A MEMBER, IF ANY; OR IF THE CONTRIBUTOR IS A CHILD, THE NAME OF THE LAW FIRM OF WHICH EITHER THE CHILD'S PARENTS IS A MEMBER, IF ANY. THIS INFORMATION IS NEEDED TO COMPLY WITH JUDICIAL CAMPAIGN REPORTING REQUIREMENTS OF TITLE 15, TEXAS ELECTION CODE SECTION .

INDIVIDUAL CONTRIBUTIONS ARE LIMITED TO $5,000 IN ACCORDANCE WITH TITLE 15, TEXAS ELECTION CODE, SECTION 253.155. THE AMOUNT OF ALL CONTRIBUTIONS BY A PERSON, THAT PERSON'S SPOUSE, AND THAT PERSON'S MINOR CHILDREN CANNOT EXCEED THE $5,000 LIMIT; HOWEVER PACS MAY CONTRIBUTE UP TO $25,000 AND FIRMS MAY CONTRIBUTE IN AGGREGATE UP TO $30,000 PER INDIVIDUAL FIRM. CONTRIBUTIONS ARE SUBJECT TO THE PROHIBITIONS AND LIMITATIONS OF THE TEXAS ELECTION CODE, WHICH PROHIBITS CONTRIBUTIONS FROM CORPORATIONS. ALL CONTRIBUTIONS MUST BE MADE FROM PERSONAL FUNDS AND MAY NOT BE REIMBURSED BY ANY OTHER PERSON. CONTRIBUTIONS ARE NOT TAX DEDUCTIBLE FOR FEDERAL INCOME TAX PURPOSES.



POLITICAL ADVERTISING PAID FOR BY JOHN BROWNING CAMPAIGN, CHARLIE O"REILLY, TREASURER, IN COMPLIANCE WITH THE VOLUNTARY LIMITS OF THE JUDICIAL CAMPAIGN FAIRNESS ACT.

Copyright © 2017 John Browning for Justice

## MR. JOHN G. BROWNING

**Eligible to Practice in Texas**

### PASSMAN & JONES

*Bar Card Number:* 03223050
*TX License Date:* 11/03/1989

*Primary Practice Location:* Dallas , Texas

*1201 Elm St Ste 2500*
*Dallas, TX 75270*

*Practice Areas:* Ethics-Legal Malpractice, Insurance, Litigation: Commercial, Litigation: Personal Injury

*Statutory Profile Last Certified On:* 03/10/2017

PRACTICE INFORMATION

*Firm:* Passman & Jones

*Firm Size:* 11 to 24

*Occupation:* Private Law Practice

*Practice Areas: Ethics-Legal Malpractice, Insurance, Litigation: Commercial, Litigation: Personal Injury*

**Services Provided:**
Hearing impaired translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

**Fee Options Provided:** ❓
None Reported By Attorney

***Please note:*** *Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her client. The State Bar of Texas is not responsible for payment arrangements between an attorney and his/her client.*

**Foreign Language Assistance:**
Spanish

LAW SCHOOL

**School**
**Degree earned**

University of Texas
**Graduation Date**     05/1989

PUBLIC DISCIPLINARY HISTORY

State of Texas*
No Public Disciplinary History

Other States
None Reported By Attorney

### CONTACT INFORMATION

Tel: 214-742-2121 📞

### RECOGNITION



Texas Bar College

### COURTS OF ADMITTANCE

**Federal:**
US Supreme Court
US Court of Federal Claims
US Court of International Trade
Fifth Circuit Court of Appeals
Federal Circuit Court of Appeals
Colorado District Court
Oklahoma Western District Court
Texas Eastern District Court
Texas Northern District Court
Texas Southern District/Bankruptcy Court
Texas Western District Court

**Other Courts:**
None Reported By Attorney

**Other States Licensed:**
None Reported By Attorney

**Note***

Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

**Note****

The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of



## Passman & Jones
A Professional Corporation

# John G. Browning



### Areas of Experience

Bank & Auto Dealer Services
Employment
Intellectual Property
Litigation
Professional Liability

214-742-2121 ext 3512

214-748-7949 (fax)

john.browning@passmanjones.com

VCF - John G. Browning.vcf

**Shareholder**

John Browning is a tough, aggressive trial lawyer with over 28 years of experience. Mr. Browning represents individuals and businesses both large and small in state and federal courts throughout Texas and Oklahoma, and on a pro hac vice basis in other jurisdictions.

Mr. Browning has extensive trial, arbitration, and summary judgment experience and in solving client problems in such areas as:

• Wrongful death and catastrophic personal injury defense
• Breach of contract and other commercial disputes
• Automotive, trucking, premises liability, and product liability litigation
• Professional liability claims and administrative proceedings for attorneys and health care professionals
• Consumer protection litigation (DTPA, FDCPA, FACTA, and others)
• Patent, trademark, and copyright infringement litigation
• Employment-related litigation including non-competes and trade Secrets

Primary Area(s) of Practice
• General Liability
• Employment
• Transportation
• Professional Liability
• Commercial Disputes
• Consumer Litigation Defense & Financial Services
• Data Privacy and Network Security
• Electronic Discovery, Information Management & Compliance

### Representative Cases

*(These are just a few examples of the many cases tried by Mr. Browning, and are not intended as an exclusive list)*

Defeated $4 million breach of contract lawsuit brought by one national health care entity against another in week-long jury trial (Dallas County)

Won dispositive motion in trademark infringement case between competing restaurant chains (U.S. District Court, N.D. of Texas)

Obtained a permanent injunction (after a 3 day trial) for a national leader in the animal health industry against several former employees who had violated a non-compete agreement (Tarrant County)

Successfully defended medical supplier/distributor in 2 week jury trial of non-compete/misappropriation of trade secrets case (Dallas County)

Defense verdict for utilities company in electrocution case (Dallas County)

Summary judgment (later affirmed on appeal) for owners of an apartment complex in a wrongful death case (Tarrant County)

Summary judgment (later affirmed on appeal) in defamation lawsuit brought against two executives at a national telecommunications firm (Dallas County)

Directed verdict for attorney/law firm in legal malpractice case (U.S. District Court, N.D. Texas)

Summary judgment (later affirmed on appeal) for national security guard company in premises liability case (Harris County)

Obtained dismissal of unfair competition lawsuit brought against health care consulting firm and national health care provider (Kansas City, MO)

Obtained defense verdicts in commercial arbitration proceedings for national manufactured housing entities in cases alleging deceptive trade practices and construction defects (Dallas, Bexar, Travis, McLennan, Tarrant, Rockwall, and Lubbock counties)

Set aside $26 million default judgment entered against Spanish gun manufacturer and North American distributors in shooting/product liability case, and later won summary judgment for all defendants (Dallas County)

Successfully defended numerous individuals wrongfully sued by the Recording Industry Association of

America (RIAA) for copyright infringement for alleged music downloading/filesharing, including children and active duty members of the military (U.S. District Courts for the Northern, Southern, Eastern, and Western Districts of Texas, and the U.S. District Court for the District of Colorado)

**Books**

*The Lawyer's Guide to Social Networking: Understanding Social Media's Impact on the Law* (Thomson Reuters/West Publishing 2010)

*The Social Media Litigation Guide* (West Publishing 2014)

*Cases and Materials on Social Media and the Law* (Carolina Academic Press, forthcoming)

*Legal Ethics and Social Media: A Practitioner's Handbook* Law (ABA Publishing 2017)

**Awards & Honors**

"AV" rated by Martindale-Hubbell

Designated a *"Texas Super Lawyer"* by Law & Politics magazine 2005-2013; named a *"Texas Super Lawyer"* in the field of Civil Litigation Defense for Super Lawyers' Corporate Counsel Edition, 2008--2010; named a *"Texas Super Lawyer"* for Super Lawyers' Business Edition, 2011.

Designated a 2013 Top Rated Lawyer in Technology Law by American Lawyer Media & Martindale Hubbell

Charter Fellow, Litigation Counsel of America (trial lawyer honorary society, 2007 -present)

Elected member, International Association of Defense Counsel (2010)

Elected member of the American Law Institute (2009)

Elected Fellow of the Texas Bar Foundation (2010)

Winner of the Burton Award for Distinguished Achievement in Legal Writing, 2009, 2010, and 2012

Recipient of the Texas Bar CLE "Standing Ovation" Award (2012)

Recipient of the Texas Bar Foundation's Outstanding Law Review Article of the Year Award (2012)

Recipient of the College of the State Bar of Texas Franklin Jones Award for the Best CLE Article (2012)

Recipient of the Texas Bar Foundation's Dan Rugeley Price Memorial Award for outstanding contributions to the legal profession (2013)

**Articles**

"Sounds Like ... A Trademark," *IPFrontline.com* (Sept. 2009)

"Jurors Online?· *In Chambers* Vol. 36, No. 3 (Summer 2009)

"Facing Up to Facebook: What Claims Professionals Need to Know About Social Networking, "Today's Insurance Professionals Vol. 66, No. 3 (Fall 2009)

"From Lawbooks to Facebook: What Trial Lawyers Need to Know About

Social Media," *Voir Dire*, Vol. 16, No. 1 (Spring 2009)

"Beware the Online Juror," *Voir Dire*, Vol. 16, No.2 (Summer 2009)

"Social Media in the Jury Box," *State Bar College Bulletin* (Fall 2009)

"Justice Red in Tooth and Claw: Eugenics, the Supreme Court, and Buck v. Bell," *The Journal of Law, Medicine & Ethics*, Vol. 37, No. 3 (Fall 2009)

"How Durable a Program? A Look at the Past, Present, and Future of

Competitive Bidding and Durable Medical Equipment," *ABA Health Lawyer* (April 2010) (co-authored with E. Vishnewtsky)

"Is Social Media Turning the Jury Box Into Pandora's Box?" Case *in Point* (magazine of the National Judicial College) (2010)

"Served Without Ever Leaving the Computer: Service of Process Via Social Media" *Texas BarJournal*, Vol. 73, No.3 (March 2010)

'When All That Twitters Is Not Told: Dangers of the Online Juror," *Texas Bar Journal*, Vol. 73, No.3 (March 2010)

"Social Networking Dos and Don'ts For Lawyers and Judges," *Texas Bar Journal*, Vol. 73, No.3 (March 2010)

"The Online Juror," *Judicature*, Vol. 93, No. 6 (May/June 2010)

"Putting Facebook in Your Playbook,"· *The Collector*, (April 2010)

"D & 0 Carriers, Don't Put Away Those Checkbooks Yet: Recent Developments in D & 0 Liability Insurance," *Law360* (April 7, 2010)

"Facing Up to Facebook: Discoverability of Social Media Evidence," *Oklahoma Bar Journal*, Vol. 82, No.5 (Feb. 2011)

"You Can't Judge a Juror By the Recession," *Texas Bar Journal*, Vol. 74, No. 2 (Feb. 2011) (co-authored with J. Bloom and A. Bennett)

"Saying It With Style," *Texas Bar Journal*, Vol. 74, No. 2 (Feb. 2011)

"Digging for the Digital Dirt: Discoverability and Admissibility of Social Media Evidence," *SMU Science and Technology Law Review (Summer* 2011)

"Impeachment is a Few Mouseclicks Away: Claims Investigation and Litigation Using Social Media Evidence," *Today's Insurance Professionals* (Winter 2011)

"Why HR Managers Are Reading Your Facebook Page," *D CEO* (Jan-Feb 2012)

"Social Networking: A Necessary Weapon Or An Ethical Minefield?" *Family Lawyer Magazine* (2013)

**Presentations**

"Social Media and the Courts," Texas Center for the Judiciary Annual Technology and the Law Conference (Jan. 2010)

"Cell Phones & Texting in the Workplace: Legal Issues for Employers," (Jan. 2010), National Audio Conference for M. Lee Smith Publishers

What Claims Professionals Need to Know About Social Networking," Dallas Claims Association (Feb. 2010)

"Social Media and the 21st Century Courtroom," Texas Judiciary Foundation Annual Symposium on the Future of Texas Courts, S. Texas College of Law (March 2010)

"Social Media Tools in Attorney Marketing," Dallas Minority Attorney Annual Conference (April 2010)

"Electronic Communications Policies in the Workplace," Foundation Repair Association Annual Conference (April 2010)

"Foiled By Facebook" (Keynote speaker, Justinian Awards luncheon) (April 2010)

What DME Providers Need to Know About Medicare ZPIC Audits," Lone Star HME Conference (April 2010)

"Authenticating Tweets: Using Social Networking Evidence," State Bar Advanced Evidence & Discovery Course (May 2010)

When the Jury Box Becomes Pandora's Box: Dangers of the Online Juror," LCA Spring Conference, Monterey, CA (May 2010)

"Buck v. Bell, the American Eugenics Movement, and the Roots of the Right to Privacy," State Bar Bill of Rights Course (May 2010)

"Buck v. Bell, The Supreme Court, and Eugenics," State Bar of Texas Annual Meeting (June 2010)

"Use of Social Media Evidence," State Bar of Texas Annual Meeting (June 2010)

"Social Media & Open Government Issues," State Bar of Texas Annual Meeting (June 2010)

"Evidentiary Issues with Social Media," Texas Center for the Judiciary (July 2010)

"Dangers of the Online Juror," State Bar Suing and Defending Governmental Entities Course (July 2010)

"From Lawbooks to Facebook: Discovering & Using Social Media Evidence," State Bar Annual Summer School (July 2010)

"Social Media in the Workplace," Association of Legal Administrators (July 2010)

"Using Social Media Evidence in Litigation," Texas Bar Advanced Consumer & Commercial Law Course (Sept. 2010)

"The Dangers of the Online Juror," Dallas Bar Association Bench Bar Conference (Oct. 2010)

"Electronic Communications in the Workplace-What H.R. Professionals Need to Know," national webinar (Oct. 2010)

"Privacy Issues in the Workplace," Annual Labor & Employment Conference (Oct. 2010)

"Claims Investigation Using Social Media," TIIAA Annual Conference (Nov. 2010)

"Using Social Media Evidence in the Courtroom," LEGUS Fall Conference, Des Moines, IA (Nov. 2010)

"When Evidence Doesn't Pass the Smell Test: Dog Scent Lineups & Junk Science," Current Issues in Forensic Science Conference (Dec. 2010)

"Authenticating Tweets," State Bar of Texas webcast (Dec. 2010)

"Discovery & Use of Social Media Evidence," Texas Association of Defense Counsel Winter Seminar, teamboat Springs, CO (Feb. 2011)

"The Myth of Privacy in the Wired World," Texas Center for the Judiciary Regional Conference (Feb. 2011)

"Tech Wars: Discovery & Use of Social Media Evidence," IADC Mid-Year Meeting, Pebble Beach, CA (Feb. 2011)

"Discoverability & Admissibility Issues With Social Media Evidence," Robert O. Dawson Annual Juvenile Law Conference (Feb. 2011)

"The Power of Social Media," ALTRUSA Monthly Meeting (March 2011)

"Ethics of Social Media Use for Claims Professionals," RIMKUS Consulting Annual Claims Seminar (March 2011)

"Dangers of the Online Juror," Fort Worth Paralegal Association (March 2011)

"Digging for the Digital Dirt: Discovery & Use of Evidence From Social Media Sites," 45th Annual SMU Air Law Symposium (March 2011)

"Discovering & Using Social Networking Evidence," Texas Bar Advanced Trial Skills for Government Lawyers Conference (April 2011)

"Discoverability & Admissibility Issues with Social Networking Evidence," Texas Bar Annual Poverty Law Conference (April 2011)

"Social Media and Crisis Management for the In-House Counsel," IADC Corporate Counsel College, Chicago, IL (April 2011)

"Authenticating Tweets: Discovery & Use of Social Media Evidence," (course director and speaker, Texas Bar Advanced Evidence & Discovery course, May 2011)

"Mistrial by Google," Texas Center for the Judiciary (May 2011)

"Social Media and Its Application to Aviation Litigation," ABA Annual Aviation Law Conference, New York, NY (June 2011)

"Dangers of the Online Juror," Collin County Bar Association Bench Bar Conference (June 2011)

"Using Social Media Evidence in Family Law Proceedings," UT-CLE Annual Family Law Seminar (June 2011)

"Dangers of the Online Juror," Texas Bar Advanced Civil Trial Course (July 2011)

## Appointments
Adjunct Professor of Law, SMU Dedman School of Law (2010-present)
Adjunct Professor of Law, Texas Wesleyan University School of Law (2011-present)

## Journalism Distinction
Since 2005, Mr. Browning has authored the weekly syndicated newspaper column "Legally Speaking;" he also serves as a contributing editor for DCEO magazine, and has been a legal columnist for the Dallas Business Journal and Houston Business Journal. His work has garnered numerous journalism awards, including the Clarion Award for Outstanding Newspaper Column; the Suburban Newspaper Association's

Best Column Writing Award; the Texas Press Association's Outstanding Column Award; the Press Club of Dallas' Katie Award for Best Specialty Reporting; the Houston Press Club's Lone Star Awards for Outstanding Commentary/Criticism in a Newspaper (2006, 2007, 2008, 2009, 2010, and 2011) and Print Journalist of the Year (2009); 6 Philbin Awards for Excellence in Legal Reporting; and in 2007 he was nominated for a Pulitzer Prize in Journalism.

Mr. Browning's background as a journalist and trial lawyer has led to considerable experience in media law representation, and in 2009 he successfully defended an online media outlet in one of the first "journalism shield law" cases in Texas.

### Social Media And The Law

As the author of numerous articles and the leading book on social media's impact on the law, Mr. Browning is frequently sought out by national and international media on the subject. He has appeared on television, radio, and podcasts discussing social networking and the law, and has been quoted in such publications as *The New York Times, TIME magazine, Law360, the National Law Journal, Salon.com,* and *Law Times of Canada.*

## Education

J.D., University of Texas

> University of Texas School of Law, 1989
> Member, Board of Advocates
> Received the Vision & Elkins Scholarship, West Publishing Award, and Corpus Juris Secundum Award

B.A., Rutgers University (Rutgers College). 1986

> History and Comparative Literature National Merit Scholar Phi Beta Kappa Henry Rutgers Scholar
> Graduated with general honours and departmental honors in both majors

## Memberships

### Admissions

Texas
Oklahoma
United States District Court for the Northern, Southern Eastern and Western Districts of Texas
United States District Court for the Western District of Oklahoma
United States District Court for the District of Colorado
United States Claims Court
United States Court of International Trade
United States Court of Appeals 5th Circuit, Federal Circuit
United States Supreme Court

### Associations

State Bar of Texas
State Bar of Oklahoma
Dallas Bar Association
President, Rockwall County Bar Association (2009--201 0)
Life Fellow, Texas Bar Foundation
Texas Association of Defense Counsel
International Association of Defense Counsel (IADC)
Chair, Texas Bar Journal Editorial Advisory Board
Member, State Bar of Texas District 1A Grievance Committee (2005--2011)
Litigation Counsel of America
Legal Counsel, Rockwall County Republican Party
Master, William "Mac" Taylor American Inn of Court
Elected Member, The American Law Institute
American Society of Legal Writers (SCRIBES)

Mr. Browning has also served or currently serves on the boards of various charitable organizations, including the Press Club of Dallas and the Lillian Smith Family Violence Foundation

Site contents copyright ©2018 by Passman & Jones, A Professional Corporation. All rights reserved.
Lawyer responsible for Contents of this web site: Mitchell Baddour, Jr.
Principal Office in Dallas, Texas

Site by Simple [A]

# MR. JERRY CLEMET ALEXANDER

**Eligible to Practice in Texas**

### PASSMAN & JONES

*Bar Card Number:* 00993500
*TX License Date:* 09/25/1972

*Primary Practice Location:* Dallas , Texas

*1201 Elm St Ste 2500*
*Dallas, TX 75270-2599*

*Practice Areas:* None Reported By Attorney

*Statutory Profile Last Certified On:* 12/04/2017

PRACTICE INFORMATION

*Firm:* Passman & Jones

*Firm Size:* 11 to 24

*Occupation:* Private Law Practice

*Practice Areas: None Reported By Attorney*

*Services Provided:*
Hearing impaired translation: Not Specified
ADA-accessible client service: Yes
Language translation: Yes

*Fee Options Provided:* ❷
None Reported By Attorney

*Please note: Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her client. The State Bar of Texas is not responsible for payment arrangements between an attorney and his/her client.*

*Foreign Language Assistance:*
None Reported By Attorney

LAW SCHOOL

*School*
*Degree earned*

Southern Methodist University
*Graduation Date*     05/1972

Southern Methodist University
Doctor of Jurisprudence/Juris Doctor (J.D.)
*Graduation Date*     05/1972

PUBLIC DISCIPLINARY HISTORY

State of Texas*
No Public Disciplinary History

Other States
None Reported By Attorney

CONTACT INFORMATION

Tel: 214-742-2121 ☎

COURTS OF ADMITTANCE

*Federal:*
US Supreme Court
Fifth Circuit Court of Appeals
Nevada District Court
Texas Eastern Bankruptcy Court
Texas Eastern District Court
Texas Northern Bankruptcy Court
Texas Northern District Court

*Other Courts:*
None Reported By Attorney

*Other States Licensed:*
None Reported By Attorney

*Note***
Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.



# Jerry C. Alexander



### Areas of Experience

Antitrust and Trade Regulation
Bankruptcy & Creditor's Rights
Employment
Intellectual Property
Litigation
Professional Liability

214-742-2121 ext 3579

214-748-7949 (fax)

alexander@passmanjones.com

VCF - Jerry C. Alexander.vcf

**Shareholder**

A former aide to Congressman Earl Cabell, United States Congressman from Texas' Fifth District, Mr. Alexander has been practicing since 1972, and joined the firm the same year. Mr. Alexander has handled complex business litigation for over thirty years in the areas of antitrust, business torts, patents, trade secrets, unfair competition, and labor-related business issues. He has also been involved in major litigation pertaining to officer, director, and professional liability. He also practices before federal agencies including the FTC and FAA.

Mr. Alexander's recent accomplishments include:

Representing a bankruptcy trustee to recover claims against a bankrupt corporation's parent, its competitors and certain individuals, resulting in recoveries in excess of $55 million.

Mr. Alexander headed the Dallas Bar Association drafting project for the Local Rules of Practice in the Civil District and County Courts at Law Courts for Dallas County, Texas, which are presently in use, served as Co-Chair of the Judiciary Committee of the Dallas Bar Association in 1997 and 2008, was Secretary - Treasurer of the Dallas Bar Association in 2008, and chair of the Dallas Volunteer Attorney Program Campaign for 2010. He also chaired the Vision 2020 Project for the Dallas Bar Association. Elected to serve on the Board Directors of the Dallas Bar Association for the two year term - 2009 and 2010 and a subsequent two year term 2011 and 2012, he was elected Vice-Chair of the Board of Directors in 2011 and Chair of the Board of Directors in 2012. He was recently elected as the 107th President of the Dallas Bar Association and presently serves in that capacity.

## Education

J.D., Southern Methodist University School of Law, 1972
B.A., Southern Methodist University, 1968

## Memberships

State Bar of Texas (Member of the Law Focused Education Committee - 2007, 2008, 2009)
American Bar Association
Dallas Bar Association (President 2016, President-Elect 2015, Second Vice-President 2013, Vice-Chair 2011, 2012. Secretary/Treasurer 2008, Member, Board of Directors 2008, 2009, Judiciary Committee of the Dallas Bar Association, Co-Chair 2008, Co-Chair 1997; Vice-Chair 2007: Chairman, Judicial Polls Study Subcommittee of the Dallas Bar Association - 2007-2008); Chairman, Local Rules Sub-Committee 1993-1996, 1998-1999;
Texas Super Lawyer 2007, 2009-2015
AV Preeminent 5.0 out of 5

Site contents copyright ©2018 by Passman & Jones, A Professional Corporation. All rights reserved.
Lawyer responsible for Contents of this web site: Mitchell Baddour, Jr.
Principal Office in Dallas, Texas

Site by Simple [A]

# MR. GREGORY J. 'GREG' MCCARTHY
**Eligible to Practice in Texas**

## PATTERSON LAW GROUP

*Bar Card Number:* 13367500
*TX License Date:* 05/09/1986

*Primary Practice Location:* Arlington , Texas

*2409 Forest Park Blvd.*
*Fort Worth, TX 76110*

*Practice Areas:* Alternative Dispute Resolution

*Statutory Profile Last Certified On:* 10/04/2017

PRACTICE INFORMATION

*Firm:* Patterson Law Group

*Firm Size:* Solo

*Occupation:* Private Law Practice

*Practice Areas: Alternative Dispute Resolution*

*Services Provided:*
Hearing impaired translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

*Fee Options Provided:* ❷
None Reported By Attorney

*Please note: Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her client. The State Bar of Texas is not responsible for payment arrangements between an attorney and his/her client.*

*Foreign Language Assistance:*
None Reported By Attorney

LAW SCHOOL

**School**
*Degree earned*

Texas Tech University
*Graduation Date* 12/1985

PUBLIC DISCIPLINARY HISTORY

State of Texas
No Public Disciplinary History

Other States
None Reported By Attorney

CONTACT INFORMATION

Tel: 214-448-7154 ☎

COURTS OF ADMITTANCE

*Federal:*
Texas Eastern District Court
Texas Northern District Court
Texas Southern District/Bankruptcy Court
Texas Western District Court

*Other Courts:*
None Reported By Attorney

*Other States Licensed:*
None Reported By Attorney

**Note***
Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

**Note****
The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of

## Bio..





**Greg has practiced law since 1986.**

**His office has always been located in the Dallas-Fort Worth Metroplex,**
**but his practice has taken him all over Texas.**

His litigation experience includes:

Personal Injury Commercial Litigation Professional Liability Premises Liability Collection Employment Disputes Construction Litigation Real Property Litigation.

In these widely varied areas of practice, Greg has represented both Plaintiffs and Defendants, giving him a unique perspective on factors motivating each side of a case in the litigation process.

Greg attained his bachelor's degree from Texas A&M in 1983 and his law degree from Texas Tech School of Law in 1985.

He has practiced in large firms of up to 80 attorneys, practiced as a solo for ten years, and co-founded a firm in Dallas that eventually grew to 12 attorneys.

He began his career with the well-known firm of Cowles & Thompson, and was a shareholder of Miller & McCarthy until launching his mediation and solo practice in early 2009.

Greg is a member of the Dallas Bar Association, the Tarrant County Bar Association, and the State Bar of Texas. He belongs to the Alternative Dispute Resolution sections of each of these organizations.

Greg's debut novel,_The Price of Life_, was published by Otherworld Publications of Louisville, Kentucky.

Released on September 16, 2010,_The Price of Life_, is a suspenseful legal thriller about a family in crisis, a lawyer struggling to find his purpose, and the lengths to which some people will go when they believe justice is denied.

Learn more about Greg's writing and _The Price of Life_ at www.gregmccarthybooks.com. Otherworld Publications can be found at www.otherworldpublications.com.

_Contact us for more info_

©Copyright 2012 Greg McCarthy Law All Rights Reserved
For more information Contact Us

# MR. CHRISTOPHER P. 'CHRIS' HANSEN

**Eligible to Practice in Texas**

THOMPSON, COE, COUSINS & IRONS, LLP

**Bar Card Number:** 00790818

**TX License Date:** 11/04/1994

**Primary Practice Location:** Dallas , Texas

700 N. Pearl Street
25th Floor
Dallas, TX 75201

**Practice Areas:** Technology, Ethics-Legal Malpractice, Insurance, Litigation: Commercial, Litigation: Personal Injury, Construction

**CONTACT INFORMATION**

Tel: 214-880-8205 📞

**Statutory Profile Last Certified On:** 07/28/2017

PRACTICE INFORMATION

**Firm:** Thompson, Coe, Cousins & Irons, LLP

**Firm Size:** 41 to 60

**Occupation:** Private Law Practice

**Practice Areas:** Technology, Ethics-Legal Malpractice, Insurance, Litigation: Commercial, Litigation: Personal Injury, Construction

**Services Provided:**
Hearing impaired translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

**Fee Options Provided:** ❓
None Reported By Attorney

*Please note: Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her client. The State Bar of Texas is not responsible for payment arrangements between an attorney and his/her client.*

**Foreign Language Assistance:**
None Reported By Attorney

LAW SCHOOL

**School**
**Degree earned**

Southern Methodist University
**Graduation Date** 05/1994

PUBLIC DISCIPLINARY HISTORY

State of Texas*
No Public Disciplinary History

Other States
None Reported By Attorney

COURTS OF ADMITTANCE

**Federal:**
Fifth Circuit Court of Appeals
Texas Eastern District Court
Texas Northern District Court
Texas Southern District/Bankruptcy Court
Texas Western District Court

**Other Courts:**
None Reported By Attorney

**Other States Licensed:**
None Reported By Attorney

**Note***
Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

**Note****
The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of

the information has been provided by the attorney and is required to be reviewed and updated by the attorney annually. The information noted with an asterisk (*) is provided by the State Bar of Texas. Access to this site is authorized for public use only. Any unauthorized use of this system is subject to both civil and criminal penalties. This does not constitute a certified lawyer referral service.

# THOMPSON COE

# CHRISTOPHER P. HANSEN

Partner
chansen@thompsoncoe.com
vCard

Dallas
700 North Pearl Street
Twenty-Fifth Floor - Plaza of the Americas
Dallas, Texas 75201
214-880-2805 direct | 214-871-8209 fax

Assistant:
Shanan Flynn-Ghaffar
214-880-2650 direct
sflynn@thompsoncoe.com



## Practices
— Data Privacy and Cyber Security
— Litigation
— Products Liability & Mass Torts
— Professional Liability

## Industries
— Construction
— Insurance
— Professional Services

## Education
— Southern Methodist University School of Law, J.D., 1994
— Monmouth College, B.S., 1991, Business Administration Minor in Finance, *cum laude*

## Bar Admissions
— Texas, 1994
— United States Court of Appeals Fifth Circuit
— United States District Court Northern, Southern, Western and Eastern Districts of Texas

## Overview

As a trial lawyer, Christopher P. Hansen handles all phases of civil trial litigation in the areas of professional liability, cyber liability, construction litigation, products liability, personal injury, and commercial litigation. He has developed extensive experience representing insurance agents and brokers, architects, engineers, surveyors, technology/IT consultants, real estate brokers, attorneys, law firms, accountants and other miscellaneous professionals in professional liability claims and lawsuits. His practice also includes the representation of clients in product liability, personal injury, and construction defect lawsuits. In addition, Chris often speaks to and provides advice to insurance companies and professionals regarding cyber risk.

## Representative Experience

— Represented aviation engineering and design consulting firm in dispute over interior redesign and rehabilitation of Lockheed L-1011 jumbo jet owned by Saudi sheik, where obtained summary judgment enforcing limitation of liability clause to cap damages at $25,000 on claim for $10 million
— Represented international architectural firm in dispute regarding ADA compliance for prominent private school built into a hillside with a ninety foot fall in elevation
— Represented MEP engineer in successful resolution of dispute over AC system for projection rooms in several large movie theater multiplexes in Texas and other states
— Represented consulting engineer specializing in fuel storage and handling facilities in dispute over design of terminal for barges for off-loading fuel where significant tide changes occurred
— Represented MEP engineer in dispute over deficiencies in back up electrical generator, water pump pressure for fire suppression system and other electrical design errors during restoration and conversion project of 1930s era downtown building
— Obtained summary judgment for managing general agent in matter where plaintiff was seeking class action certification on surplus lines policies sold to Texas

residents where questions about diligent search of admitted market insurers were raised

— Represented logistics consultant in claims of data breach and data loss arising from closing of facilities and movement of data for storage

— Advised and counseled real estate brokerage firm in claim between seller and buyer where buyer alleged the seller mispresented the condition of the property and disputes over enforceability of sale arose

— Represented construction management company in allegations concerning chemical exposure to individual working within building during renovation project

— Represented media and communication consultant over alleged deficiencies in a Chicago hospital's communication and media delivery systems

## Professional and Community Activities

— Member of Dallas Bar Association
— Member of American Institute of Architects

## Speeches and Presentations

— Speaker, "Texas Fair Claim Handling Practices and Insurance Contract Construction," CJW-Associates, Florida
— Speaker, "Cyber Risk and Data Breaches," ACE, New Jersey
— Speaker, "Cyber Risk and Data Breaches," Liberty International Underwriters, New York
— Speaker, "Cyber Risk and Data Breaches," LVL, New York
— Speaker, "Cyber Risk and Data Breaches," York Risk Services Group, New York
— Speaker, "Cyber Liability for Lawyers," One Beacon Professional, Connecticut
— Speaker, "Cyber Liability and Risk Management for Data Breaches Under Florida and Texas Law," Allied World, Connecticut
— Speaker, "Cyber Liability and Risk Management for Data Breaches Under Florida and Texas Law," Lexington Insurance, Boston
— Speaker, "Legislative Update," Allied World Insurance Company and One Beacon, Connecticut
— Co-author, "Cyber Risk – Issues and Opportunities for the Insurance Market," DAC Beachcroft, London
— Author, "Changes in Texas Law Affecting Architect, Engineers and Their Insurers"
— Author, "Practicing Law in a Paperless Law Firm"
— Author, "Treatment of Workers Compensation Liens When Defending Personal Injury Cases"
— Author, "Joint and Several Liability: General Concepts in U.S. Jurisprudence"

## Professional Recognition

— Rated AV Preeminent by Martindale-Hubbell
— Recognized by Thomson Reuters as a "Texas Super Lawyer" – Listed in Texas Monthly and Law & Politics Magazine
— Received the Monmouth College Award of Academic Excellence for the highest ranked graduate for degree

Copyright 2018 Thompson, Coe, Cousins & Irons, LLP. All Rights Reserved.

# MR. GINO JOHN ROSSINI

**Eligible to Practice in Texas**

THOMPSON, COE, COUSINS & IRONS, LLP

**Bar Card Number:** 24007953
**TX License Date:** 11/06/1998

**Primary Practice Location:** Dallas , Texas

*Plaza of the Americas*
*700 N. Pearl Street, 25th Floor*
*Dallas, TX 75201*

**Practice Areas:** Insurance, Litigation: Commercial, Appellate: Civil

**Statutory Profile Last Certified On:** 02/05/2018

PRACTICE INFORMATION

**Firm:** Thompson, Coe, Cousins & Irons, LLP

**Firm Size:** 101 to 200

**Occupation:** Private Law Practice

**Practice Areas: Insurance, Litigation: Commercial, Appellate: Civil**

**Services Provided:**
Hearing impaired translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

**Fee Options Provided:** ❓
None Reported By Attorney

**Please note:** *Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her client. The State Bar of Texas is not responsible for payment arrangements between an attorney and his/her client.*

**Foreign Language Assistance:**
None Reported By Attorney

LAW SCHOOL

**School**
**Degree earned**

University of Texas
**Graduation Date** 05/1998

PUBLIC DISCIPLINARY HISTORY

State of Texas*
No Public Disciplinary History

Other States
None Reported By Attorney

## CONTACT INFORMATION

**Tel: 214-871-8219** 📞

**BOARD CERTIFIED**

*Civil Appellate Law*

## COURTS OF ADMITTANCE

**Federal:**
Fifth Circuit Court of Appeals
Texas Eastern District Court
Texas Northern District Court
Texas Western District Court

**Other Courts:**
None Reported By Attorney

**Other States Licensed:**
None Reported By Attorney

**Note***
Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

**Note****
The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of

# THOMPSON COE

# GINO J ROSSINI



Partner
grossini@thompsoncoe.com
vCard

Dallas
700 North Pearl Street
Twenty-Fifth Floor - Plaza of the Americas
Dallas, Texas 75201
214-871-8219 direct | 214-871-8209 fax

Assistant:
Joni Sullivan
214-880-2511 direct
jsullivan@thompsoncoe.com

## Practices
— Appellate
— Insurance Litigation & Coverage

## Industries
— Insurance

## Education
— The University of Texas School of Law, J.D., 1998, Order of the Coif, Article Editor of Texas Law Review
— Georgetown University, B.S., 1992, Foreign Service, *cum laude*, with concentration in international politics

## Bar Admissions
— United States Court of Appeals Fifth Circuit Texas
— United States District Court Northern, Southern, Western and Eastern Districts of Texas
— Texas, 1998

## Overview

Gino's practice is devoted primarily to handling post-trial and appellate matters in state and federal courts, as well as providing related support at all stages of litigation including default judgments, dispositive motions, jury charges, and judgment formation.

Gino is Board Certified in Civil Appellate Law by the Texas Board of Legal Specialization and has been named a "Super Lawyer" in the area of appellate law by Law & Politics magazine.

## Representative Experience

— Lead appellate counsel representing Defendant product manufacturer on seven related appeals of orders denying motions to compel arbitration, practicing before Texas' First, Second, Fifth, Seventh, and Ninth Courts of Appeals and including three Petitions for Review pending before the Texas Supreme Court. *See, e.g., Watts Regulator Co. v. Texas Farmers Ins. Co. a/s/o David Martinez*, No. 02-16-00025-CV, 2016 WL 3569423 (Tex. App.—Fort Worth June 30, 2016, pet. filed, Case No. 16-0605); *Watts Regulator Co. v. Texas Farmers Ins. Co. a/s/o Kadrey Semo*, No. 02-16-00039-CV, 2016 WL 3569423 (Tex. App.—Fort Worth June 30, 2016, pet. filed, Case No. 16-0606); *Watts Regulator Co. v. Foremost County Mut. Ins. Co. a/s/o Kevin McCann*, No. 09-16-00033-CV, 2016 WL 4045502 (Tex. App.—Beaumont July 28, 2016, pet. for review filed, Case No. 16-0707).

— Represented Defendant/Appellee residential health care facility in a negligence action, successfully contending that Plaintiff's cause of action was a health care liability claim and obtaining affirmance of dismissal based on Plaintiff's failure to provide an expert report. *Bain v. Capital Senior Living Corp.*, Case No. 05-14-00255-CV, 2015 WL 3958714 (Tex. App.—Dallas June 30, 2015, pet. denied).

— Lead appellate counsel representing Defendant/Appellee restaurant on successful appeal of a take-nothing summary judgment on Plaintiff's Dram Shop Act claim; matter pending following full briefing and oral argument. *Faircloth v. Borderlands, a*

*Southwest Grill, Inc. et al.*, Case No. 11-14-00239-CV, Eleventh Court of Appeals, Eastland, Texas.

— Drafted and argued Defendant's proposed jury charge, drafted objections to the Plaintiff's and Court's jury charges, drafted trial briefs, and drafted the directed verdict in a personal injury premises liability matter; case settled post-verdict and pre-judgment. *Clayton v. Friends of Fair Park, Inc. et al.*, Cause No. CC-13-00016-B; County Court at Law No. 2, Dallas Co., Texas.

— Drafted Defendant's proposed jury charge, objections to the Plaintiff's and Court's jury charges, and trial briefs in a wrongful death case involving an automobile accident; case settled at the eve of trial. *Bates et al. v. APAC-Texas, Inc., et al.*, Cause No. DC-14-01404, 298th District Court, Dallas Co., Texas.

— Successfully represented a truck owner and operator in a mandamus proceeding to transfer venue by applying the Texas Tort Claims Act's mandatory venue provision when the truck owner and operator were not governmental entities but a co-defendant was. *In re Hubbard*, No. 05-14-00608-CV, 2014 WL 4090131 (Tex. App.—Dallas Aug. 19, 2014), *mandamus denied* (Oct. 10, 2014).

— Successfully represented a hospital district in a medical liability case on appeal of a plea to the jurisdiction based on governmental immunity, where immunity from suit was not waived by the Texas Tort Claims Act. *Cervantes v. McKellar*, 424 S.W.3d 226 (Tex. App.—Texarkana 2014, no pet.).

— Successfully represented mortgage lenders on summary judgment and appeal dismissing various lender-liability claims brought by the homeowner. *Flores v. Deutsche Bank Nat. Trust Co.*, No. 02-12-00033-CV, 2014 WL 4109645 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.).

— Successfully represented relator insurer and insurance agent in a mandamus proceeding compelling enforcement of an insurance-policy appraisal clause. *In re Public Service Mutual Ins. Co.*, No. 03-13-3-CV, 2013 WL 692441 (Tex. App.—Austin Feb 21, 2013, no pet.).

— Successfully represented mortgage lender on summary judgment and appeal dismissing the plaintiff's lender liability claims associated with a property foreclosure. *Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed. App'x 424 (5th Cir. 2012).

## Professional and Community Activities

— **The Pines Catholic Camp, Big Sandy, Texas** - Board Member (2014-present), Board Vice President (2016)
— **Coppell Education Foundation, Coppell, Texas** - Board Member (2014-2016)
— **Coppell Independent School District, Coppell, Texas** - Facilities Visioning Committee Member (2015), Pinnacle 2020 Member (2014-2015)
— **Housing Crisis Center, Dallas, Texas** - Board President (2008-2009), Executive Committee (2004-2010), Board Member (2003-2012)
— **St. Thomas More Society, Dallas, Texas** - Member (1999-present)
— **Eagle Scout**
— Member, State Bar of Texas, Appellate Law Section
— Member, Dallas Bar Association, Appellate Law Section

## Speeches and Presentations

— 2017, Hermes Law CE: *Dram Shop Liability*
— *2012, Hermes Sargent Bates CLE: Do You Have and Appealable Texas Order or Judgment?*

- *2011 State Bar Appellate Section-Corporate Counsel Seminar, CLE: Role of Appellate Counsel Outside the Appeal: Case Evaluation, Motions Practice, Error Preservation and the Jury Charge*
- *2005 DRI Asbestos Medicine Seminar, CLE: Daubert—Today Versus Yesterday*

**Professional Recognition**



BOARD CERTIFIED®
Texas Board of Legal Specialization
CIVIL APPELLATE LAW

**News**

**09.11.17**    Seventeen Attorneys Designated Texas Super Lawyers

**Past Webinars**

**03.20.18**    PC Webinar: What Will Be Different with Harvey?

Copyright 2018 Thompson, Coe, Cousins & Irons, LLP. All Rights Reserved



# Ryan G. Cole



### Areas of Experience

Bankruptcy & Commercial Litigation
Employment
Intellectual Property
Litigation
Professional Liability

214-742-2121 ext 3548

214-748-7949 (fax)

rcole@passmanjones.com

📧 VCF - Ryan G. Cole.vcf

**Shareholder**

Obtained numerous summary judgments for clients based on waiver clauses in usage agreements.
Completed and closed an asset purchase agreement for a client in 5 days.
Negotiated a Teaming Agreement on behalf of a small business with an international manufacturing corporation.
Obtained summary dismissal of a bankruptcy case for fraud by the debtor and an award of attorney fees.
Obtained numerous summary judgments or dismissals of product liability claims.
Represented national construction company in construction defect and premises liability claims.
Represented small businesses in contract preparation and analysis and with employment issues.
Assists health care clients with responses to Medicare ZPEC and RAC audits, prepayment review, and appeals of payment determinations.
Obtained summary judgment for a client on course and scope and negligent undertaking claims brought by prominent plaintiff's attorney.
Obtained summary judgment and award of actual and statutory damages for client in contract/fraud case pending in Oklahoma.
Successfully defeated a Motion for New Trial for an insurance client in Jefferson County.
Successfully set a side a wrongly granted $2 million default judgment.
Obtained dismissal of lawsuit by two party Plaintiffs following completion of one of Plaintiff's deposition.
Obtained order compelling appraisal in insurance dispute after lawsuit was filed.

**Reported Cases**
*Examination Management Services, Inc. v. Kersh Wellness*, 367 S.W. 3d 835 (Tex.App. - Dallas 2012)

**Speaking Engagements & Presentations**
"Ethics and Use of Technology" - Advanced Civil Trial 2014, San Antonio
"What Small Businesses Need to Know about Contracts, Operation Breakthrough: Break Through the Barriers and Position Yourself in Federal Government Contracting —A Small Business Perspective!" – April 2010, Austin and Houston; October 2009 in Dallas

## Education

**University of Tulsa College of Law**
*Juris Doctor*, 1997
Order of the Curule Chair

**University of Oklahoma**
Bachelor of Arts, 1994

## Memberships

**Admissions**
State Bar of Texas
State Bar of Oklahoma
United States District Courts for the Northern, Eastern, and Southern Districts of Texas
United States District Courts for the Northern, Eastern, and Western Districts of Oklahoma
10th Circuit Court of Appeals
United States Supreme Court

**Associations**
Collin County Bar Association
Dallas Bar Association
William "Mac" Taylor American Inn of Court
OU Club of Dallas

# MR. JASON M. BERENT
**Eligible to Practice in Texas**

BERENT LAW FIRM, PLLC

*Bar Card Number:* 24027143
*TX License Date:* 11/01/2000

*Primary Practice Location:* Dallas , Texas

*5600 Tennyson Pkwy Ste 310*
*Plano, TX 75024-4050*

*Practice Areas:* Business, Consumer, Ethics-Legal Malpractice, Litigation: Commercial, Real Estate, Construction

**CONTACT INFORMATION**

Tel: 214-692-5800 &#x260E;

*Statutory Profile Last Certified On:* 02/27/2018

PRACTICE INFORMATION

*Firm:* Berent Law Firm, PLLC

*Firm Size:* Solo

*Occupation:* Private Law Practice

*Practice Areas: Business, Consumer, Ethics-Legal Malpractice, Litigation: Commercial, Real Estate, Construction*

**Services Provided:**
Hearing impaired translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

*Fee Options Provided:* &#x2753;
None Reported By Attorney

*Please note: Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her client. The State Bar of Texas is not responsible for payment arrangements between an attorney and his/her client.*

**Foreign Language Assistance:**
Spanish

LAW SCHOOL

**School**
**Degree earned**

University of Texas
**Graduation Date**   05/2000

PUBLIC DISCIPLINARY HISTORY

State of Texas'
No Public Disciplinary History

Other States
None Reported By Attorney

COURTS OF ADMITTANCE

*Federal:*
Texas Eastern Bankruptcy Court
Texas Eastern District Court
Texas Northern District Court

*Other Courts:*
None Reported By Attorney

*Other States Licensed:*
None Reported By Attorney

**Note***

Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

**Note****

The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of

# The Berent Law Firm

The Firm »

The Firm Results

## David vs. Goliath Litigation



THE BERENT LAW FIRM is proud of its representation of consumers in "David vs. Goliath" litigation. The Berent Law Firm levels the playing field and fights to hold society's bullies accountable for their corrupt and unlawful conduct. Examples of the Firm's consumer clients include the following:

- Litigation against massive utility company whose defective "rectifier" significantly damaged the homes of six families
- Litigation against large custom home builder who sold consumer a defective home through the use of false, deceptive and misleading representations
- Litigation against seller of home who fraudulently induced buyer into transaction with false representations in Seller's Disclosure Notice
- Litigation against major insurance company for wrongful denial of consumers' claim to repair foundation damaged by a significant plumbing leak
- Litigation against Home Owners Association ("HOA") that sought to extort consumer out of tens of thousands of dollars in trumped up and erroneous fees and assessments
- Litigation against large national brokerage company for realtor's knowing misrepresentations of critical deed restrictions to her consumer client
- Litigation against financial institution that permitted forger to deplete consumers' bank account in identity theft matter
- Litigation against national bank that breached terms of loan agreement with consumer
- Litigation against lawyer whose legal malpractice resulted in dismissal of widow's lawsuit for the wrongful death of her husband

## Our Results

These are small sampling of the many and varied litigation matters that have been handled by the Berent Law Firm. Consumers need fearless counsel in their corner when confronting their foes. The Berent Law Firm has the experience, passion, tenacity and desire to fight the biggest and most powerful Goliaths of the world.

- Unanimous Jury Verdict for Security Guard Company in Commercial Security Lawsuit
- Unanimous Jury Verdict Against Contractor for Construction Defects
- Unanimous Jury Verdict for Consumer in Deceptive Trade Practice Matter
- Favorable Verdict Rendered by Federal Bankruptcy Judge in Lawsuit Tried in the U.S. Bankruptcy Court for the Eastern District of Texas
- Secured Complete Dismissal of Claims Brought Against Business Owner in Lawsuit Filed in the U.S. District Court for the Northern District of Illinois
- Secured Complete Dismissal of Claims Brought Against Company in Commercial Contract Dispute
- Secured Complete Voluntary Dismissal of Claims in Federal Lawsuit Alleging Company Violated License Agreement
- Victory for Business Owner in Partnership Dispute - Adversary Forced into Bankruptcy and Client Assumed Control of Company
- Victory for Business in Legal Malpractice Dispute - Highest Settlement Ever Paid by Adversary
- Successful Enforcement of Company's Non-Compete Agreement - Breaching Party Driven Out of Business After Temporary Restraining Order and Temporary Injunction Secured
- Successful Handling of Non-Solicitation Contractual Dispute - Adversary Company Compelled to Permit Company Employee to Solicit Former Clients
- Homeowner Victory Against HOA - HOA Abandoned Enforcement Efforts and Paid Client's Legal Fees
- Appellate Victories in Various Matters

**THE BERENT LAW FIRM is pleased to announce the following successful results recently secured on behalf of the Firm's clients**

- ☑
  UNANIMOUS JURY VERDICT

  The Firm secured a UNANIMOUS JURY VERDICT just under $400,000 in a business litigation matter on behalf of a Real Estate Investment Trust that is publicly traded on the New York Stock Exchange.

- ☑
  UNANIMOUS JURY VERDICT

  The Firm secured a UNANIMOUS JURY VERDICT in excess of $100,000 on behalf of a family run restaurant in a case that determined the financial future of both the restaurant and the family.

- ☑
  COMPLETE VOLUNTARY DISMISSAL

  The Firm secured the COMPLETE VOLUNTARY DISMISSAL of all claims brought against a commercial photographer who was sued under multiple theories of liability.

- ☑
  PERMANENT INJUNCTION

  The Firm secured PERMANENT INJUNCTION against a third-party and interfere with the Company's business relationship with its largest account.

# APPENDIX 18



**MICHAEL SNIPES**
First Assistant District Attorney
DALLAS COUNTY, TEXAS

December 14, 2017

Ms. Tonya Parks
1401 Bristlewood Dr.
McKinney, TX 75070-2728

*Re: Request for meeting*

Dear Ms. Parks,

Thank you for communicating with our office regarding your litigation in front of Judge Sally Montgomery. We truly sympathize with your situation.

I have carefully reviewed your complaints. I wish that we had jurisdiction to help you. We do not. Your issues with duress in her court and appeals are civil matters that must be addressed by you and your lawyers on direct appeal. As to complaints about the judiciary and lawyer professionalism, you can refer those to the Judicial Conduct Commission or the State Bar. You should consider these alternatives.

Thank you again for your communication with our office. Merry Christmas!

Very Respectfully,

Michael Snipes
First Assistant District Attorney
Dallas County, Texas

# Appendix 19

# POLITICAL EXPENDITURES

SCHEDULE F

## EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Gift/Awards/Memorials Expense | Salaries/Wages/Contract Labor | Loan Repayment/Reimbursement |
| Accounting/Banking | Legal Services | Solicitation/Fundraising Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Travel In District | Contributions/Donations Made By |
| Event Expense | Polling Expense | Travel Out Of District | Candidate/Officeholder/Political Committee |
| Fees | Printing Expense | Office Overhead/Rental Expense | OTHER (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

**1 Total pages Schedule F** 11 / 21

**2 FILER NAME**

**3 ACCOUNT # (Ethics Commission Filers)**

**4 Date**

**5 Payee name**

**6 Amount (S)** $900.00

**7 Payee address.   City   State   Zip Code**
901 Main St. Ste 4100
Dallas, TX 75202

**8 PURPOSE OF EXPENDITURE**

**(a) Category** See categories listed at the top of this schedule.

**(b) Description** (if travel outside of Texas complete Schedule T)

**9 Complete ONLY if direct expenditure to benefit C/OH**

Candidate / Officeholder name     Office sought     Office held

---

**Date**

**Payee name**

**Amount (S)** $111

**Payee address     City   State   Zip Code**
2422 Marsh Lane
Carrollton, TX 75006

**PURPOSE OF EXPENDITURE**

Category

Description

**Complete ONLY if direct expenditure to benefit C/OH**

Candidate / Officeholder name     Office sought     Office held

---

**Date**

**Payee name**

**Amount (S)**

**Payee address:     City   State   Zip Code**
3802 Beltline Rd
Addison, TX 75001

**PURPOSE OF EXPENDITURE**

Category

Description

**Complete ONLY if direct expenditure to benefit C/OH**

Candidate / Officeholder name     Office sought     Office held

PLAINTIFF'S EXHIBIT 7   PENGAD 800-631-6989

---

**Date**

**Payee name**

**Amount (S)**

**Payee address.     City   State   Zip Code**
5415 Binkling Way
Dallas, TX 75227

**PURPOSE OF EXPENDITURE**

Category

Description

**Complete ONLY if direct expenditure to benefit C/OH**

Candidate / Officeholder name     Office sought     Office held

---

ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

Texas Ethics Commission     P.O. Box 12070     Austin, Texas 78711-2070     (512) 463-5800     (TDD 1-800-735-2989)

# POLITICAL EXPENDITURES

**SCHEDULE F**

## EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Gift/Awards/Memorials Expense | Salaries/Wages/Contract Labor | Loan Repayment/Reimbursement |
| Accounting/Banking | Legal Services | Solicitation/Fundraising Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Travel In District | Contributions/Donations Made By |
| Event Expense | Polling Expense | Travel Out Of District | Candidate/Officeholder/Political Committee |
| Fees | Printing Expense | Office Overhead/Rental Expense | OTHER (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

| 1 Total pages Schedule F: 16 of 21 | 2 FILER NAME Sally L. Montgomery | 3 ACCOUNT # (Ethics Commission Filers) |
|---|---|---|

| 4 Date 11/27/13 | 5 Payee name John Browning |
|---|---|

| 6 Amount ($) $3000.00 | 7 Payee address; City; State; Zip Code 901 Main St. Ste 4100 Dallas, TX 75202 |
|---|---|

| 8 PURPOSE OF EXPENDITURE | (a) Category (See categories listed at the top of this schedule) Legal Services | (b) Description (If travel outside of Texas, complete Schedule T) Media |
|---|---|---|

| 9 Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date 12/2/13 | Payee name Carrollton Self Storage |
|---|---|

| Amount ($) $110.00 | Payee address; City; State; Zip Code 2422 Marsh Lane Carrollton, TX 75006 |
|---|---|

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule) Rental Expense | Description (If travel outside of Texas, complete Schedule T) sign storage |
|---|---|---|

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date 12/8/13 | Payee name Office Depot |
|---|---|

| Amount ($) $31.17 | Payee address; City; State; Zip Code 3802 Beltline Rd Addison, TX 75001 |
|---|---|

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule) office overhead | Description (If travel outside of Texas, complete Schedule T) laser printer |
|---|---|---|

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

| Date 12/9/13 | Payee name Larry Duncan |
|---|---|

| Amount ($) $300.00 | Payee address; City; State; Zip Code 5415 Banking Way Dallas, TX 75227 |
|---|---|

| PURPOSE OF EXPENDITURE | Category (See categories listed at the top of this schedule) Consulting | Description (If travel outside of Texas, complete Schedule T) website maintenance, social media development & planning |
|---|---|---|

| Complete ONLY if direct expenditure to benefit C/OH | Candidate / Officeholder name | Office sought | Office held |
|---|---|---|---|

ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

Revised 04/19/2013

**EXHIBIT E**

 1 of 8

# POLITICAL EXPENDITURES
# FROM POLITICAL CONTRIBUTIONS

## SCHEDULE F1

### EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Event Expense | Loan Repayment/Reimbursement | Solicitation/Fundraising Expense |
| Accounting/Banking | Fees | Office Overhead/Rental Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Polling Expense | Travel In District |
| Contributions/Donations Made By | Gift/Awards/Memorials Expense | Printing Expense | Travel Out Of District |
| Candidate/Officeholder/Political Committee | Legal Services | Salaries/Wages/Contract Labor | Other (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

| 1 Total pages Schedule F1: | 2 FILER NAME | 3 Filer ID (Ethics Commission Filers) |
|---|---|---|
| 11 of 17 | Sally L. Montgomery | |

| 4 Date | 5 Payee name |
|---|---|
| 5/30/2015 | Lewis Brisbois Bisgaard & Smith, LLP |

**6 Amount ($)**
$300.00

**7 Payee address;    City;    State;    Zip Code**
653 West Fifth Street, Ste 4000
Los Angeles, Ca. 90071

**8 PURPOSE OF EXPENDITURE**

(a) Category (See categories listed at the top of this schedule)

Legal Services - media consulting

(b) Description

☐ Check if travel outside of Texas, complete Schedule T
☐ Check if Austin, TX, officeholder living expense

**9 Complete ONLY if direct expenditure to benefit C/OH**

| Candidate / Officeholder name | Office sought | Office held |
|---|---|---|

---

| Date | Payee name |
|---|---|
| 4/14/2015 | Dr Delphenium's |

**Amount ($)**
$103.87

**Payee address;    City;    State;    Zip Code**
5806 W Lovers Lane
Dallas, TX 75225

**PURPOSE OF EXPENDITURE**

Category (See categories listed at the top of this schedule)

Gift - Birthday of Political Supporter

Description

☐ Check if travel outside of Texas, complete Schedule T
☐ Check if Austin, TX, officeholder living expense

**Complete ONLY if direct expenditure to benefit C/OH**

| Candidate / Officeholder name | Office sought | Office held |
|---|---|---|

---

| Date | Payee name |
|---|---|
| 5/8/2015 | El Corazon |

**Amount ($)**
$125.05

**Payee address;    City;    State;    Zip Code**
110 W Davis St.
Dallas, TX 75208

**PURPOSE OF EXPENDITURE**

Category (See categories listed at the top of this schedule)

Food/Beverage Expense - Staff lunch

Description

☐ Check if travel outside of Texas, complete Schedule T
☐ Check if Austin, TX, officeholder living expense

**Complete ONLY if direct expenditure to benefit C/OH**

| Candidate / Officeholder name | Office sought | Office held |
|---|---|---|

### ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

2 of 8

Texas Ethics Commission        P.O. Box 12070        Austin, Texas 78711-2070        (512) 463-5800        (TDD 1-800-735-2989)

# POLITICAL EXPENDITURES

SCHEDULE F

### EXPENDITURE CATEGORIES FOR BOX 8(a)

| | | | |
|---|---|---|---|
| Advertising Expense | Gift/Awards/Memorials Expense | Salaries/Wages/Contract Labor | Loan Repayment/Reimbursement |
| Accounting/Banking | Legal Services | Solicitation/Fundraising Expense | Transportation Equipment & Related Expense |
| Consulting Expense | Food/Beverage Expense | Travel In District | Contributions/Donations Made By |
| Event Expense | Polling Expense | Travel Out Of District | Candidate/Officeholder/Political Committee |
| Fees | Printing Expense | Office Overhead/Rental Expense | OTHER (enter a category not listed above) |

The Instruction Guide explains how to complete this form.

| 1 Total pages Schedule F: 3 of 14 | 2 FILER NAME  Sally L. Montgomery | 3 ACCOUNT # (Ethics Commission Filers) |
|---|---|---|

**4. Date** 2/6/14

**6 Payee name** Office Depot

**6 Amount ($)** 35.71

**7 Payee address; City; State; Zip Code** 3802 Beltline Rd Addison, TX 75001

**8 PURPOSE OF EXPENDITURE**

(a) Category (See categories listed at the top of this schedule) Office expense

(b) Description (If travel outside of Texas, complete Schedule T) Lexmark ink cartridge

9 Complete ONLY if direct expenditure to benefit C/OH

Candidate / Officeholder name | Office sought | Office held

---

**Date** 2/10/14

**Payee name** Friends of Scouting

**Amount ($)** 250.00

**Payee address; City State; Zip Code** Circle 10 Council 8605 Harry Hines Blvd. Dallas, TX 75235

**PURPOSE OF EXPENDITURE**

Category (See categories listed at the top of this schedule) Gifts / Contributions

Description (If travel outside of Texas, complete Schedule T) BSA

Complete ONLY if direct expenditure to benefit C/OH

Candidate / Officeholder name | Office sought | Office held

---

**Date** 2/11/14

**Payee name** Campaign for Darlene Ewing

**Amount ($)** $100.00

**Payee address; City: State: Zip Code** 605 Hwy 80 East Sunnyvale, TX 75182

**PURPOSE OF EXPENDITURE**

Category (See categories listed at the top of this schedule) Donations

Description (If travel outside of Texas, complete Schedule T)

Complete ONLY if direct expenditure to benefit C/OH

Candidate / Officeholder name | Office sought | Office held

---

**Date** 2/14/14

**Payee name** Lewis Brisbois Bisgaard & Smith, LLP

**Amount ($)** 240.00

**Payee address; City; State; Zip Code** 221 North Figueroa Street Sta/1200 Los Angeles, Ca. 90012

**PURPOSE OF EXPENDITURE**

Category (See categories listed at the top of this schedule) Consulting expense

Description (If travel outside of Texas, complete Schedule T) media

Complete ONLY if direct expenditure to benefit C/OH

Candidate / Officeholder name | Office sought | Office held

---

ATTACH ADDITIONAL COPIES OF THIS SCHEDULE AS NEEDED

# APPENDIX 20

**Writ of Mandamus Granted, Opinion and Order issued May 31, 2000**

S
In The
Court of Appeals
Fifth District of Texas at Dallas

............................

**No. 05-00-00769-CV**

............................

**IN RE JOSEPH P. HESSER AND DOUGLAS S. SMITH, Relators**

............................................................

**Original Proceeding from the 95th Judicial District Court**
Dallas County, Texas
Trial Court Cause No. 97-1545-D

............................................................

OPINION

Before Justices Morris, Whittington, and Bridges
Opinion By Justice Whittington

In this original proceeding, relators contend Judge Sally Montgomery clearly abused her discretion by signing two orders granting a new trial while a motion to recuse was pending. We agree and issue a writ of mandamus.

Relators filed their verified petition for writ of mandamus on May 11, 2000. Real-party-in- interest Clowers Freight Management, Inc. d/b/a R&R Transportation of Texas (R&R Transportation) and Judge Montgomery were given the opportunity to respond but only R&R Transportation filed a response. The underlying facts in this proceeding are largely undisputed: Relators are defendants and R&R Transportation is the plaintiff in a lawsuit filed in the 95th Judicial District Court of Dallas County, Texas. Judge Sally Montgomery is the presiding judge of that court. The case was tried to a jury and, on October 28, 1999, the jury found in favor of relators on all issues. A take-nothing judgment against R&R Transportation and in favor of relators was entered on February 7, 2000. On March 2, 2000, Judge Montgomery lost her bid for re-election as Judge of the 95th Judicial District Court. On March 7, 2000, R&R Transportation filed a motion to disregard the verdict and grant a new trial. On April 17, 2000, Judge Montgomery orally granted R&R Transportation a new trial and signed an agreed scheduling order setting the case for trial. Relators filed a motion to recuse Judge Montgomery on April 20, 2000. The motion to recuse, supporting affidavits, and response reveal an extended history of animosity between Judge Montgomery and relators' attorney, arising from the trial of the case and the subsequent public endorsement and support by relators' attorney of Judge Montgomery's successful opponent. The record before us strongly supports a conclusion that this animosity continues and is the basis for the trial judge's actions in this case. On April 21, 2000, Judge Montgomery signed a written order granting a new trial "in the interest of justice." On April 27, 2000, Judge Montgomery signed an order nunc pro tunc granting a new trial and including a finding of "good cause."

Upon notice of the filing of a motion to recuse, a trial judge has only two choices--she must either voluntarily recuse herself or refer the motion to the presiding judge of the administrative judicial district for action. *See* Tex. R. Civ. P. 18a(c), (d); *Greenburg, Benson, Fisk and Fielder v. Howell,* 685 S.W.2d 694, 695 (Tex. App._Dallas 1984, orig. proceeding). The challenged judge should take no other action in the case, unless good cause exists for taking the action and good cause is stated in the court's order. *See* Tex. R. Civ. P. 18a(c), (d). While the motion to recuse is pending, any other order signed by the challenged judge is void. *Brosseau v. Ranzau,* 911 S.W.2d 890, 893 (Tex. App._Beaumont 1995, no writ); *Carson v. McAdams,* 908 S.W.2d 228, 229 (Tex. App._Houston [1st Dist.] 1993, no writ). When a trial judge enters a void order, mandamus relief is appropriate. *Dunn v. Street,* 938 S.W.2d 33, 35 (Tex. 1997).

In this case, the order dated April 21, 2000 was signed by Judge Montgomery while the motion to recuse was pending and that order is, therefore, void. In addition, the nunc pro tunc order dated April 27, 2000 was signed while the motion to recuse was pending, and it is likewise void. Although the latter order purports to show that "good cause exists" for the trial court's actions, the order does not specifically state why good cause exists. Thus, it does not satisfy the requirements of rule 18a(c) or (d). Nevertheless, we conclude that, even if it

had complied with rule 18a's "good cause" requirement, any error in the April 21st order resulting from the lack of a good cause finding was a judicial rather than a clerical error and, therefore, was not subject to correction by order nunc pro tunc. *See Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 405 (Tex. 1971) (orig. proceeding); *Uvere v. Canales,* 825 S.W.2d 741, 743 (Tex. App._Dallas 1992, orig. proceeding). Accordingly, we conclude the trial court's orders purporting to grant a new trial in this case are void.

In reaching this decision, we necessarily reject R&R Transportation's argument that the agreed scheduling order signed by Judge Montgomery *before* the motion to recuse was filed suffices as an order granting a new trial. We conclude this argument lacks merit. To be effective, an order granting a new trial must be in writing. Tex. R. Civ. P. 329b(c). A written, signed order setting a case for trial is not a substitute for a written, signed order granting a motion for new trial because the order setting the case for trial does not adjudicate the merits of the motion for new trial. *Estate of Townes v. Wood,* 934 S.W.2d 806, 807 (Tex. App._Houston [1st Dist.] 1996, no writ). Until the merits of the motion for new trial are adjudicated, and the motion granted, any trial date is meaningless. *Estate of Townes,* 934 S.W.2d at 807. Here, the scheduling order does not address the motion for new trial on the merits. Accordingly, it cannot substitute as an order granting a new trial. This is true regardless of whether an associate of relators' attorney agreed to the scheduling order at Judge Montgomery's insistence. As noted above, the scheduling order was meaningless until a valid order granting a new trial was signed.

Mandamus issues upon a finding that the trial judge committed a clear abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). For the reasons stated, we conclude that Judge Montgomery clearly abused her discretion by entering the two orders granting a new trial while the motion to recuse was pending. The two orders are void and relators are entitled to mandamus relief. *See Carson,* 908 S.W.2d at 229. Accordingly, we **GRANT** relators' petition for writ of mandamus. We **ORDER** Judge Sally Montgomery FN:1 to vacate the orders granting a new trial dated April 21, 2000 and April 27, 2000 as well as the order dated April 17, 2000 setting the case for trial. Judge Montgomery is **ORDERED** to file a certified copy of the order complying with this writ with the clerk of this Court within ten days of the date of this writ. This is the second time in as many weeks that we have been forced to address a trial judge's actions that appear to be the result of animosity stemming from a lost election. We do not condone such conduct and expect it to stop.

MARK WHITTINGTON
JUSTICE

Do Not Publish
Tex. R. App. P. 47

FN:1
1 We have before us a letter from the regional presiding judge indicating that Judge Montgomery has told him she will voluntarily recuse herself in this case. If an order recusing Judge Montgomery has been entered, we expect the judge appointed to preside in this case to comply with the terms of this opinion and writ.

File Date[05/31/2000]
File Name[000769F]

# APPENDIX 21




### In the name and by the authority of

# The State of Texas

## OATH OF OFFICE

I, _____ Sally Montgomery _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of

_____ County Court at Law No.3 _____ of the State of Texas, and the County of Dallas and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

*Sally L Montgomery*

Affiant

SWORN TO and subscribed before me by affiant on this the __1st__ day of __January__, __2015__.

MIRANDA MALDONADO
Notary Public
STATE OF TEXAS
My Comm. Exp. October 29, 2018

(Seal)

*Miranda M*

Signature of Person Administering Oath

*Miranda Maldonad*

Printed Name

*Notary Public.*

Title



01-14-201 03 36 41 PM

**Form #2204   Rev. 06/2009**

Submit to:
**SECRETARY OF STATE**
Statutory Documents Section
P O Box 13550
Austin, TX 78711-3550
512-475-0775
512-475-2815 - Fax
**Filing Fee: None**



## OATH OF OFFICE

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS,

I, _____ SALLY MONTGOMERY _____ , do solemnly swear (or affirm), that I will faithfully

execute the duties of the office of _____ JUDGE, COUNTY COURT AT LAW NO. 3 _____ of

the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

_____
Signature of Officer

State of _____ Texas _____ )
County of _____ Dallas _____ )

Sworn to and subscribed before me this _1st_ day of _January_ , 20 _11_ .

(seal)

_____
Notary Public Signature

SARA JEAN WHITE
MY COMMISSION EXPIRES
September 29, 2013



Form 2204                                      2

# TEXAS CODE OF JUDICIAL CONDUCT

## Preamble

Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code of Judicial Conduct are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.

The Code of Judicial Conduct is not intended as an exhaustive guide for the conduct of judges. They should also be governed in their judicial and personal conduct by general ethical standards. The Code is intended, however, to state basic standards which should govern the conduct of all judges and to provide guidance to assist judges in establishing and maintaining high standards of judicial and personal conduct.

---

## CANON 1
### Upholding the Integrity and
### Independence of the Judiciary

---

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and should personally observe those standards so that the integrity and independence of the judiciary is preserved. The provisions of this Code are to be construed and applied to further that objective.

---

## CANON 2
### Avoiding Impropriety and the
### Appearance of Impropriety In
### All of the Judge's Activities

---

A.  A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B.  A judge shall not allow any relationship to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.

C. A judge shall not knowingly hold membership in any organization that practices discrimination prohibited by law.

---
**CANON 3**
**Performing the Duties of**
**Judicial Office Impartially and**
**Diligently**

---

**A.    Judicial Duties in General.** The judicial duties of a judge take precedence over all the judge's other activities. Judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the following standards apply:

**B.    Adjudicative Responsibilities.**

(1)    A judge shall hear and decide matters assigned to the judge except those in which disqualification is required or recusal is appropriate.

(2)    A judge should be faithful to the law and shall maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.

(3)    A judge shall require order and decorum in proceedings before the judge.

(4)    A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control.

(5)    A judge shall perform judicial duties without bias or prejudice.

(6)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not knowingly permit staff, court officials and others subject to the judge's direction and control to do so.

(7)    A judge shall require lawyers in proceedings before the court to refrain from manifesting, by words or conduct, bias or prejudice based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status against parties, witnesses, counsel or others. This requirement does not preclude legitimate advocacy when any of these factors is an issue in the proceeding.

(8)    A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider *ex parte* communications or other communications made to the judge outside the presence of the parties between the judge and a party, an attorney, a guardian or attorney ad litem, an alternative dispute resolution neutral, or any other court appointee concerning the merits of a pending or

impending judicial proceeding. A judge shall require compliance with this subsection by court personnel subject to the judge's direction and control. This subsection does not prohibit:

(a)    communications concerning uncontested administrative or uncontested procedural matters;

(b)    conferring separately with the parties and/or their lawyers in an effort to mediate or settle matters, provided, however, that the judge shall first give notice to all parties and not thereafter hear any contested matters between the parties except with the consent of all parties;

(c)    obtaining the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond;

(d)    consulting with other judges or with court personnel;

(e)    considering an *ex parte* communication expressly authorized by law.

(9)    A judge should dispose of all judicial matters promptly, efficiently and fairly.

(10)    A judge shall abstain from public comment about a pending or impending proceeding which may come before the judge's court in a manner which suggests to a reasonable person the judge's probable decision on any particular case. This prohibition applies to any candidate for judicial office, with respect to judicial proceedings pending or impending in the court on which the candidate would serve if elected. A judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. This section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. This section does not apply to proceedings in which the judge or judicial candidate is a litigant in a personal capacity.

(11)    A judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity. The discussions, votes, positions taken, and writings of appellate judges and court personnel about causes are confidences of the court and shall be revealed only through a court's judgment, a written opinion or in accordance with Supreme Court guidelines for a court approved history project.

## C.    Administrative Responsibilities.

(1)    A judge should diligently and promptly discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge should require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

(3)    A judge with supervisory authority for the judicial performance of other judges should take reasonable measures to assure the prompt disposition of matters before them and the proper performance of their other judicial responsibilities.

(4)    A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered.

(5)    A judge shall not fail to comply with Rule 12 of the Rules of Judicial Administration, knowing that the failure to comply is in violation of the rule.

## D.    Disciplinary Responsibilities.

(1)    A judge who receives information clearly establishing that another judge has committed a violation of this Code should take appropriate action. A judge having knowledge that another judge has committed a violation of this Code that raises a substantial question as to the other judge's fitness for office shall inform the State Commission on Judicial Conduct or take other appropriate action.

(2)    A judge who receives information clearly establishing that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the Office of the General Counsel of the State Bar of Texas or take other appropriate action.

---

**CANON 4**
**Conducting the Judge's Extra-Judicial Activities to Minimize the Risk of Conflict with Judicial Obligations**

---

**A.    Extra-Judicial Activities in General.** A judge shall conduct all of the judge's extra-judicial activities so that they do not:

(1)    cast reasonable doubt on the judge's capacity to act impartially as a judge; or

(2)    interfere with the proper performance of judicial duties.

**B.    Activities to Improve the Law.** A judge may:

(1)    speak, write, lecture, teach and participate in extra-judicial activities concerning the law, the legal system, the administration of justice and non-legal subjects, subject to the requirements of this Code; and,

(2)    serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge may assist such an organization in raising funds and may participate in their management and investment, but should not personally participate in public fund raising activities. He or she may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system and the administration of justice.

**C.    Civic or Charitable Activities.** A judge may participate in civic and charitable activities that do not reflect adversely upon the judge's impartiality or interfere with the performance of judicial duties. A judge may serve as an officer, director, trustee or non-legal advisor of an educational, religious, charitable, fraternal, or civic organization not conducted for the profit of its members, subject to the following limitations:

(1)    A judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come before the judge or will be regularly or frequently engaged in adversary proceedings in any court.

(2)    A judge shall not solicit funds for any educational, religious, charitable, fraternal or civic organization, but may be listed as an officer, director, delegate, or trustee of such an organization, and may be a speaker or a guest of honor at an organization's fund raising events.

(3)    A judge should not give investment advice to such an organization, but may serve on its board of directors or trustees even though it has the responsibility for approving investment decisions.

**D.    Financial Activities.**

(1)    A judge shall refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of the judicial duties, exploit his or her judicial position, or involve the judge in frequent transactions with lawyers or persons likely to come before the court on which the judge serves. This limitation does not prohibit either a judge or candidate from soliciting funds for appropriate campaign or officeholder expenses as permitted by state law.

(2)    Subject to the requirements of subsection (1), a judge may hold and manage investments, including real estate, and engage in other remunerative activity including the operation of a business. A judge shall not be an officer, director or manager of a publicly owned business. For purposes of this Canon, a "publicly owned business" is a business having more than ten owners who are not related to the judge by consanguinity or affinity within the third degree of relationship.

(3)    A judge should manage any investments and other economic interests to minimize the number of cases in which the judge is disqualified. As soon as the judge can do so without serious financial detriment, the judge should divest himself or herself of investments and other economic interests that might require frequent disqualification. A judge shall be informed about the judge's personal and fiduciary economic interests, and make a reasonable effort to be informed about the personal economic interests of any family member residing in the judge's household.

(4)    Neither a judge nor a family member residing in the judge's household shall accept a gift, bequest, favor, or loan from anyone except as follows:

(a)    a judge may accept a gift incident to a public testimonial to the judge; books and other resource materials supplied by publishers on a complimentary basis for official use; or an invitation to the judge and spouse to attend a bar-related function or activity devoted to the improvement of the law, the legal system, or the administration of justice;

(b)    a judge or a family member residing in the judge's household may accept ordinary social hospitality; a gift, bequest, favor, or loan from a relative; a gift from a friend for a special occasion such as a wedding, engagement, anniversary, or birthday, if the gift is fairly commensurate with the occasion and the relationship; a loan from a lending institution in its regular course of business on the same terms generally available to persons who are not judges; or a scholarship or fellowship awarded on the same terms applied to other applicants;

(c)    a judge or a family member residing in the judge's household may accept any other gift, bequest, favor, or loan only if the donor is not a party or person whose interests have come or are likely to come before the judge;

(d)    a gift, award or benefit incident to the business, profession or other separate activity of a spouse or other family member residing in the judge's household, including gifts, awards and benefits for the use of both the spouse or other family member and the judge (as spouse or family member), provided the gift, award or benefit could not reasonably be perceived as intended to influence the judge in the performance of judicial duties.

## E.    Fiduciary Activities.

(1)    A judge shall not serve as executor, administrator or other personal representative, trustee, guardian, attorney in fact or other fiduciary, except for the estate, trust or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of judicial duties.

(2)    A judge shall not serve as a fiduciary if it is likely that the judge as a fiduciary will be engaged in proceedings that would ordinarily come before the judge, or if the estate, trust, or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.

(3)    The same restrictions on financial activities that apply to a judge personally also apply to the judge while acting in a fiduciary capacity.

## F.    Service as Arbitrator or Mediator. An active full-time judge shall not act as an arbitrator or mediator for compensation outside the judicial system, but a judge may encourage settlement in the performance of official duties.

**G. Practice of Law.** A judge shall not practice law except as permitted by statute or this Code. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

**H. Extra-Judicial Appointments.** Except as otherwise provided by constitution and statute, a judge should not accept appointment to a governmental committee, commission, or other position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system, or the administration of justice. A judge, however, may represent his or her country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

**I. Compensation, Reimbursement and Reporting.**

(1) Compensation and Reimbursement. A judge may receive compensation and reimbursement of expenses for the extra-judicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge's performance of judicial duties or otherwise give the appearance of impropriety.

(a) Compensation shall not exceed a reasonable amount nor shall it exceed what a person who is not a judge would receive for the same activity.

(b) Expense reimbursement shall be limited to the actual cost of travel, food, and lodging reasonably incurred by the judge and, where appropriate to the occasion, by the judge's family. Any payment in excess of such an amount is compensation.

(2) Public Reports. A judge shall file financial and other reports as required by law.

---

### CANON 5
### Refraining From Inappropriate
### Political Activity

---

(1) A judge or judicial candidate shall not:

(i) make pledges or promises of conduct in office regarding pending or impending cases, specific classes of cases, specific classes of litigants, or specific propositions of law that would suggest to a reasonable person that the judge is predisposed to a probable decision in cases within the scope of the pledge;

(ii) knowingly or recklessly misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent; or

(iii) make a statement that would violate Canon 3B(10).

(2) A judge or judicial candidate shall not authorize the public use of his or her name endorsing another candidate for any public office, except that either may indicate support for a political party. A judge or judicial candidate may attend political events and express his or her views on political matters in accord with this Canon and Canon 3B(10).

(3) A judge shall resign from judicial office upon becoming a candidate in a contested election for a non-judicial office either in a primary or in a general or in a special election. A judge may continue to hold judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention or while being a candidate for election to any judicial office.

(4) A judge or judicial candidate subject to the Judicial Campaign Fairness Act, Tex. Elec. Code §253.151, *et seq.* (the "Act"), shall not knowingly commit an act for which he or she knows the Act imposes a penalty. Contributions returned in accordance with Sections 253.155(e), 253.157(b) or 253.160(b) of the Act are not a violation of this paragraph.

## COMMENT

*A statement made during a campaign for judicial office, whether or not prohibited by this Canon, may cause a judge's impartiality to be reasonably questioned in the context of a particular case and may result in recusal.*

## CANON 6
### Compliance with the Code of Judicial Conduct

A. **The following persons shall comply with all provisions of this Code:**

(1) An active, full-time justice or judge of one of the following courts:

(a) the Supreme Court,

(b) the Court of Criminal Appeals,

(c) courts of appeals,

(d) district courts,

(e) criminal district courts, and

(f) statutory county courts.

(2) A full-time commissioner, master, magistrate, or referee of a court listed in (1) above.

**B. A County Judge who performs judicial functions shall comply with all provisions of this Code except the judge is not required to comply:**

(1)    when engaged in duties which relate to the judge's role in the administration of the county;

(2)    with Canons 4D(2), 4D(3), or 4H;

(3)    with Canon 4G, except practicing law in the court on which he or she serves or in any court subject to the appellate jurisdiction of the county court, or acting as a lawyer in a proceeding in which he or she has served as a judge or in any proceeding related thereto.

(4)    with Canon 5(3).

**C.    Justices of the Peace and Municipal Court Judges.**

(1)    A justice of the peace or municipal court judge shall comply with all provisions of this Code, except the judge is not required to comply:

(a)    with Canon 3B(8) pertaining to *ex parte* communications; in lieu thereof a justice of the peace or municipal court judge shall comply with 6C(2) below;

(b)    with Canons 4D(2), 4D(3), 4E, or 4H;

(c)    with Canon 4F, unless the court on which the judge serves may have jurisdiction of the matter or parties involved in the arbitration or mediation; or

(d)    if an attorney, with Canon 4G, except practicing law in the court on which he or she serves, or acting as a lawyer in a proceeding in which he or she has served as a judge or in any proceeding related thereto.

(e)    with Canons 5(3).

(2)    A justice of the peace or a municipal court judge, except as authorized by law, shall not directly or indirectly initiate, permit, nor consider *ex parte* or other communications concerning the merits of a pending judicial proceeding. This subsection does not prohibit communications concerning:

(a)    uncontested administrative matters,

(b)    uncontested procedural matters,

(c)    magistrate duties and functions,

(d)    determining where jurisdiction of an impending claim or dispute may lie,

(e) determining whether a claim or dispute might more appropriately be resolved in some other judicial or non-judicial forum,

(f) mitigating circumstances following a plea of nolo contendere or guilty for a fine-only offense, or

(g) any other matters where *ex parte* communications are contemplated or authorized by law.

**D. A Part-time commissioner, master, magistrate, or referee of a court listed in 6A(1) above:**

(1) shall comply with all provisions of this Code, except he or she is not required to comply with Canons 4D(2), 4E, 4F, 4G or 4H, and

(2) should not practice law in the court which he or she serves or in any court subject to the appellate jurisdiction of the court which he or she serves, or act as a lawyer in a proceeding in which he or she has served as a commissioner, master, magistrate, or referee, or in any other proceeding related thereto.

**E. A Judge Pro Tempore, while acting as such:**

(1) shall comply with all provisions of this Code applicable to the court on which he or she is serving, except he or she is not required to comply with Canons 4D(2), 4D(3), 4E, 4F,4G or 4H, and

(2) after serving as a judge pro tempore, should not act as a lawyer in a proceeding in which he or she has served as a judge or in any other proceeding related thereto.

**F. A Senior Judge, or a former appellate or district judge, or a retired or former statutory county court judge who has consented to be subject to assignment as a judicial officer:**

(1) shall comply with all the provisions of this Code except he or she is not required to comply with Canon 4D(2),4E, 4F,4G, or 4H, but

(2) should refrain from judicial service during the period of an extra-judicial appointment not permitted by Canon 4H.

**G. Candidates for Judicial Office.**

(1) Any person seeking elective judicial office listed in Canon 6A(1) shall be subject to the same standards of Canon 5 that are required of members of the judiciary.

(2) Any judge who violates this Code shall be subject to sanctions by the State Commission on Judicial Conduct.

(3) Any lawyer who is a candidate seeking judicial office who violates Canon 5 or other relevant provisions of this Code is subject to disciplinary action by the State Bar of Texas.

(4) The conduct of any other candidate for elective judicial office, not subject to paragraphs (2) and (3) of this section, who violates Canon 5 or other relevant provisions of the Code is subject to review by the Secretary of State, the Attorney General, or the local District Attorney for appropriate action.

## H. Attorneys.

Any lawyer who contributes to the violation of Canons 3B(7), 3B(10), 4D(4), 5, or 6C(2), or other relevant provisions of this Code, is subject to disciplinary action by the State Bar of Texas.

---

### CANON 7
### Effective Date of Compliance

---

A person to whom this Code becomes applicable should arrange his or her affairs as soon as reasonably possible to comply with it.

---

### CANON 8
### Construction and Terminology
### of the Code

---

## A. Construction.

The Code of Judicial Conduct is intended to establish basic standards for ethical conduct of judges. It consists of specific rules set forth in Sections under broad captions called Canons.

The Sections are rules of reason, which should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through the State Commission on Judicial Conduct. It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

It is not intended, however, that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined

through a reasonable and reasoned application of the text and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system.

## B. Terminology.

(1) "Shall" or "shall not" denotes binding obligations the violation of which can result in disciplinary action.

(2) "Should" or "should not" relates to aspirational goals and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined.

(3) "May" denotes permissible discretion or, depending on the context, refers to action that is not covered by specific proscriptions.

(4) "De minimis" denotes an insignificant interest that could not raise reasonable question as to a judge's impartiality.

(5) "Economic interest" denotes ownership of a more than de minimis legal or equitable interest, or a relationship as officer, director, advisor or other active participant in the affairs of a party, except that:

(i) ownership of an interest in a mutual or common investment fund that holds securities is not an economic interest in such securities unless the judge participates in the management of the fund or a proceeding pending or impending before the judge could substantially affect the value of the interest;

(ii) service by a judge as an officer, director, advisor or other active participant, in an educational, religious, charitable, fraternal, or civic organization or service by a judge's spouse, parent or child as an officer, director, advisor or other active participant in any organization does not create an economic interest in securities held by that organization;

(iii) a deposit in a financial institution, the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association or of a member in a credit union, or a similar proprietary interest, is not an economic interest in the organization unless a proceeding pending or impending before the judge could substantially affect the value of the interest; and

(iv) ownership of government securities is not an economic interest in the issuer unless a proceeding pending or impending before the judge could substantially affect the value of the securities.

(6) "Fiduciary" includes such relationships as executor, administrator, trustee, and guardian.

(7) "Knowingly," "knowledge," "known" or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.

(8) "Law" denotes court rules as well as statutes, constitutional provisions and decisional law.

(9) "Member of the judge's (or the candidate's) family" denotes a spouse, child, grandchild, parent, grandparent or other relative or person with whom the candidate maintains a close familial relationship.

(10) "Family member residing in the judge's household" means any relative of a judge by blood or marriage, or a person treated by a judge as a member of the judge's family, who resides at the judge's household.

(11) "Require." The rules prescribing that a judge "require" certain conduct of others are, like all of the rules in this Code, rules of reason. The use of the term "require" in that context means a judge is to exercise reasonable direction and control over the conduct of those persons subject to the judge's direction and control.

(12) "Third degree of relationship."The following persons are relatives within the third degree of relationship: great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew or niece.

(13) "Retired Judge" means a person who receives from the Texas Judicial Retirement System, Plan One or Plan Two, an annuity based on service that was credited to the system.(Secs. 831.001 and 836.001,V.T.C.A. Government Code [Ch. 179, Sec. 1, 71st Legislature (1989)]

(14) "Senior Judge" means a retired appellate or district judge who has consented to be subject to assignment pursuant to Section 75.001, Government Code. [Ch. 359, 69th Legislature, Reg. Session (1985)]

(15) "Statutory County Court Judge" means the judge of a county court created by the legislature under Article V, Section 1, of the Texas Constitution, including county courts at law, statutory probate courts, county criminal courts, county criminal courts of appeals, and county civil courts at law. (Sec. 21.009, V.T.C.A. Government Code [Ch. 2, Sec. 1601(18), 71st Legislature (1989)])

(16) "County Judge" means the judge of the county court created in each county by Article V, Section 15, of the Texas Constitution.(Sec. 21.009, V.T.C.A. Government Code [Ch. 2, Sec. 1601(18), 71st Legislature (1989)])

(17) "Part-time" means service on a continuing or periodic basis, but with permission by law to devote time to some other profession or occupation and for which the compensation for that reason is less than that for full-time service.

(18) "Judge Pro Tempore" means a person who is appointed to act temporarily as a judge.

# APPENDIX 23

## CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and PARKS REALTY FIRM, LLC | § § § | IN THE COUNTY COURT |
| V. | § § | AT LAW NO. 3 |
| JOSHUA CAMPBELL, ET. AL. | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT OF TIFFANY MARTIN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, personally appeared Tiffany Martin, who, being by me duly sworn, deposed as follows:

1. "My name is Tiffany Martin. I am over 21 years of age, of sound mind, have never been convicted of a felony or other crime, and am fully competent and able to testify to all matters attested to herein. I have personal knowledge of the facts stated herein and they are all true and correct.

2. My husband is Chris Ovalles. Chris and I sought to purchase a home in the spring of 2014. I found Joshua Campbell on the Internet when researching lenders. I had a phone conversation with Josh Campbell. Mr. Campbell pulled Chris' credit while we were on the phone. He said he would get us pre-approved to purchase a house and referred us to Tonya Parks. He gave me Mrs. Parks' phone number and she was hired shortly thereafter.

3. A meeting was then set up for me and Chris to meet with Josh and Katherine Campbell. During the meeting, Josh and Katherine stressed their commitment to their clients and the importance of maintaining good communication. They said we could call, text or e-mail any time and expect a prompt response. This was really emphasized.

4. Chris and I then gathered certain financial documents that the Campbells requested. This included things like tax returns, pay stubs and bank account statements. I sent those to the Campbells very quickly, possibly as soon as the day after the meeting. Katherine told me that we were approved for $120,000. Chris and I then worked with Mrs. Parks to find a house. We found one on a street called Allegro. The Allegro house was a HUD property and was going to be a "rehab" project.

5. Chris and I spent thousands of dollars throughout the process of trying to purchase the Allegro property. This included things such as earnest money, an appraisal, an inspection fee, getting utilities turned on, getting repair bids, etc. The bids were sent to Katherine.

6. Katherine assured me that we were good to go on getting a loan in place to buy the Allegro property. Based on this assurance, Chris and I gave our notice of termination to the townhome we lived in for the previous seven years.



EXHIBIT
B
tabbies

7. Then there were a number of problems that resulted in us not getting the Allegro house. As we neared the closing date for Allegro, Katherine advised that there was a problem with Chris' credit score and that we would need to come up with over $11,000 to close. Attached to my Affidavit as Exhibit 1 is the e-mail I received from Katherine Campbell that reflects this.

8. This was a shock because the issue of reserves was never communicated to us. The Campbells had all of our financial data and could see that we did not have this sort of money. There is a sentence in the e-mail about us getting $3,368 as a "gift" for "reserves." Neither Chris nor I had the ability to get a gift in this amount and never told the Campbells that we could get such a gift.

9. It was during this time that communication became very difficult with the Campbells. My e-mails, texts and phone calls were not being responded to. This caused me a lot of concern. I told Mrs. Parks about this difficulty. Mrs. Parks suggested that I add her to my group text messages. That's when Katherine would finally respond.

10. When the Allegro house fell through, we were emotionally devastated. If it was not for Mrs. Parks, we probably would have given up. But she told us to stay strong and was fully supportive.

11. Katherine then told me that Chris was approved for a higher loan payment. She also emphasized that we would not need to have any reserves and that we would be able to close within three weeks of getting a new contract.

12. With this news, we got back together with Mrs. Parks and began searching for another property to purchase. We found one at 230 Browning, Grand Prairie, Texas 75052 in Dallas County (the "Browning Property"). We entered into a contract which Mrs. Parks forwarded to the Campbells.

13. At this point, Chris and I were living with a friend and her children in a 2 bedroom townhouse. My friend has three kids and we have four. There were a total of three adults and seven children living in this two bedroom townhouse. On top of this, school was about to start. I needed to know where to enroll my kids for school.

14. Given all of these circumstances, including the fact that the first transaction fell apart at the last minute, I tried to contact Katherine to confirm that everything was on the right track. Unfortunately, Katherine went radio silent. She would not respond to my calls, texts and e-mails. This made me very scared because the last time she went radio silent, our deal fell through on Allegro.

15. I communicated this to Mrs. Parks. Mrs. Parks was our advocate and was very diligent in trying to get information from the Campbells on our behalf. Mrs. Parks understood our living situation and the issues with the impending school year, so she really appreciated our predicament and went the extra mile for us.

16. As a result of Mrs. Parks' efforts, Katherine finally took my call. I wanted reassurance from Katherine, due to the prior fiasco, that we were definitely going to close on Browning. I emphasized to Katherine my need for this information because of the upcoming school year.

17. Katherine told me that everything was okay and to go ahead and enroll my children in school in the Grand Prairie ISD. She said we would be closing a few days after school started. This turned out to not be true. Instead, we did not close on the Browning Property until approximately three weeks after school started.

18. For approximately three weeks, I drove my four children to three different schools. I had to travel from Irving to Grand Prairie twice a day, once for drop off and once for pick up. Making matters worse, each school started and let out at different times. It was basically a five hour process. At the same time, I was trying to hold down a job. It was a nightmare.

19. During this time period, we started having the same problems with the Campbell team as we had on the Allegro property. As we neared what we thought was our closing date, the Campbells began asking for information again. They wanted additional bank statements, additional pay stubs and even a copy of Chris' divorce decree. This was rather bizarre since Chris was never divorced.

20. I was concerned about what was going on, so I again tried to contact Katherine. Just as before, Katherine refused to communicate with me. Once again, it was as a result of Mrs. Parks' efforts that I ultimately got a response.

21. As it turns out, Katherine was searching for reserves – which she originally stated we did not need. I found out when Josh Campbell called me out of the blue. He told me that Katherine was in his office crying because we needed reserves.

22. Chris had a 401-k account that had some money in it, but it wasn't enough to cover all of the reserves that we suddenly needed. We were about to lose a second property, but then Mrs. Parks was able to somehow get back the earnest money we lost on the Allegro property. This earnest money that Mrs. Parks got back gave us just enough reserves to qualify for the loan.

23. The closing date kept changing. We were promised one closing date after another. At one point, Katherine guaranteed in writing that the loan was approved that we would be closing on or before Friday, September 5, 2014. This day came and went and we did not close. We did not close on the Browning Property until September 10, 2014.

24. On the date of closing, Chris and I gave Mrs. Parks flowers and a card. A copy of the card is attached to my Affidavit as Exhibit 2. It says:

> We can't thank you enough for everything! You are amazing! Thank You!!!
> We Love You!
> Tiff & Chris

25. Chris and I also wrote a letter to Mrs. Parks the night before closing. A copy of the letter is attached as Exhibit 3 to my Affidavit. It reads, in part, as follows:

> Words don't feel big enough right now. We have no clue how to even begin to express our gratitude to you! We are thankful beyond words! Not only are you amazing at your job, but you are the definition of beautiful! Inside and Out! You have been a true God send throughout this entire process...this very long, very emotional process!
> ***

The way this world works a majority of the time is business is business. We have never felt that way with you. Not only did you fight for us, you prayed for us! Through this whole thing we never once doubted you cared! We've known you cared about our family! You have no clue how much that means to us!
***

Know that you and your beautiful family will forever be in our prayers! If you ever need anything, we're here. We love you! Thank you for helping our dreams come true!

Chris & Tiff

26. Right after closing, Chris and I learned that someone went on the Internet and posted really awful and totally false things about Mrs. Parks on the Ripoff Report.

27. I had recently been copied on e-mails with Josh Campbell and Mrs. Parks in which Josh Campbell tried blame Mrs. Parks for all of the problems we experienced throughout the two transactions. Chris and I noticed that the posting was eerily similar to our experience and what was in Mr. Campbell's e-mails, but identified the wrong bad guy.

28. It was at this time that I remembered Katherine telling me shortly before closing that she would never do business with Mrs. Parks ever again.

29. Mrs. Parks was always there for us. She was very knowledgeable and very compassionate. She always kept us in the loop and maintained good communication with us. Without her, we never would have been able to buy this house.

30. I wrote a letter stating "To Whom It May Concern" in an effort to help Mrs. Parks clear her name. The primary purpose of the letter was for Mrs. Parks to provide to Affiliated Bank because Josh Campbell denied that he made the Ripoff Report posting. It is attached as Exhibit 4 to my Affidavit.

31. I have now learned that Mr. Campbell lied to Mrs. Parks and Affiliated Bank when he denied making the terribly derogatory and false Internet posting about Mrs. Parks."

Tiffany Martin

SWORN TO AND SUBSCRIBED before me by Tiffany Martin on March 21, 2016.

Notary Public in and for the State of Texas

ERICA R. PUGH
Notary ID # 128931209
My Commission Expires
March 23, 2016

Tonya,

Words don't feel big enough right now. We have no clue how to even begin to express our gratitude to you! We are thankful beyond words! Not only are you amazing at your job, but you are the true definition of beautiful! Inside and out! You have been a true God send throughout this entire process... this very long, very emotional process! Every tear we've shed, every grey hair we've gained. We still have to thank God for because without it... had we gone a different (easier, more stable) route... We wouldn't have met you! God works in mysterious ways... and truly getting to know you during this 4 month, hair pulling, heart stopping process... has been the blessing in disguise! The way this world works a majority of the time is business is business. We have never felt that way with you. Not only did you fight for us, you prayed for us! Through this whole thing we never once

EXHIBIT
3

tabbies.

Closed. You Cared! We've Known You Cared from day one! You Cared about Our family! You have no clue how Much that means to us! Closing Day is finally here |||||||||| It's Here ||||||||||| There aren't any Words that could possibly express how thankful We are. Thank You So Much, Tonya ||||||||| Thank You for Your hard Work, thank You for Your time, thank You for Your dedication, thank You for Your loyalty. Most of all... thank You for Your prayers!!! Know that You and Your beautiful family Will forever be in Our prayers! If You ever need anything, We're here. We love You! Thank You for helping Our dreams come true!

♡ Chris & Tiff ♡

✗ Colossians 3:23-24 ✓

(God Shines through You!)

## To Whom It May Concern:

I'm writing this to tell you about our experience with Josh Campbell's office.
We started our home buying process in mid-April of 2014. Through an online search we found Josh Campbell. We called and gave them all of our information and we were told without a doubt that they could get us into a home. They then referred Tonya Parks to us for our realtor needs. We called her and started the house hunt. We finally found a house in our budget and put up the earnest money. The house was going to be a rehab home so granted the process is a little more difficult. We started getting bids for the repairs on the house which some we had to pay for not to mention getting the utilities turned on in our name so that inspections could be done. It took us approximately a month to get all the bids and everything ready for closing. During this time it was impossible to get a hold of anyone in Josh Campbell's office. Repeated phone calls, emails and text messages from myself and Tonya with absolutely zero response for weeks! When I was finally able to get a hold of Katherine I checked with her to make sure it was ok to put in our notice at the townhomes we have lived in for 7 years. She assured me everything was fine we would be able to close June 30th and to go ahead and put the notice in. About a week or so before we were supposed to close Katherine informed us that closing was going to be delayed about 2wks. Well since we already put our notice in at the place we lived for 7 years, we weren't very happy with that news... but we had a friend offer to let us stay with her for those couple of weeks. After that conversation communication was again nonexistent. Tonya and I couldn't get a reply to numerous emails, text messages or phone calls. When I would ask Tonya why won't they reply to us? Her reply was always, "I don't know let me try." About a month after we gave up our townhouse we got the bad news. We aren't able to get the house due to it being a rehab home and the credit score dropping some but we were told we could get into another house with zero money down and zero reserves and they could close us in 3 weeks. Needless to say we were completely frustrated beyond belief. Actually frustrated would be a huge understatement. Not only were we out about 3 thousand dollars we invested in that home, we gave up our home we lived in for 7 years and were living in a 2 bedroom place with a friend, her 3 kids, the 2 of us and our 4 kids and school was also starting in about 2 weeks. We had zero clue where our kids were going to go or what we needed to buy them as far as school clothes or supplies. The entire summer was wasted on that house. Tonya reminded me to stay positive and that everything happens for a reason. We then started the house hunt again. We found a house put the earnest money up again and informed Josh's office. I talked to Katherine needing reassurance that this was a done deal because of the obvious. And explained to her that I needed to enroll the kids in school and my kids have been at the same school with the same friends since KG and I really didn't want to enroll them for a week just to have to switch them. She said we will close in 3 wks. I enrolled my kids in the school by the new house. Our new house is in Grand Prairie and we were Irving at the time. So I knew for a couple days I would be driving our kids to and from school for a couple days until we closed. Then once again... communication with them was halted. No responses to emails, text messages or phone calls. With numerous attempts from myself and Tonya. We knew something was up. Tonya finally sent an email to their office with everyone involved copied on it, in effort to get some sort of response from them. The next morning (September 3rd) we get a completely unprofessional email from Josh discrediting Tonya and being extremely condescending to me.

EXHIBIT

4

(Alluding to the fact that I am so feeble minded I let Tonya persuade our opinion of their office.) I wrote him back and informed him that Tonya has been absolutely nothing but professional and until his email I had no idea there was any conflict between them. Which is the absolute truth. I knew we were all frustrated with everything that had taken place and I knew that Tonya and I were equally frustrated with the lack of communication with their office, but before his email I had no clue it was anything other than that. Later that afternoon (The day we were supposed to close) I got a call from their office and Josh informed me that Katherine was crying and there was another issue which and we now needed reserves in order to get the loan. Then Josh informed me that they are going to make this work and I needed to do one thing... "Keep Tonya off his back!" I was in complete shock when he told me this. I don't understand to this day what they think Tonya did. She was just trying to get answers to questions we had. We figured out on our own that their lack of communication meant something was wrong due the history. But they were adamant that Tonya was just making them look bad. Even after I told them that we formed our opinion of them based on our experience with them. Tonya called me and told me her name being slandered on the internet. I looked it up and read what was written. Once I read it I had zero doubt who wrote it. It was way too similar to our current situation and too coincidental that Tonya has never had conflict like that with any client and all of a sudden this pops up... right after everything that happened. My heart broke for her when I read that. I know from our personal experience with her that nothing in that report is true. The fact that someone can just post complete lies and tarnish her good reputation breaks my heart. We were told on closing day by Katherine that they needed a good review from us. And a lot of emphasis was put on them getting a good review. It was to the point of threatening. Like if we didn't give a good review we wouldn't get funded. Katherine even called me after we signed the closing documents before funding went through and asked us if we completed the review. She also informed me that they will never work with Tonya again. I still don't know what Tonya did to warrant their behavior and opinions other than try to get answers for us. I really hate that over this nonsense Tonya's name has been forever tarnished. She doesn't deserve any of this. Throughout the very long process we never once doubted she genuinely cared for us and sympathized with what we were made to endure. We really hope she manages to recover from all of this but it breaks our heart that she has to be put through it at all.

Sincerely,
Tiffany Martin

469-685-7656

You Are the Best!

Joy

We can't thank you enough for everything! You Are Amazing! Thank You!!!! We Love You!

Tiff & Chris

EXHIBIT 2

PAPYRUS



**THANK YOU** SO MUCH

TY 5186317 © Jean Cultural & Creative Co.,Ltd.

Subject: RE: Ovalles Update
From: tiffanymartin1982 <tiffanymartin1982@yahoo.com>
Date: Tue, Sep 02, 2014 11:13 am
To: Katherine Campbell <kcampbell@affiliatedbank.com>, Tonya Parks <TonyaParks@parksrealtyfirm.com>, Chris From Hell <crovalles@yahoo.com>, Team Josh <teamjosh@affiliatedbank.com>

What happen to closing tomorrow? Why isn't that possible now? I am seriously driving close to 5hrs a day just doing school drops offs and pick ups. Plus working in Fort worth. This is supposed to be an exciting time for us and while we are very excited about the house... this whole process and the last 4 months have been been completely miserable. We gave up our place we lived in for 7 + yrs. We were seperated from our children the whole summer. (Which has NEVER happened their entire lives) We are staying in a 2 bedroom place right... with a total of 10 people... 7 of which are children.  Last Friday came and I had to tell our amazing and understanding friend... well it's going to be weds... now here it is day before and I have to tell her it's going to be Friday. We are trying to stay positive but this whole process has been absolutely miserable. And honestly... it feels like we just keep getting the run around. So it's hard to get excited about anything because it's been back to back let downs. I understand things have been busy for everyone but our entire lives have been turned upside down. Now that I have vented... is Friday a FOR SURE DEAL?

-------- Original message --------
From: Katherine Campbell
Date:09/02/2014 10:15 AM (GMT-06:00)
To: Tonya Parks ,Chris From Hell ,Tiffany Martin ,Team Josh
Subject: Ovalles Update

Good Morning!

We hope you had a great weekend! (your last one not in your new home!)

I wanted to send you an update that your loan is on the log for clear to close. :) We will get it tomorrow and then send that for TSAHC's clear to close. We will get docs out Thursday afternoon for a Friday closing.

I will send an update to the agents. We'll keep you posted if we need anything from you.

Thank you!


Cordially,


# Katherine Campbell
Loan Manager for Josh Campbell
kcampbell@affiliatedbank.com
405 State Highway 121 Ste 250A
Lewisville, TX 75067-8214

Main Office Line (214) 929 - 1733
Cell            (469) 396 - 2202
Fax             (866) 472 - 2891

**Subject:** Re: [FWD: Re: Ovalles - 7314080801]

**From:** Josh Campbell <jcampbell@affiliatedbank.com>

**Date:** Wed, Sep 03, 2014 3:15 am

**To:** Tonya Parks <tonyaparks@parksrealtyfirm.com>

**Cc:** Katherine Campbell <kcampbell@affiliatedbank.com>, Tiffany Martin <tiffanymartin1982@yahoo.com>

Tonya. I can't begin to express how disappointed I am with your email, but as I told you earlier, I'd respond before morning if it took me all night to get to the bottom of this. I have spent all night auditing the email chains and communications.

I'll be happy to share with you the results of the audit of emails, but here's the gist - but there are hundreds of emails - and I didn't detect much frustration from Tiffany or Chris other than after an email push from Tonya to move the closing date up from what was already agreeable for this coming Friday (albeit, not perfect) - we said we would do our best - I've got the emails:

- Prequalified AND referred to YOU on 4/18
- Approximately 5/19 - found and executed a 203k HUD REO property (you should have managed expectations as an agent to the complexity of getting bids ASAP)
- Almost 2 months pass before we have enough to order appraisal with bids (7/15)
- Realtor fails to manage expectations about how long an appraisal takes, and buyer is disappointed to find out it's not immediate
- 7/21 - We notify appraisal due on 7/24 and check with investor on turn time....
- 7/29 - FICO score dropped - need to regroup - Tonya notified of extension needed and acknowledged she was in the loop
- 7/29 - KC indicated we cannot commit to date based on new situation
- We provided alternative with new DPA program
- 8/18 - KC cannot make promise, but acknowledged that we will pay for appraisal
- 8/21 - Chris finishes classes for FTHB
- 8/26 - Tonya takes credit for getting EMD back from HUD - gives no credit to how we assisted in that process by making sure the investor withdrew the application rather than "deny" in FHA connection which is protocol - which would have make it more challenging to get another loan from FHA (way to go Tonya - you keep saving the day)
- 8/27 - KC sets expectations for following Friday and Tiffany aknowledged, but Tonya backs her into a corner to which she replies she will do her best to TRY - but no commitment - explained was waiting on some paperwork
- 9/2 - KC - set expectations for closing on Friday

This is the short version (there were other twists and turns, but I think you get the point)...I have saved hundreds of email chains - and I haven't finished looking through the ones that didn't include everyone. I cannot find very many times where there were more than a few days of gap of email - not to mention text, phone, and other emails sent to other parties or inboxes.

Tiffany - I'm very very sorry you experienced this buying your home. It's almost over, and I hope you'll be able to look back and remember that we ALL worked very hard to get this done for you and your family. The HUD property was an uphill battle. The new property will close within a few weeks using down payment assistance (not as easy as it sounds - but, we did find and facilitate the program - see emails from August that I can send if needed regarding Tarrant county and state programs - explaining the differences - all documented with smiley faces) . If Tonya has made you believe that we have failed you because she and my office aren't working well together currently (although, we've never said anything negative about her to you as she did in the previous email about my conversation with her earlier (which was between her and I - not very professional for her to share), then I take full responsibility, but you have been very well served - and I hope you can see past the noise and realize that at some point.

Buying a HUD property is more difficult than most....buying one that needs rehab is even more challenging - which is why it took 60 days to even order an appraisal.....adding down payment assistance to the mix only adds more layers....but, if you look at your emails (and I looked at ALL of them), you'll notice that all of our emails were handled with grace, timeliness, and class. We didn't point fingers....the longer these things drag out, the higher probability that something else can get int he way....It's just the nature of how it works...We sat down in my office and discussed this in the very beginning face to face....

EXHIBIT
3/11/16
3
Campbell NJ

Print | Close Window

Subject: Re: [FWD: Re: Ovalles - 7314080801]
From: Tiffany Martin <tiffanymartin1982@yahoo.com>
Date: Wed, Sep 03, 2014 10:45 am
To: Josh Campbell <jcampbell@affiliatedbank.com>, Tonya Parks <tonyaparks@parksrealtyfirm.com>
Cc: Katherine Campbell <kcampbell@affiliatedbank.com>

Until these emails we have been unaware of any issues between you guys. Tonya has been nothing but professional and hasn't mentioned any of you in a negative way at all. Bottom line is this... Any opinion that we have formed in regards to this whole situation and your branch has been based solely on our personal experience. Look, in my opinion we are not difficult people to work with. (Correct me if I'm wrong, Katherine??) We are very easy going, return all requested information promptly and we are very, very understanding. When the Hud property fell through, although disappointed (because we had a lot time and money invested)... we still remained positive and optimistic. We believe everything happens for a reason and that just wasn't the house intended for us. Now look.. we found something even better in a place that has amazing schools for our kids. In my opinion, we have been very corporative. (Again... maybe I'm wrong?) We might have a lot of questions but this is our first home, I would like to think that's normal. And we feel as though our questions should always be addressed. Regardless of whether or not you think it's relevant or silly or unimportant. Not doing so is just bad business. We are clients and have felt flat out ignored on more than one occasion. There have been numerous times I have called, emailed sent text messages and have gotten zero response. One example, I responded to Katherine's email yesterday morning and have still yet to get a reply. Katherine has been very sweet and helpful anytime we have communicated and I honestly think she is genuinely a really sweet person. That has never been an issue. The issue is us being not getting responses. I have asked Tonya why we don't get a response and all she has ever said is I don't know... let me call. Nothing negative has ever been said. I have even tried calling and got voicemail only to get a text message that says I will call you right back... but never get a call back. It feels impossible to get a hold of anyone. I understand that you guys are busy but we are still clients and shouldn't be ignored. There should always be a response even if the answer is... "I don't know right now but I will find out and get back to you." I know everyone is completely frustrated with everything... But I promise...my family is at the top of that frustration ladder. Can we all please just regroup, take a few deep calming breaths and get this house closed asap? We need our lives back to normal and there is nothing normal about living in a 2 bedroom with 3 adults, 7 kids and having to spend close to 5 hrs a day transporting children to and from school while trying to work. If you need us to do anything that can help speed up the process please let us know. Thank you for your time and attention.

Tiffany
469-685-7656

**EXHIBIT 6**

On Wednesday, September 3, 2014 3:15 AM, Josh Campbell <jcampbell@affiliatedbank.com> wrote:

Tonya. I can't begin to express how disappointed I am with your email, but as I told you

x 6

# APPENDIX 23A

retreat?

A.   It was a manager retreat with Affiliated.

Q.   Who paid for it?

A.   I'm not sure who paid for it.

Q.   Did you?

A.   I did not pay for it.

Q.   Okay.  Where did y'all go?

A.   San Antonio.

Q.   So you made the post -- well, approximately how long after the retreat if you recall did you -- were you terminated by Affiliated?  Would it have been shortly thereafter or six months later?

A.   June.

Q.   Around June?

A.   Around June sounds correct.

Q.   Now, when you first came on board with Affiliated, what was your position?

A.   Branch manager.

Q.   Branch manager.  And as branch manager, what did you do?

A.   Do you want full --

Q.   Let me ask you maybe an easier question because I see you're like I did everything.  What were your general job duties and responsibilities?

A.   I originated loans.  I built a team.  I made

sure that we were in compliance.

Q.    With what?

A.    With the proper procedures.  It was my responsibility to train and educate, hire a crew.  I did payroll.  I did the TP.  I met with clients.  I did marketing.  I fixed problems.  I created a culture.  Let me clarify that, I created a good culture.  I made phone calls.  I responded to clients.  I took applications.  I assessed credit reports.  I determined whether or not people were ready to fully apply for a loan, and if they did, then I would hand that off to one of our team members.  They all had specific roles as well.  I dissolved or solved -- you know, dissolved conflict.  I taught classes.  I worked late.  That was very common.

Q.    How late?

A.    I slept at the office a lot.

Q.    It sounds like you and me might be alike in some ways.

A.    I do what needs to be done in order to help our clients.

Q.    And that would include long hours, whatever it took?

A.    Whatever it took.

Q.    When you stayed at the office overnight, were you working?

A.    That was just one time.

Q.    Okay.  Did you frequently work late?

A.    Yes, frequently worked late.

Q.    Sometimes after midnight?

A.    Yeah.

Q.    Was that a yes?

A.    That's a yes.

Q.    That's an emphatic yes?

A.    That is an emphatic yes, yes.

Q.    So working after midnight was not unusual because you were --

A.    Because all of the things that I mentioned before I would deal with during the day and get pulled into a bunch of different directions.  So therefore, I still had to do my part, too.

Q.    And you're preaching to the choir on that one as a small businessman myself.  So that would often take you into 1 o'clock, 2 o'clock, 3 o'clock, 4 o'clock in the morning?

A.    Yeah, you can lose track of time.

Q.    That's a yes?

      MR. HANSEN:  Objection; form.

      THE WITNESS:  I wasn't sure that --

Q.    (BY MR. BERENT)  You said yeah.  I was just -- for the record, was your answer a yes?

A.    Can you rephrase the question then?

Q.    Yes, of course.  I frequently have -- like, today, I'm taking depositions today, and I have a ton of other job duties and responsibilities, including doing things like payroll, administrative stuff, paying bills, and that's going to take me into the wee hours of the morning today.  And you're explaining that that's something you would typically do.

A.    That is yes.

MR. TURZINSKI:  Objection; form.

Q.    (BY MR. BERENT)  Okay.  And that could sometimes take you until 1 o'clock, 2 o'clock, 3 o'clock in the morning?

A.    Yes.

Q.    Okay.  And when you were hired, were you given a laptop or anything by Affiliated Bank?

A.    Yes.

Q.    And did you do your work on a laptop that was given to you by Affiliated Bank?

A.    Yes.

Q.    Were you able to work from home when you worked with Affiliated Bank?

A.    If need be, yes.

Q.    And if you were working super late, did you often do some of that work from home?

A.    No.

Q.    You would stay at the office?

A.    I would often stay at the office until we moved closer to the office.  Once we were closer to the office, then I would maybe take some of those extra chores home.

Q.    Fair enough.  And approximately when did you move closer to the office -- or, you know what, strike that.  Let me ask a better question.

In September of 2014, were you living closer to the office?

A.    Yes.

Q.    And for approximately how long had you been living closer to the office?

A.    Approximately six months.

Q.    Prior to September of 2014?

A.    Yes.

Q.    Okay.  And what was the address where you lived?

A.    I don't recall the temporary apartment address, but our other address is 744 Sparrow Lane, Coppell, Texas.

Q.    7 --

A.    75019.

Q.    And when you said you were living closer to the

# APPENDIX 23B

CAUSE NO. CC-15-04540-C

| | | |
|---|---|---|
| TONYA PARKS and PARKS REALTY | § | IN THE COUNTY COURT |
| FIRM, LLC | § | |
| | § | |
| V. | § | AT LAW NO. 3 |
| | § | |
| JOSHUA CAMPBELL, ET. AL. | § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' MOTION FOR NEW TRIAL AND ALTERNATIVE
## MOTION TO VACATE, MODIFY, CORRECT OR REFORM JUDGMENT

Plaintiffs Tonya Parks and Parks Realty Firm, LLC ("Plaintiffs") file this *Motion for New Trial and Alternative Motion to Vacate, Modify, Correct or Reform Judgment* (collectively the "*Motion*" except where otherwise indicated) and would respectfully show the Court as follows:

### I.    The Judgment

The Judgment in issue is the "Order on Defendant Joshua Campbell's Motion to Dismiss" that was signed by the Honorable Sally Montgomery on March 24, 2016, attached hereto as Exhibit A-1 (the "Judgment"). Because this *Motion* is filed within thirty days of the Judgment, it is timely filed.

### II.    Motion for New Trial Should be Granted

Plaintiffs' *Motion for New Trial* is filed in accordance with Rule 329b of the Texas Rules of Civil Procedure. The following are the bases upon which Plaintiffs rely in support of their *Motion for New Trial*:

**A. Plaintiffs presented clear and specific evidence supporting a prima facie case respecting all elements of their causes of action against Joshua Campbell**

Defendant Joshua Campbell ("Defendant") filed a Motion to Dismiss pursuant to the Texas Citizens Participation Act, found in Chapter 27 of the TEXAS CIVIL PRACTICE & REMEDIES CODE. *See* TEX. CIV. PRAC. & REM. CODE §27.001, *et seq.* (the "TCPA" and the "Statute").

To defeat a Motion to Dismiss brought under the Statute, a non-movant must come forward with "clear and specific" evidence to establish a prima facie case supporting the elements of their causes of action. Plaintiffs respectfully submit that Defendant's Motion to Dismiss was improperly granted because Plaintiffs met their statutory burden of proof.

## 1. Legal Standard

A Motion to Dismiss brought under the Statute requires "clear and specific" evidence. The words "clear and specific" are not defined in the Statute. The case most on point and which provides the greatest guidance on this issue is *In re Steven Lipsky*, a relatively recent Texas Supreme Court decision. *In Re: Steven Lipsky*, No. 13-0928, Texas Sup.; 2015 Tex. LEXIS 350)("*Lipsky*").

In *Lipsky*, the parties disagreed about the type of evidence that could be considered under the "clear and specific evidence" standard set forth in the TCPA. The movant argued that the "clear and specific evidence" language "elevates the evidentiary standard," requiring a party to produce irrefutable direct evidence as to each element of its claim. The non-movant contended that "circumstantial evidence and rational inferences" may be considered by the court in determining whether "clear and specific evidence exists" and that the "TCPA's prima-facie-case requirement does not impose a higher or unique evidentiary standard."

In short, the Texas Supreme Court held that:

(a) The TCPA *does not* impose an elevated evidentiary standard;

(b) *Circumstantial evidence and inferences may be used* by a trial court to determine whether a non-movant has satisfied its burden; and

(c) The TCPA *does not* impose a higher burden of proof than that required of the plaintiff at trial.

In so holding, the *Lipsky* Court reasoned as follows:

- Some courts, focusing on the requirement of "clear and specific evidence," have interpreted the Statute to require a heightened evidentiary standard, unaided by inferences.

- Other courts, focusing on the prima-facie-case language, have concluded that the Statute permits the court to draw rational inferences from circumstantial evidence when determining whether the plaintiff has met its threshold factual burden.

- The Statute does not define "clear and specific evidence"

- "Clear and specific evidence" is not a recognized evidentiary standard. Although it sounds similar to "clear and convincing evidence," the phrases are not legally synonymous.

- The common law has developed several distinct evidentiary standards, but none of these standards categorically rejects the use of circumstantial evidence.

- All evidentiary standards, including clear and convincing evidence, recognize the relevance of circumstantial evidence.

- Circumstantial evidence can, of course, be vague, indefinite, or inconclusive, but it is not so by definition. Rather, it is simply indirect evidence that creates an inference to establish a central fact.

- Circumstantial evidence may be used to prove one's case-in-chief or to defeat a motion for directed verdict, and so it would be odd to deny its use here to defeat a preliminary motion to dismiss under the TCPA.

- That the Statute (TCPA) should create a greater obstacle for the plaintiff to get into the courthouse than to win its case seems *nonsensical. See Carreras v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) (noting that we "interpret statutes to avoid an absurd result").

- The Statute, however, requires not only "clear and specific evidence" but also a "prima facie case." In contrast to "clear and specific evidence," a "prima facie case" has a traditional legal meaning. It refers to…the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true" (citations omitted).

- The TCPA's direction that a claim should not be dismissed "if the party bringing the legal action establishes by *clear and specific evidence a prima facie case* for each essential element of the claim in question" thus describes the clarity and detail required to avoid dismissal. TEX. CIV. PRAC. & REM. CODE § 27.005(c) (emphasis added).

- In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.

- Though the TCPA initially demands more information about the underlying claim, the Statute does not impose an elevated evidentiary standard or reject circumstantial evidence.

- In short, the TCPA does not impose a higher burden of proof than that required of the plaintiff at trial. "We accordingly disapprove those cases that interpret the TCPA to require direct evidence of each essential element of the underlying claim to avoid dismissal."

### 2. Evidence: Both Direct and Circumstantial

In support of their contention that they met their burden of proof, necessitating that the Motion to Dismiss be denied, Plaintiffs rely on, direct to the Court to, and incorporate herein by reference, all pleadings, Affidavits and evidence on file with the Court. Specifically, and without limitation, Plaintiffs rely upon their most recently filed Petition in this case, as well as the following evidence attached to their Response to the Defendant's Motion to Dismiss:

- Affidavit of Tonya Parks with exhibits;

- Affidavit of Tiffany Martin with exhibits;

- Affidavit of Chris Ovalles;

- Affidavit of Jennie Ross;

- Deposition of Katherine Campbell;

- Pertinent excerpts from the Deposition of Joshua Campbell with pertinent exhibits; and

- Affidavit of Jason M. Berent with its attachment.

Plaintiffs also rely upon Plaintiffs' separately filed instrument identifying the Key Components of Defendant Joshua Campbell's Deposition Testimony, as well as the Affidavits of Joshua and Katherine Campbell that were attached to Defendant's Motion to Dismiss. Plaintiffs also ask the Court to take judicial notice of its entire file, including the transcript of the hearings conducted on Defendant's Motion to Dismiss, all of which is incorporated herein by reference.

The evidence presented to the Court provided both direct and circumstantial evidence from which inferences could be drawn that satisfied Plaintiffs' burden of proof. The Statute does not

impose a heightened evidentiary standard and/or a higher burden of proof than that which is required of a plaintiff at trial.

It is undisputed that Defendant Joshua Campbell made the Defamatory Internet Post on the Rip Off Report website. It is undisputed that he made the post as a "Concerned buyer," which he is not. It is undisputed that, because he was falsely posing as a "Concerned buyer," _none_ of the facts he stated in the Defamatory Internet Post _could_ be true. Moreover, even if Mr. Campbell was a "buyer" in this transaction – which he was not – the factual allegations are nevertheless untrue and are defamatory *per se*. This is borne out in (among other places) the Affidavit of Tonya Parks, who recites the actual facts of the transaction and the conduct of Joshua Campbell. This Affidavit, as well as Plaintiffs' live pleading, at the very least create an inference and circumstantial proof of "clear and specific evidence" supporting Plaintiffs' claims.

Additional supporting evidence is found in the Affidavits of the prospective buyers, Christopher Ovalles and Tiffany Martin. These Affidavits reflect that Joshua Campbell made errors respecting the handling of the loan process and made misrepresentations regarding same. This was particularly noted by the Court during the May 22, 2016 hearing (on pages 47and 48 of the transcript). The Court stated that Tiffany Martin's testimony reflected that the Campbells "basically said she was pre-approved for a loan. And when it came about, they couldn't do that. They were not pre-approved. They all of a sudden needed more cash reserves and everything else. And it wasn't because his credit was downgraded. It dealt with deposit money and everything else. So it sounds like maybe the Campbells were saying they were preapproved and [Plaintiffs' clients-the prospective buyers] weren't really [preapproved] for a home...Now if that's the case, then the Campbells set in motion this whole problem with Mrs. Parks."

As evidenced in the Key Components of Joshua Campbell's Deposition Testimony, on file with the Court, as well as in the deposition itself, also on file, Joshua Campbell conceded that multiple components of his Affidavit (attached to his Motion to Dismiss) were inaccurate and/or beyond the scope of his knowledge. This is in addition to the fact he is a twice convicted felon who could not state in the preamble to his Affidavit that he "has never been convicted of a felony."

In his deposition, Joshua Campbell actually testified under oath that "*it is okay to lie*." In addition to being caught in lie after lie throughout his Affidavit, Joshua Campbell testified that part of his personal ethics and morals is that lying is acceptable. This provides additional evidence that the statements in the Defamatory Internet Post were malicious lies aimed to damage the Plaintiffs.

Issues of proximate cause and damages do not appear to have been of concern in relation to the Court's determination of the Motion to Dismiss. The Court focused its inquiry on the nature of the statements in the Defamatory Internet Post – primarily as to whether they were statements of fact or opinion, and whether the statements were protected free speech. That said, issues of proximate cause and damages are well established in the Affidavit of Tonya Parks. Issues of damages are similarly well established in the Affidavit of Tonya Parks and the Affidavit of Jennie Ross. Plaintiffs met, and *exceeded*, their burden of proof respecting the elements of proximate cause and damages as to all of their causes of action.

Because the direct and circumstantial evidence from which the Court may draw inferences supports the conclusion that Plaintiffs met their burden establishing a prima facie case by clear and specific evidence: (1) the Judgment should be set aside, rescinded, voided and/or otherwise vacated; (2) this *Motion for New Trial* should be granted; and (3) Plaintiffs should be given a new trial and all other relief to which they may be entitled.

## B. Affiliated Bank should not have been dismissed

The Judgment dismisses Affiliated Bank from the case. Plaintiffs respectfully submit that this dismissal was in error and that Plaintiffs are entitled to a new trial, at the very least, as to Affiliated Bank.

It is notable that Affiliated Bank did not have any motion pending, dispositive or otherwise, at the time the Judgment was signed. Counsel for Affiliated Bank simply stood up during the middle of the hearing on Defendant Campbell's Motion to Dismiss and suggested that any ruling on the Motion to Dismiss as to Defendant Campbell, should essentially "flow through" and inure to the Bank's benefit. Affiliated Bank provided no legal authority for this proposition. There was no motion on file by the Bank, no notice of any hearing and objection was made by Plaintiffs' counsel to the entire issue (Page 85 of the hearing transcript).

Plaintiffs alleged separate causes of action against Affiliated Bank, including negligent hiring, training and supervision. On pages 85-86 of the hearing transcript, the Court noted that "summary judgment would be granted in two seconds" as to issues of the Bank's alleged negligence. The Court is correct that the issues respecting the Bank are properly addressed by summary judgment. Such a motion may very well be granted, but Affiliated Bank was not entitled to dismissal based on the Court's disposition of a totally different motion filed by a totally different party (i.e., Defendant Campbell's Motion to Dismiss).

Plaintiffs respectfully request that, at the very least: (1) the Judgment should be set aside, rescinded, voided and/or otherwise vacated with respect to Affiliated Bank; (2) that this *Motion for New Trial* should be granted at least as to Affiliated Bank; and (3) Plaintiffs should be given a new trial and all other relief to which they may be entitled with respect to Affiliated Bank.

### C. Attorneys' fees should not have been awarded

The Judgment awards both the Campbells and Affiliated Bank attorneys' fees that are imposed against the Plaintiffs. Attorneys' fees were not properly proven up. On page 84 of the hearing transcript, counsel for Affiliated Bank raised the issue of attorneys' fees. The Court asked, on the same page, "What does the bank think their fee is going to be?" Counsel for Affiliated Bank then provided an "estimate" of its fees. Also on page 84, counsel for the Campbells stated the Campbells' fees were "somewhere in the neighborhood of about 60 to $65,000."

Neither lawyer was sworn in, neither lawyer took the witness stand, neither lawyer laid a proper foundation by elucidating the factors upon which they would be qualified to render an opinion regarding reasonable and necessary attorneys' fees, neither lawyer presented any invoice or fee statement, and (among other things) neither lawyer identified the types of services rendered, the amount of time spent on various tasks and/or any of the other usual and customary facts that are provided when attorneys' fees are proven up.

On page 87 of the hearing transcript, Plaintiffs' counsel contended that the fees sought by Defendants were "outrageous." The Court responded "Well, we're not doing that hearing today. I would have to hear where they came up with their hours and what their rate was, even though I have some clue to the rate. So that's simply what they're saying they're going to be asking for, and it never hurts to know what someone's going to be asking for...Then you'll know what they're going to be asking for. Doesn't mean that they've proved it up."

No hearing on attorneys' fees ever occurred. Plaintiffs had no opportunity to cross-examine the sponsoring witnesses respecting the issue of fees claimed. On March 24, 2016, the day the Judgment was signed, two Affidavits were filed in an effort to prove up attorneys' fees. Christopher Hansen, counsel for the Campbell Defendants, filed an Affidavit respecting attorneys'

fees on March 24, 2016 at 11:42 am. John Browning, counsel for Affiliated Bank, filed a substantively similar Affidavit on the same day, March 24, 2016, at 4:55 pm. It is uncertain at what time of the day the Judgment was signed, but it is plain that no hearing occurred on the issue of attorneys' fees and Plaintiffs were deprived of the opportunity to even provide a controverting Affidavit. A controverting Affidavit is attached to this *Motion* and incorporated herein.

Plaintiffs respectfully request that, at the very least: (1) the Judgment should be set aside, rescinded, voided and/or otherwise vacated with respect to all attorneys' fees awarded to the Defendants; (2) that this *Motion for New Trial* should be granted at least with regard to the issue of attorneys' fees; and (3) Plaintiffs should be given a new trial and all other relief to which they may be entitled with respect to the issue of attorneys' fees.

## III. Alternative Motion to Vacate, Modify, Correct or Reform Judgment Should Be Granted

Plaintiffs' *Alternative Motion to Vacate, Modify, Correct or Reform Judgment* is filed in accordance with Rule 329b of the Texas Rules of Civil Procedure. It is filed within thirty days of the Court's Judgment and is therefore timely filed. The following are the bases upon which Plaintiffs rely in support of their *Alternative Motion to Vacate, Modify, Correct or Reform Judgment*:

### A. Affiliated Bank should not have been dismissed

The Judgment dismisses Affiliated Bank from the case. Plaintiffs respectfully submit that this dismissal was in error and that Plaintiffs are entitled to a new trial, at the very least, as to Affiliated Bank.

It is notable that Affiliated Bank did not have any motion pending, dispositive or otherwise, at the time the Judgment was signed. Counsel for Affiliated Bank simply stood up during the middle of the hearing on Defendant Campbell's Motion to Dismiss and suggested that any ruling

on the Motion to Dismiss as to Defendant Campbell, should essentially "flow through" and inure to the Bank's benefit. Affiliated Bank provided no legal authority for this proposition. There was no motion on file by the Bank, no notice of any hearing and objection was made by Plaintiffs' counsel to the entire issue (Page 85 of the hearing transcript).

Plaintiffs alleged separate causes of action against Affiliated Bank, including negligent hiring, training and supervision. On pages 85-86 of the hearing transcript, the Court noted that "summary judgment would be granted in two seconds" as to issues of the Bank's alleged negligence. The Court is correct that the issues respecting the Bank are properly addressed by summary judgment. Such a motion may very well be granted, but Affiliated Bank was not entitled to dismissal based on the Court's disposition of a totally different motion filed by a totally different party (i.e., Defendant Campbell's Motion to Dismiss).

Plaintiffs respectfully request that the Judgment should be vacated, modified, corrected and/or reformed: (1) to rescind the dismissal of Affiliated Bank from this case; (2) to reinstate Affiliated Bank as a party to this case; (3) to rescind the award of attorneys' fees to Affiliated Bank (and its affiliates); and (4) Plaintiffs should be awarded all other relief to which they may be entitled with respect to this issue.

### B. Attorneys' fees should not have been awarded

The Judgment awards both the Campbells and Affiliated Bank attorneys' fees that are imposed against the Plaintiffs. Attorneys' fees were not properly proven up. On page 84 of the hearing transcript, counsel for Affiliated Bank raised the issue of attorneys' fees. The Court asked, on the same page, "What does the bank think their fee is going to be?" Counsel for Affiliated Bank then provided an "estimate" of its fees. Also on page 84, counsel for the Campbells stated the Campbells' fees were "somewhere in the neighborhood of about 60 to $65,000."

Neither lawyer was sworn in, neither lawyer took the witness stand, neither lawyer laid a proper foundation by elucidating the factors upon which they would be qualified to render an opinion regarding reasonable and necessary attorneys' fees, neither lawyer presented any invoice or fee statement, and (among other things) neither lawyer identified the types of services rendered, the amount of time spent on various tasks and/or any of the other usual and customary facts that are provided when attorneys' fees are proven up.

On page 87 of the hearing transcript, Plaintiffs' counsel contended that the fees sought by Defendants were "outrageous." The Court responded "Well, we're not doing that hearing today. I would have to hear where they came up with their hours and what their rate was, even though I have some clue to the rate. So that's simply what they're saying they're going to be asking for, and it never hurts to know what someone's going to be asking for...Then you'll know what they're going to be asking for. Doesn't mean that they've proved it up."

No hearing on attorneys' fees ever occurred. Plaintiffs had no opportunity to cross-examine the sponsoring witnesses respecting the issue of fees claimed. On March 24, 2016, the day the Judgment was signed, two Affidavits were filed in an effort to prove up attorneys' fees. Christopher Hansen, counsel for the Campbell Defendants, filed an Affidavit respecting attorneys' fees on March 24, 2016 at 11:42 am. John Browning, counsel for Affiliated Bank, filed a substantively similar Affidavit on the same day, March 24, 2016, at 4:55 pm. It is uncertain at what time of the day the Judgment was signed, but it is plain that no hearing occurred on the issue of attorneys' fees and Plaintiffs were deprived of the opportunity to even provide a controverting Affidavit. A controverting Affidavit is attached to this *Motion* and incorporated herein.

Plaintiffs respectfully request that the Judgment should be vacated, modified, corrected and/or reformed: (1) to rescind all attorneys' fees awarded to Affiliated Bank (and its affiliates);

(2) to rescind all attorneys' fees awarded to the Campbell Defendants; and (3) Plaintiffs should be awarded all other relief to which they may be entitled with respect to this issue.

### C. Attorneys' fees and costs should be awarded to Plaintiffs for that which was expended to identify the person who made the Defamatory Internet Post after Defendant Joshua Campbell dishonestly denied that he was the culprit

During the course of the hearing on the Motion to Dismiss, the Court noted a desire to learn more about the costs and attorneys' fees Plaintiffs incurred in connection with having to track down the person who made the Defamatory Internet Posting on the Rip Off Report.

Because Defendant Josh Campbell lied to Mrs. Parks and claimed he did not make the post when initially confronted, Plaintiffs had to file a "John Doe" lawsuit, similar to a Rule 202 proceeding, to obtain the IP address of the person who made the post. The case was filed in the 219th District Court of Collin County. Plaintiffs hired attorney Chase Garrett to handle that matter and paid over $10,000 in costs and fees. Ex. A-2.

The "John Doe" lawsuit resulted in identifying an IP address that linked the posting as having originated from a computer at the home of Joshua and Katherine Campbell. The Court expressed its disgust over Defendant Joshua Campbell lying about having made the post on pages 77, 81 and 82 of the hearing transcript:

Page 77:

THE COURT: "I do not like it when someone will not admit they did something. I did not like the fact that Mr. Campbell did not say he did this and lied to the bank.

Pages 81-82:

THE COURT: I'm going to tell y'all this. We haven't addressed this, but we're going to talk about the fact she had to do that [file the "John Doe" lawsuit] to find out who it is that did that [made the Rip Off Report post] because *nobody should be so cowardly they can't admit what they've done*...So we'll talk about that. That's going to be discussed. And it's going to be – who was the attorney on that?...Well, he's got expenses, and he's got to bill. I would be curious to know what they [attorneys' fees and expenses] are."

Unfortunately, no discussion was had and the issue of the attorneys' fees Plaintiffs incurred in connection with having to file the "John Doe" lawsuit was not considered.

Plaintiffs respectfully request that the Judgment should be vacated, modified, corrected and/or reformed to award Plaintiffs their reasonable and necessary costs and attorneys' fees incurred in connection with having to file the "John Doe" lawsuit in Collin County to pursue the IP address from which the Defamatory Internet Post was made because the perpetrator, Joshua Campbell, lied and said it was not him. Plaintiffs should be awarded all other relief to which they may be entitled with respect to this issue.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court grant *Plaintiffs' Motion for New Trial*, either in whole or in part, and give Plaintiffs a New Trial in this case. In the alternative, Plaintiffs pray that the Court grant their *Alternative Motion to Vacate, Modify, Correct or Reform Judgment*, either in whole or in part, and vacate, modify, correct and/or reform the Judgment in the manner requested herein. Plaintiffs also request and pray for all other relief to which they may be entitled, including costs and reasonable and necessary attorneys' fees.

Respectfully submitted,

JASON M. BERENT
Texas Bar No. 24027143

**BERENT LAW FIRM, PLLC**
5600 Tennyson Parkway, Suite 310
Plano, Texas 75024
(214) 692-5800 (Phone)
(214) 692-5806 (Fax)
jberent@berentlawfirm.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that a conference was conducted with counsel for all parties regarding the merits of this *Motion*. Counsel for all Defendants have advised that they oppose all of the relief sought in this *Motion*. This *Motion* is therefore presented to the Court for consideration.

Jason M. Berent

## CERTIFICATE OF SERVICE

I certify that on April 21, 2016, a true and correct copy of this instrument was served upon counsel for all Defendants via electronic service in accordance with the Texas Rules of Civil Procedure.

Jason M. Berent

## AFFIDAVIT OF JASON M. BERENT

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

BEFORE ME, the undersigned authority, personally appeared Jason M. Berent, who, being by me duly sworn, deposed as follows:

1. "My name is Jason M. Berent. I am over 21 years of age, of sound mind, have never been convicted of a felony or other crime, and am fully competent and able to testify to all matters attested to herein. I have personal knowledge of the facts stated herein and they are all true and correct.

2. I am an attorney licensed to practice law in the State of Texas and have been duly licensed since 2000. I am a graduate of the Georgetown University School of Foreign Service and earned my law degree from the University of Texas.

3. I am the owner and managing member of the Berent Law Firm, PLLC (the "Firm"). The Firm and I are lead counsel representing the Plaintiffs in this litigation. I have extensive experience in civil litigation including matters of this type and I've practiced law in Dallas County since obtaining my license in 2000.

4. As the lead counsel representing the Plaintiffs this matter, I am familiar with the number of hours spent and the amount charge per hour by the Firm on this matter. I am familiar with the nature of this case and what work has been performed. I am familiar with the standards relating to what constitutes a reasonable and necessary fee as set forth in the Texas Disciplinary Rules of Professional Conduct, as well as that which has been espoused by the Texas Supreme Court. I am also familiar with fees charged in Dallas County, Texas for legal services rendered in matters similar to those rendered in this cause. I am qualified to give and have an opinion as to what a reasonable fee would be for this matter. The hourly rate charged by the Firm for my professional legal services in this matter is $250 per hour. This rate is very reasonable given my education, background, skill and experience, as well as the caliber of attorneys representing the Defendants.

5. The Firm was retained in 2015 to review and analyze the underlying facts and to subsequently file this lawsuit. The work on this case involved meeting with Mrs. Parks on multiple occasions, preparing pleadings, preparing discovery, analyzing client documents, analyzing documents produced by Defendants, communicating with opposing counsel, communicating with Mrs. Parks on the telephone and in writing, preparing for and taking depositions, speaking and meeting with witnesses, responding to Mr. Campbell's Motion to Dismiss, coordinating the execution of Affidavits in support of the Response to the

EX. A

Motion to Dismiss, preparing for and attending the hearing on the Motion to Dismiss, and (without limitation) preparing the *Motion* to which this Affidavit is attached.

6. In performing this work, the attorneys' fees incurred by the Firm $30,562.50. This figure includes amounts billed and paid, and amounts billed but not yet paid up to and through the date of the hearing on the Motion to Dismiss. Fees have also been incurred relative to matters subsequent to the signing of the Judgment, including the motion to which this affidavit is attached, but have not yet been billed or paid.

7. Considering the amount in controversy, the nature of the suit, and the fees charged by other attorneys in Dallas County for similar services, the time and labor required, the skill required, the difficulty of the issues, the preclusion of other employment, the customary fee charged in such a case, the time limits imposed by the clients, the complexity of the issues, the experience, reputations and abilities of the attorneys, the nature and length of the professional relationship with the clients, it is my opinion that the blank in fees incurred and charged to date in this matter are very reasonable, and the services performed were necessary.

8. I have reviewed the affidavit of Christopher P. Hansen that was filed at 11:42 am March 24, 2016. In his affidavit, Mr. Hanson seeks to prove up the attorneys' fees relative to the representation of Mr. and Mrs. Campbell. Mr. Hanson testifies that the Hermes Firm generated $62,297.50 in attorneys' fees. Mr. Hansen and I are both billing at the same rate in this case, $250 per hour.

9. Mr. Hansen and I have fundamentally dealt with the same issues in this case, that being the Motion to Dismiss. That said, the fees of the Hermes Firm are double those of the Berent Law Firm, PLLC. It is my opinion that the fees sought by the Campbell Defendants, as set forth in Mr. Hansen's Affidavit, are not reasonable nor necessary. It is my opinion that the fees sought are in excess of what a reasonable and necessary fee would be for the services rendered to date for the Campbells in a case of this nature. It is my opinion that the fees of the Hermes Firm should be commensurate with the fees incurred by the Plaintiffs.

10. I have also reviewed the Affidavit of attorney John Browning, the attorney for the Affiliated Bank Defendants (the "Bank"). Mr. Browning's Affidavit was filed on March 24, 2016 at 4:55 pm. In his Affidavit, Mr. Browning claims that the Bank's attorneys' fees total $29,876.40. It is my opinion that the fees sought by the Bank are in excess of what is reasonable and necessary given their role in the case from its inception to current. After Defendant Joshua Campbell filed a Motion to Dismiss, the Bank had far fewer services to render relative to the other parties in the case. It would certainly be reasonable and necessary for the Bank's counsel to communicate with the client, to communicate with other counsel in the case, to monitor pleadings filed by other parties, and to attend the two depositions and hearing in this case. Given the foregoing, it is my opinion that a reasonable and necessary fee for the services rendered by the Bank in this matter should not exceed $10,000.

11. Attached to my Affidavit as Exhibit A-2 is a true and correct copy of the invoices for professional legal services and expenses Plaintiffs received from the law firm Albin, Yates, Balius & Roach (the "Roach Firm"). The total amount of costs and fees that were both incurred and paid by Plaintiffs is $10,458.16.

12. Plaintiffs retained the Roach Firm to file a "John Doe" lawsuit on their behalf to determine the computer from which the Rip Off Report post was made. Among other things, a subpoena was issued to an out-of-state third-party to ascertain the IP address for the computer in issue. The "John Doe," filed in the 219th District Court of Collin County, Texas, was successful in that the IP address received pursuant to the legal action traced to the computer at the home of Joshua and Katherine Campbell.

13. Plaintiffs had to file the "John Doe" lawsuit because the Defendant Joshua Campbell lied to Mrs. Parks when she confronted him about the post. He categorically denied making the post. Plaintiffs would not have incurred the costs and fees with the Roach Firm if Joshua Campbell had been honest and admitted his actions.

14. It is my professional opinion that costs and fees associated with the Roach Firm's representation of the Plaintiffs for the services they rendered were both reasonable and necessary in Collin County under the applicable standards promulgated by the Texas Disciplinary Rules of Professional Conduct and the Texas Supreme Court.

15. The facts stated in the *Motion* to which this Affidavit is attached are true and correct and within my personal knowledge."

Jason M. Berent

SWORN TO AND SUBSCRIBED before me by Jason M. Berent on April 21, 2016.

Notary Public in and for the State of Texas

LINDA M LAWTON
Notary ID # 12376181
My Commission Expires
June 25, 2017

<u>CAUSE NO. CC-15-04540-C</u>

| | | |
|---|---|---|
| TONYA PARKS and | § | IN THE COUNTY COURT |
| PARKS REALTY FIRM, LLC | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 3 |
| AFFILIATED BANK; | § | |
| AFFILIATED BANK FSB; | § | |
| AFFILIATED BANK FSB, INC. | § | |
| BANCAFFILIATED, INC.; | § | |
| JOSHUA CAMPBELL and | § | |
| KATHERINE CAMPBELL | § | |
| | § | |
| *Defendants* | § | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT JOSHUA CAMPBELL'S MOTION TO DISMISS

Came on to be heard Defendant Joshua Campbell's Motion to Dismiss Under the Texas Citizens' Participation Act. After considering Defendant Joshua Campbell's Motion to Dismiss this suit under the Citizens' Participation Act (the "Motion to Dismiss"), the response of Plaintiffs Tonya Parks and Parks Realty Firm, LLC ("Plaintiffs"), the pleadings, and the competent evidence properly before the Court, the Court finds that Defendant's Motion to Dismiss has merit and should in all things be **GRANTED**.

It is therefore **ORDERED, ADJUDGED, AND DECREED** that:

1.      all claims and causes of action against Defendant Joshua Campbell are dismissed with prejudice to the re-filing of the same;

2.      all claims and causes of action against Defendant Affiliated Bank are dismissed with prejudice to the re-filing of the same;

EX.
A-1

CC - 15 - 04540 - C
CODP
ORDER — DISMISSAL WITH PREJUDICE
1047786


3.      Defendant Joshua Campbell is awarded $62,297.50 from Plaintiffs Tony Parks and Parks Realty Firm, LLC, jointly and severally, in court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity require; and

3.      Defendant Affiliated Bank is awarded $29,876.40 from Plaintiffs Tony Parks and Parks Realty Firm, LLC, jointly and severally, in court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity require.

The Court notes that Plaintiffs entered a non-suit of Defendant Katherine Campbell on and effective Monday, March 21, 2016, and that Plaintiffs entered a non-suit of Defendants Affiliated Bank FSB, Affiliated Bank FSB, Inc., and Bancaffiliated Inc. before and effective before the hearing on the Motion to Dismiss on March 22, 2016. Accordingly, this Order disposes of claims and causes of action and all parties before the Court and is final and appealable.

SIGNED ON THIS _24_ day of _March_, 2016

_[signature]_
HONORABLE JUDGE PRESIDING

# APPENDIX 24

May 18, 2018

Open Records Division
Office of the Comptroller of the Currency (OCC)
Headquarters
400 7th Street SW
Washington, DC 20219

In Reference To: The Freedom of Information Act. 5U.S.C. 552

Subject Matter: Request for Investigation Records. Affiliated Bank. 2626 W. Pleasant Ridge Rd. Arlington. TX 76015-4526, no known Texas Taxpayer ID

Subject Jurisdiction: Suspicious Activity, Conspicuous Unlawful Business Practices. Corrupting the Court for the advantage of Affiliate Garry Graham to avoid the due process of the Court. Abuse of the Texas Commercial General Liability CGL Insurance Policy "duty to defend" criminally orchestrated by Chubbs Insurance Company Michael Moore, Attorneys Jerry Alexander, John Browning. Dallas County Judge Sally Montgomery, Judge Ted M. Akins, Justice Elizabeth Lang Miers, Justice Robert M. Fillmore.

Civil Case No: Court of Appeals Fifth District of Texas at Dallas Case # 05-16-00784-CV Tonya Parks and Parks Realty Firm Appellant vs Affiliated Bank Appellee. Appeal from Dallas Court of Law No. 3 Dallas County, Texas Trail Court Cause No. CC-15-04540-C.

Bennie R. Gibson
7200 Old Mill Run
Fort Worth, TX 76133

---

Dear Custodian

This letter is a request for the following records, under the Texas Open Records Law (Texas Government Code Chapter 552 Subchapter A. General Provision Sec. 552.001).

Please be aware that the Open Records Law defines "record" to include information that is maintain on paper as well as electronically, such as data files and unprinted emails.

Please also be aware that the Open Record Law shall be construed in every instance with presumption of complete public access general is contrary to public interest and only in exceptional cases can access be denied. If you deny my request, the law requires you to do so in writing and state what part of the law you believe entitles you to deny my request

*Page 2). Request for criminal Investigations*

The Open Records Law states that you may charge for "the actual necessary and direct cost of locating records, if this exceeds $50, and for photocopies. The Texas Department of Justice advises that copying fees under the Open Records Law should be around 15 cents per page and that anything in excess of 25 cents may be suspect.

The Texas Public Information Act require that you "promptly produce" the requested record unless; within 10 days you have sought an Attorney General's opinion. If you expect a significant delay in responding to this request, please contact me in writing with information about when I might expect copies or the ability to inspect the requested records.

1). Upon information and belief Affiliated Bank by and through Garry Graham and Grey McCarty Facilitated one of the greatest fraud in the history of the Texas Legislature. The involvement included Texas Grey Abbott and Rick Perry who also appointed Justice Elizabeth Lang Miers and Justice Robert N. Fillmore. Also in reading the book The Texas Miracle by John Marshall but the icing on the cake to the reason why the court would facilitate such a heinous act of conspiracy to keep Affiliated Bank Garry Graham from being subjected to the procedures of the court.

2). Per affidavit of David Gregg Senior Vice President of Affiliated Bank being duly sworn and under oath states that Affiliated Bank FSB a mutual Federal saving bank cease transacting business on May 25, 2001. Per Franchise Tax Account Status as of: 11/14/2016 show Taxpayer ID Number 32044597618 have not been set-up

3). Conversation with Mr. Hub Thompson Assistant Deputy Comptroller of the (OCC) Office of the Comptroller of the Currency 9003 Airport Freeway Suite 275 North Richland Hills, TX 76180 have no records of Affiliated Bank FSB nor do he have the time to furnish me with a Tax ID number for Affiliated Bank *or* Mr. Hub Thompson is refusing to provide me with what I am requesting because of a conflict of interest. My position Mr. Thompson is aiding and abetting the subject jurisdiction putting the public at risk.

4). Bennie R. Gibson has visit Affiliated Bank on several occasions and found this bank without bank customers and normal day by day customer activity. When questioned, very suspicious response by employees. Per conversation with Mr. Hub Thompson he agreed on the suspicious.

5). Bennie R. Gibson opinion on the intentional acts perpetrated by the actors in this request. Their act is very appalling and sloppy. The "conflict of interest" is very recognizable.

6) Per recorded conversation with Garry Graham. Mr. Graham states that Affiliated is not regulated by OCC.

Requested Records:

All investigation that transpired through the unlawful practices of Affiliated Bank Garry Graham through the years 2001-2018.

If you are not the records custodian for this information, please forward this request to the appropriate person. Also, please let know if I can clarify or refine this request.

Thank you for time and consideration.

Sincerely

BENNIE R. GIBSON
7200 Old Mill Run
Fort Worth TX 76133
(817) 989-2006 *office*
(817) 688-0652 *Cell*

**Page (3**

cc:

affinitygibsongroupejustice.us

Lanier, Hightower, and Barclay